**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| **SMARTFLASH LLC and** | § | |
| **SMARTFLASH TECHNOLOGIES** | § | |
| **LIMITED** | § | |
| | § | |
| **Plaintiffs,** | § | **Civil Action No. 6:13-cv-447** |
| | § | |
| **vs.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **APPLE INC., ROBOT** | § | |
| **ENTERTAINMENT, INC.,** | § | |
| **KINGSISLE ENTERTAINMENT, INC.,** | § | |
| **and GAME CIRCUS LLC,** | § | |
| | § | |
| **Defendants.** | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiffs Smartflash LLC and Smartflash Technologies Limited file this Original

Complaint against Defendants Apple Inc., Robot Entertainment, Inc., KingsIsle Entertainment,

Inc., and Game Circus LLC for patent infringement under 35 U.S.C. § 271 and allege, based on

their own personal knowledge with respect to their own actions and based upon information and

belief with respect to all others' actions, as follows:

### THE PARTIES

1.      Plaintiff Smartflash LLC is a limited liability corporation organized and existing under

the laws of the State of Texas, and maintains its principal place of business at 100 E.

Ferguson, Suite 406, Tyler, Texas, 75702.  Smartflash LLC maintains a website at

www.smartflashllc.com.

2.      Plaintiff Smartflash Technologies Limited is a limited company organized and existing under the laws of the British Virgin Islands, and maintains a principal place of business on the island of Tortola.

3.      Defendant Apple Inc. ("Apple") is a California corporation with a principal place of business at 1 Infinite Loop, Cupertino, California 95014.  Apple has designated CT Corporation System, 350 N. St. Paul Street, Suite 2900, Dallas, Texas 75201 as its agent for service of process.

4.      Defendant Robot Entertainment, Inc. ("Robot Entertainment") is a Delaware corporation with a principal place of business at 5055 W. Park Blvd., Ste. 600, Plano, Texas 75093. Robot Entertainment has designated CT Corporation System, 350 N. St. Paul St., Ste. 2900, Dallas, Texas 75201 as its agent for service of process.

5.      Defendant KingsIsle Entertainment, Inc. ("KingsIsle") is a Texas corporation with a principal place of business at 2745 Dallas Parkway, Suite 620, Plano, Texas 75093. KingsIsle has designated David Nichols, 2745 Dallas Parkway, Suite 620, Plano, Texas 75093 as its agent for service of process.

6.      Defendant Game Circus LLC ("Game Circus") is a limited liability corporation organized and existing under the laws of the State of Texas with a principal place of business at 15400 Knoll Trail Drive, Suite 230, Dallas, Texas 75248.  Game Circus has designated Kim L. Lawrence, 5720 LBJ Freeway, Suite 470, Dallas, Texas 75240 as its agent for service of process.

<u>**JURISDICTION AND VENUE**</u>

7.      This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8.      This Court has personal jurisdiction over Apple, Robot Entertainment, KingsIsle, and Game Circus ("Defendants").  Defendants conduct business and have committed acts of patent infringement and/or have induced acts of patent infringement by others in this district and/or have contributed to patent infringement by others in this district, the State of Texas, and elsewhere in the United States.

9.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b), 1391(c) and 1400(b) because, among other things, the Defendants are subject to personal jurisdiction in this district, the Defendants have regularly conducted business in this judicial district, and certain of the acts complained of herein occurred in this judicial district.

## PATENTS-IN-SUIT

10.     On February 26, 2008, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,334,720 (the "'720 patent") entitled "Data Storage and Access Systems."  A true and correct copy of the '720 patent is attached hereto as Exhibit A.

11.     On May 17, 2011, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,942,317 (the "'317 patent") entitled "Data Storage and Access Systems."  A true and correct copy of the '317 patent is attached hereto as Exhibit B.

12.     On October 11, 2011, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,033,458 (the "'458 patent") entitled "Data Storage and Access Systems."  A true and correct copy of the '458 patent is attached hereto as Exhibit C.

