**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| SMARTFLASH LLC and SMARTFLASH TECHNOLOGIES LIMITED, <br><br> Plaintiffs, <br><br> v. <br><br> APPLE INC., ROBOT ENTERTAINMENT, INC., KINGSISLE ENTERTAINMENT, INC., and GAME CIRCUS LLC, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Civil Action No. 6:13-cv-447

**JURY TRIAL DEMANDED**

## DEFENDANT APPLE INC.'S MOTION TO SEVER

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................................ 1

II.   BACKGROUND .............................................................................................................. 1

III.  THE APP DEVELOPER DEFENDANTS ARE MISJOINED AND SHOULD BE
      SEVERED ....................................................................................................................... 3

IV.  APPLE SHOULD BE SEVERED FROM THE APP DEVELOPER DEFENDANTS ........ 9

V.   CONCLUSION............................................................................................................... 13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ameritox, Ltd. v. Aegis Scis. Corp.*,
    No. 3:08-CV-1168, 2009 U.S. Dist. LEXIS 13305 (N.D. Tex. Feb. 9, 2009) ......................... 10

*Anderson v. Red River Waterway Comm'n*,
    231 F.3d 211 (5th Cir. 2000)) .................................................. 11

*Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*,
    672 F.3d 1335 (Fed. Cir. 2012) ................................................ 10

*Cf. Potter Voice Techs. LLC v. Apple, Inc.*,
    No. 1-cv-1096, 2013 U.S. Dist. LEXIS, 45522 (D. Colo. Mar. 29, 2013) ................................. 8

*Colo. River Water Conservation Dist. v. United States*,
    424 U.S. 800 (1976) ................................................................ 11

*Curtis v. Citibank, N.A.*,
     226 F.3d 133 (2d Cir. 2000) .................................................... 10

*CVI/Beta Ventures, Inc. v. Custom Optical Frames*,
    896 F. Supp. 505 (D.Md. 1995) ............................................... 12

*Digitech Image Techs., LLC v. Agfaphoto Holding GmbH, et al.*,
    No. 8:12-cv-1153, 2012 U.S. Dist. LEXIS 142034 (C.D. Cal. Oct. 1, 2012) .... 4, 5, 8, 9, 12, 13

*Duffie v. United States*,
    600 F.3d 362 (5th Cir. 2010) .................................................... 10

*Ei-Land Corp. v. Simpson Strong-Tie Co.*,
    No. 2:09-cv-337, 2010 U.S. Dist. LEXIS 104608 (E.D. Tex. Sept. 30, 2010) ......................... 11

*Esco Corp. v. Cashman Equip. Co.*,
    No. 2:12-cv-1545, 2013 U.S. Dist. LEXIS 124595 (D. Nev. Aug. 27, 2013) ......................... 10

*H-W Tech., L.C. v. Apple, Inc.*,
    No. 3:11-CV-651, 2012 U.S. Dist. LEXIS 105845 (N.D. Tex. Jul. 5, 2012) ............................ 5

*In re EMC Corp.*,
    677 F.3d 1351 (Fed. Cir. 2012) ........................................... 9, 11

*In re Nintendo Co., Ltd*,
    No. 151, 2013 U.S. App. LEXIS 19606 (Fed. Cir. Sept. 25, 2013) ......................... 11

*IpVenture, Inc. v. Acer, Inc.*,
    879 F. Supp. 2d 426 (D. Del. 2012) ......................................... 5

*Jet, Inc. v. Sewage Aeration Sys.*,
    223 F. 3d 1360 (Fed. Cir. 2000) .............................................. 10

*Mednovus, Inc. v. Qinetiq Group PLC*,
   No. 2:12-cv-3487, 2012 U.S. Dist. LEXIS 142072 (C.D. Cal. Oct. 1, 2012) ........................... 5

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*,
   420 F.3d 1369 (Fed. Cir. 2005)................................................................................................. 13