13.     On November 22, 2011, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,061,598 (the "'598 patent") entitled "Data Storage and Access Systems."  A true and correct copy of the '598 patent is attached hereto as Exhibit D.

14.     On February 21, 2012, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,118,221 (the "'221 patent") entitled "Data Storage and Access Systems."  A true and correct copy of the '221 patent is attached hereto as Exhibit E.

15.     On December 25, 2012, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,336,772 (the "'772 patent") entitled "Data Storage and Access Systems."  A true and correct copy of the '772 patent is attached hereto as Exhibit F.

16.     Smartflash LLC, together with Smartflash Technologies Limited,[1] owns all rights, title, and interest in and to the '720, '317, '458, '598, '221, and '772 patents (the "patents-in-suit") and possesses all rights of recovery.

## FACTUAL ALLEGATIONS

17.     The patents-in-suit generally cover a portable data carrier for storing data and managing access to the data via payment information and/or use status rules.  The patents-in-suit also generally cover a computer network (i.e., a server network) that serves data and manages access to data by, for example, validating payment information.

18.     In or around the year 2000, Patrick Racz, one of the co-inventors of the patents-in-suit, met with various personnel of Gemplus (now Gemalto S.A.) to discuss the technology claimed in the patents-in-suit. Mr. Augustin Farrugia was one of the people at Gemplus who learned of the technology of the patents-in-suit.

19.     Mr. Farrugia subsequently joined Apple and is currently a Senior Director at Apple Inc.

20.     iTunes is an Apple application that supports the purchase, download, organization and playback of digital audio and video files and is available for both Mac and Windows-based computers.

---

[1]  Smartflash Technologies Limited joins as a co-plaintiff in this lawsuit only to avoid a dispute as to whether it should be added for standing purposes.

21.  iTunes Store is an Apple service that allows customers to discover, purchase, rent, and download applications and other digital content.

22.  iTunes is integrated with the iTunes Store.

23.  Apple sells and delivers digital content and applications through the iTunes Store, which includes Apple's App Store and iBookstore.

24.  The Mac App Store is an Apple service that allows Apple's customers to purchase, download and install Mac applications.

25.  Apple's end-user customers can use the App Store app on their portable Apple devices, such as the iPhone, iPad, iPad Mini and iPad Touch, to purchase and download digital content and applications.

26.  An application developer or publisher can use Apple's in-application payment functionality to collect payment for enhanced functionality or additional content usable by the application.

27.  Apple provides its in-application payment functionality through its Store Kit framework.

28.  Apple's Store Kit connects to the App Store on behalf of an application to securely process payments from the user.

29.  Apple's Store Kit prompts the user to authorize the payment and then notifies the application that called Store Kit so that the application can provide items the user purchased.

30.  An application developer or publisher can use Apple's iAd advertising platform to deliver ads to users.

31.  Apple sells the ads through its iAd advertising platform and serves such ads to iAd enabled apps.

32.     Apple provides its iAd advertising platform through its iOS SDK.

33.     Apple provides its iAd advertising platform through its iAd Creative Toolkit.

34.     Apple provides its iAd advertising platform through its iAd Bundle Development Kit.

35.     Robot Entertainment sells an app through Apple's App Store called "Hero Academy."

36.     "Hero Academy" uses Apple's in-application payment functionality to collect payment

        for enhanced functionality or additional content.

37.     "Hero Academy" contains in-application advertising functionality.

38.     KingsIsle sells apps, specifically "Grub Guardian" and "WizardBlox," through Apple's

        App Store.

39.     "Grub Guardian" uses Apple's in-application payment functionality to collect payment

        for enhanced functionality or additional content.

40.     "WizardBlox" uses Apple's in-application payment functionality to collect payment for

        enhanced functionality or additional content.

41.     Game Circus sells apps through Apple's App Store and develops apps that are sold

        through Apple's App Store.

42.     Game Circus sells and develops apps that require payment (such as "Coin Dozer Pro"),

        apps that use Apple's in-application payment functionality to collect payment for

        enhanced functionality or additional content (such as "Coin Dozer - Halloween"), and

        apps that use Apple's iAd functionality (such as "Coin Dozer – Halloween").