*Norman IP Holdings, LLC v. Lexmark Int'l, Inc.*,
   No. 6:11-cv-495, 2012 U.S. Dist. LEXIS 112757 (E.D. Tex. Aug. 10, 2012).......................... 5

*Parklane Hosiery Co. v. Shore*,
   439 U.S. 322, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979).............................................................. 10

*Standard Pressed Steel Co. v. Astoria Plating Corp.*,
   No. C 68-788, 1969 U.S. Dist. LEXIS 10541 (N.D. Ohio May 27, 1969).............................. 12

*Symantec Corp. v. Computer Assocs. Int'l, Inc.*,
   522 F.3d 1279 (Fed. Cir. 2008)................................................................................................. 13

*UltimatePointer, LLC v. Nintendo Co., Ltd.*,
   No. 6:11-CV-496, 2013 U.S. Dist. LEXIS 51409 (E.D. Tex Mar. 27, 2013) ....................... 3, 4

*WNS Holdings, LLC. v. United Parcel Serv., Inc.*,
   No. 3:08-cv-275, 2008 U.S. Dist. LEXIS 87372 (W.D. Wis. Oct. 24, 2008) ................... 11, 12

## Statutes

28 U.S.C. § 1404.......................................................................................................................... 1

35 U.S.C. § 299............................................................................................................................ 3

## Rules

Federal Rules of Civil Procedure 1 ............................................................................................ 12

Federal Rules of Civil Procedure 18........................................................................................... 9

Federal Rules of Civil Procedure 21 .......................................................................................... 11

Defendant Apple Inc. ("Apple") hereby moves to sever the claims against the Defendants named in the Complaint filed on May 29, 2013 (Dkt. No. 1) by Plaintiffs Smartflash LLC and Smartflash Technologies Limited (collectively "Smartflash").  Concurrently with this motion, Apple has filed a motion to transfer the dispute between Apple and Smartflash to the Northern District of California for further proceedings pursuant to 28 U.S.C. § 1404(a).

## MEMORANDUM OF LAW

## I.    INTRODUCTION

The Defendants in this case are not properly joined.  Under the America Invents Act's heightened joinder standards, Defendants must sell the same accused product or process to be properly joined in a patent infringement suit.  In addition, the alleged infringement by those same accused products or processes must arise out of the same transaction or occurrence.  Here, Plaintiffs accuse the three Defendant app developers—Robot Entertainment, Inc. ("Robot"), KingsIsle Entertainment Incorporated ("KingsIsle"), and Game Circus LLC ("Game Circus")— of infringement based on different games ("apps") arising from different transactions or occurrences.  Accordingly, the disputes involving those three app Defendants should be severed from each other.[1]  Further, because of the prohibition on claim splitting, Smartflash may not maintain three separate cases against Apple involving the same allegations of infringement by Apple products, and such separate cases would be impractical and inefficient in any event.  Accordingly, Apple requests that it be severed from all app developer Defendants.

## II.   BACKGROUND

Smartflash filed the present case on May 29, 2013, accusing Apple, Robot, KingsIsle, and

---

[1] Robot consents to this motion.  Declaration of Patrick Hudson ("Hudson Decl.") ¶ 4. KingsIsle, and Game Circus do not oppose.  Declaration of Michael Duffy ("Duffy Decl.") ¶ 5; Declaration of David W. Nichols ("Nichols Decl.") ¶ 5.

Game Circus (collectively, "Defendants") of infringing the patents-in-suit.  *See* Complaint, Dkt. 1.  Smartflash's infringement allegations against Apple are remarkably broad.  Smartflash accuses Apple of infringing the patents-in-suit "(i) with any version of iTunes that can access iTunes Store; (ii) with any version of the App Store app; (iii) with any version of any Apple hardware or software product (e.g., Apple's various iPhone products, Apple's various iPad products, Apple's various Apple TV products, Apple's various Mac computer products, Apple's various operating system software, etc.) that includes any version of iTunes or the App Store app that can access iTunes Store; (iv) with any version of Mac App Store; (v) with any Apple hardware or software product that includes any version of Mac App Store; and (vi) with Apple's internal servers involved in operating Apple's iTunes Store, Apple's Mac App Store as well as Apple's servers involved in Apple's in-application payment functionality as well as Apple's servers involved in Apple's iAd Network .  .  ."  Dkt. 1 ¶ 43.