43.     Apple has committed and continues to commit acts of infringement under

        35 U.S.C. § 271 (i) with any version of iTunes that can access iTunes Store; (ii) with any

        version of the App Store app; (iii) with any version of any Apple hardware or software

        product (e.g., Apple's various iPhone products, Apple's various iPad products, Apple's

various Apple TV products, Apple's various Mac computer products, Apple's various operating system software, etc.) that includes any version of iTunes or the App Store app that can access iTunes Store; (iv) with any version of Mac App Store; (v) with any Apple hardware or software product that includes any version of Mac App Store; and (vi) with Apple's internal servers involved in operating Apple's iTunes Store, Apple's Mac App Store as well as Apple's servers involved in Apple's in-application payment functionality as well as Apple's servers involved in Apple's iAd Network (collectively referred to as "Apple's Accused Instrumentalities").  In committing these acts of infringement, Apple acted despite an objectively high likelihood that its actions constituted infringement of at least one valid patent, and Apple actually knew or should have known that its actions constituted an unjustifiably high risk of infringement of at least one valid and enforceable patent.

44.     Robot Entertainment has committed and continues to commit acts of infringement under 35 U.S.C. § 271 with its "Hero Academy" app.

45.     KingsIsle has committed and continues to commit acts of infringement under 35 U.S.C. § 271 with its "Grub Guardian" and "WizardBlox" apps.

46.     Game Circus has committed and continues to commit acts of infringement under 35 U.S.C. § 271 with its apps that require payment and with its apps that use Apple's in-application payment functionality to collect payment for enhanced functionality or additional content and with its apps that provide in-application advertising.

47.     The Defendants are jointly and severally liable for the acts of infringement listed above.

48.     The Defendants' acts of infringement listed above are with respect to or arise out of the same transaction, occurrence, or series of transactions or occurrences relating to the

making, using, importing into the United States, offering for sale, or selling of the same

accused product or process.

49.     Questions of fact common to all Defendants exist and will arise in this action.

## COUNT ONE: PATENT INFRINGEMENT BY APPLE

50.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

51.     As described below, Apple has infringed and continues to infringe the patents-in-suit.

52.     Apple's Accused Instrumentalities meet claims of the patents-in-suit.

53.     Apple makes, uses, offers to sell, sells and/or imports Apple's Accused Instrumentalities

within the United States or into the United States without authority from Plaintiffs.

54.     Apple therefore infringes the patents-in-suit under 35 U.S.C. § 271(a).

55.     Apple has actual knowledge of the patents-in-suit.

56.     Apple indirectly infringes the patents-in-suit by inducing infringement by others, such as

product assemblers, resellers, app developers and publishers, digital content publishers,

and end-user customers, by, for example, requiring product assemblers to import Apple's

Accused Instrumentalities into the United States, by encouraging resellers to sell and

offer to sell Apple's Accused Instrumentalities within the United States, by instructing

and encouraging app developers and publishers and digital content publishers to sell and

offer to sell digital content, applications and advertisements in the United States through

Apple's Accused Instrumentalities, and by instructing end-user customers to install and

use Apple's Accused Instrumentalities in the United States.

57.     Apple took the above actions intending to cause infringing acts by others.

58.     Apple was aware of the patents-in-suit and knew that the others' actions, if taken, would

constitute infringement of those patents.  Alternatively, Apple believed there was a high

probability that others would infringe the patents-in-suit but remained willfully blind to

the infringing nature of others' actions.  Apple therefore infringes the patents-in-suit

under 35 U.S.C. § 271(b).