In addition to its claims against Apple, Smartflash has brought far narrower claims against three other Defendants, each of which produces a different gaming app that Smartflash alleges is available through the Apple iTunes or App Stores.  Smartflash accuses Robot of infringing through its "Hero Academy" app; KingsIsle of infringing through its "Grub Guardian" and "WizardBlox" apps; and Game Circus of infringing through its apps, including "Coin Dozer Pro" and "Coin-Dozer – Halloween."  Dkt. 1 ¶¶ 36-42 & 44-46.[2]  Although these apps allegedly

---

[2] Hero Academy is a strategy game in which a player "challenge[s] friends old and new to a contest of tactics and skill."  The goal is for a player's team to "leverage their team's strengths and capitalize on their opponent's weaknesses" to "protect their crystal and win the day."  Ex. 1. Various "booster packs" are available for purchase within the app.  Ex. 2.  Grub Guardian is a free cartoon-like video game in which the player defends a "grub" from different enemies.  A player can purchase "Crowns," which, in turn, allow the player to buy in-game items and additional maps. Ex. 3.  WizardBlox is a puzzle in which the player slides blocks to match three or more blocks of a single color.  WizardBlox does not offer any items for purchase through the app.  *See* Exs. 4, 5*; see also* Declaration of Mark Buckley ¶ 9 ("Buckley Decl."); Nichols Decl. ¶

provide "in-application payment functionality," Dkt 1 ¶¶ 39, 40, &42, the three app developer

Defendants are all accused of infringing with different apps.[3]

## III.    THE APP DEVELOPER DEFENDANTS ARE MISJOINED AND SHOULD BE SEVERED

The America Invents Act (AIA) "codified new rules governing the joinder of parties in

civil [patent] actions" and "add[ed] to the first prong of Rule 20 a requirement that the

transaction or occurrence relate to the making, using, or selling of the same patented product or

process." *UltimatePointer, LLC v. Nintendo Co., Ltd.*, No. 6:11-CV-496, 2013 U.S. Dist. LEXIS

51409, at *12 (E.D. Tex Mar. 27, 2013).  The AIA states that accused infringers may be joined

if, *inter alia*, "any right to relief is asserted against the parties jointly, severally, or in the

alternative with respect to or arising out of the same transaction, occurrence, or series of

transactions or occurrences relating to the making, using, importing into the United States,

offering for sale, or selling of the same accused product or process."  35 U.S.C. § 299(a)(1).

Thus, the AIA "adds to the first prong of Rule 20 a requirement that the transaction or

occurrence relate to the making, using, or selling of the same patented product or process."

*UltimatePointer,* 2013 U.S. Dist. LEXIS 51409, at *12; *see also id.* at *16-17 n.2.  Here, Robot,

KingsIsle, and Game Circus all developed different apps that perform different processes, and

the sales of those different apps are different transactions/occurrences.[4]  Therefore, the app

---

4. Finally, "Coin Dozer Pro" and "Coin Dozer – Halloween" are simulated gambling games that emulate "coin pusher" games found in arcades.  Exs. 6-7.  A player drops coins on a moving shelf that contains a pile of existing coins.  *Id.*  By dropping a coin properly, existing coins may fall over the ledge of the shelf, resulting in the player getting more coins and/or collecting prizes. *Id.*  When a player runs out of coins, he can purchase more.  *Id.*

[3] iAd functionality is also mentioned in the Complaint, but of the three app developers, Smartflash alleges that only Game Circus uses such functionality.  Dkt 1 ¶¶ 42, 46.  Smartflash alleges that Robot's app "Hero Academy" contains "in-application advertising functionality," but does not attribute that functionality to iAd.  *Id* ¶ 37.