59.     Apple indirectly infringes the patents-in-suit by contributing to infringement by others,

such as product assemblers, resellers, app developers and publishers, digital content

publishers, and end-user customers by offering to sell and/or selling within the United

States products that contain components that constitute a material part of the inventions

claimed in the patents-in-suit, and components of products that are used to practice one or

more processes/methods covered by the claims of the patents-in-suit and that constitute a

material part of the inventions claimed in the patents-in-suit.  Such components are, for

example, the software components responsible for purchasing of digital content or

applications from iTunes, the software components responsible for providing digital

content or applications upon payment validation, the software components that provide

in-application payment functionality, the software components that provide in-application

advertising functionality, the software components that store payment distribution

information indicating to whom payments should be made for purchased digital content

or applications, and the software components that install, on a computer or server, any

version of iTunes that can access iTunes Store, any version of the App Store app, or any

version of the Mac App Store.

60.     In the above offering to sell and/or selling, Apple has known these components to be

especially made or especially adapted for use in an infringement of the patents-in-suit and

that these components are not a staple article or commodity of commerce suitable for

substantial non-infringing use.  Alternatively, Apple believed there was a high probability

that others would infringe the patents-in-suit but remained willfully blind to the

infringing nature of others' actions. Apple therefore infringes the patents-in-suit under 35 U.S.C. § 271(c).

61.    Apple's acts of infringement have caused damage to Plaintiffs. Plaintiffs are entitled to recover from Apple the damages sustained by Plaintiffs as a result of Apple's wrongful acts in an amount subject to proof at trial. In addition, the infringing acts and practices of Apple have caused, are causing, and, unless such acts and practices are enjoined by the Court, will continue to cause immediate and irreparable harm to Plaintiffs for which there is no adequate remedy at law, and for which Plaintiffs are entitled to injunctive relief under 35 U.S.C. § 283.

62.    Apple has committed and continues to commit acts of infringement under 35 U.S.C. § 271 with the Apple Accused Instrumentalities. In committing these acts of infringement, Apple acted despite an objectively high likelihood that its actions constituted infringement of at least one valid patent, and Apple actually knew or should have known that its actions constituted an unjustifiably high risk of infringement of at least one valid and enforceable patent.

63.    Apple's infringement of the patents-in-suit has been and continues to be willful.

64.    To the extent that Apple releases any new version of Apple's Accused Instrumentalities, such instrumentalities meet the claims of the patents-in-suit and infringe 35 U.S.C. § 271(a)-(c) in ways analogous to Apple's current infringement described above.

## COUNT TWO: PATENT INFRINGEMENT
## BY ROBOT ENTERTAINMENT

65.    Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

66.    As described below, Robot Entertainment has infringed and continues to infringe the patents-in-suit.

67.     Robot Entertainment's "Hero Academy" app meets claims of the patents-in-suit.

68.     Robot Entertainment makes, uses, offers to sell, sells and/or imports "Hero Academy" within the United States or into the United States without authority from Plaintiffs.

69.     Robot Entertainment therefore infringes the patents-in-suit under 35 U.S.C. § 271(a).

70.     Robot Entertainment has actual knowledge of the patents-in-suit.

71.     Robot Entertainment indirectly infringes the patents-in-suit by inducing infringement by its end-user customers to install and use "Hero Academy" within the United States.

72.     Robot Entertainment took the above actions intending to cause infringing acts by others.

73.     Robot Entertainment is aware of the patents-in-suit and knows that the others' actions, when taken, constitute infringement of those patents.  Robot Entertainment therefore infringes the patents-in-suit under 35 U.S.C. § 271(b).

74.     Robot Entertainment indirectly infringes the patents-in-suit by contributing to infringement by its end-user customers by offering to sell and/or selling within the United States products that contain components that constitute a material part of the inventions claimed in the patents-in-suit, and components of products that are used to practice one or more processes/methods covered by the claims of the patents-in-suit and that constitute a material part of the inventions claimed in the patents-in-suit.  Such components are, for example, the software components that provide in-application payment functionality, the software components that provide in-application advertising functionality, and the software components that install "Hero Academy."

75.     In the above offering to sell and/or selling, Robot Entertainment has known these components to be especially made or especially adapted for use in an infringement of the patents-in-suit and that these components are not a staple article or commodity of

commerce suitable for substantial non-infringing use.  Robot Entertainment therefore infringes the patents-in-suit under 35 U.S.C. § 271(c).