[4] Smartflash alleges that "[t]he Defendants are jointly and severally liable for the acts of infringement" and that those acts of infringement arise out of the same transaction or occurrence

3

developer Defendants are misjoined.

*Digitech Image Techs., LLC v. Agfaphoto Holding GmbH, et al.*, No. 8:12-cv-1153, 2012 U.S. Dist. LEXIS 142034 (C.D. Cal. Oct. 1, 2012), cited by this Court in *UltimatePointer*, is instructive.  In *Digitech*, plaintiff accused two groups of infringement—digital camera retailers (including Best Buy and Target) and manufacturers (including Leica and Canon).  Plaintiff argued that joinder was proper because "(1) there are common questions of fact to all Defendants; (2) there are ***similarities*** between the accused products; and (3) infringement arises out of the same transactions or series of transactions."  *Id.* at *6 (emphasis added).  Plaintiff further argued that "certain Defendant retailers should be joined to a Defendant manufacturer because the Defendant manufacturer sells its accused digital cameras to those Defendant retailers."  *Id.* at *8-9.  The court stated that it "f[ound] no merit in Digitech's novel joinder arguments," *id.* at *9-10, and explained that "the only instances involving the 'same accused product' are the transactions for an individual camera."  *Id.* at *13.  The court went on to state that the transactions involving the same individual cameras "do not constitute the same transaction or series of transactions" and that the sale of one model of digital camera from a manufacturer to a retailer is a different transaction than the sale of that same model camera from the same manufacturer to a different retailer.  *Id.*  The court stated that those two sales "have nothing to do with each other—other than involve the same camera model."  *Id*.  The court severed all defendants.  *Id.* at *16.

For reasons similar to those described in *Digitech*, Plaintiffs here cannot string together Defendants who are accused of infringement based on different apps.  Mere similarities between

---

"relating to the making . . . or selling of the same accused product or process."  Dkt. 1 ¶¶ 47, 48. However, Smartflash provides no support for these allegations, nor can it.  Each defendant sells a different product that performs a different process than each other defendant, and each defendant's sale is a transaction unique to that defendant.

accused products are insufficient to establish proper joinder.  *Id.* at \*6-10 (severing defendants

and rejecting Plaintiff's argument about the similarities between the accused products);

*Mednovus, Inc. v. Qinetiq Group PLC*, No. 2:12-cv-3487, 2012 U.S. Dist. LEXIS 142072, at \*6-

9 (C.D. Cal. Oct. 1, 2012) (finding misjoinder based on plaintiffs' failure to allege infringement

based on the "same accused product" and based on the fact that a defendant's sales of one

product to one defendant and a different product to another defendant are different transactions

or occurrences because they "have nothing to do with each other—other than involve different

products in the [same product] line").

　　In addition to the accused products being different, Smartflash's Complaint fails to

identify what the accused process or processes are, or which patent claims are accused of

infringing those processes.[5]  Smartflash alleges only that each app developer makes some use of

in-app payment provided by Apple's "Store Kit."  Dkt. 1 ¶¶ 26-29, 36, 39, 40, 42.  Indeed,

Smartflash entirely ignores the fact that in-app payment processes are different across app

developers (and potentially across apps from the same developer) because Apple's Store Kit

relies on the app developers to develop their own functionality within the payment process.  The

Store Kit provided by Apple and allegedly used by the various app developer Defendants for "in