76.     To the extent that Robot Entertainment releases any other app that requires payment or that uses Apple's in-application payment functionality to collect payment for enhanced functionality or additional content, such apps meet claims of the patents-in-suit and infringe 35 U.S.C. § 271(a)-(c) in ways analogous to Robot Entertainment's current infringement described above.

## COUNT THREE: PATENT INFRINGEMENT BY KINGSISLE

77.     Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

78.     As described below, KingsIsle has infringed and continues to infringe the patents-in-suit.

79.     KingsIsle's "Grub Guardian" and "WizardBlox" apps meet claims of the patents-in-suit.

80.     KingsIsle makes, uses, offers to sell, sells and/or imports "Grub Guardian" and "WizardBlox" within the United States or into the United States without authority from Plaintiffs.

81.     KingsIsle therefore infringes the patents-in-suit under 35 U.S.C. § 271(a).

82.     KingsIsle has actual knowledge of the patents-in-suit.

83.     KingsIsle indirectly infringes the patents-in-suit by inducing infringement by its end-user customers to install and use "Grub Guardian" and "WizardBlox" within the United States.

84.     KingsIsle took the above actions intending to cause infringing acts by others.

85.     KingsIsle is aware of the patents-in-suit and knows that the others' actions, when taken, constitute infringement of those patents.  KingsIsle therefore infringes the patents-in-suit under 35 U.S.C. § 271(b).

86.   KingsIsle indirectly infringes the patents-in-suit by contributing to infringement by its end-user customers by offering to sell and/or selling within the United States products that contain components that constitute a material part of the inventions claimed in the patents-in-suit, and components of products that are used to practice one or more processes/methods covered by the claims of the patents-in-suit and that constitute a material part of the inventions claimed in the patents-in-suit.  Such components are, for example, the software components that provide in-application payment functionality and the software components that install "Grub Guardian" and "WizardBlox."

87.   In the above offering to sell and/or selling, KingsIsle has known these components to be especially made or especially adapted for use in an infringement of the patents-in-suit and that these components are not a staple article or commodity of commerce suitable for substantial non-infringing use.  KingsIsle therefore infringes the patents-in-suit under 35 U.S.C. § 271(c).

88.   To the extent that KingsIsle releases any other app that requires payment or that uses Apple's in-application payment functionality to collect payment for enhanced functionality or additional content, such apps meet claims of the patents-in-suit and infringe 35 U.S.C. § 271(a)-(c) in ways analogous to KingsIsle's current infringement described above.

**COUNT FOUR: PATENT INFRINGEMENT BY GAME CIRCUS LLC**

89.   Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

90.   As described below, Game Circus has infringed and continues to infringe the patents-in-suit.

91.   Game Circus's apps that require payment and apps that use Apple's in-application payment functionality to collect payment for enhanced functionality or additional content and apps that its apps that provide in-application advertising meet claims of the patents-in-suit.

92.   Game Circus makes, uses, offers to sell, sells and/or imports apps that require payment and apps that use Apple's in-application payment functionality to collect payment for enhanced functionality or additional content and apps that use Apple's in-application advertising functionality within the United States or into the United States without authority from Plaintiffs.

93.   Game Circus therefore infringes the patents-in-suit under 35 U.S.C. § 271(a).

94.   Game Circus has actual knowledge of the patents-in-suit.

95.   Game Circus indirectly infringes the patents-in-suit by inducing infringement by its end-user customers to install and use apps that require payment and apps that use Apple's in-application payment functionality to collect payment for enhanced functionality or additional content and apps that use Apple's in-application advertising functionality within the United States.

96.   Game Circus took the above actions intending to cause infringing acts by others.

97.   Game Circus is aware of the patents-in-suit and knows that the others' actions, when taken, constitute infringement of those patents.  Game Circus therefore infringes the patents-in-suit under 35 U.S.C. § 271(b).