---

[5] In determining whether the case involves the same product or process, courts look to the facts pled in the complaint.  *See, e.g.*, *H-W Tech., L.C. v. Apple, Inc.*, No. 3:11-CV-651, 2012 U.S. Dist. LEXIS 105845, at \*15 (N.D. Tex. Jul. 5, 2012); *Norman IP Holdings, LLC v. Lexmark Int'l, Inc.*, No. 6:11-cv-495, 2012 U.S. Dist. LEXIS 112757, at \*14 (E.D. Tex. Aug. 10, 2012) ("Norman's allegation*s* regarding the common use of ARM processor designs are not sufficient to show that there is a common transaction or occurrence among the defendants"); *IpVenture, Inc. v. Acer, Inc.*, 879 F. Supp. 2d 426, 430 (D. Del. 2012) ("The Seconded Amended Complaint (unlike the Amended Complaint, written before *EMC*) makes an attempt to meet this [Rule 20 joinder] standard but, in the end, is insufficient because the allegations of commonality are painted with a broad brush and appear to be inconsequential to the critical patent issues. First, Plaintiff gives no hint in the complaint which claims of the four patents are at issue, and that lack of specificity undercuts its arguments . . .").

app payments" "only collects payment." Ex. 8.[6]  An app developer "must provide any additional

functionality, including ***unlocking built-in features or downloading content*** from [their] own

servers." *Id.* (emphasis added).  Further, "[t]he ***Store Kit API is only a small part of the process***

of adding a store to your application.  You need to decide how to track the products you plan to

deliver, how your application presents a store front to the user, and ***how your application***

***delivers the products users purchase from your store***."  Ex. 9 (emphasis added).  There are also

three different models by which app developers may deliver products to users—the built-in

model, the server product delivery model using a developer server, and the server product

delivery model using an Apple server:



---

[6] The exhibits to this motion are authenticated in the contemporaneously filed Declaration of
Megan Raymond.

**Built-in Product Delivery Model**



**Server Product Delivery Model**

Ex. 9.  The third model uses an Apple server rather than a Developer server.  Buckley Decl. ¶ 8.

KingsIsle's Grub Guardian app uses the second model, the developer server product delivery model.  Nichols Decl. ¶ 3.  Robot Entertainment's Hero Academy app uses a hybrid of the built-in and server product delivery models.  Hudson Decl.  ¶ 3.  The Coin Shop in Coin Dozer Halloween uses the Apple Store Kit (via a third party plug in) and the built-in product delivery model (with modifications) to track and deliver products users purchase from the Coin Shop.  Duffy Decl. ¶ 3.  The Coin Shop and the Dozer Dollar Shop in Coin Dozer Pro use the Apple Store Kit and the Developer Server Model (with modifications) to track and deliver products users purchase from the Coin Shop and Dozer Dollar Shop.  *Id.* ¶ 4. When the accused

process involves software and hardware components, as Smartflash's allegations seem to require here, both the software and the hardware alleged to be involved in the infringement must be the same to be considered the same process. *Cf. Potter Voice Techs. LLC v. Apple, Inc.*, No. 1-cv-1096, 2013 U.S. Dist. LEXIS, 45522, at *13 (D. Colo. Mar. 29, 2013) (when infringement allegations involve software and hardware, the accused product is not the same when the software is the same but the hardware differs). Smartflash has not so much as alleged that the different app Defendants use the same model, let alone that each app uses the same model and the same process within that model.[7]

Even if Robot, KingsIsle, and Game Circus were accused of infringing based on the same apps and same processes—they are not—the sales of those apps have nothing to do with each other, and are therefore not part of the same transaction or occurrence. *Digitech*, 2012 U.S. Dist LEXIS 142034, at *13.  In *Digitech*, the camera manufacturer's sale of one pallet of cameras to one retailer and the sale of a second pallet of the same cameras to a second retailer were different transactions. *Id.* Here, similarly, the sale of apps developed by one app developer has nothing to do with the sale of apps by a different developer. *Id.* ("when Leica sells a pallet of infringing digital cameras to Best Buy, that is one transaction. When Leica sells a second pallet of the same cameras to Target, that is a second transaction. These sales have nothing to do with each other—other than involve the same camera model."). Further, there are no licensing or technology agreements between app developers, no overlap of the development of the apps between app developers, and no claim for lost profits, which further supports a finding that there is no common transaction or occurrence. *See In re EMC Corp.*, 677 F.3d 1351, 1360-61 (Fed. Cir.