98.   Game Circus indirectly infringes the patents-in-suit by contributing to infringement by its end-user customers by offering to sell and/or selling within the United States products that contain components that constitute a material part of the inventions claimed in the

patents-in-suit, and components of products that are used to practice one or more processes/methods covered by the claims of the patents-in-suit and that constitute a material part of the inventions claimed in the patents-in-suit.  Such components are, for example, the software components that provide in-application payment functionality, the software components that provide in-application advertising functionality and the software components that install apps that require payment and apps that use Apple's in-application payment functionality to collect payment for enhanced functionality or additional content.

99.     In the above offering to sell and/or selling, Game Circus has known these components to be especially made or especially adapted for use in an infringement of the patents-in-suit and that these components are not a staple article or commodity of commerce suitable for substantial non-infringing use.  Game Circus therefore infringes the patents-in-suit under 35 U.S.C. § 271(c).

100.    To the extent that Game Circus releases any other app that requires payment or that uses Apple's in-application payment functionality to collect payment for enhanced functionality or additional content or that uses Apple's in-application advertising functionality, such apps meet claims of the patents-in-suit and infringe 35 U.S.C. § 271(a)-(c) in ways analogous to Game Circus's current infringement described above.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury for all issues so triable.

### PRAYER FOR RELIEF

1.      A judgment that the Defendants have directly infringed the patents-in-suit, contributorily infringed the patents-in-suit, and/or induced the infringement of the patents-in-suit;

2. A preliminary and permanent injunction preventing the Defendants and their officers, directors, agents, servants, employees, attorneys, licensees, successors, and assigns, and those in active concert or participation with any of them, from directly infringing, contributorily infringing, and/or inducing the infringement of the patents-in-suit;

3. A judgment that Apple's infringement of the patents-in-suit has been willful;

4. A ruling that this case be found to be exceptional under 35 U.S.C. § 285, and a judgment awarding to Plaintiffs its attorneys' fees incurred in prosecuting this action;

5. A judgment and order requiring Defendants to pay Plaintiffs damages under 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict infringement up until entry of the final judgment, with an accounting, as needed, and enhanced damages for willful infringement as provided by 35 U.S.C. § 284;

6. A judgment and order requiring Defendants to pay Plaintiffs the costs of this action (including all disbursements);

7. A judgment and order requiring Defendants to pay Plaintiffs pre-judgment and post-judgment interest on the damages awarded;

8. A judgment and order requiring that in the event a permanent injunction preventing future acts of infringement is not granted, that Plaintiffs be awarded a compulsory ongoing licensing fee; and

9. Such other and further relief as the Court may deem just and proper.

Dated: May 29, 2013                      Respectfully submitted,

                                         CALDWELL CASSADY & CURRY

                                         _____
                                         Bradley W. Caldwell
                                         Texas State Bar No. 24040630
                                         Email: bcaldwell@caldwellcc.com
                                         Jason D. Cassady
                                         Texas State Bar No. 24045625
                                         Email: jcassady@caldwellcc.com
                                         John Austin Curry
                                         Texas State Bar No. 24059636
                                         Email: acurry@caldwellcc.com
                                         Daniel R. Pearson
                                         Texas State Bar No. 24070398
                                         Email:  dpearson@caldwellcc.com
                                         Hamad M. Hamad
                                         Texas State Bar No. 24061268
                                         Email:  hhamad@caldwellcc.com
                                         CALDWELL CASSADY CURRY P.C.
                                         1717 McKinney, Suite 700
                                         Dallas, Texas 75202
                                         Telephone: (214) 810-4705

                                         T. John Ward
                                         Texas State Bar No. 20848000
                                         Email: tjw@wsfirm.com
                                         T. John Ward, Jr.
                                         Texas State Bar No. 00794818
                                         Email: jw@wsfirm.com
                                         WARD & SMITH LAW FIRM
                                         P.O. Box 1231
                                         1127 Judson Road, Suite 220
                                         Longview, Texas 75606
                                         Telephone:  (903) 757-6400
                                         Facsimile: (903) 757-2323

                                         **ATTORNEYS FOR PLAINTIFFS
                                         SMARTFLASH LLC AND
                                         SMARTFLASH TECHNOLOGIES
                                         LIMITED**