---

[7] Smartflash also alleged infringement by the app developers based on "the software components that install" the apps. Dkt. 1 ¶¶ 74, 86, 98. However, nothing in the claims of the patents-in-suit even arguably relates to installation, nor has Smartflash alleged that the software components that install the apps are the same across Defendants.

2012).  Nor are the app developers jointly liable for the same infringement.  *Id.* at 1356; Dkt. 1

¶¶ 74, 86, 98.  For this reason, too, the App developers should be severed.  *In re EMC Corp.*, 677

F.3d at 1358 (even where the accused products or processes are the same, defendants cannot be

joined if the allegations do not relate to the same transaction or occurrence).

## IV.     APPLE SHOULD BE SEVERED FROM THE APP DEVELOPER DEFENDANTS

In addition to severing the app developer Defendants from each other, this Court also

should sever Apple from each app developer and into its own case, as the court did in *Digitech*.

2012 U.S. Dist. LEXIS 142034, at *13.

As discussed above, Smartflash's allegations of infringement against Apple products are

remarkably broad, and cover large swaths of Apple's hardware and software, including iPods,

iPhones, iTunes, the App Store, and the Mac App Store.  Based on Smartflash's broad

allegations, it appears that Smartflash seeks damages from Apple relating to the sales of ***all*** apps

and songs sold through iTunes and the App Stores (not just the apps developed by the app

developer defendants), as well as all related hardware and software.  In contrast, the allegations

against the app developer Defendants appear narrow, targeting only five apps.  Dkt. 1 ¶¶ 44-46.

Thus, Smartflash's infringement claims against Apple are much broader than the totality of its

purportedly joint claims against Apple and each of the app developers.

Smartflash contends that the app developers and Apple are "jointly and severally liable."

Dkt. 1 ¶ 47.  On this basis, Apple and any one individual app developer may be (but do not need

to be) joined as parties in a standalone suit involving all of Smartflash's infringement allegations

against Apple and against the individual app developer.  *See* Fed. R. Civ. P. 18 ("A party

asserting a claim, counterclaim, crossclaim, or third-party claim may join, as independent or

alternative claims, as many claims as it has against an opposing party.").  However, depending

on how the claims against Apple would be split up among the cases involving separate app

developers, the doctrine of claim splitting may prevent Smartflash from maintaining multiple

suits against Apple if the same claim or cause of action against Apple is included in those suits.

    Claim preclusion typically applies where:

> (1) the parties in the subsequent action are identical to, or in privity
> with, the parties in the prior action; (2) the judgment in the prior
> case was rendered by a court of competent jurisdiction; (3) there
> has been a final judgment on the merits; and (4) the same claim or
> cause of action is involved in both suits.

*Duffie v. United States*, 600 F.3d 362, 372 (5th Cir. 2010); *see also Jet, Inc. v. Sewage Aeration

Sys.*, 223 F. 3d 1360, 1362 (Fed. Cir. 2000) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322,

326 n.5, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979)).  The prohibition against claim splitting is

similar, but does not require a final judgment.  *See Ameritox, Ltd. v. Aegis Scis. Corp.*, No. 3:08-

CV-1168, 2009 U.S. Dist. LEXIS 13305, at *18 (N.D. Tex. Feb. 9, 2009).  Thus, based on the

doctrine of claim splitting, Smartflash should not be permitted to maintain separate actions

against Apple to the extent that the claims or causes of action against Apple would overlap in the

separate cases.  *See Aspex Eyewear, Inc. v. Marchon Eyewear, Inc*., 672 F.3d 1335, 1341-43

(Fed. Cir. 2012) (claim splitting prevented Aspex from seeking relief for infringement of patent

claims it could have asserted in the first action); *Curtis v. Citibank, N.A.*,  226 F.3d 133, 139 (2d

Cir. 2000) ("[P]laintiffs have no right to maintain two actions on the same subject in the same

court, against the same defendant at the same time."); *Esco Corp. v. Cashman Equip. Co.*, No.

2:12-cv-1545, 2013 U.S. Dist. LEXIS 124595, at *3 (D. Nev. Aug. 27, 2013) ("The Court should

dismiss for improper claim-splitting any affirmative claims in the present case that were filed by

the same party as affirmative claims in an earlier action and which would be precluded in the

present case were there a final judgment on the merits as to the claims in the earlier-filed case.").

    Moreover, severing Apple from the remaining Defendants would avoid duplication and

achieve significant efficiencies—objectives that district courts have broad discretion to serve. "Under Federal Rule of Civil Procedure 21, 'any claim against a party may be severed and proceeded with separately. . . . [A] trial court has broad discretion to sever.'" *Ei-Land Corp. v. Simpson Strong-Tie Co*., No. 2:09-cv-337, 2010 U.S. Dist. LEXIS 104608, at *19 (E.D. Tex. Sept. 30, 2010) (citing Fed. R. Civ. P. 21; *Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000)); *see Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) ("As between federal district courts . . . though no precise rule has evolved, the general principle is to avoid duplicative litigation."); *WNS Holdings, LLC. v. United Parcel Serv., Inc.*, No. 3:08-cv-275, 2008 U.S. Dist. LEXIS 87372, at *9-10 (W.D. Wis. Oct. 24, 2008) ("The court has discretion to sever any claims when they would make a case to complex or when a party would be prejudiced by the court's failure to sever.").  Further, while the requirements of Rule 20 and 35 U.S.C. § 299 are necessary for joinder, they are not sufficient.  *In re Nintendo Co., Ltd*, No. 151, 2013 U.S. App. LEXIS 19606 (Fed. Cir. Sept. 25, 2013) (non-precedential). Thus, "'even if a plaintiff's claims arise out of the same transaction and there are questions of law and fact common to all defendants,' joinder may still be refused 'in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness." *Id.* at *14 (citing *In re EMC*, 677 F.3d at 1360).  Convenience and fairness must be considered in determining the propriety of severance.  *Id.* at *14, *23 ("Nothing in the court's order even suggests that convenience and fairness were considered in reaching its conclusions").[8] Here, Apple is clearly the primary target of Smartflash's complaint; maintaining multiple cases against Apple would be prejudicial to Apple, inefficient for the parties, and a waste of the Court's resources.  Such multiple actions against Apple not only could lead to inconsistent

---

[8] Further, severance should be considered "for purposes of facilitating transfer of venue." *Id.* at *22.

results, but would inevitably duplicate effort—such as documentary discovery, deposition discovery, and trial testimony.

Severing Apple also would be more efficient from the perspective of each of the three app Defendants. Particularly given the contrast between the enormous breadth of Smartflash's allegations against Apple, and the narrow allegations against each of the app Defendants, it would make no sense to force any one of the app Defendants to wade through a litigation involving the full scope of Smartflash's Apple-related allegations.

For all of these reasons, it makes the most sense to sever Apple from the app developer Defendants. *See WNS Holdings*, 2008 U.S. Dist. LEXIS 87372, at *9-10 ("Court has discretion to sever any claims when they would make a case too complex or when a party would be prejudiced by the court's failure to sever"); *see also CVI/Beta Ventures, Inc. v. Custom Optical Frames*, 896 F. Supp. 505, 506 (D.Md. 1995) ("A claim may be severed if it will serve the ends of justice and further the prompt and efficient disposition of litigation."); *Standard Pressed Steel Co. v. Astoria Plating Corp.*, No. C 68-788, 1969 U.S. Dist. LEXIS 10541, at *3 (N.D. Ohio May 27, 1969) ("cleavage of the issues along the lines suggested by the plaintiff would be non-prejudicial to the parties and would secure the most efficient use of judicial and jury time."); Fed. R. Civ. P. 1 ("These rules govern the procedure in all civil actions . . . They should be construed and administered to secure the just, speedy, and inexpensive determination of every action and proceeding.").

Finally, there is no need for Apple to be joined to the app developer Defendants for the induced or contributory infringement claims since "each Defendant can be independently liable for indirect infringement in their respective severed cases." *Digitech*, 2012 U.S. Dist. LEXIS 142034, at *16 (citing *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420

F.3d 1369, 1378 (Fed. Cir. 2005)).  "There is no need to join a direct infringer with an indirect

infringer in order to find liability against the indirect infringer."  *Digitech*, 2012 U.S. Dist.

LEXIS 142034, at *16-17 (citing *Symantec Corp. v. Computer Assocs. Int'l, Inc.*, 522 F.3d 1279,

1293 (Fed. Cir. 2008)).

## V.    CONCLUSION

For the foregoing reasons, Apple respectfully requests that the Court sever each of the

Defendants into separate cases.

Respectfully Submitted,

Dated: October 18, 2013                    By:  */s/ Ching-Lee Fukuda*

Ching-Lee Fukuda
NY Bar No. 2884088
(Eastern District of Texas Member)
Ching-Lee.Fukuda@ropesgray.com
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, NY 10036-8704
T:  (212) 596-9000
F:  (212) 596-9050

James R. Batchelder
CA Bar No. 136347
(Eastern District of Texas Member)
James.Batchelder@ropesgray.com
**ROPES & GRAY LLP**
1900 University Ave 6th Floor
East Palo Alto, CA 94303-2284
T:  (650) 617-4000
F:  (650) 617-4090

Megan F. Raymond (*pro hac vice*)
Megan.Raymond@ropesgray.com
**ROPES & GRAY LLP**
700 12th St. NW Suite 900
Washington, DC 20005
T:  (202) 508-4600
F:  (202) 508-4650

13

Eric M. Albritton
Texas State Bar No. 00790215
ema@emafirm.com
**ALBRITTON LAW FIRM**
P.O. Box 2649
Longview, Texas 75606
Telephone:  (903) 757-8449
Facsimile:  (903) 758-7397

Attorneys for Defendant,
**APPLE INC.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 18, 2013, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to

EM/ECF participants in this case.

*/s/ Ching-Lee Fukuda*

Ching-Lee Fukuda

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that a telephonic meet-and-confer conference occurred on October 18, 2013, between Ching-Lee Fukuda of Ropes & Gray LLP for Apple and Bradley Caldwell of Caldwell Cassady & Curry for Smartflash, in which Smartflash confirmed that it opposes the instant motion.  No agreement could be reached because the parties disagree as to whether Apple should be severed from this action. The discussions have conclusively ended in an impasse leaving an open issue for the Court to resolve.  Accordingly, counsel has complied with the meet and confer requirement pursuant to Local Rule CV-7(h) and the Motion is opposed by Smartflash.

I also certify that meet and confer conferences occurred, including most recently on October 11, 2013 between Megan Raymond, counsel for Apple, and Bryan Kohm, counsel for Robot Entertainment.  Robot confirmed that it consents to the instant motion.

I also certify that meet and confer conferences occurred, including most recently on October 17, 2013 between Ching-Lee Fukuda, counsel for Apple, and Thomas B. Walsh, counsel for KingsIsle and Game Circus.  KingsIsle and Game Circus confirmed that they do not oppose the instant motion.  Accordingly, counsel has complied with the meet and confer requirement pursuant to Local Rule CV-7(h) and Robot, KingsIsle, and Game Circus do not oppose this Motion.

*/s/ Ching-Lee Fukuda*
Ching-Lee Fukuda
