Exhibit A

NO. 2012-_____

UNITED STATE COURT OF APPEALS FOR

THE FEDERAL CIRCUIT

IN RE FUSION-IO, INC.

*Petitioners*

Petition for Writ of Mandamus to the United States District Court

for the Eastern District of Texas in Case No. 2:11-CV-00391-JRG

Judge Rodney Gilstrap

## PETITION OF FUSION-IO, INC.

**BAKER BOTTS L.L.P.**
Scott Partridge
(Principal Attorney)
Michael Hawes
One Shell Plaza
910 Louisiana
Houston, Texas 77002
713.229.1750
713.229.7750 (Facsimile)

ATTORNEYS FOR
PETITIONERS
FUSION-IO, INC.

## CERTIFICATE OF INTEREST

Counsel for the PETITIONER, Fusion-io, Inc. certifies:

1.  The full name of every party or amicus represented by me are:

    Fusion-io, Inc.

2.  The names of the real parties in interest represented by me are:

    Fusion-io, Inc.

3.  All parent corporations and any publicly held companies that own 10 percent or more of the stock of the parties represented by me are:

    [none]

4.  The names of all law firms, partners or associates that appeared for the parties represented by me in the trial court or expected to appear in this court:

    **Baker Botts L.L.P.**, Scott Partridge, Michael Hawes, Bradley Bowling, Stephen Baehl

    **Siebman Burg Phillips & Smith LLP**, Michael Charles Smith

Date: September 24, 2012

Scott Partridge
Counsel for Petitioners

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ................................................................................................... i

STATEMENT OF RELIEF SOUGHT ......................................................................................... 1

STATEMENT OF ISSUES PRESENTED..................................................................................... 2

STATEMENT OF THE FACTS .................................................................................................. 3

SUMMARY OF THE ARGUMENT .......................................................................................... 6

STATEMENT OF REASONS A WRIT SHOULD ISSUE ........................................................... 8

I.      STANDARD OF REVIEW ............................................................................................... 8

II.     Failure to Consider the Relevant Transfer Factors is a Clear Abuse of Discretion that

Produces a Patently Erroneous Result ........................................................................................ 8

III.    The Record Before the District Court Demonstrates that the District of Utah is Clearly

More Convenient and Fair ........................................................................................................ 16

     A.    The "Sources of Proof" Factor Weighs Heavily in Favor of Transfer ......................... 16

     B.    The Availability of Compulsory Process to Secure the Attendance of Witnesses

Slightly Favors Transfer .......................................................................................................... 21

     C.    The Cost of Attendance for Willing Witnesses Strongly Favors Transfer .................. 21

     D.    No Practical Problems Arise in Connection with Transferring this Case..................... 23

     E.    The Interest in Having Localized Interests Decided at Home Strongly Favors Transfer

        26

     F.    The Court Congestions Factor Weighs in Favor of Transfer......................................... 28

     G.    The Remaining Public Interest Factors are Neutral ...................................................... 28

CONCLUSION........................................................................................................................ 30

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*ATEN Int'l Co. v. Emine Tech.*,
    261 F.R.D. 112 (E.D. Tex. June 25, 2009) ....................................................................17, 27

*Cheney v. U.S. Dist. Ct.*,
    542 U.S. 367 (2004).............................................................................................................8

*Hoover Group, Inc. v. Customer Metalcraft, Inc.*,
    84 F.3d 1408 (Fed. Cir. 1996).............................................................................................25

*In re Acer Am. Corp.*,
    626 F.3d 1252 (Fed. Cir. 2010)...........................................................................................13

*In re EMC Corp.*,
    677 F.3d 1351 (Fed. Cir. 2012)....................................................................................*passim*

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009).......................................................................................9, 22

*In re Hoffmann-La Roche Inc.*,
    587 F.3d 1333 (Fed. Cir. 2009).......................................................................................9, 27

*In re Link_A_Media Devices Corp.*,
    662 F.3d 1221, 1223 (Fed. Cir. 2011)...................................................................................9

*In re Microsoft*,
    630 F.3d 1361 (Fed. Cir. 2010).....................................................................................16, 19

*In re Morgan Stanley*,
    2011-M962, 2011 WL 1338830 (Fed. Cir. April 6, 2011) ....................................................24

*In re Nintendo Co., Ltd.*,
    589 F.3d 1194 (Fed. Cir. 2009)....................................................................................*passim*

*In re Pabst Licensing Digital Camera Patent Litigation*,
    528 F. Supp. 2d 1357 (J.P.M.L. 2007)..................................................................................25

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2009)....................................................................................*passim*

*In re Verizon*,
    635 F.3d 559 (Fed. Cir. March 23, 2011) .............................................................................24

*In re Volkswagen AG*
   ("*Volkswagen I*"), 371 F.3d 201 (5th Cir. 2004)...........................................9, 22, 27

*In re Volkswagen of Am. Inc.*
   ("*Volkswagen II*"), 545 F.3d 304 (5th Cir. 2008) .............................................. *passim*

*In re Zimmer Holdings, Inc.*,
   609 F.3d 1378 (Fed. Cir. 2010)...............................................................19, 24

*McDonnell Douglas Corp. v. Polin*,
   429 F.2d 30 (3rd Cir. 1970) ...................................................................13, 14

*Naschem Co., Ltd. v. Blackswamp Trading Co.*,
   No. 08-cv-730-SLC, 2009 WL 1307865 (W.D. Wisc. May 8, 2009) .....................23

*Norman IP Holdings, LLC v. Lexmark Int'l, Inc.*,
   No. 6:11-CV-495, 2012 WL 3307942 (E.D. Tex. Aug. 10, 2012).........................15

*Summers v. State of Utah*,
   927 F.2d 1164 (10th Cir. 1991) .....................................................................9

*Telecom Tech. Servs., Inc. v. Rolm Co.*,
   No. CIV. A. 9:94 CV 145, 1995 WL 874441 (E.D. Tex. Feb. 24, 1995)...............22

*Two-Way Media LLC v. A T & T Inc.*,
   636 F. Supp. 2d 527 (S.D. Tex. 2009) ...........................................................18

*Williams v. United States*,
   359 F.2d 67 (5th Cir. 1966) .......................................................................18

**STATUTES**

28 U.S.C. § 125.........................................................................................17

28 U.S.C. § 1391(c)....................................................................................25

28 U.S.C. § 1400(b)....................................................................................25

28 U.S.C. § 1404(a) ............................................................................. *passim*

28 U.S.C. § 1407....................................................................................6, 12, 25

35 U.S.C. § 299.........................................................................................13

**OTHER AUTHORITIES**

FED. R. EVID. 201(c) ...................................................................................18

Rule 20 ....................................................................................................3

iv

## STATEMENT OF RELIEF SOUGHT

Fusion-io, Inc. respectfully requests that the Court grant this petition for a writ of mandamus, vacate the September 17, 2012 order of the United States District Court for the Eastern District of Texas denying in part Fusion-io's motion to sever and transfer,[1] and remand with instructions to transfer it to the United States District Court for the District of Utah.

---

[1] Ex. 1, Order, *Solid State Storage Solutions, Inc. v. STEC, Inc.*, 2:11-CV-391, Dkt. No. 226 (E.D. Tex. Sept. 17, 2012).

## STATEMENT OF ISSUES PRESENTED

Whether the District Court erred in failing to consider *any* of the factors relevant to a change of venue under 28 U.S.C. § 1404(a) in denying Fusion-io, Inc.'s request to transfer, where:

(1)     Fusion-io filed its Motion to Sever and Transfer on January 4, 2012, requesting that "[o]nce severed from the other parties in this case, the litigation between Fusion-io and S4 should be transferred to the District of Utah";

(2)     over nine months later, the District Court severed the claims against Fusion-io from the claims against the other defendants, but immediately consolidated the severed cases, denied Fusion-io's request to transfer without explanation or analysis, and added to the delay in transferring the case to a clearly more convenient venue by suggesting that Fusion-io re-file the exact same motion to transfer that had been pending for over nine months; and

(3)     the opening claim construction brief is due in November of this year, and the parties have already begun discovery into the merits of the claims, prejudicing Fusion-io and undermining the purpose of § 1404(a).

## STATEMENT OF THE FACTS

On September 7, 2011, Plaintiff Solid State Storage Solutions, Inc. ("S4") filed this patent infringement suit in the Eastern District of Texas against nine unrelated defendants, each developing and producing their own distinct products in areas far from the Eastern District of Texas. S4 joined the unrelated defendants in a single suit based solely on independent acts of alleged infringement of twelve different patents directed generally toward nonvolatile memory storage devices.

On January 4, 2012—before Fusion-io even answered S4's Original Complaint and *five months* before the pretrial conference—Fusion-io filed a motion to sever the unique infringement allegations against its proprietary SSD memory devices and transfer that severed litigation to the District of Utah, where Fusion-io's corporate headquarters is located and where the vast majority of the documents and witnesses can be found.[2] Other defendants filed similar motions requesting severance and transfer to clearly more convenient venues.

Over nine months later, the District Court issued an order granting severance on the basis that each of the defendants are "separate companies that independently developed distinct products at issue, and thus, their joinder under Rule 20, as clarified by the Federal Circuit in *In re EMC*, is improper." Ex. 1 at 2.

---

[2]     Ex. 2, Fusion-io's Motion to Sever and Transfer, *Solid State Storage Solutions, Inc. v. STEC, Inc.*, 2:11-CV-391, Dkt. No. 57 (E.D. Tex. January 4, 2012).

However, instead of considering the merits of transfer, the District Court immediately consolidated all of the severed cases "as to all pretrial issues" and stated that it would determine later "whether the cases will be tried jointly or separately," suggesting the illusory nature of the parties' severance. *Id.*

Without any analysis or explanation, the District Court denied Fusion-io's fully-briefed and pending request to transfer and suggested that Fusion-io "re-file" the exact same motion "should the movant determine that such is still appropriate after this order." *Id.* The District Court's order makes no attempt to address *any* of the § 1404(a) factors and ignores that Fusion-io sought severance for the primary purpose of facilitating a transfer to a substantially more convenient venue. The relief requested by Fusion-io's Motion to Sever and Transfer could not be clearer: "Once severed from the other parties in this case, the litigation between Fusion-io and S4 should be transferred to the District of Utah." Ex. 2 at 10.

At the time of the Court's order, Fusion-io's request to transfer had been pending for over nine months, and the parties had previously conducted limited discovery on the venue issue in order to fully and comprehensively brief the matter for the Court. Nothing has changed that would justify the need to re-file the exact same briefing, reopen and repeat the exact same response process, and further delay transferring the litigation to the clearly more convenient venue. Indeed, given the fact that claim construction briefing is scheduled to begin in November

and the claim construction hearing is scheduled for January,[3] any further delay risks prejudicing the rights of Fusion-io and thwarting the purpose of § 1404(a).

The District of Utah is the clearly more convenient forum for litigating S4's severed claims against Fusion-io. The most relevant documents and witnesses are located at Fusion-io's corporate headquarters in Salt Lake City. The District of Utah is also far more convenient for all other known sources of proof—the patent inventors and original assignees are located in Japan, and any Fusion-io employees with relevant knowledge not located in Salt Lake City are located in either San Jose, California, or Superior, Colorado. The only connection between this litigation and the Eastern District of Texas is S4's office in Marshall, Texas, which is not entitled to weight in the transfer analysis because it was established in advance of litigation merely to manipulate venue.

Fusion-io's motion also pointed out that any judicial economy could be preserved post-transfer by employing multidistrict litigation procedures for common issues such as claim construction. In fact, the issues consolidated for multidistrict litigation would be addressed in a forum convenient for all parties, as determined by the Judicial Panel on Multidistrict Litigation rather than a single judge sitting in the Eastern District of Texas, which is not convenient to any of the relevant witnesses or documents.

---

[3] Ex. 3, Docket Control Order, *Solid State Storage Solutions, Inc. v. STEC, Inc.*, 2:11-CV-391, Dkt. No. 187 (E.D. Tex. June 15, 2012).

## SUMMARY OF THE ARGUMENT

Mandamus is warranted to correct the District Court's patently erroneous denial of transfer. Although the District Court severed the actions in light of the Federal Circuit's opinion in *In re EMC Corp.*, 677 F.3d 1351 (Fed. Cir. 2012), the District Court committed clear error by immediately consolidating all of the severed actions indefinitely and then denying the fully-briefed and pending motions to transfer without any explanation or analysis. The District Court's consolidation of the severed actions without any evaluation of the pending transfer requests thwarts the purposes of both 28 U.S.C. § 1404(a), which provides for transfer to a clearly more convenient forum, and 28 U.S.C. § 1407, which authorizes the Judicial Panel on Multidistrict Litigation to consolidate cases that otherwise should be pending in different venues.

Despite this Court's clear opinion to the contrary in *EMC*, the District Court's order sets the plainly erroneous precedent that a plaintiff may force litigation to proceed in an inconvenient venue simply by suing enough distinct defendants in that venue and then, after the required severance, requesting the court to immediately consolidate those severed actions and delay considering any motions to transfer until a later stage in the case. To be clear, Fusion-io does not dispute that the District Court has discretion to consolidate cases. Rather, this Court's opinion in *EMC* makes clear that the District Court has this discretion only

"where venue is proper." *EMC*, 677 F.3d at 1360.

The District Court's failure to consider any of the merits of the transfer motions before indefinitely consolidating the severed actions undermines the holding of *EMC* and effectively allows the District Court to substitute its judgment for the judgment of the Judicial Panel on Multidistrict Litigation (JPML). Congress specifically created the multidistrict litigation procedures to address the issues created when similar litigations are pending in different districts. A district court may not ignore the availability of those procedures by denying meritorious transfer requests and may not usurp the role of the JPML by consolidating cases that otherwise should be pending in clearly more convenient forums.

## STATEMENT OF REASONS A WRIT SHOULD ISSUE

## I.   STANDARD OF REVIEW

"The writ of mandamus is available in extraordinary situations to correct a clear abuse of discretion or usurpation of judicial power." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1318 (Fed. Cir. 2009). A "clear" abuse of discretion exists where the court below reached a "patently erroneous result." *Id.* (quotations and citations omitted). A petitioner must show that its right to issuance of the writ is "clear and indisputable," *id.* (quotations and citations omitted), and that it has "no other adequate means to attain the relief he desires—a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process." *In re Volkswagen of Am. Inc.* ("*Volkswagen II*"), 545 F.3d 304, 311 (5th Cir. 2008) (quoting *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380–81 (2004)). Finally, the "issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Id.* (quoting *Cheney*, 542 U.S. at 380–81).

## II.   Failure to Consider the Relevant Transfer Factors is a Clear Abuse of Discretion that Produces a Patently Erroneous Result

Courts must consider eight factors when assessing a motion to transfer.[4] Just

---

[4]   The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive, including judicial economy. *In re Volkswagen of Am. Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). The public interest factors are: (1) administrative difficulties flowing from court congestion; (2) the local interest in having localized

as a failure to accord proper weight to various transfer factors can lead to a "patently erroneous" result,[5] so too does a failure even to consider the transfer factors. Under the law of the Fifth Circuit, in deciding the propriety of a district court's ruling on a motion to transfer, one of the questions the court asks is: "Did the district court consider the relevant factors incident to ruling upon a motion to transfer." *See, e.g.*, *In re Volkswagen AG* ("*Volkswagen I*"), 371 F.3d 201, 203 (5th Cir. 2004).[6] Here, the District Court failed to consider *any* of the transfer factors in its summary denial of Fusion-io's motion to transfer.

The mere fact that the District Court suggested that Fusion-io could later "re-file" the exact same motion to transfer if "still appropriate" does not change the fact that the District Court's denial of Fusion-io's request for transfer is a patently erroneous result that leaves Fusion-io with no other means to avoid litigating the merits of the case in an inconvenient venue. As this Court observed in *In re*

---

interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws in the application of foreign law. *Id.*

[5] *See, e.g.*, *In re Nintendo Co., Ltd.*, 589 F.3d 1194 (Fed. Cir. 2009); *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333 (Fed. Cir. 2009); *In re Genentech, Inc.*, 566 F.3d 1338 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008).

[6] *Accord In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1223 (Fed. Cir. 2011) (noting that the Third Circuit's standard for mandamus requires "the petitioner to establish that the district court's decision amounted to a failure to meaningfully consider the merits of the transfer motion"); *Summers v. State of Utah*, 927 F.2d 1164, 1168 (10th Cir. 1991) ("In failing to exercise its discretion, the district court perforce abused it.").

*Nintendo*, 589 F.3d 1194 (Fed. Cir. 2009), the petitioner in that case "had already presented facts showing entitlement to a transfer" and was "not required to wait for the district court's decision on the motion for reconsideration because the district court clearly abused its discretion when deciding the original motion." *Nintendo*, 589 F.3d at 1200. Moreover, in *In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2008), this Court aptly reasoned that "if reconsideration should always be sought, we might be unable to entertain a mandamus petition even where there is a clear usurpation of judicial power." *TS Tech*, 551 F.3d at 1322.

The present case is analogous to the situations in *Nintendo* and *TS Tech*. Fusion-io filed its Motion to Sever and Transfer over nine months ago and explained in detail how each of the eight transfer factors weighed in favor of transfer. Moreover, the parties engaged in limited discovery on the venue issue so that the District Court would be fully and comprehensively briefed on the matter. The relief requested by Fusion-io could not have been clearer: "Once severed from the other parties in this case, the litigation between Fusion-io and S4 should be transferred to the District of Utah." Ex. 2 at 10. Even S4 recognized that Fusion-io "explicitly [made] its motion for transfer contingent on the Court's granting of their motion for severance." Ex. 4, S4's Response, *Solid State Storage Solutions, Inc. v. STEC, Inc.*, 2:11-CV-391, Dkt. No. 125 at 9 (E.D. Tex. March 16, 2012).

As in *Nintendo*, Fusion-io has already presented facts showing entitlement to

a transfer and the District Court had ample opportunity to consider the merits of that request. The District Court clearly abused its discretion when deciding the motion to transfer, and under this Court's logic in *Nintendo*, Fusion-io should not be required to either wait for the District Court's decision on a motion for reconsideration[7] or undertake the even more time-consuming task of re-filing the *exact same motion* that the District Court denied with an invitation to resubmit for the Court to newly consider. This is particularly so where, as here, the District Court's suggestion to re-file the exact same motion and revisit the exact same response process would compound the already significant delay incurred and render this Court unable to correct a clear usurpation of judicial power prior to the upcoming claim construction proceedings.

As this Court held in *Nintendo*, the "no other means" requirement "does not impose an insurmountable rule that the petitioner exhaust every possible avenue of relief before seeking mandamus relief." *Id.* Instead, the purpose of the requirement "is to ensure that the writ will not be used as a substitute for the regular appeals process." *Id.* at 1200–01. Under Fifth Circuit law, a party seeking mandamus for a denial of transfer meets the "no other means" requirement because interlocutory review of a transfer order is unavailable, and appellate review from

---

[7]    Although not required, Fusion-io has requested the District Court to reconsider its denial of Fusion-io's transfer request by applying the requisite eight-factor analysis. *See* Ex. 5, Fusion-io's Motion to Reconsider.

an adverse final judgment would be inadequate. *See TS Tech*, 551 F.3d at 1322.

Moreover, the District Court's refusal to consider Fusion-io's fully-briefed transfer motion, combined with its decision to consolidate actions that were properly severed under this Court's holding in *EMC*, compounds the patently erroneous nature of the Court's order. Accordingly, this case is even more appropriate for the issuance of a writ of mandamus than the typical petition that arises merely from a district court's improper weighing of the transfer factors.

The District Court has effectively usurped the authority of the Judicial Panel on Multidistrict Litigation (JPML). As recognized by this Court in *EMC*, § 1407 authorizes the JPML to assess consolidation—including the proper venue for consolidation—when distinct suits would otherwise be pending in multiple districts. The District Court's decision to consolidate the severed actions without evaluating the transfer motions thwarts the purpose of § 1407 and undermines this Court's holding in *EMC*. Although a district court has discretion to consolidate cases, *EMC* makes clear that the courts have this discretion only "where venue is proper." *EMC*, 677 F.3d at 1360. This presumes that the district court has already evaluated the merits of any motions to transfer and has concluded that the proper venue under § 1404(a) is *that judicial district*. In contrast, when transfer under § 1404(a) is required, the proper authority for assessing pre-trial consolidation is the JPML, as clearly provided for by Congress in § 1407.

Mandamus is appropriate because the District Court's order sets the plainly erroneous precedent that a plaintiff may force litigation to proceed in an inconvenient venue simply by suing enough distinct defendants in that venue and then, after the required severance, requesting the court immediately to consolidate those severed actions and delay ruling on any motions to transfer until a later stage in the case. Such an approach would enable plaintiffs to ignore the plain directives pertinent to joinder and venue selection in patent cases. *See, e.g.*, 35 U.S.C. § 299; *In re EMC*, 677 F.3d 1351; *In re Acer Am. Corp.*, 626 F.3d 1252, 1254–56 (Fed. Cir. 2010). This contradicts the Fifth Circuit's directive to courts to "prevent plaintiffs from abusing their privilege . . . by subjecting defendants to venues that are inconvenient." *Volkswagen II*, 545 F.3d at 313.

Additionally, Mandamus is appropriate because the Court's summary denial of a motion to transfer and its subsequent suggestion to re-file *the exact same briefing* improperly amounts to "a failure to decide the transfer issue until a later stage of the case." *See McDonnell Douglas Corp. v. Polin*, 429 F.2d 30, 31 (3rd Cir. 1970). In *McDonnell Douglas*, the district court postponed any decision on the pending transfer motion until after all matters of discovery were completed. The Third Circuit, on a petition for writ of mandamus, held that it was "not proper to postpone consideration of the application for transfer under § 1404(a) until discovery on the merits is completed, since it is irrelevant to the determination of

13

the preliminary question of transfer." *McDonnell Douglas*, 429 F.2d at 30–31.

In the present case, the claim construction briefing process is scheduled to begin in November of 2012 and the claim construction hearing is scheduled to take place in January of 2013. The District Court's suggestion that Fusion-io re-file the *exact same motion* that had been properly pending *for over nine months* would undermine the entire purpose of § 1404(a). Fusion-io moved to transfer venue in January of 2012—almost two weeks before it even answered S4's Complaint and five months before the District Court even held a pre-trial conference. However, re-filing the transfer motion would reopen a time-consuming briefing period and invite the District Court to spend additional time revisiting the issue—the same issue that had been fully briefed since January.

The resulting delay creates the unavoidable risk that the transfer issue will not even be decided until after the District Court has expended the effort of reading through the parties' claim construction briefs and familiarizing itself with the twelve asserted patents. The entire reason that Fusion-io filed its Motion to Sever and Transfer at the absolute earliest conceivable date was both to spare the District Court the burden of investing considerable effort in familiarizing itself with the technology and to eliminate the risk that such familiarity could trump the convenience to the parties and witnesses of litigating in a judicial district that was closer and more accessible than the Eastern District of Texas.

14

By filing the transfer motion before it even answered S4's complaint—and by seeking a writ of mandamus from the Federal Circuit immediately after the District Court's denial of that motion—Fusion-io has done everything in its power to "actively and promptly pursue its motion to transfer venue before the district court invested considerable time and attention on discovery and completing claim construction." *See In re VTech Commc'ns, Inc.*, Misc. No. 909, 2010 WL 46332, at *2 (Fed. Cir. Jan. 6, 2010). Given the District Court's denial of Fusion-io's transfer motion and its inexplicable suggestion that Fusion-io re-file the exact same brief, the writ of mandamus is necessary in order to preserve the purpose of § 1404(a) and prevent both the Fifth Circuit's and this Court's clear and extensive transfer jurisprudence from becoming a nullity.

Mandamus is even more appropriate in this case because of the similar approach taken by another district court in the wake of this Court's *EMC* decision. *See Volkswagen II*, 545 F.3d at 319 (finding mandamus appropriate because "writs of mandamus are supervisory in nature and are particularly appropriate when the issues also have an importance beyond the immediate case"). In another case pending in the Eastern District of Texas, Judge Davis expressly declined to address the merits of pending transfer requests until after claim construction. *Norman IP Holdings, LLC v. Lexmark Int'l, Inc.*, No. 6:11-CV-495, 2012 WL 3307942, at *4 (E.D. Tex. Aug. 10, 2012) (holding that "in the event that transfer is appropriate,

15

the Court shall retain the case through the *Markman* phase of the proceedings").

This approach of declining to consider the merits of a transfer motion until after a later stage in the case similarly undermines both this Court's decision in *EMC* and the purpose of § 1404(a). Moreover, allowing district courts to postpone considering properly filed and long-pending motions to transfer could effectively render this Court "unable to entertain a mandamus petition even where there is a clear usurpation of judicial power." *See TS Tech*, 551 F.3d at 1322.

As set out below, the record before the District Court already "plainly shows that the United States District Court for the [District of Utah] is clearly more convenient and fair for trial," thereby justifying the issuance of a writ of mandamus directing transfer to the District of Utah. *See In re Microsoft*, 630 F.3d 1361, 1362 (Fed. Cir. 2010).

## III. The Record Before the District Court Demonstrates that the District of Utah is Clearly More Convenient and Fair

The relevant transfer factors that the District Court improperly failed to weigh demonstrate that the District of Utah is the clearly more convenient forum for S4's litigation against Fusion-io.

### A. The "Sources of Proof" Factor Weighs Heavily in Favor of Transfer

S4's allegations concern Fusion-io's "SSD products." *See* Ex. 6, S4 Complaint at ¶¶ 75–77. Fusion-io's past and present products were designed and

engineered at its headquarters in Salt Lake City, Utah,[8] and documents related to those products' design and configuration are located in that office.[9] *See* Ex. 2-A, Strasser Decl. ¶ 6. Similarly, Fusion-io's most important party witnesses—the people who know the most about the design, engineering and manufacture of the accused products—are also based in the Salt Lake City area. *See id.* ¶ 6. Additionally, Fusion-io's marketing and financial operations are conducted at both its Salt Lake City headquarters and its San Jose, California office, so most of the relevant marketing and financial sources of proof are in Salt Lake City with the balance in San Jose. *See id.* ¶ 9.

Without question, the critical evidence related to the asserted patents is closer to Utah than to Marshall. First, the relevant employees and documents related to Fusion-io's marketing and financial operations that are not located at the Salt Lake City headquarters are in Fusion-io's offices in San Jose, California, where Fusion-io handles marketing and financial activities jointly with the Salt Lake City office. *See id.* ¶ 9. Second, although Fusion-io's design and engineering

---

[8] The District of Utah is composed of two divisions, the Northern and Central, both of which hold court at Salt Lake City, Utah. 28 U.S.C. § 125. Fusion-io's headquarters are located at 2855 E. Cottonwood Pkwy., Salt Lake City, Utah 84121, which is within Salt Lake County, which is in the Central Division.

[9] Technology may help the parties "transport" certain evidence to the trial venue, but the distance between the two districts is quite substantial; transporting electronic data to the District of Utah is still vastly more convenient than transporting it to the Eastern District of Texas. *See ATEN Int'l Co. v. Emine Tech.*, 261 F.R.D. 112, 123–24 (E.D. Tex. June 25, 2009) (Davis, J.) (finding physical proximity to trial venue applicable for electronic evidence).

of future products not presently at issue in this case now take place in multiple offices, Salt Lake City remains the primary location for its design and engineering activity. To the extent that some of that activity recently began to take place in its offices in San Jose, California, and in Superior, Colorado, *see id.* ¶ 6, documents and employees related to such future products are located in the Salt Lake City, California, and Colorado offices. San Jose, California is approximately 1,090 miles closer to Salt Lake City than to Marshall, and Superior, Colorado is approximately 470 miles closer to Salt Lake City than to Marshall.[10] Third, all of the named inventors of all patents in suit are Japanese, as is the original assignee of five of the patents in suit,[11] Hitachi Ltd. Likewise, the original assignee of two other patents in suit,[12] Renesas Technology Corp., is located in Japan.[13] Tokyo, Japan (the likely departure point for international travel and delivery of documents)

---

[10]     San Jose, California is approximately 760 miles from Salt Lake City, compared to approximately 1,850 from Marshall. Superior, Colorado is approximately 530 miles from Salt Lake City, compared to approximately 1,000 from Marshall. *See Two-Way Media LLC v. A T & T Inc.*, 636 F. Supp. 2d 527, 536 n.6 (S.D. Tex. 2009) ("This Court has discretion to take judicial notice of matters of geography, including distances between cities." (citing FED. R. EVID. 201(c); *Williams v. United States*, 359 F.2d 67 (5th Cir. 1966))).
[11]     U.S. Patent Nos. 6,341,085, 6,347,051, 6,370,059, 6,567,334 and 6,701,471.
[12]     U.S. Patent Nos. 7,064,995 and 7,234,087.
[13]     Renesas Technology Corp. was acquired by Renesas Electronics Corporation in April 2010; Renesas Electronics Corporation is located in Japan. *See* Bloomberg Businessweek, Renesas Technology Corp., Company Overview, available                                                                                  at http://investing.businessweek.com/research/stocks/private/snapshot.asp?privcapId= 4959935 (Dec. 7, 2011).

is approximately 5,500 miles from Salt Lake City, compared to approximately 6,500 miles from Marshall.

Although S4 opposed transfer on the basis that its principal place of business is located in the Eastern District of Texas, offices established in anticipation of litigation (and documents transferred there) in order to manipulate venue are irrelevant to the transfer analysis. *See In re Microsoft Corp.*, 630 F.3d 1361, 1364–65 (Fed. Cir. 2010) (rejecting argument that weight be given to principal place of business where the office "staffed no employees, were recent, ephemeral, and a construct for litigation and appeared to exist for no other purpose than to manipulate venue") (citing *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010)). S4 is a non-practicing entity that only established its limited "business operations" in the Eastern District of Texas in order to manipulate venue: having been formed on May 5, 2007 as a Madison, Wisconsin Limited Liability Company, it subsequently registered as a Texas corporation with a new listed principal place of business in Marshall, Texas, effective October 1, 2009[14] and filed its suit against Fusion-io on September 7, 2011.[15] Despite the state of incorporation and the listed "principal place of business," S4 appears to conduct no operations in Texas, nor to staff any employees in Texas. The corporation's initial board of directors was composed of two members living in Milpitas, California and two members living

---

[14]     *See* Ex. 2-B, Certificate of Conversion, at 1.
[15]     *See* Ex. 6, S4 Complaint.

19

in Tokyo, Japan.[16]   With no other ties to or business activities in the Eastern District of Texas, S4's sole office was plainly established in anticipation of litigation and is an attempt to manipulate venue entitled to no weight.

Furthermore, although Fusion-io employs 11 people in Texas, 10 of these employees work from their homes to sell Fusion-io products and/or service customers based in Texas. *See* Ex. 2-A, Strasser Decl. ¶ 10.   They were not involved in the design, engineering and manufacture of Fusion-io's products, and they are not responsible for its marketing and sales strategies, or its financial performance with respect to its products. *See id.*  While these employees may have some relevant sales and marketing documents, the employees all use Fusion-io's central servers located in Utah, and such documents are duplicative of those located in Utah. *See id.*  The existence of a few duplicative documents in Texas, which may or may not be relevant, does not tip the scales against transfer.  The eleventh Texas employee, William Hutsell, was hired as a Product Management Director in connection with future products on October 24, 2011. *See id.* ¶ 11.  He currently works from his home in Houston, Texas, but had no involvement in the

---

16    *See* Ex. 2-B, Certificate of Conversion, at 5–6.  S4's most recent public filing, its December 12, 2010 Public Information Report, lists only the corporation's Marshall, Texas address for its four directors and CEO; however, three of the four directors are the same people identified in S4's Certificate of Conversion as having Tokyo, Japan and Milpitas, California addresses (Kentaro Fukuda, Hironori Seki, and E. Earle Thompson). *See* Ex. 2-C, Public Information Report.  There is no indication of the place of residence of the CEO and other, newly added, director.

design, engineering or manufacturing of any past or present Fusion-io products now at issue in this case. He is therefore irrelevant to this transfer analysis.

Given that the majority of evidence is in Utah, and the relative proximity of other relevant evidence, this factor weighs heavily in favor of transfer.

## B. The Availability of Compulsory Process to Secure the Attendance of Witnesses Slightly Favors Transfer

The ability to use compulsory process to secure the attendance of non-party witnesses weighs more heavily in favor of transfer when more of those witnesses reside in the transferee venue. *Volkswagen II*, 545 F.3d at 316. The known non-party witnesses in this case—the patent inventors and prosecution counsel—do not reside within either the Eastern District of Texas or the District of Utah. To the extent additional non-party witnesses are uncovered as litigation progresses, however, it is more likely that they will reside within the compulsory process range of the District of Utah than of the Eastern District of Texas. For example, former employees of Fusion-io's headquarters are more likely to reside in the Salt Lake City area than in the Eastern District of Texas. Accordingly, this factor weighs slightly in favor of transfer.

## C. The Cost of Attendance for Willing Witnesses Strongly Favors Transfer

The "convenience of parties and witnesses" is an important—perhaps the single most important—factor in the transfer analysis. *Genentech*, 566 F.3d at

21

1343. This Court has held time and again that, "in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *In re Nintendo Co.*, 589 F.3d at 1198.

This factor weighs heavily in favor of transfer because *Utah is the more convenient forum for every known witness.* As already discussed with respect to the sources of proof factor, Fusion-io's key witnesses with knowledge of the accused products, marketing information, and financial data are located in Salt Lake City, Utah. Transfer to Utah therefore eliminates roughly 1,400 miles of travel to Marshall for those witnesses. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 205. The other potentially relevant witnesses in this case—the employees at Fusion-io's offices in California and Colorado, and the patents' named inventors and original assignees in Japan[17]—are closer to Utah than Marshall.[18] And not only are those witnesses

---

[17]    Although S4 or its predecessor limited liability company is listed as the original assignee on five of the patents in suit (U.S. Patent Nos. 7,327,624, 7,366,016, 7,616,485, 7,721,165 and 7,746,697), as discussed above, its location is not relevant to this analysis.

[18]    The prosecuting law firms of the patents in suit, Antonelli, Terry, Stout & Kraus, LLP and Mattingly, Stanger, Malur & Brundidge, P.C., are located in Arlington, VA and Alexandria, VA, respectively. While Marshall is

substantially geographically closer to Salt Lake city, but also their cost and time of travel is significantly lower due to the comparative ease of air travel to Salt Lake City.[19] Likewise, Salt Lake City is more accessible by international travel than is Marshall, further making it more convenient for the Japanese inventors and original assignees noted above.[20]

### D. No Practical Problems Arise in Connection with Transferring this Case

---

approximately 800 miles closer to both than is Salt Lake City, this arguably makes for less relative convenience for at most two relevant witnesses as compared to the numerous others in this case. However, according to travel website Kayak.com, the actual travel time for these witnesses from Washington, D.C. airports to Marshall and to Salt Lake City is approximately the same due to the relative ease of travel to Salt Lake City: flights from Washington, D.C. to Marshall require 1 stop and take approximately 5 hours, while flights to Salt Lake City are non-stop and take approximately 5 hours. *Cf. Telecom Tech. Servs., Inc. v. Rolm Co.*, No. CIV. A. 9:94 CV 145, 1995 WL 874441, at *2 (E.D. Tex. Feb. 24, 1995) ("Also, the Court takes judicial notice that Lufkin, Texas, wherein the trial would be held were it to occur in this district, has no airport servicing major airlines, whereas it is well known that Atlanta is a major transportation hub of the Southeast.").

[19] According to travel website Kayak.com: For the Alviso and San Jose, California witnesses, there are non-stop flights from San Jose, California to Salt Lake City that take approximately 2 hours; by comparison, flights to airports within 70 miles of Marshall require 1 stop and take at least approximately 6 hours. Similarly, non-stop flights from Denver, Colorado (27 miles from Superior) to Salt Lake City take roughly 1.5 hours, while flights to Marshall require 1 stop and take 5 hours.

[20] Again as per Kayak.com, flights from Tokyo to Salt Lake City require 1 stop and take approximately 13.5 hours, while flights to airports near Marshall require 2 stops and take 20 hours. *Cf. Naschem Co., Ltd. v. Blackswamp Trading Co.*, No. 08-cv-730-SLC, 2009 WL 1307865, at *3 (W.D. Wisc. May 8, 2009) ("Because plaintiffs are citizens of Korea, both Wisconsin and Illinois are inconvenient for them. If anything, Illinois would be slightly less so because of more direct international access to Chicago.").

No practical problems arise in connection with transferring this case to the District of Utah, which further weighs in favor of transfer. Fusion-io did not delay in seeking transfer; at the time of the filing of its original Motion to Sever and Transfer, no discovery had occurred in the case, and the scheduling conference had not been set. Furthermore, the District Court appropriately severed the claims against Fusion-io from S4's claims against other defendants, and the Court has yet to hold any hearings or to consider any motions on the merits of S4's case.

To the extent S4 has argued that the judicial efficiency of holding a common claim construction in the Eastern District of Texas overrides all other transfer considerations, that position is legally mistaken. As an initial matter, this Court has repeatedly stated that judicial efficiency is *not* an overriding factor and has ordered transfer where, as here, the other factors weighed toward the transferee venue. *See In re Morgan Stanley*, 2011-M962, 2011 WL 1338830, at *2 (Fed. Cir. April 6, 2011) ("This court twice recently considered and rejected arguments that the preservation of judicial economy should preclude transfer to a far more convenient venue.") (citing *Zimmer Holdings*, 609 F.3d at 1382, and *In re Verizon*, 635 F.3d 559 (Fed. Cir. March 23, 2011)).

Moreover, even if some pre-trial consolidation across the now severed cases is preferable, such consolidation is appropriately accomplished via the multidistrict litigation procedures described in 28 U.S.C. § 1407 where, as here, S4 did not

bring its claims against Fusion-io in the appropriate forum. *See In re EMC Corp.*, 677 F.3d 1351, 1360 (Fed. Cir. 2012) (noting that a district court may consolidate cases "where venue is proper" and noting that common issues "of claim construction and patent invalidity may also be adjudicated together through the multidistrict litigation procedures of 28 U.S.C. § 1407"); *Volkswagen II*, 545 F.3d at 313 ("The underlying premise of § 1404(a) is that courts should prevent plaintiffs from abusing their privilege under § 1391 by subjecting defendants to venues that are inconvenient under the terms of § 1404(a).").[21] In other words, the JPML, not a single district court, is the appropriate agency to assess pre-trial consolidation when distinct suits against multiple different parties should properly have been filed in multiple districts.

Moreover, as a practical matter, multidistrict litigation procedures will promote judicial efficiency by facilitating pretrial consolidation in a forum that is convenient for all parties, as determined by the Judicial Panel on Multidistrict Litigation—as opposed to going forward in an inconvenient forum, such as the Eastern District of Texas, which has no ties to the parties or evidence. *See In re Pabst Licensing Digital Camera Patent Litigation*, 528 F. Supp. 2d 1357, 1357

---

[21]     The Fifth Circuit's observation in *Volkswagen II* was made in the context of § 1391(c), and accordingly applies equally in the context of venue in patent cases with corporate defendants. *Compare* 28 U.S.C. § 1400(b); *see also Hoover Group, Inc. v. Customer Metalcraft, Inc.*, 84 F.3d 1408, 1410 (Fed. Cir. 1996) ("[F]or venue purposes the residence of corporate defendants in patent infringement actions is governed by 28 U.S.C. § 1391(c).").

(J.P.M.L. 2007) (ordering transfer for pre-trial consolidation to "a transferee forum on the east coast such as the District of District of Columbia[, which] provides a geographically convenient forum, inasmuch as several of the alleged infringers operate their businesses from this region"). In fact, in *In re Halftone Color Separations Patent Litigation*, the panel consolidated a patent infringement suit in the Central District of California, despite the first-filed action being brought in the Eastern District of Texas, explaining that

> in this docket, the Eastern District of Texas has no special connection to either the parties or the litigation's subject matter. This patent litigation could well have been filed in any of a number of jurisdictions. Furthermore, current docket conditions in the Eastern District of Texas counsel against assignment of this MDL to that district where other appropriate districts are available to handle the litigation.

547 F. Supp. 2d 1383, 1385 (J.P.M.L. 2008) (citations omitted). Thus, even if pretrial considerations such as claim construction make it desirable for litigation between S4 and all defendants to proceed in a single forum, as this Court has already recognized, multidistrict litigation procedures will provide a far more efficient result than retention of all defendants in the Eastern District of Texas.

### E. The Interest in Having Localized Interests Decided at Home Strongly Favors Transfer

As the Fifth Circuit has recognized, "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the

26

litigation." *Volkswagen I*, 371 F.3d at 206.  This transfer analysis considers "the 'factual connection' that a case has with both the transferee and transferor venues." *ATEN Int'l*, 261 F.R.D. at 125.  "Generally, local interests that 'could apply virtually to any judicial district or division in the United States' are disregarded in favor of particularized local interests." *Id*. at 125–26.  This Court, applying Fifth Circuit law, has instructed that if the accused product is sold nationwide but many of the witnesses and evidence are located in the transferee venue, this factor favors transfer. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008) (transferring case where "there is no relevant connection between the actions giving rise to this case and the Eastern District of Texas except that certain vehicles containing TS Tech's [accused] headrest assembly have been sold in the venue," and where the majority of the identified witnesses, evidence, and events were located in the transferee forum or its neighboring state).

As explained above, the District of Utah is home to Fusion-io's headquarters, and the vast majority of witnesses and evidence regarding the accused products are located in Utah.  The District of Utah therefore has a strong local interest in this case. *See In re Hoffmann-La Roche*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) (the "local interest . . . remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near [the transferee] district and who presumably conduct business in that

27

community").

By contrast, other than S4's "principal place of business" in Marshall, Texas—entitled to no weight because it was established in anticipation of litigation to manipulate venue—no party or known witness resides in the Eastern District of Texas. While it is true that Fusion-io has customers in the Eastern District of Texas, this Court and "[t]he Fifth Circuit ha[ve] unequivocally rejected the argument that citizens of the venue chosen by the plaintiff have a 'substantial interest' in adjudicating a case locally because some allegedly infringing products found their way into the Texas market." *Nintendo*, 589 F.3d at 1198 (quoting *Volkswagen II*, 545 F.3d at 317–18 and *TS Tech*, 551 F.3d at 1321).

### F.     The Court Congestions Factor Weighs in Favor of Transfer

This litigation is likely to be resolved more quickly in the District of Utah. The District of Utah is faster to disposition than the Eastern District of Texas (8.0 months as compared to 9.6 months in the Eastern District of Texas) and is faster to trial (22.5 months compared to 24.2 months in the Eastern District of Texas).[22] Accordingly, this factor also weighs in favor of transfer.

### G.     The Remaining Public Interest Factors are Neutral

---

[22]     *See* Administrative Office of the United States Courts, Judicial Business 2010, Table C-5, available at http://www.uscourts.gov/uscourts/Statistics/JudicialBusiness/2010/appendices/C05 Sep10.pdf (Dec. 6, 2011). And even if the pace of litigation were slower in the District of Utah, that would not justify denial of the motion to transfer.

The remaining public-interest factors—the familiarity of the forum with the law and the avoidance of unnecessary problems or conflicts of laws or in the application of foreign law—are neutral. The Eastern District of Texas and the District of Utah are equally capable of applying patent law. *See TS Tech*, 551 F.3d at 1320 (concluding that because patent claims are governed by federal law, all district courts are capable of applying patent law to infringement claims). Additionally, no issues regarding conflicts of law or application of foreign law exist that affect whether this case should be transferred.

In short, this is "a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, [and accordingly] the trial court should grant a motion to transfer." *Nintendo*, 589 F.3d at 1198.

# CONCLUSION

Fusion-io respectfully requests that the Court grant this petition for a writ of mandamus, vacate the September 17, 2012, order of the United States District Court for the Eastern District of Texas denying in part Petitioner's motion to sever and transfer, and remand with instructions to transfer it to the United States District Court for the District of Utah.

Respectfully submitted,

BAKER BOTTS L.L.P.

By:_____

Scott Partridge
(Principal Attorney)
Michael Hawes
One Shell Plaza
910 Louisiana
Houston, Texas 77002
713.229.1750
713.229.7750 (Facsimile)
Attorneys for Petitioners
Fusion-io, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of September 2012, a true and accurate

copy of the foregoing was served by Federal Express on:

> Honorable Rodney Gilstrap
> Sam B. Hall, Jr. Federal Bldg & U.S. Courthouse
> 100 East Houston Street
> Marshall, TX  75670
>
> David Sochia
> McKool Smith
> 300 Crescent Court, Suite 1500
> Dallas, TX  75201
>
> Samuel Franklin Baxter
> McKool Smith
> 104 East Houston St., Suite 300
> Marshall, TX  75670
>
> David M. Stein
> Akin Gump Straus Hauer & Feld LLP
> 633 West Fifth Street, Suite 5000
> Los Angeles, CA  90071
>
> Brian K. Erickson
> DLA Piper US LLP
> 401 Congress Ave, Suite 2500
> Austin, TX  78701-3799
>
> Maureen F. Browne
> Covington & Burling
> 1201 Pennsylvania Ave, NW
> Washington, DC  20004

Albert Berton Deaver, Jr.
Sutton McAughan Deaver PLLC
3 Riverway, Suite 900
Houston, TX 77056

Jonathan Short
McCarter & English
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102-4056

John V. Picone, III
Hopkins & Carley
P.O. Box 1469
70 S. First Street
San Jose, CA 95113

D. Scott Hemingway
Hemingway & Hansen LLP
1717 Main Street, Suite 2500
Dallas, TX 75201

Scott Partridge

# EX. 1

**Dkt # 226:  Order on Motions to  Sever and or Dismiss**

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| **SOLID STATE STORAGE SOLUTIONS,** | § | |
| **INC.** | § | |
| *Plaintiff,* | § | |
| | § | **CAUSE NO. 2:11-CV-391-JRG-RSP** |
| **V.** | § | |
| | § | |
| **STEC, INC., ET AL.** | § | |
| *Defendants.* | § | |

## <u>ORDER</u>

Before the Court is Defendant Fusion-io, Inc.'s Motions to Sever and Transfer.  (Dkt. Nos. 57 and 58); Defendant Texas Memory Systems, Inc.'s Motion to Dismiss for Improper Venue, or in the Alternative, to Sever and Transfer (Dkt. No. 71) and Emergency Motion to Sever (Dkt. No. 198); Defendant OCZ Technology Group, Inc.'s Motions to Sever and Change Venue (Dkt. Nos. 74 and 75); and Defendant STEC, Inc.'s Motions to Sever and Change Venue (Dkt. Nos. 94 and 95).  For the reasons discussed below, Defendants' various motions are **GRANTED-IN-PART** and **DENIED-IN-PART** without prejudice to re-file the same.

On September 7, 2011, Plaintiff filed the instant action against the above-named Defendants alleging patent infringement.  Complaint, Dkt. No. 1.  Thereafter, the Defendants filed the respective motions to sever their claims from one another and transfer to various other districts.

This year, the Federal Circuit clarified the requirements for joining parties to a lawsuit pursuant to Federal Rule of Civil Procedure 20.  The Court's *In re EMC* decision holds that claims against independent defendants may not be joined under Rule 20 "unless the facts underlying the claim of infringement asserted against each defendant share an aggregate of operative facts."  *In re EMC Corp.,* 677 F.3d 1351, 1359 (Fed. Cir. 2012).  That the products or processes of the defendants are similar is not enough.  *Id.*  An improperly joined party may be dropped from the action or have the claims against it severed. Fed. R. Civ. P. 21.

1

The Court finds that the Defendants are alleged to be separate companies that independently developed distinct products at issue, and thus, their joinder under Rule 20, as clarified by the Federal Circuit in *In re EMC,* is improper.  Accordingly, Defendants' motions to sever are **GRANTED**, and the Court hereby **SEVERS** the claims against each Defendant into a separate cause of action.

For purposes of efficient case management, the Court hereby **CONSOLIDATES** the newly-severed actions with this, the originally-filed case, as to all pretrial issues.  *See Norman IP Holdings, LLC v. Lexmark Int'l, Inc.,* 6:11-cv-495, Dkt. No. 253 (E.D. Tex. Aug. 10, 2012).  All parties are instructed to file any future filings in this, the first-filed case.  The newly-created actions will remain active until the Court later determines whether the cases will be tried jointly or separately.

All pending motions to dismiss for improper venue and/or motions to transfer venue are hereby **DENIED** without prejudice to re-file the same, should the movant determine that such is still appropriate after this Order.  Such motions will be considered only as to the Defendant in the severed case, not as to all Defendants in the pretrial consolidated case.

**So ORDERED and SIGNED this 17th day of September, 2012.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE

# EX. 2

**Dkt. # 57:  Fusion io Motion to Sever and Transfer**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SOLID STATE STORAGE, SOLUTIONS, INC., | § § § | |
| Plaintiff, | § § | Case No. 2:11-CV-391 |
| v. | § § | |
| STEC, INC., OCZ TECHNOLOGY GROUP, INC., CORSAIR MEMORY, TEXAS MEMORY SYSTEMS, INC., PNY TECHNOLOGIES, INC., PATRIOT MEMORY LLC, FUSION-IO, INC., OTHER WORLD COMPUTING, INC., and MUSHKIN, INC. | § § § § § § § § § | JURY TRIAL DEMANDED |
| Defendants. | § | |

## FUSION-IO, INC.'S MOTION TO SEVER AND TRANSFER

Plaintiff Solid State Storage Solutions, Inc. ("S4") has misjoined its patent infringement claims against Defendant Fusion-io, Inc. ("Fusion-io") with eight completely unrelated defendants. S4 may not join into a single case a disparate group of unrelated defendants without a single allegation regarding any purported joint acts of infringement, any commonly accused products, or any other connection between the infringement claims. Indeed, S4's allegations here concern only distinct products manufactured independently by unrelated and competing defendants. This Court should sever those claims. *See Reid v. Gen. Motors Corp.*, 240 F.R.D. 260, 263 (E.D. Tex. 2007) (Folsom, J.) (severing a case against multiple defendants because "[a]llegations of infringement against two unrelated parties based on different acts do not arise from the same transaction"); *see also WiAV Networks, LLC v. 3Com Corp.*, 2010 WL 3895047, at *3 (N.D. Cal. Oct. 1, 2010) (finding misjoinder of suit against "unrelated and competing defendants for their own independent acts of patent infringement").

Moreover, joining all these defendants in a single case would be extremely prejudicial because S4's infringement accusations target highly confidential, proprietary aspects of each defendant's Solid State Drive ("SSD") products. S4 directs its allegations toward each defendant's "SSD Products," and litigation will therefore focus on the unique and proprietary aspects of these distinct products. (*See, e.g.*, Dkt. 1, Complaint at ¶¶ 57–83.) If this litigation proceeds as a single case, each defendant will be prejudiced by having that sensitive information exposed to co-defendants.

Once severed from the other parties in this case, the District of Utah plainly is the more convenient forum for this litigation. Aside from S4's lone office in Marshall, Texas—created in anticipation of litigation to manipulate venue—this case has no connection with this District. The critical evidence regarding the design and operation of Fusion-io's accused products, both witnesses and documents, are primarily located at Fusion-io's headquarters in Salt Lake City, Utah. Even the very inventors of S4's patents are located in Japan - closer to Salt Lake City than Marshall.

S4's attempt to lump Fusion-io together with a large group of unrelated co-defendants obscures the significant differences between the parties and the distinct nature of their independently-developed products, and further substantially prejudices Fusion-io by forcing it to reveal highly confidential details about its products to co-defendants. Additionally, because Utah is closer to every relevant known witness or source of proof, it is plainly the more convenient forum for this case. As such, this Court should sever the claims against Fusion-io and transfer them to the District of Utah, Central Division.

I.      **S4'S ATTEMPT TO JOIN UNRELATED DEFENDANTS IS IMPROPER AND PREJUDICIAL**

S4's ability to join disparate defendants in the same case is limited by Federal Rule of Civil Procedure 20(a)(2), which allows joinder only when

> (A) any right to relief is asserted against [defendants] jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all defendants will arise in the action.

Rule 20(a) thus "creat[es] a two-prong test, allowing joinder of plaintiffs when (1) their claims arise out of the 'same transaction, occurrence, or series of transactions or occurrences' and when (2) there is at least one common question of law or fact linking all claims." *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010). "If these requirements are not met, joinder is improper even if . . . plaintiff does have the ability to recover against each of the defendants." *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 533 (5th Cir. 2006).

Further, pursuant to Federal Rule of Civil Procedure 20(b), a court may always sever claims "to protect a party against . . . prejudice that arises from including a person against whom the party asserts no claim and who asserts no claim against the party." Similarly, Federal Rule of Civil Procedure 21 provides that "[t]he court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."

A.      **Claims of Infringement Based on Independent Acts by Unrelated Parties Do Not Arise Out of the Same Transaction**

S4's patent infringement claims fail to satisfy the first prong of Rule 20(a)(2). The nine named defendants are separate companies that independently developed their distinct products. Fusion-io has invested substantial time and money developing a unique product independently of any products developed or used by any of the other named defendants in this case. Fusion-io's

accused products will require their own, independent infringement analyses, damage evaluation, evidence, and witnesses that cannot be shared with other defendants. (*See* Exh. A, Strasser Decl. ¶ 7.)

Under such circumstances, the alleged infringement does not arise from the same transaction. For example, in *Reid v. General Motors Corp.*, the court severed infringement claims against different entities because "[a]llegations of infringement against two unrelated parties based on different acts do not arise from the same transaction." 240 F.R.D. 260, 263 (E.D. Tex. 2007) (Folsom, J.) (quoting *Philips Elecs. N. Am. v. Contec Corp.*, 220 F.R.D. 415, 417 (D. Del. 2004)).[1] Other courts have followed the same approach and refused to allow joinder of unrelated parties for independent acts of alleged infringement. Those courts, which notably include eight of the ten districts with the largest 2009 patent dockets,[2] consistently find misjoinder when a plaintiff sues multiple, unrelated defendants for patent infringement:

- <u>California (Northern District)</u>: *WiAV Networks, LLC v. 3Com Corp.*, No. C 10-03448 WHA, 2010 WL 3895047, at *3 (N.D. Cal. Oct. 1, 2010) (finding misjoinder because suit was against "unrelated and competing defendants for their own independent acts of patent infringement");

- <u>California (Central District)</u>: *Guardian Media Techs. v. Coby Elecs. Corp.*, No. 2:08-cv-08439-R-RC, civil minutes (C.D. Cal. June 15, 2009) (dismissing misjoined alleged infringers and providing leave for plaintiff to re-file separate actions against each);

- <u>California (Southern District)</u>: *Tierravision, Inc. v. Research in Motion Ltd.*, No. 11cv0639 DMS (BGS), 2011 WL 4862961, at *1 (S.D. Cal. Sept. 16, 2011) (granting

---

[1] The motion sought only a separate trial pursuant to Fed. R. Civ. P. 42(b), but the court found that severance under Rule 21 was more appropriate. *Id.* at 262–63.
[2] The districts having the most patent case filings in 2009 were, in order: C.D. Cal., E.D. Tex., D. Del., N.D. Cal., D.N.J., N.D. Ill., S.D.N.Y., S.D. Cal., D. Mass., and E.D. Va. *See* http://271patent.blogspot.com/2010/01/report-district-courts-with-most-patent.html.

defendants' motions to sever due to misjoinder even though each defendant had a "mapping software application" that ran on smart phones and that was alleged to "infringe[], at least, the same two claims" of the plaintiff's patent);

- <u>Delaware</u>: *Philips Elecs.*, 220 F.R.D. at 417 (granting motion to sever because "the only connection between CMT and [the other defendant] Hango is that they may have infringed the same patents . . . , which is an insufficient basis to join unrelated parties as defendants in the same lawsuit");

- <u>Illinois (Northern District)</u>: *Spread Spectrum Screening, LLC v. Eastman Kodak Co.*, 2010 WL 3516106, at *2 (N.D. Ill. Sept. 1, 2010) (finding joinder improper "where [multiple] competing businesses have allegedly infringed the same patent by selling different products");

- <u>Minnesota</u>: *Multi-Tech Sys., Inc. v. Net2Phone, Inc.*, 2000 WL 34494824, at *7 (D. Minn. June 26, 2000) (finding misjoinder and noting: "The only common thread running through the Complaint is Plaintiff's contention that each Defendant infringed one or more of the four patents. Each accused device, however, will have to be considered separately, and the determination of facts and the scope of testimony with respect to one defendant will have little relevance to issues raised by another defendant");

- <u>New Jersey</u>: *N.J. Mach. Inc. v. Alford Indus., Inc.*, 1991 WL 340196, at *2 (D.N.J. Oct. 7, 1991) ("[C]laims of infringement against unrelated defendants, involving unrelated machines, should be tried separately against each defendant"), *aff'd*, 983 F.2d 1087 (Fed. Cir. 1992);

- <u>New York (Southern District)</u>: *Children's Network, LLC v. Pixfusion LLC*, 722 F. Supp. 2d 404, 415 (S.D.N.Y. June 30, 2010) ("Joinder of unrelated parties into one action is generally inappropriate where, as here, the infringement of the same patent is alleged, but products are different");

- Virginia (Eastern District): *Bear Creek Techs., Inc. v. RCN Commc'ns*, No. 2:11cv103, 2011 WL 3626787, at *4–5 (E.D. Va. Aug. 17, 2011) (dismissing claims against all but one defendant due to misjoinder where each defendant "face[d] allegations of patent infringement based on unrelated apparatuses that they each independently use to provide VoIP services");

- Wisconsin (Western District): *Naschem Co., Ltd. v. Blackswamp Trading Co.*, No. 08-cv-730-SLC, 2009 WL 1307865, at *3 (W.D. Wis. May 8, 2009) (finding that the plaintiff's allegation "cannot establish or even allow the drawing of a reasonable inference that [the defendants] have a  common scheme of infringement that would make joinder of their claims proper under Rule 20").

Thus, as one court observed, "the overwhelming authority from other jurisdictions indicates that allegations against multiple and unrelated defendants for independent acts of patent, copyright, and/or trademark infringement do not set forth claims arising from the same transaction or occurrence within the meaning of Rule 20(a)." *Colt Defense LLC v. Heckler & Koch Defense, Inc.*, No. 04-258, 2004 U.S. Dist. LEXIS 28690, at *13 (E.D. Va. Oct. 22, 2004). Nonetheless, it is true that some courts follow the minority view set out in *MyMail, Ltd. v. America Online, Inc.*, 223 F.R.D. 455, 456 (E.D. Tex. 2004), wherein the court permitted joinder of otherwise unrelated defendants by virtue of the mere assertion of "logically related" independent allegations of infringement.  *See, e.g.*, *Oasis Research, LLC v. Adrive, LLC*, No. 4:10-CV-435, 2011 WL 3099885, at *2–3 (E.D. Tex. May 23, 2011); *Adrain v. Genetec, Inc.*, No. 2:08-CV-423, 2009 WL 30633414, at *2 (E.D. Tex. Sept. 22, 2009).

This approach is unpersuasive in this case for at least three reasons.  First, it is a misapplication of the Eighth Circuit's "logical relationship" test, which originated in *Mosley v.*

*General Motors Corp.*, 497 F.2d 1330, 1333–34 (8th Cir. 1973).[3]  *Mosley* held that joinder was proper when multiple plaintiffs sought jointly to sue for employment discrimination that, although arising from independent acts, was part of a broader "company-wide policy purportedly designed to discriminate against blacks in employment."  497 F.2d at 1334.  This broader policy is what made the independent acts "logically related" so as to constitute a single transaction, thereby satisfying the first prong of the joinder test.  That approach is inapplicable to cases where there is no broader scheme, such as patent suits where defendants' alleged infringement is the result of uncoordinated and unrelated acts by separate parties.  That these uncoordinated acts allegedly constitute infringement of the same patent is otherwise relevant only to the *second* joinder inquiry—common questions of facts or law.  *Cf. Bear Creek*, 2011 WL 3626787, at *2 ("Given that the same claims of the '722 patent are at issue for all of the Defendants, there is little doubt that common questions of law will arise in this action.").  Accordingly, applying the approach to such independent acts in the absence of any overarching relationship (other than allegedly infringing the same patent) conflates the two distinct joinder inquiries, despite the Fifth Circuit's characterization in *Acevedo* of Rule 20 as "creating a two-prong test."  600 F.3d at 521; *but cf. MyMail* (stating that a logical relationship exists, thus satisfying the "transaction" prong of the joinder test, when there is merely "some nucleus of operative facts or law," and immediately noting that "[n]either side disputes that questions of law or fact common to all defendants will arise in this case" (citing *Hanley v. First Investors Corp.*, 151 F.R.D. 76, 79 (E.D. Tex. 1993))).

        Second, the *MyMail* approach is further unpersuasive in view of the legislative history of recently-added section 299 to the Patent Act, which states that "accused infringers may not be joined in one action as defendants or counterclaim defendants, or have their actions consolidated

---

[3] *See MyMail*, 223 F.R.D. at 456 (citing *Hanley v. First Inventors Corp.*, 151 F.R.D. 76, 79 (E.D. Tex. 1993) (discussing *Mosley*, 497 F.2d at 1333).

for trial, based solely on allegations that they each have infringed the patent or patents in suit." 35 U.S.C. § 299(b). The Act's legislative history makes clear that this provision is meant to abrogate *MyMail*'s erroneous approach to joinder. *See* H.R. Rep. No. 112–98, pt. 1, at 55 n.61 (noting that section 299 "legislatively abrogates the construction of Rule 20(a) adopted in *MyMail, Ltd. v. America Online, Inc.*, 223 F.R.D. 455 (E.D. Tex. 2004)"). Although the provision came into effect on September 16, 2011—slightly over one week after S4's September 7, 2011 filing of this suit—and therefore is not controlling, it nonetheless further demonstrates the extent to which *MyMail* and cases relying upon it stand in the minority.

Third, and regardless of the impropriety of the minority view, the particular facts and circumstances of this case make joinder improper; the various defendants' accused products are simply not sufficiently related for S4's infringement claims against each to be joined in a single suit. (*See* Exh. A, Strasser Decl. ¶ 7.) *See, e.g.*, *Bear Creek*, 2011 WL 3626787, at *3–5 (finding joinder of various defendants in patent infringement suit improper where, despite the fact that all operated apparatuses to provide VoIP services, the apparatuses were independently developed and operated, and the defendants also "provided evidence in the form of numerous declarations emphasizing the differences between the various defendant companies and their services"); *accord Oasis Research*, 2011 WL 3099885, at *2–3 (applying the "logically related" test of *MyMail* to find joinder proper, but noting the ruling's consistency with a prior ruling finding joinder improper where the court found sufficient differences in the accused products (discussing *Tompkins v. Able Planet, Inc.*, No. 6:10-CV-58, slip op. (E.D. Tex. Feb. 17, 2011)).

Accordingly, the Court should find that S4's attempt to join nine defendants together in this case, who have no relationship with each other beyond their alleged infringement of a common set of patents, is improper.

**B.     Fusion-io Would Be Severely Prejudiced By Having Highly Confidential Information About its SSD Products Exposed to Co-Defendants**

Even if joinder were permissible, this Court may sever the claims against Fusion-io to prevent prejudice. *See, e.g.*, *Applewhite v. Reichhold Chemicals, Inc.*, 67 F. 3d 571, 574 (5th Cir. 1995) ("Under Rules 20 and 21, the district court has the discretion to sever an action if it is misjoined or might otherwise cause delay or prejudice."). Severance is necessary here to protect Fusion-io from having to disclose highly confidential information to its co-defendants.

Specifically, S4's allegations for all asserted patents concern defendants' distinct and proprietary SSD products. (*See, e.g.*, Dkt. 1, Complaint at ¶¶ 57–83.) Defending against those accusations will require the disclosure of sensitive information, including expert reports and testimony, about the design of those proprietary products. If this litigation proceeds as a single case, defendants will be prejudiced by having to expose highly confidential information to co-defendants in order to rebut S4's infringement allegations. Forcing Fusion-io to reveal details about those proprietary designs to co-defendants—all of whom are its competitors—would be exceptionally prejudicial. (*See* Exh. A, Strasser Decl. ¶¶ 7–8.)

**C.     Severance is Necessary to Prevent Other Prejudice**

Severing claims against unrelated codefendants also prevents an array of other prejudice, both pre-trial and at trial. Among other things, co-defendants will be prejudiced by the sheer number of disparate, yet simultaneously-presented, infringement theories and remedies arguments that this Court, and ultimately a jury, would be asked to analyze and parse. Because the defendants' accused products were designed separately, the defendants likely have materially different interests, strategies, and positions regarding claim construction and non-infringement. Lumping the defendants together seriously impairs their ability to advance positions meaningfully that are different from, or conflict with, the positions of other defendants during

claim construction and trial. Further, before a jury, a plaintiff may taint one defendant with another defendant's potential problems connected with, e.g., larger damages exposure, discovery-related issues, or damaging facts. The only way to remedy those prejudices is to sever the misjoined defendants.[4]

## II. The District of Utah is Plainly a More Convenient Forum for This Litigation

Once severed from the other parties in this case, the litigation between Fusion-io and S4 should be transferred to the District of Utah, Central Division. This case has no ties to this District, and Utah is the more convenient forum for every relevant witness and source of proof.

### A. Legal Standards

Section 1404(a) of Title 28 of the United States Code provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The threshold inquiry for transfer under Section 1404(a) is whether this action "could have been brought" in the proposed transferee district. *See In re Volkswagen of Am., Inc.*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").

Next, courts consider various "private and public interest factors" relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case. *See Fujitsu Ltd. v. Tellabs, Inc.*, 639 F. Supp. 2d 761, 765 (E.D. Tex. 2009) (Davis, J.). The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *In re Volkswagen of Am. Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"). The public interest factors are: (1) administrative difficulties flowing

---

[4] The prejudice disclosed in sections B and C herein provides yet another reason that *MyMail* and its progeny, which contain no reference to prejudice resulting from joinder, are unpersuasive in this instance.

from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws in the application of foreign law. *Id.* S4's choice of venue is not a factor in the analysis. *Id.* at 315.

### B. ELEMENT #1: WHERE THE ACTION MIGHT HAVE BEEN BROUGHT
### Venue is Proper in the District of Utah

This case meets the first transfer requirement, as it is indisputable that it could have been filed in the District of Utah. In patent infringement cases, venue is proper in the judicial district "where the defendant resides" or "has a regular and established place of business." 28 U.S.C § 1400. Fusion-io's headquarters is in Salt Late City, Utah. (*See* Exh. A, Strasser Decl. ¶ 2.) Accordingly, the first transfer requirement is met.

### C. ELEMENT #2: THE PRIVATE INTEREST FACTORS
### The Private Interest Factors Weigh Heavily In Favor of Transfer

#### 1. The Majority of Fusion-io's Witnesses and Evidence are in the District of Utah and None are in this District

"[T]he sources of proof requirement is a meaningful factor in the [transfer] analysis." *Volkswagen II*, 545 F.3d at 316. In particular, in patent infringement cases, the bulk of the evidence may typically come from the accused infringers, and "[c]onsequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009).

The "source of proof" factor weighs heavily in favor of transfer. S4's allegations concern Fusion-io's "SSD products." (*See*, Dkt. 1, Complaint at ¶¶ 75–77.) Fusion-io's past and present products were designed and engineered at its headquarters in Salt Lake City, Utah,[5] and

---

[5] The District of Utah is composed of two divisions, the Northern and Central, both of which hold court at Salt Lake City, Utah. 28 U.S.C. § 125. Fusion-io's headquarters are located at 2855 E. Cottonwood Pkwy., Salt Lake City, Utah 84121, which is within Salt Lake County, which is in the Central Division.

documents related to those products' design and configuration are located in that office.[6]  (*See* Exh. A, Strasser Decl. ¶ 6.)  Similarly, Fusion-io's most important party witnesses—the people who know the most about the design, engineering and manufacture of the accused products—are also based in the Salt Lake City area.  (*See id.* ¶ 6.) Additionally, Fusion-io's marketing and financial operations are conducted at both its Salt Lake City headquarters and its San Jose, California office, so most of the relevant marketing and financial sources of proof are in Salt Lake City with the balance in San Jose. (*See id.* ¶ 9.)

Without question, the critical evidence related to the asserted patents is closer to Utah than to Marshall.  First, the relevant employees and documents related to Fusion-io's marketing and financial operations that are not located at the Salt Lake City headquarters are in Fusion-io's offices in San Jose, California, where Fusion-io handles marketing and financial activities jointly with the Salt Lake City office. (*See* Exh. A, Strasser Decl. ¶ 9.)  Second, although Fusion-io's design and engineering of future products not presently at issue in this case now take place in multiple offices, Salt Lake City remains the primary location for its design and engineering activity.  To the extent that some of that activity recently began to take place in its offices in Alviso and San Jose, California, and in Superior, Colorado, (*see id.* ¶ 6), documents and employees related to such future products are located in the Salt Lake City, California, and Colorado offices.  Alviso and San Jose, California[7] are approximately 1,090 miles closer to Salt Lake City than to Marshall, and Superior, Colorado is approximately 470 miles closer to Salt Lake City than to Marshall.[8]  Third, all of the named inventors of all patents in suit are Japanese,

---

[6] Technology may help the parties "transport" certain evidence to the trial venue, but the distance between the two districts is quite substantial; transporting electronic data to the District of Utah is still vastly more convenient than transporting it to this District. *See ATEN Int'l Co. v. Emine Tech.*, 261 F.R.D. 112, 123–24 (E.D. Tex. June 25, 2009) (Davis, J.) (finding physical proximity to trial venue applicable for electronic evidence).

[7] Alviso is a sub-community of San Jose.

[8] San Jose, California is approximately 760 miles from Salt Lake City, compared to approximately 1,850 from Marshall.  Superior, Colorado is approximately 530 miles from Salt Lake City, compared to approximately 1,000 from Marshall.  *See Two-Way Media LLC v. A T & T Inc.*, 636 F. Supp. 2d 527, 536 n.6 (S.D. Tex. 2009) ("This

as is the original assignee of five of the patents in suit,[9] Hitachi Ltd. Likewise, the original assignee of two other patents in suit,[10] Renesas Technology Corp., is located in Japan.[11] Tokyo, Japan (the likely departure point for international travel and delivery of documents) is approximately 5,500 miles from Salt Lake City, compared to approximately 6,500 miles from Marshall.

Although S4 may oppose transfer on the basis that its principal place of business is located in this District, offices established in anticipation of litigation (and documents transferred there) in order to manipulate venue are irrelevant to the transfer analysis. *See In re Microsoft Corp.*, 630 F.3d 1361, 1364–65 (Fed. Cir. 2010) (rejecting argument that weight be given to principal place of business where the office "staffed no employees, were recent, ephemeral, and a construct for litigation and appeared to exist for no other purpose than to manipulate venue") (citing *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010)). S4 is a non-practicing entity that only established its limited "business operations" in this District in order to manipulate venue: having been formed on May 5, 2007 as a Madison, Wisconsin Limited Liability Company, it subsequently registered as a Texas corporation with a new listed principal place of business in Marshall, Texas, effective October 1, 2009[12] and filed this suit on September 7, 2011.[13] Despite the state of incorporation and the listed "principal place of business," S4 appears to conduct no operations in Texas, nor to staff any employees in Texas. The corporation's initial board of directors was composed of two members living in Milpitas,

---

Court has discretion to take judicial notice of matters of geography, including distances between cities." (citing FED. R. EVID. 201(c); *Williams v. United States*, 359 F.2d 67 (5th Cir. 1966))).

[9] U.S. Patent Nos. 6,341,085, 6,347,051, 6,370,059, 6,567,334 and 6,701,471.

[10] U.S. Patent Nos. 7,064,995 and 7,234,087.

[11] Renesas Technology Corp. was acquired by Renesas Electronics Corporation in April 2010; Renesas Electronics Corporation is located in Japan. *See* Bloomberg Businessweek, Renesas Technology Corp., Company Overview, available at http://investing.businessweek.com/research/stocks/private/snapshot.asp?privcapId=4959935 (Dec. 7, 2011).

[12] (*See* Exh. B, Certificate of Conversion, at 1.)

[13] (*See* Dkt. 1, Complaint.)

California and two members living in Tokyo, Japan.[14]  With no other ties to or business activities in this District, S4's sole office was plainly established in anticipation of litigation and is an attempt to manipulate venue entitled to no weight.

Furthermore, although Fusion-io employs 11 people in Texas, 10 of these employees work from their homes to sell Fusion-io products and/or service customers based in Texas.  (*See* Exh. A, Strasser Decl. ¶ 10.)  They were not involved in the design, engineering and manufacture of Fusion-io's products, and they are not responsible for its marketing and sales strategies, or its financial performance with respect to its products.  (*See id.*)  While these employees may have some relevant sales and marketing documents, the employees all use Fusion-io's central servers located in Utah, and such documents are duplicative of those located in Utah.  (*See id.*)  The existence of a few duplicative documents in Texas, which may or may not be relevant, does not tip the scales against transfer.  The eleventh Texas employee, William Hutsell, was hired as a Product Management Director in connection with future products on October 24, 2011.  (*See id.* ¶ 11.)  He currently works from his home in Houston, Texas, but had no involvement in the design, engineering or manufacturing of any past or present Fusion-io products now at issue in this case.  He is therefore irrelevant to this transfer analysis.

Given the substantial evidence in Utah, and the relative proximity of other relevant evidence, this factor weighs heavily in favor of transfer.

### 2. The Availability of Compulsory Process to Secure the Attendance of Witnesses Slightly Favors Transfer

The ability to use compulsory process to secure the attendance of non-party witnesses weighs more heavily in favor of transfer when more of those witnesses reside in the transferee

---

[14] (*See* Exh. B, Certificate of Conversion, at 5–6.)  S4's most recent public filing, its December 12, 2010 Public Information Report, lists only the corporation's Marshall, Texas address for its four directors and CEO; however, three of the four directors are the same people identified in S4's Certificate of Conversion as having Tokyo, Japan and Milpitas, California addresses (Kentaro Fukuda, Hironori Seki, and E. Earle Thompson).  (*See* Exh. C, Public Information Report.)  There is no indication of the place of residence of the CEO and other, newly added, director.

venue. *Volkswagen II*, 545 F.3d at 316. The known non-party witnesses in this case—the patent inventors and prosecution counsel—do not reside within either the Eastern District of Texas or the District of Utah. To the extent additional non-party witnesses are uncovered as litigation progresses, however, it is more likely that they will reside within the compulsory process range of the District of Utah than of the Eastern District of Texas. For example, former employees of Fusion-io's headquarters are more likely to reside in the Salt Lake City area than in this District. Accordingly, this factor weighs slightly in favor of transfer.

### 3. The Cost of Attendance for Willing Witnesses Strongly Favors Transfer

The "convenience of parties and witnesses" is an important—perhaps the single most important—factor in the transfer analysis. *Genentech*, 566 F.3d at 1343. The Federal Circuit has held time and again that, "in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer." *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).

This factor weighs heavily in favor of transfer because *Utah is the more convenient forum for every known witness*. As already discussed with respect to the sources of proof factor, Fusion-io's key witnesses with knowledge of the accused products, marketing information, and financial data are located in Salt Lake City, Utah. Transfer to Utah therefore eliminates roughly 1,400 miles of travel to Marshall for those witnesses. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 205. The other potentially relevant witnesses in this case—the employees at Fusion-io's offices in California and Colorado, and the patents' named

inventors and original assignees in Japan[15]—are closer to Utah than Marshall.[16]  And not only are those witnesses substantially geographically closer to Salt Lake city, but also their cost and time of travel is significantly lower due to the comparative ease of air travel to Salt Lake City.[17]  Likewise, Salt Lake City is more accessible by international travel than is Marshall, further making it more convenient for the Japanese inventors and original assignees noted above.[18]

### 4. No Practical Problems Arise in Connection with Transferring this Case

No practical problems arise in connection with transferring this case to the District of Utah, which further weighs in favor of transfer.  No discovery has occurred to date and the scheduling conference has not been set.  Further, little benefit follows from keeping this case together with the other defendants because, as already explained, the allegedly infringing Fusion-io systems are unique from those of other defendants.  Fusion-io has developed proprietary devices that are distinct from its competitors', and significant differences exist with respect to the factual discovery and expert testimony regarding those devices.  (*See* Exh. A, Strasser Decl. ¶ 7.)

---

[15] Although S4 or its predecessor limited liability company is listed as the original assignee on five of the patents in suit (U.S. Patent Nos. 7,327,624, 7,366,016, 7,616,485, 7,721,165 and 7,746,697), as discussed above, its location is not relevant to this analysis.

[16] The prosecuting law firms of the patents in suit, Antonelli, Terry, Stout & Kraus, LLP and Mattingly, Stanger, Malur & Brundidge, P.C., are located in Arlington, VA and Alexandria, VA, respectively.  While Marshall is approximately 800 miles closer to both than is Salt Lake City, this arguably makes for less relative convenience for at most two relevant witnesses as compared to the numerous others in this case.  However, according to travel website Kayak.com, the actual travel time for these witnesses from Washington, D.C. airports to Marshall and to Salt Lake City is approximately the same due to the relative ease of travel to Salt Lake City: flights from Washington, D.C. to Marshall require 1 stop and take approximately 5 hours, while flights to Salt Lake City are non-stop and take approximately 5 hours.  *Cf. Telecom Tech. Servs., Inc. v. Rolm Co.*, No. CIV. A. 9:94 CV 145, 1995 WL 874441, at *2 (E.D. Tex. Feb. 24, 1995) ("Also, the Court takes judicial notice that Lufkin, Texas, wherein the trial would be held were it to occur in this district, has no airport servicing major airlines, whereas it is well known that Atlanta is a major transportation hub of the Southeast.").

[17] According to travel website Kayak.com: For the Alviso and San Jose, California witnesses, there are non-stop flights from San Jose, California to Salt Lake City that take approximately 2 hours; by comparison, flights to airports within 70 miles of Marshall require 1 stop and take at least approximately 6 hours.  Similarly, non-stop flights from Denver, Colorado (27 miles from Superior) to Salt Lake City take roughly 1.5 hours, while flights to Marshall require 1 stop and take 5 hours.

[18] Again as per Kayak.com, flights from Tokyo to Salt Lake City require 1 stop and take approximately 13.5 hours, while flights to airports near Marshall require 2 stops and take 20 hours.  *Cf. Naschem Co., Ltd. v. Blackswamp Trading Co.*, No. 08-cv-730-SLC, 2009 WL 1307865, at *3 (W.D. Wisc. May 8, 2009) ("Because plaintiffs are citizens of Korea, both Wisconsin and Illinois are inconvenient for them.  If anything, Illinois would be slightly less so because of more direct international access to Chicago.").

To the extent S4 argues that the judicial efficiency of holding a common claim construction in this District overrides all other transfer considerations, that position is legally mistaken. As an initial matter, the Federal Circuit has repeatedly stated that judicial efficiency is *not* an overriding factor and has ordered transfer where, as here, the other factors weighed toward the transferee venue. *See In re Morgan Stanley*, 2011-M962, 2011 WL 1338830, at *2 (Fed. Cir. April 6, 2011) ("This court twice recently considered and rejected arguments that the preservation of judicial economy should preclude transfer to a far more convenient venue.") (citing *Zimmer Holdings*, 609 F.3d at 1382, and *In re Verizon*, 635 F.3d 559 (Fed. Cir. March 23, 2011)).

Moreover, even if some pre-trial consolidation across cases is preferable,[19] that may be accomplished via the multidistrict litigation procedures described in 28 U.S.C. § 1407. Those procedures will promote judicial efficiency by facilitating pretrial consolidation in a forum that is convenient for all parties, as determined by the Judicial Panel on Multidistrict Litigation—as opposed to going forward in an inconvenient forum, such as this District, which has no ties to the parties or evidence. *See In re Pabst Licensing Digital Camera Patent Litigation*, 528 F. Supp. 2d 1357, 1357 (J.P.M.L. 2007) (ordering transfer for pre-trial consolidation to "a transferee forum on the east coast such as the District of District of Columbia[, which] provides a geographically convenient forum, inasmuch as several of the alleged infringers operate their businesses from this region"). In fact, in *In re Halftone Color Separations Patent Litigation*, the panel

---

[19] A consolidated claim construction does not necessarily promote efficiency, especially where defendants have unique products. *See WiAV Networks, LLC v. 3Com Corp.*, 2010 WL 3895047, at *3 (N.D. Cal. Oct. 1, 2010) (Severing unrelated defendants while noting: "[W]hile it would be nice to have an identical set of elaborations on the asserted claims for each accused product, even that is not practical, for the differences in the products themselves will provoke differences in which words and slants in the claim language really matter. . . . In other words, the claim-construction work will not be the same for all defendants, even those facing trial on the same patent claim. The claim-construction work must be adapted to the actual issues being litigated over the varying accused devices.").

consolidated a patent infringement suit in the Central District of California, despite the first-filed

action being brought in the Eastern District of Texas, explaining that

> in this docket, the Eastern District of Texas has no special
> connection to either the parties or the litigation's subject matter.
> This patent litigation could well have been filed in any of a number
> of jurisdictions. Furthermore, current docket conditions in the
> Eastern District of Texas counsel against assignment of this MDL
> to that district where other appropriate districts are available to
> handle the litigation.

547 F. Supp. 2d 1383, 1385 (J.P.M.L. 2008) (citations omitted).  Thus, even if pretrial

considerations such as claims construction make it desirable for litigation between S4 and all

defendants to proceed in a single forum, multidistrict litigation procedures will provide a far

more efficient result than retention of all defendants in the Eastern District of Texas.

### D. ELEMENT #3: THE PUBLIC INTEREST FACTORS
### The Public Interest Factors Weigh in Favor of Transfer

#### 1. The Interest in Having Localized Interests Decided at Home Strongly Favors Transfer

As the Fifth Circuit and this Court have recognized, "[j]ury duty is a burden that ought

not to be imposed upon the people of a community which has no relation to the litigation."

*Volkswagen I*, 371 F.3d at 206.  This transfer analysis considers "the 'factual connection' that a

case has with both the transferee and transferor venues."  *ATEN Int'l*, 261 F.R.D. at 125.

"Generally, local interests that 'could apply virtually to any judicial district or division in the

United States' are disregarded in favor of particularized local interests."  *Id*. at 125–26.  The

Federal Circuit, applying Fifth Circuit law, has instructed that if the accused product is sold

nationwide but many of the witnesses and evidence are located in the transferee venue, this

factor favors transfer.  *See TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008)

(transferring case where "there is no relevant connection between the actions giving rise to this

case and the Eastern District of Texas except that certain vehicles containing TS Tech's

[accused] headrest assembly have been sold in the venue," and where the majority of the identified witnesses, evidence, and events were located in the transferee forum or its neighboring state).

As explained above, the District of Utah is home to Fusion-io's headquarters, and the vast majority of witnesses and evidence regarding the accused products are located in Utah. The District of Utah therefore has a strong local interest in this case. *See In re Hoffmann-La Roche*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) (the "local interest . . . remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near [the transferee] district and who presumably conduct business in that community").

By contrast, other than S4's "principal place of business" in Marshall, Texas—entitled to no weight because it was established in anticipation of litigation to manipulate venue—no party or known witness resides in this District. While it is true that Fusion-io has customers in this District, the Federal Circuit and "[t]he Fifth Circuit ha[ve] unequivocally rejected the argument that citizens of the venue chosen by the plaintiff have a 'substantial interest' in adjudicating a case locally because some allegedly infringing products found their way into the Texas market." *Nintendo*, 589 F.3d at 1198 (quoting *Volkswagen II*, 545 F.3d at 317–18 and *TS Tech*, 551 F.3d at 1321).

## 2. The Court Congestions Factor Weighs in Favor of Transfer

This litigation is likely to be resolved more quickly in the District of Utah. The District of Utah is faster to disposition than the Eastern District of Texas (8.0 months as compared to 9.6 months in this District) and is faster to trial (22.5 months compared to 24.2 months in this District).[20] Accordingly, this factor also weighs in favor of transfer.

---

[20] *See* Administrative Office of the United States Courts, Judicial Business 2010, Table C-5, available at http://www.uscourts.gov/uscourts/Statistics/JudicialBusiness/2010/appendices/C05Sep10.pdf (Dec. 6, 2011). And even if the pace of litigation were slower in the District of Utah, that would not justify denial of the motion to transfer.

### 3. The Remaining Public Interest Factors are Neutral

The remaining public-interest factors—the familiarity of the forum with the law and the avoidance of unnecessary problems or conflicts of laws or in the application of foreign law—are neutral. The Eastern District of Texas and the District of Utah are equally capable of applying patent law. *See TS Tech*, 551 F.3d at 1320 (concluding that because patent claims are governed by federal law, all district courts are capable of applying patent law to infringement claims). Additionally, no issues regarding conflicts of law or application of foreign law exist that affect whether this case should be transferred.

In short, this is "a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, [and accordingly] the trial court should grant a motion to transfer." *Nintendo*, 589 F.3d at 1198.

## III. CONCLUSION

For the reasons set forth above, Fusion-io requests that Court sever the claims against Fusion-io and transfer them to the District of Utah, Central Division.


January 4, 2012                    Respectfully Submitted:

                                   /s/ Scott F. Partridge
                                   Scott F Partridge
                                   Lead Attorney
                                   Texas Bar No. 00786940
                                   Baker Botts LLP
                                   One Shell Plaza
                                   910 Louisiana Street
                                   Houston, TX 77002-4995
                                   713/229-1569
                                   Fax: 713/229-7769
                                   Email: scott.partridge@bakerbotts.com

                                   Attorney for Fusion-io, Inc.

## CERTIFICATE OF SERVICE

       The undersigned hereby certifies that on January 4, 2012, a copy of FUSION-IO, INC.'S MOTION TO SEVER AND TRANSFER was served electronically, via CM/ECF, on all counsel of record who are deemed to have consented to such service under the Court's local rules.  Any other counsel of record will be served via facsimile and certified mail, return receipt requested.


                        /s/ Scott F. Partridge
                        Scott F. Partridge


## CERTIFICATE OF CONFERENCE

       I certify that counsel for Fusion-io, Inc. and Solid State Storage Solutions, Inc. have complied with the meet and confer requirement in Local Civil Rule CV-7(h). This motion is opposed.  The personal conference required by Local Civil Rule CV-7(h) was conducted on December 29, 2011 by telephone.  Scott Partridge participated for Fusion-io, Inc., and Eric Hansen participated for Solid State Storage Solutions, Inc. An agreement was not reached because the parties have opposing views on the relief requested by this motion. The discussions have conclusively resulted in an impasse, leaving for the Court to decide the motion.  Counsel for Solid State Storage Solutions, Inc. agreed that the parties complied with their obligations for conference on this motion.

                        */s/* Scott F. Partridge
                        Scott F. Partridge

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SOLID STATE STORAGE, | § | |
| SOLUTIONS, INC., | § | |
| | § | |
| Plaintiff, | § | Case No. 2:11-CV-391 |
| | § | |
| v. | § | |
| | § | |
| STEC, INC., OCZ TECHNOLOGY | § | |
| GROUP, INC., CORSAIR MEMORY, | § | |
| TEXAS MEMORY SYSTEMS, INC., | § | JURY TRIAL DEMANDED |
| PNY TECHNOLOGIES, INC., | § | |
| PATRIOT MEMORY LLC, FUSION-IO, | § | |
| INC., OTHER WORLD COMPUTING, | § | |
| INC., and MUSHKIN, INC. | § | |
| | § | |
| Defendants. | § | |

**DECLARATION OF MICHAEL HAWES IN SUPPORT OF FUSION-IO, INC'S
MOTION TO SEVER AND TRANSFER**

I, Michael Hawes, declare that:

1.    I am an attorney at Baker Botts L.L.P., counsel for Defendant Fusion-io, Inc.   I am over 21 years of age, a resident of Texas, and otherwise competent to make this declaration.

2.    I prepared this declaration based on my personal knowledge and information I reviewed.

3.    I have supervised the collection and copying of the documents submitted herewith as exhibits to the Motion to Sever and Transfer.

4.    Exhibit A includes a true and correct copy of the Declaration of John Strasser.

5.    Exhibit B includes a true and correct copy of the Certificate of Conversion filed on September 30, 2009 by Solid State Storage Solutions LLC, received from the SOSDirect service of the Office of the Secretary of State of Texas.

6.    Exhibit C includes a true and correct copy of the Texas Franchise Tax Public Information Report dated December 12, 2010 and filed by Solid State Storage Solutions, Inc., received from the SOSDirect service of the Office of the Secretary of State of Texas.

I declare under penalty of perjury that the foregoing is true and correct.


Dated:  January 4, 2012                                            /s/     _Michael Hawes_____
                                                                                  Michael Hawes

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

|  |  |  |
|---|---|---|
| | § | |
| | § | |
| | § | |
| SOLID STATE STORAGE | § | |
| SOLUTIONS, INC., | § | |
| | § | Case No. 2:11-CV-391 |
| Plaintiff | § | |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| STEC, INC., *et al.* | § | |
| | § | |
| Defendants | § | |
| | § | |

**DECLARATION OF JOHN STRASSER IN SUPPORT OF FUSION-IO, INC.'S
MOTION TO SEVER AND TRANSFER**

I, John Strasser, declare as follows:

1. I am currently employed by Fusion-io, Inc. ("Fusion-io") as Vice President of Hardware Development. My responsibilities include planning and designing new products and product improvements as they relate to electronic hardware and firmware components, reviewing requirements documentation, managing the hardware and firmware engineering teams, and managing hardware and firmware quality assurance, among other duties. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would testify competently to such facts under oath.

2. Fusion-io is incorporated and organized under the laws of the State of Delaware, and its corporate headquarters is located at 2855 E. Cottonwood Parkway in Salt Lake City, Utah. In total, Fusion-io employs 265 people in its Salt Lake City headquarters.

3. Fusion-io also has offices at 2130 Gold Street in Alviso, California, and at 3031 Tisch Way in San Jose, California. In total, Fusion-io employs 119 people at its California offices.

4. Fusion-io also has an office at 1000 S. McCaslin Boulevard in Superior, Colorado that was recently opened in April 2011 to provide space for up to 35 people, and an office at 13873 Park Center Road in Herndon, Virginia that was recently opened in August 2011 to provide space for up to 20 people and a lab for product demonstration. Currently, the Virginia office employs 14 people who primarily engage in sales activities, and the Colorado office employs 17 people who primarily engage in sales and engineering activities.

5. Otherwise, Fusion-io rents temporary office space in various locations. These offices provide only mailing addresses, answering services, and basic office support (such as desks, conference rooms, telephones, fax machines and copiers).

6. Fusion-io's past and present Solid State Storage ("SSS") products were designed and engineered at Fusion-io's Salt Lake City headquarters, with four exceptions: three software engineers respectively located in California, Georgia and Massachusetts, and one chief architect in Colorado. Documents relating to the design, manufacture and sale of those products are located at Fusion-io's Salt Lake City headquarters. Design and engineering of Fusion-io's next generation products continues to take place primarily at its Salt Lake City headquarters, but also takes place in Fusion-io's California and Colorado offices following recent addition of engineering capabilities in those offices. Fusion-io's SSS products are assembled by third party contractors based principally in California.

7. The design and manufacture of Fusion-io's SSS products, including the programming of controllers and layout and operation of memory units, is proprietary. These designs are unique to Fusion-io and highly confidential, and Fusion-io does not share them with competitors.

8. The core of Fusion-io's business is the manufacture and sale of its SSS products.

9. Fusion-io's marketing and financial activities are conducted and directed jointly from the corporate headquarters in Salt Lake City, Utah and its San Jose, California office. The people most knowledgeable about Fusion-io's marketing and financial operations are based in these two offices. Fusion-io's CFO, Dennis Wolf, and its Executive Vice President of Worldwide Sales, Jim Dawson, are in the San Jose, California office,

although the majority of finance and marketing staff are located in the Salt Lake City office. Documents relating to Fusion-io's marketing and financial activities are located in both the Salt Lake City and San Jose, California offices.

10. Fusion-io maintains no facilities, rented or otherwise, in Texas. Fusion-io employs 10 people in Texas who work from their homes to sell Fusion-io products and service customers based in Texas. These employees were not involved in the design, engineering and manufacture of Fusion-io's SSS products, and they are not responsible for Fusion-io's marketing and sales strategies, or its financial performance with respect to SSS products. One of these employees resides in Denton County, which I am informed is in the Eastern District of Texas. All others reside in locations which I am informed are outside the Eastern District of Texas. All of these Texas employees use Fusion-io's central servers located in Utah, and documents in their possession relating to Fusion-io's sales and marketing activities are duplicative of those located in Utah.

11. On October 24, 2011, Fusion-io hired William Hutsell as a Product Management Director for next-generation products. Mr. Hutsell currently works from his home in Houston, Texas, but had no involvement in the design, engineering or manufacturing of any past or present Fusion-io SSS products.

Executed on December 30, 2011 at Salt Lake City, Utah

_____

John Strasser
Vice President of Hardware Development
Fusion-io, Inc.

- 4 -

# EXHIBIT B

**Form 636**
**(Revised 01/06)**

Return in duplicate to:
Secretary of State
P.O. Box 13697
Austin, TX 78711-3697
512 463-5555
FAX: 512 463-5709

**Filing Fee: See Instructions**

**Certificate of Conversion**
**of a**
**Limited Liability Company**
**Converting**
**to a**
**Corporation**

This space reserved for office use.

**F I L E D**
In the Office of the
Secretary of State of Texas

**SEP 3 0 2009**

**Corporations Section**

---

## Converting Entity Information

The name of the converting limited liability company is:
Solid State Storage Solutions LLC

The jurisdiction of formation of the limited liability company is : __Wisconsin__

The date of formation of the limited liability company is: __May 5, 2007__

The file number, if any, issued to the limited liability company by the secretary of state is: _____

---

## Plan of Conversion—Alternative Statements

The limited liability company named above is converting to a: ☒ for-profit corporation
☐ professional corporation ☐ nonprofit corporation.  The name of the corporation is:

Solid State Storage Solutions, Inc.

The corporation will be formed under the laws of : __Texas__

☐ The plan of conversion is attached.

*If the plan of conversion is not attached, the following statements must be completed.*
☒ Instead of attaching the plan of conversion, the limited liability company certifies to the
following statements:

A signed plan of conversion is on file at the principal place of business of the limited liability
company, the converting entity.  The address of the principal place of business of the limited liability
company is:

| 1 South Pinckney Street, Suite 700 | Madison | WI | USA | 53703 |
|---|---|---|---|---|
| *Street or Mailing Address* | *City* | *State* | *Country* | *Zip Code* |

A signed plan of conversion will be on file after the conversion at the principal place of business of
the corporation, the converted entity.  The address of the principal place of business of the corporation
is:

| 112 North Lafayette Street | Marshall | TX | USA | 75670 |
|---|---|---|---|---|
| *Street or Mailing Address* | *City* | *State* | *Country* | *Zip Code* |

A copy of the plan of conversion will be furnished on written request without cost by the converting entity before the conversion or by the converted entity after the conversion to any owner or member of the converting or converted entity.

### Certificate of Formation for the Converted Entity

☒ The converted entity is a Texas corporation. The certificate of formation of the Texas corporation is attached to this certificate either as an attachment or exhibit to the plan of conversion, or as an attachment or exhibit to this certificate of conversion if the plan has not been attached to the certificate of conversion.

### Approval of the Plan of Conversion

The plan of conversion has been approved as required by the laws of the jurisdiction of formation and the governing documents of the converting entity.

### Effectiveness of Filing (Select either A, B, or C.)

A. ☐ This document becomes effective when the document is accepted and filed by the secretary of state.

B. ☒ This document becomes effective at a later date, which is not more than ninety (90) days from the date of signing. The delayed effective date is: _5:00 p.m. Central Time on_

_____October 1, 2009_____

C. ☐ This document takes effect upon the occurrence of the future event or fact, other than the passage of time. The 90th day after the date of signing is: _____

The following event or fact will cause the document to take effect in the manner described below:

### Tax Certificate

☐ Attached hereto is a certificate from the comptroller of public accounts that all taxes under title 2, Tax Code, have been paid by the limited liability company.

☒ In lieu of providing the tax certificate, the corporation as the converted entity is liable for the payment of any franchise taxes.

### Execution

The undersigned signs this document subject to the penalties imposed by law for the submission of a materially false or fraudulent instrument.

Date: ____September 30, 2009____

/s/ Alan R. Loudermilk
_____

Alan R. Loudermilk, Member
_____
Signature and title of authorized person on behalf of the
converting entity

Form 636                                                    2

FILED
In the Office of the
Secretary of State of Texas

SEP 3 0 2009

Corporations Section

## CERTIFICATE OF FORMATION

### FOR-PROFIT CORPORATION

### SOLID STATE STORAGE SOLUTIONS, INC.

The undersigned natural person of the age of eighteen years or more, acting as the sole incorporator of a corporation under the Texas Business Organizations Code (as amended, the "TBOC"), does hereby adopt the following Certificate of Formation for such corporation.

### ARTICLE 1

The filing entity being formed is a for-profit corporation. The name of the for-profit corporation is Solid State Storage Solutions, Inc. (the "Corporation").

### ARTICLE 2

The purpose for which the Corporation is formed is for the transaction of any and all lawful business for which a for-profit corporation may be organized under the TBOC.

### ARTICLE 3

The name of the initial registered agent of the Corporation is CT Corporation System. The business address of the registered agent and the registered office address is 350 N. St. Paul Street, Dallas, Texas 75201.

### ARTICLE 4

The total number of shares of capital stock that the Corporation shall have authority to issue is 1,002, consisting of 1,000 shares of Common Stock, par value $0.001 per share (the "Common Stock"), and two shares of Preferred Stock, par value $0.001 per share (the "Preferred Stock").

(1)     **Series A Preferred Stock.**  Two shares of Preferred Stock are designated as the Corporation's Series A Preferred Stock, par value $0.001 per share (the "Series A Preferred Stock"). The designations, preferences, limitations, and relative rights of the Series A Preferred Stock are as follows:

(a)     *Dividends and Distributions.*  The holders of shares of Series A Preferred Stock, in preference to the payment of any dividend on the Common Stock or any capital stock of the Corporation ranking junior to the Series A Preferred Stock as to payment of dividends, shall be entitled to receive dividends if, as and when declared by the board of directors of the Corporation (the "Board of Directors") equal to eighty eight percent of any dividends declared or paid on any capital stock of the Corporation, to be distributed ratably according to the number of shares of Series A Preferred Stock held by such holders.

(b)     *Voting Rights.*

(i)     So long as any shares of Series A Preferred Stock shall be outstanding, in addition to any other vote required by law or the certificate of formation of the Corporation (as it may be then amended, the "Certificate of Formation"), without first obtaining the consent or approval of the holders of more than fifty percent of the outstanding shares of Series A

Preferred Stock, voting as a separate series, given in person or by proxy at a meeting at which the holders of such shares shall be entitled to vote separately as a series, or by written consent, the Corporation shall not (and shall not permit or authorize any subsidiary to): (A) authorize, create or issue any class or series, or any shares of any class or series, of stock having any preference or priority as to voting, dividends or upon liquidation, dissolution or winding up over the Series A Preferred Stock or increase the authorized number of shares of any such class or series of stock; (B) authorize, create or issue any class or series, or any shares of any class or series, of stock ranking on parity with the Series A Preferred Stock as to dividend rights, liquidation preferences, voting rights or otherwise or increase the authorized number of shares of any such class or series of stock; (C) reclassify any shares of stock of the Corporation into shares of stock ranking senior to or on parity with the Series A Preferred Stock as to dividend rights, liquidation preferences, voting rights or otherwise, (D) authorize any security exchangeable for, convertible into, or evidencing the right to purchase any shares of stock ranking senior to or on parity with the Series A Preferred Stock as to dividend rights, liquidation preferences, voting rights or otherwise; (E) alter or change the rights, preferences or privileges of the Series A Preferred Stock; (F) increase or decrease the authorized number of shares of Series A Preferred Stock or issue shares of Series A Preferred Stock other than to holders of Series A Preferred Stock pursuant to its terms; (G) amend or waive any provision of the certification of formation or the bylaws of the Corporation in a manner adverse in any respect to the holders of Series A Preferred Stock; (H) authorize or pay any cash dividend on Common Stock or other stock ranking junior to the Series A Preferred Stock as to dividend rights or liquidation preferences; (I) redeem, repurchase, retire or otherwise acquire Common Stock or any other stock ranking junior to the Series A Preferred Stock as to dividend rights or liquidation preferences (other than any redemptions, repurchases or acquisitions made pursuant to and as required by the terms of any employee incentive or benefit plan or similar compensatory arrangement of the Corporation as in effect from time to time) or (J) increase or decrease the authorized number of directors constituting the Board to other than four members.

(ii)      So long as any shares of Series A Preferred Stock shall be outstanding, the holders of shares of Series A Preferred Stock, voting as a separate series, shall be entitled to elect two members of the Board of Directors.

(c)      *Series Vote.*  None of the following actions shall be taken by the Corporation unless approved by the holders of the Series A Preferred Stock, voting separately as a series:

(i)      borrowing of money, including making any draw downs under the Amended and Restated Revolving Credit Agreement, by and between the Corporation, SanDisk Corporation and Renesas Technology Corp.;

(ii)      creating, or holding capital stock in, any subsidiary that is not wholly owned (either directly or through one or more other subsidiaries) by the Corporation, or selling, transferring or otherwise disposing of any capital stock of any direct or indirect subsidiary of the Corporation, or permitting any direct or indirect subsidiary to effect any business combination;

(iii)      electing of the chief executive officer of the Corporation;

(iv)      making any distribution or dividend;

US 28481v4                                              2

(v)    entering into or becoming a party to any transaction with any director or shareholder of the Corporation or any person in which a director or shareholder of the Corporation may have an employment or commercial relationship as well as in respect to any affiliate of such company;

(vi)    creating, authorizing or issuing, or obligating itself to issue, additional capital stock of the Corporation and/or the purchase of capital stock of the Corporation; or

(vii)    liquidating or dissolving the Corporation.

(d)    *Reacquired Shares.* Any shares of Series A Preferred Stock purchased or otherwise acquired by the Corporation in any manner whatsoever shall be retired and canceled promptly after the acquisition thereof, and, if necessary to provide for the lawful purchase of such shares, the capital represented by such shares shall be reduced in accordance with the TBOC. All such shares shall upon their cancellation become authorized but unissued shares of Series A Preferred Stock and may not be reissued without prior approval of the remaining shareholders of the Corporation.

(e)    *Liquidation, Dissolution or Winding Up.* If the Corporation shall adopt a plan of liquidation or of dissolution, or commence a voluntary case under the Federal bankruptcy laws or any other applicable state or Federal bankruptcy, insolvency or similar law, or consent to the entry of an order for relief in any involuntary case under any such law or to the appointment of a receiver, liquidator, assignee, custodian, trustee or sequestrator (or similar official) of the Corporation or of any substantial part of its property, or make an assignment for the benefit of its creditors, or admit in writing its inability to pay its debts generally as they become due, or if a decree or order for relief in respect of the Corporation shall be entered by a court having jurisdiction in the premises in an involuntary case under the Federal bankruptcy laws or any other applicable Federal or state bankruptcy, insolvency or similar law, or appointing a receiver, liquidator, assignee, custodian, trustee, sequestrator (or other similar official) of the Corporation or of any substantial part of its property, or ordering the winding up or liquidation of its affairs, and any such decree or order shall be unstayed and in effect for a period of ninety consecutive days and on account of such event the Corporation shall liquidate, dissolve or wind up, or upon any other liquidation, dissolution or winding up of the Corporation (collectively, a "Liquidation"), the holders of shares of Series A Preferred Stock shall be entitled to receive, prior and in preference to any payment or distribution of any of the assets or surplus funds of the Corporation to the holders of the Common Stock or to the holders of any stock ranking junior to the Series A Preferred Stock as to dividend rights or liquidation preferences, an amount equal to eighty eight percent of the value of the assets or surplus funds available for distribution to all holders of stock of the Corporation to be distributed ratably according to the number of shares of Series A Preferred Stock held by such holders. After the holders of Series A Preferred Stock have recovered the full amount payable pursuant to this Section 1(d), the holders of shares of Common Stock shall be entitled to receive the remaining assets and funds of the Corporation available for distribution to all holders of stock of the Corporation to be distributed ratably according to the number of shares of Common Stock held by such holders.

(f)    *Merger or Other Business Combination.* In case of any capital reorganization or reclassification of outstanding shares of Common Stock, or in case of any consolidation or merger of the Corporation with or into another corporation, or in case of any sale or conveyance to another corporation of the property of the Corporation as an entirety or substantially as an entirety (each of the foregoing being referred to as a "Transaction"), the holders of shares of Series A Preferred Stock shall be entitled to receive eighty eight percent of the consideration

allocable to all holders of stock of the Corporation to be distributed ratably according to the number of shares of Series A Preferred Stock held by such holders. In any such transaction, the Board of Directors shall reasonably determine the fair value of any non-cash consideration

(g)     *Rank.* The Series A Preferred Stock shall rank, with respect to dividend rights and rights upon liquidation, winding up and dissolution, senior to all other classes and series of the Corporation's preferred stock authorized or outstanding and senior to all classes of Common Stock.

(h)     *Rules of Construction.* Whenever possible, each provision hereof shall be interpreted in a manner as to be effective and valid under applicable law, but if any provision hereof is held to be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating or otherwise adversely affecting the remaining provisions hereof. If a court of competent jurisdiction should determine that a provision hereof would be valid or enforceable if a period of time were extended or shortened or a particular percentage were increased or decreased, then such court may make such change as shall be necessary to render the provision in question effective and valid under applicable law.

(i)     *Conformity of Shares.* Each share of preferred stock within an individual series shall be identical in all respects with the other shares of such series, except as to the date, if any, from which dividends on such share shall accumulate and other details which because of the passage of time are required to be made in order for the substantive rights of the holders of the shares of such series to be identical.

(j)     *Prior Notice of Certain Events.* In case (whether or not such action is permitted hereunder): (i) the Corporation shall authorize the granting to all holders of Common Stock of rights or warrants to subscribe for or purchase any shares of stock of any class or of any other rights or warrants; or (ii) of any reclassification of Common Stock (other than a subdivision or combination of the outstanding Common Stock, or a change in par value, or from par value to no par value, or from no par value to par value), or of any consolidation or merger to which the Corporation is a party and for which approval of any shareholders of the Corporation shall be required, or of the sale or transfer of all or substantially all of the assets of the Corporation or of any compulsory share exchange whereby the Common Stock is converted into other securities, cash or other property; or (iii) of the voluntary or involuntary dissolution, liquidation or winding up of the Corporation; then the Corporation shall cause to be filed with the transfer agent for each series of Preferred Stock, and shall cause to be mailed to the holders of record of the applicable series of Preferred Stock, at their last addresses as they shall appear upon the stock transfer books of the Corporation, at least fifteen days prior to the applicable record date hereinafter specified, a notice stating, as the case may be, (x) the record date (if any) for the purpose of such dividend, distribution, redemption, repurchase or granting of rights or warrants or, if no record date is to be set, the date as of which the holders of Common Stock of record to be entitled to such dividend, distribution, redemption, rights or warrants are to be determined or (y) the date on which such reclassification, consolidation, merger, sale, transfer, share exchange, dissolution, liquidation or winding up is expected to become effective, and the date, if any, as of which it is expected that holders of shares of Common Stock of record shall be entitled to exchange their shares of Common Stock for securities or other property deliverable upon such reclassification, consolidation, merger, sale, transfer, share exchange, dissolution, liquidation or winding up (but no failure to mail such notice or any defect therein or in the mailing thereof shall affect the validity of the corporate action required to be specified in such notice).

*(k)*    *Remedies.*

(i)    The Corporation stipulates that the remedies at law of each holder of Preferred Stock if there is a failure in the performance of or compliance with any of the terms hereof are not and will not be adequate and that, to the fullest extent permitted by law, such terms may be specifically enforced by a decree for the specific performance of any agreement contained herein or by an injunction against a violation of any of the terms hereof or otherwise without requiring any holder to post a bond or other security except to the extent required by applicable law.

(ii)    Any holder of Preferred Stock shall be entitled to recover from the Corporation the reasonable attorneys' fees and expenses incurred by such holder in connection with enforcement by such holder of any obligation of the Corporation hereunder.

(iii)    No failure or delay on the part of any holder of Preferred Stock in exercising any right, power or remedy hereunder or under applicable law or otherwise shall operate as a waiver thereof nor shall any single or partial exercise of any such right, power or remedy preclude any other or further exercise thereof or the exercise of any other right, power or remedy hereunder or thereunder. The remedies herein provided are cumulative and not exclusive of any remedies provided by law or otherwise.

(l)    The Corporation may purchase, directly or indirectly, its own shares to the extent that may be allowed by law.

(2)    **Common Stock.**

(a)    *Priority.* All voting powers, preferences, relative participation, optional, or other special rights and privileges and qualifications, limitations, or restrictions of the Common Stock are expressly made subject and subordinate to those that may be fixed with respect to any shares of any series of Preferred Stock.

(b)    *Voting Rights.* Except as otherwise required by law or the Certificate of Formation, (i) each holder of Common Stock shall have one vote in respect of each share of stock held by such shareholder of record on the books of the Corporation for the election of directors and on all matters submitted to a vote of the shareholders of the Corporation, and (ii) the Common Stock shall vote together with all other classes and series of stock of the Corporation (including any series of Preferred Stock) as a single class on all actions to be taken by the shareholders of the Corporation.

(c)    *Dividends.* Subject to the preferential rights of any series of Preferred Stock, the holders of shares of Common Stock shall be entitled to receive, when, as, and if declared by the Board of Directors, out of the assets of the Corporation which are by law available for payment of dividends, dividends payable either in cash, in property, or in shares of capital stock.

### ARTICLE 5

The number of directors constituting the initial board of directors is four, and the names and addresses of the person or persons who are to serve as directors until the first annual meeting of shareholders or until their successors are elected and qualified are as follows:

| Name | Address |
|------|---------|
| Richard S. Chernicoff | 601 Mc Carthy Boulevard<br>Milpitas, California 95305 |
| E. Earle Thompson | 601 Mc Carthy Boulevard<br>Milpitas, California 95035 |
| Hironori Seki | Nippon Building<br>2-6-2, Ote-machi, Chiyoda-ku,<br>Tokyo 100-0004  Japan |
| Kentaro Fukuda | Nippon Building<br>2-6-2, Ote-machi, Chiyoda-ku,<br>Tokyo 100-0004  Japan |

## ARTICLE 6

No additional shares of capital stock of the Corporation shall be issued without the unanimous consent of all shareholders of the Corporation.

## ARTICLE 7

The Board of Directors is expressly authorized to amend or repeal the bylaws of the Corporation or to adopt new bylaws.

## ARTICLE 8

A director of the Corporation shall not be liable to the Corporation or its shareholders for monetary damages for an act or omission in the director's capacity as a director, except that this Article does not eliminate or limit the liability of a director to the extent the director is found liable for:

(1)     a breach of the director's duty of loyalty to the Corporation or its shareholders;

(2)     an act or omission not in good faith that constitutes a breach of duty of the director to the Corporation or an act or omission that involves intentional misconduct or a knowing violation of the law;

(3)     a transaction from which the director received an improper benefit, regardless of whether the benefit resulted from an action taken within the scope of the director's duties; or

(4)     an act or omission for which the liability of a director is expressly provided by an applicable statute.

This Article shall be deemed to incorporate by reference any future amendments to the TBOC or any other applicable law that further limit or eliminate the personal liability of directors.

Any repeal or modification of all or part of this Article by the shareholders of the Corporation shall not adversely affect any right or protection of a director of the Corporation existing at the time of such repeal or modification.

# ARTICLE 9

The Corporation shall indemnify any person who was, is or is threatened to be made a respondent in a proceeding (as hereinafter defined) because the person (1) is or was a director or officer of the Corporation or (2) while a director or officer of the Corporation, is or was serving at the request of the Corporation as a director, officer, partner, venturer, proprietor, trustee, employee, agent or similar functionary of another foreign or domestic corporation, partnership, joint venture, sole proprietorship, trust, employee benefit plan or other enterprise, to the fullest extent that a corporation may grant indemnification to a director under the TBOC, as the same exists or may hereafter be amended.  Such right shall be a contract right and as such shall run to the benefit of any director or officer who is elected and accepts the position of director or officer of the Corporation or elects to continue to serve as a director or officer of the Corporation while this Article 8 is in effect.  Any repeal or amendment of this Article 8 shall be prospective only and shall not limit the rights of any such director or officer or the obligations of the Corporation with respect to any claim arising from or related to the services of such director or officer in any of the foregoing capacities prior to any such repeal or amendment of this Article 8.  Such right shall include the right to be paid or reimbursed by the Corporation for reasonable expenses incurred in defending any such proceeding in advance of its final disposition to the maximum extent permitted under the TBOC, as the same exists or may hereafter be amended.  If a claim for indemnification or advancement of expenses hereunder is not paid in full by the Corporation within sixty days after a written claim has been received by the Corporation, the claimant may at any time thereafter bring suit against the Corporation to recover the unpaid amount of the claim, and if successful in whole or in part, the claimant shall be entitled to be paid also the expenses of prosecuting such claim.  It shall be a defense to any such action that such indemnification or advancement of costs of defense are not permitted under the TBOC, but the burden of proving such defense shall be on the Corporation.  Neither the failure of the Corporation (including its Board of Directors or any committee thereof, special legal counsel or shareholders) to have made its determination prior to the commencement of such action that indemnification of, or advancement of costs of defense to, the claimant is permissible in the circumstances nor any actual determination by the Corporation (including its Board of Directors or any committee thereof, special legal counsel or shareholders) that such indemnification or advancement is not permissible, shall be a defense to the action or create a presumption that such indemnification or advancement is not permissible.  In the event of the death of any person having a right of indemnification under the foregoing provisions, such right shall inure to the benefit of his heirs, executors, administrators and personal representatives.  The rights conferred above shall not be exclusive of any other right which any person may have or hereafter acquire under any statute, bylaw, resolution of shareholders or directors, agreement or otherwise.

The Corporation may additionally indemnify any person covered by the grant of mandatory indemnification contained above to such further extent as is permitted by law and may indemnify any other person to the fullest extent permitted by law.

As used herein, the term "proceeding" means any threatened, pending or completed action, suit or other proceeding, whether civil, criminal, administrative, arbitrative or investigative, any appeal of such an action, suit or proceeding, and any inquiry or investigation that could lead to such an action, suit or proceeding.

## ARTICLE 10

With respect to a matter for which the affirmative vote of the holders of a specified portion of the shares entitled to vote or of the shares of a class or series is required by the TBOC, the affirmative vote of the holders of a majority of the shares entitled to vote or of the shares of that class or series, as applicable, is required for shareholder action or action of the holders of shares of that class or series on that matter.

## ARTICLE 11

Except as otherwise required by law, special meetings of the shareholders of the Corporation may be called by the Chairman of the Board of Directors, the President of the Corporation, the Board of Directors, such other person or persons as may be authorized in the Corporation's bylaws, or by the holders of at least 10% of all the shares entitled to vote at the proposed special meeting.

## ARTICLE 12

The following applies to a contract or transaction between the Corporation and (1) and one or more of its directors, officers or shareholders or (2) any entity or other organization in which one or more of the Corporation's directors, officers or shareholders are directors, officers or shareholders, or have a financial interest. An otherwise valid contract or transaction is valid notwithstanding that a director or officer of the Corporation is present at or participates in the meeting of the Board of Directors or committee of the Board of Directors that authorizes the contract or transaction, or votes to authorize the contract or transaction, if: (a) the material facts as to his or her relationship or interest and as to the contract or transaction are disclosed to or are known by the Board of Directors or the committee of the Board of Directors, and the Board of Directors or committee in good faith authorizes the contract or transaction by the affirmative vote of a majority of the disinterested directors or committee members, regardless of whether the disinterested directors or committee members constitute a quorum; or (b) the material facts as to his or her relationship or interest and as to the contract or transaction are disclosed to or are known by the shareholders entitled to vote on the authorization of the contract or transaction, and the contract or transaction is specifically approved in good faith by a vote of the shareholders; or (c) the contract or transaction is fair as to the Corporation as of the time it is authorized, approved or ratified by the Board of Directors, a committee of the Board of Directors or the shareholders. Common or interested directors may be counted in determining the presence of a quorum at a meeting of the Board of Directors or of a committee which authorizes the contract or transaction.

## ARTICLE 13

Any action required by the TBOC to be taken at any annual or special meeting of shareholders, or any action which may be taken at any annual or special meeting of shareholders, may be taken without a meeting, without prior notice, and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the holders of shares having not less than the minimum number of votes that would be necessary to take such action at a meeting at which the holders of all shares entitled to vote on the action were present and voted. Prompt notice of the taking of any action by shareholders without a meeting by less than unanimous written consent shall be given to those shareholders who did not consent in writing to the taking of such action.

8

## ARTICLE 14

The Corporation renounces any interest or expectancy of the Corporation in, or in being offered an opportunity to participate in, product, licensing, and litigation opportunities that are presented to the Corporation or its officers, directors or shareholders that are not related to the licensing or litigation of the patents and patent rights assigned to the Corporation pursuant to that certain Patent Assignment and License Agreement, dated as of June 20, 2007, by and between the Corporation (as successor in interest to Solid State Storage Solutions LLC), Renesas Technology Corp., a Japanese corporation, and Sandisk Corporation, a Delaware corporation. It is expressly understood that the shareholders may seek licensing opportunities or bring litigation against potential licensees or infringers of the Corporation's or its subsidiaries' intellectual property rights without any liability to the Corporation or any other shareholder of the Corporation.

## ARTICLE 15

The name and address of the organizer is as follows:

Alan R. Loudermilk
112 North Lafayette Street
Marshall, Texas 75670

## ARTICLE 16

The Corporation is being created pursuant to a Plan of Conversion, dated September 30, 2009. The name of the converting entity is Solid State Storage Solutions LLC, a limited liability company formed under the laws of the State of Wisconsin on May 5, 2007. The address of the converting entity is 1 South Pinckney Street, Suite 700, Madison, Wisconsin 53703.

IN WITNESS WHEREOF, I have hereunto set my hand this 30th day of September, 2009.

**ORGANIZER:**

By: /s/ Alan R. Loudermilk
     Alan R. Loudermilk

# EXHIBIT C

TX2010
Ver. 1.0 05-102
(9-09/29)

# TEXAS FRANCHISE TAX PUBLIC INFORMATION REPORT

*To be filed by Corporations, Limited Liability Companies (LLCS) and Financial Institutions*

**This report MUST be signed and filed to satisfy franchise tax requirements**

■ **Tcode** 13196

| ■ Taxpayer number | ● ■ Report year | **You have certain rights** under Chapter 552 and 559, Government Code, to review, request, and correct information we have on file about you. Contact us at: (512) 463-4600, or (800) 252-1381, toll free nationwide. |
|---|---|---|
| 32040404736 | 2010 | |

Taxpayer name
SOLID STATE STORAGE SOLUTIONS, INC

Mailing address
511 N WASHINGTON AVE

| City | State | ZIP Code | Plus 4 | Secretary of State file number or Comptroller file number |
|---|---|---|---|---|
| MARSHALL | TX | 75670 | | 0801177028 |

☐ Check box if there are currently no changes from previous year; if no information is displayed, complete the applicable information in Sections A, B and C.

Principal office
511 N WASHINGTON AVE   MARSHALL TEXAS

Principal place of business
511 N WASHINGTON AVE   MARSHALL TEXAS

3204040473610

**Please sign below!** Officer, director, and member information is reported as of the date a Public Information Report is completed. The information is updated annually as part of the franchise tax report. There is no requirement or procedure for supplementing the information as officers, directors, or members change throughout the year.

## SECTION A   Name, title and mailing address of each officer, director or member.

| Name | Title | Director | Term expiration | m m d d y y |
|---|---|---|---|---|
| ALAN LOUDERMILK | CEO | ☐ Yes | | |

Mailing address | City | State | ZIP Code
511 N WASHINGTON AVE | MARSHALL | TX | 75670

| Name | Title | Director | Term expiration | m m d d y y |
|---|---|---|---|---|
| JAMES BRELSFORD | MEMBER | ☒ Yes | 033111 | |

Mailing address | City | State | ZIP Code
511 N WASHINGTON AVE | MARSHALL | TX | 75670

| Name | Title | Director | Term expiration | m m d d y y |
|---|---|---|---|---|
| See Section A Statement | | ☐ Yes | | |

Mailing address | City | State | ZIP Code

## SECTION B   Enter the information required for each corporation or LLC, if any, in which this entity owns an interest of ten percent (10%) or more.

| Name of owned (subsidiary) corporation or limited liability company | State of formation | Texas SOS number, if any | Percentage of Ownership |
|---|---|---|---|
| None | | | |
| | | | |

## SECTION C   Enter the information required for each corporation or LLC, if any, that owns an interest of ten percent (10%) or more in this entity or limited liability company.

| Name of owned (parent) corporation or limited liability company | State of formation | Texas SOS number, if any | Percentage of Ownership |
|---|---|---|---|
| None | | | |

Registered agent and registered office currently on file. *(See instructions if you need to make changes)*

**Agent:** CT CORPORATION SYSTEM

☐ Check box if you need forms to change the registered agent or registered office information.

| **Office:** | 350 N ST PAUL ST.   STE 2900 | City DALLAS | State TX | ZIP Code 75201 |
|---|---|---|---|---|

The above information is required by Section 171.203 of the Tax Code for each corporation or limited liability company that files a Texas Franchise Tax Report. Use addtional sheets for Sections A, B, and C, if necessary. The information will be available for public inspection.

I declare that the information in this document and any attachments is true and correct to the best of my knowledge and belief, as of the date below, and that a copy of this report has been mailed to each person named in this report who is an officer, director or member and who is not currently employed by this, or a related, corporation or limited liability company.

**sign here ►** | Title CEO | Date 12/12/10 | Area code 903-401-4213 (___) ___-____

## Texas Comptroller Official Use Only

| VE/DE | ○ | PIR IND | ○ |
|---|---|---|---|

1030

Form 05-102, Public Information Report
**Section A Statement**

| KENTARO FUKUDA | Title | MEMBER |

511 N WASHINGTON AVE
MARSHALL    TX    75670
| X |Yes                     Term Expiration (mmddyy)                     033111

| HIRONORI SEKI | Title | MEMBER |

511 N WASHINGTON AVE
MARSHALL    TX    75670
| X |Yes                     Term Expiration (mmddyy)                     033111

E. EARLE THOMPSON                     Title          MEMBER
511 N WASHINGTON AVE
MARSHALL    TX    75670
| X |Yes                     Term Expiration (mmddyy)                     033111

103573001279

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SOLID STATE STORAGE, SOLUTIONS, INC., | § § § | |
| Plaintiff, | § § | Case No. 2:11-CV-391 |
| v. | § § | |
| STEC, INC., OCZ TECHNOLOGY GROUP, INC., CORSAIR MEMORY, TEXAS MEMORY SYSTEMS, INC., PNY TECHNOLOGIES, INC., PATRIOT MEMORY LLC, FUSION-IO, INC., OTHER WORLD COMPUTING, INC., and MUSHKIN, INC. | § § § § § § § § | JURY TRIAL DEMANDED |
| Defendants. | § | |

## ORDER GRANTING FUSION-IO, INC.'S MOTION TO SEVER AND TRANSFER

The Court, having considered the motion, related briefing, exhibits, and declarations of the parties, FINDS that Fusion-io, Inc.'s Motion to Sever and Transfer is well taken and is GRANTED.

The claims against Fusion-io, Inc. are hereby SEVERED and TRANSFERRED to the District of Utah, Central Division.

# EX. 3

**Dkt. # 187:  Docket Control Order**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| SOLID STATE STORAGE SOLUTIONS, INC., §§§§ | |
| Plaintiff, § | CIVIL ACTION NO. 2:11-cv-391-JRG-RSP |
| v. §§§ | |
| STEC, INC., OCZ TECHNOLOGY GROUP, INC., CORSAIR MEMORY, TEXAS MEMORY SYSTEMS, INC., PNY TECHNOLOGIES, INC., PATRIOT MEMORY LLC, FUSION-IO, INC., OTHER WORLD COMPUTING, INC., and MUSHKIN, INC., §§§§§§§§§§ | |
| Defendants. § | |

## DOCKET CONTROL ORDER

In accordance with the case scheduling conference held herein on the 20th day of April, 2012, it is hereby

**ORDERED** that the following schedule of deadlines is in effect until further order of this court:

| | |
|---|---|
| July 1, 2013 | *Jury Selection - 9:00 a.m. in **Marshall, Texas** |
| June 17, 2013 | *Pretrial Conference - 9:30 a.m. in **Marshall, Texas** |
| June 12, 2013 | *Notify Court of Agreements Reached During Meet and Confer<br><br>The parties are ordered to meet and confer on any outstanding objections or motions *in limine*. The parties shall advise the Court of any agreements reached no later than 1:00 p.m. three (3) business days before the pretrial conference. |
| June 10, 2013 | *Joint Pretrial Order, Joint Proposed Jury Instructions and Form of the Verdict. |
| June 3, 2013 | ***Notice of Request for Daily Transcript or Real Time Reporting of Court Proceedings.** If a daily transcript or real |

| | time reporting of court proceedings is requested for trial, the party or parties making said request shall file a notice with the Court and e-mail the Court Reporter, Susan Simmons, at lssimmons@yahoo.com. |
|---|---|
| May 31, 2013 | **Motions in Limine**<br>The parties shall limit their motions *in limin*e to those issues which, if improperly introduced into the trial of the cause, would be so prejudicial that the Court could not alleviate the prejudice with appropriate instruction(s). |
| May 23, 2013 | Serve Objections to Rebuttal Pretrial Disclosures |
| May 17, 2013 | Serve Objections to Pretrial Disclosures; Serve Rebuttal Pretrial Disclosures |
| May 6, 2013 | Serve Pretrial Disclosures (Witness List, Deposition Designations, and Exhibit List) by the Party with the Burden of Proof |
| April 8, 2013 | *File Dispositive Motions and any other motions that may require a hearing (including *Daubert* motions)<br><br>No dispositive motion or motion to strike expert testimony (including a *Daubert* motion) may be filed after this date without leave of the Court. |
| April 1, 2013 | Deadline to Complete Expert Discovery |
| March 18, 2013 | Serve Disclosures for Rebuttal Expert Witnesses |
| February 18, 2013 | Serve Disclosures for Expert Witnesses by the Party with the Burden of Proof |
| February 8, 2013 | Deadline to Complete Fact Discovery and File Motions to Compel Discovery |
| February 11, 2013 | *Deadline to File Letter Briefs Regarding Dispositive Motions |
| February 1, 2013 | Mediation to be completed |
| January 28, 2013 | Comply with P.R. 3-7 (Opinion of Counsel Defenses) |
| January 9, 2013 | *Claim construction hearing 9:00 a.m. in **Marshall, Texas** |
| December 26, 2012 | *Comply with P.R. 4-5(d) (Joint Claim Construction Chart) |
| December 19, 2012 | *Comply with P.R. 4-5(c) (Reply Claim Construction Brief). |
| December 12, 2012 | Comply with P.R. 4-5(b) (Responsive Claim Construction Brief) |
| November 19, 2012 | Deadline for filing Motion for Summary Judgment of Indefiniteness (no letter brief required). |
| November 19, 2012 | Comply with P.R. 4-5(a) (Opening Claim Construction Brief) and Submit Technical Tutorials (if any) |
| November 19, 2012 | Deadline to Substantially Complete Document Production and Exchange Privilege Logs<br><br>Counsel are expected to make good faith efforts to produce all required documents as soon as they are available and not wait until the substantial completion deadline. |

| November 10, 2012 | Respond to Amended Pleadings |
| November 5, 2012 | Comply with P.R. 4-4 (Deadline to Complete Claim Construction Discovery) |
| October 24, 2012 | *File Amended Pleadings<br><br>It is not necessary to seek leave of the Court to amend pleadings prior to this deadline unless the amendment seeks to assert additional patents. |
| October 5, 2012 | Comply with P.R. 4-3 (Joint Claim Construction Statement). |
| ~~September 19, 2012~~ | ~~Deadline for Letter Briefs for Motions for Summary Judgment of Indefiniteness~~ |
| September 14, 2012 | Comply with P.R. 4-2 (Exchange Preliminary Claim Constructions). |
| August 24, 2012 | Comply with P.R. 4-1 (Exchange Proposed Claim Terms). |
| August 3, 2012 | Comply with P.R. 3-3 and 3-4(b) (Invalidity Contentions). |
| July 18, 2012 | Join Additional Parties |
| July 2, 2012 | Comply with P.R. 3-4(a) (Document Production) |
| June 18, 2012 | Initial Disclosures (Paragraphs 1(a)-(g) of Discovery Order) |
| May 18, 2012 | Comply with P.R. 3-1 & 3-2 (Infringement Contentions). |
| May 18, 2012 | *File Proposed Protective Order and Notice of Mediator[1] |
| May 4, 2012 | *File Proposed Docket Control Order and Proposed Discovery Order |

(*) indicates a deadline that cannot be changed without showing good cause.  Good cause is not shown merely by indicating that the parties agree that the deadline should be changed.

In the event that any of these dates fall on a weekend or Court holiday, the deadline is modified to be the next Court business day.

## ADDITIONAL REQUIREMENTS

**Notice of Mediator:**  The parties are to jointly file a notice that identifies the agreed upon mediator or indicates that no agreement was reached.  If the parties do not reach an agreement, the Court will appoint a mediator.  The parties should not file a list of mediators to be considered by the Court.

Summary Judgment Motions: Prior to filing any summary judgment motion, the parties must submit letter briefs seeking permission to filing the motion.  The opening letter brief in

---

[1] Motion filed concurrently.

each of those matters shall be no longer than five (5) pages and shall be filed with the Court no later than the deadline for filing letter briefs. Answering letter briefs in each of those matters shall be no longer than five (5) pages and filed with the Court no later than fourteen (14) days thereafter. Reply briefs in each of those matters shall be no longer than three (3) pages and filed with the Court no later than five (5) days thereafter. The Court may decide the question on the submissions or hold a hearing or telephone conference to hear arguments and to determine whether the filing of any motion will be permitted. Letter briefs shall be filed without exhibits. Any requests to submit letter briefs after the deadlines outlined above must show good cause.

**Form of the Pretrial Order and Pretrial Disclosures:** The Court will issue a standing order governing the form of the pretrial order and pretrial disclosures at least four months prior to trial. The parties may obtain a copy of the order from the Court's website at that time.

**Motions for Continuance:** The following excuses will not warrant a continuance nor justify a failure to comply with the discovery deadline:

(a)     The fact that there are motions for summary judgment or motions to dismiss pending;

(b)     The fact that one or more of the attorneys is set for trial in another court on the same day, unless the other setting was made prior to the date of this order or was made as a special provision for the parties in the other case;

(c)     The failure to complete discovery prior to trial, unless the parties can demonstrate that it was impossible to complete discovery despite their good faith effort to do so.

     **SIGNED this 15th day of June, 2012.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

# EX. 4

**Excerpt of S4 Response to Fusion Io Motion to Sever**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SOLID STATE STORAGE SOLUTIONS, INC., | § § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 2:11-CV-391-JRG-RSP |
| v. | § § | |
| STEC, INC., OCZ TECHNOLOGY GROUP, INC., CORSAIR MEMORY, TEXAS MEMORY SYSTEMS, INC., PNY TECHNOLOGIES, INC., PATRIOT MEMORY LLC, FUSION-IO, INC., OTHER WORLD COMPUTING, INC., and MUSHKIN, INC., | § § § § § § § § | JURY TRIAL DEMANDED

FILED UNDER SEAL |
| Defendants. | § | |

PLAINTIFF SOLID STATE STORAGE SOLUTIONS, INC.'S
RESPONSE TO FUSION-IO'S MOTION TO SEVER AND TRANSFER CLAIMS
TO THE DISTRICT OF UTAH

Of critical importance here is the additional rule that, as the "Federal Circuit has emphatically instructed," the "existence of duplicative suits involving the same or similar issues creates practical difficulties that will weigh heavily in favor or against transfer (in order to try duplicative suits in the same venue)." *Ctr. One v. Vonage Holdings Corp.*, No. 6:08-CV-467, 2009 U.S. Dist. LEXIS 69683, at *22 (E.D. Tex. Aug. 10, 2009); *see also Adrain*, 2009 U.S. Dist. LEXIS 86855, at *8; *Innovative Global Sys. LLC v. Tpk. Global Techs. L.L.C.*, No. 6:09-CV-157, 2009 U.S. Dist. LEXIS 105929, at *6 (E.D. Tex. Oct. 20, 2009); *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) (describing this issue as "a paramount consideration" in the transfer analysis); *Regents of Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (noting that considerations such as these "may be determinative to a particular transfer motion"). Indeed, the Supreme Court has made clear that transferring an overlapping suit to another District "leads to the wastefulness of time, energy, and money that § 1404(a) was designed to prevent." *Continental Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960).

**B. If the Court Denies the Motion for Severance, Then the Contingent Motion for Transfer Must Also Be Denied.**

As noted above, Fusion explicitly makes its motion for transfer contingent on the Court's granting of their motion for severance. Dkt. 57 at 10. That is, Fusion does not ask the Court to transfer this entire case; it simply requests that this Court sever the claims against Fusion and transfer them to the District of Utah. *Id.* And reflecting the contingent nature of its request, Fusion offers no argument or proof that any of the relevant transfer factors are satisfied with respect to any of the other Defendants in this lawsuit.

Courts in this District have frequently encountered such contingent transfer requests, and have consistently found that, "[a]fter denying [the] motion to sever, it is clear [that the] motion to transfer venue should also be denied." *Americans for Fair Patent Use, LLC v. Sprint Nextel Corp.*, No. 2:10-CV-237, 2011 U.S. Dist. LEXIS 2947, at *13 (E.D. Tex. Jan. 12, 2011); *Americans*, 2011 U.S. Dist. LEXIS 2947, at *13; *MyMail, Ltd. v. Am. Online, Inc.*, 223 F.R.D.

Dated: March 16, 2012

Respectfully submitted,

**MCKOOL SMITH, P.C.**

By: /s/ Theodore Stevenson III
Theodore Stevenson III
Lead Attorney
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
David Sochia
Texas State Bar No. 00797470
dsochia@mckoolsmith.com
Eric Hansen
Texas State Bar No. 24062763
ehansen@mckoolsmith.com
McKool Smith, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Kevin Kneupper
Texas State Bar No. 24050885
kkneupper@mckoolsmith.com
Chris Mierzejewski
Texas State Bar No. 24070270
cmierzejewski@mckoolsmith.com
300 W. 6th Street, Suit 1700
Austin, Texas 78701
Telephone: (512) 692-8700
Facsimile: (512) 692-8744

**ATTORNEYS FOR PLAINTIFFS SOLID STATE STORAGE SOLUTIONS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that the above and foregoing has been served on all counsel of record on this the 16th day of March, 2012 via email.

*/s/ Eric Hansen*
Eric Hansen

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I certify that the foregoing document and exhibits contain highly confidential information covered by the stipulation of confidentiality between Fusion-io and S4. I certify that a motion to seal is being filed concurrently in compliance with Local Rule CV-5(a)(7)(A)(1).

/s/ Eric Hansen
Eric Hansen

# EX. 5

**Dkt. # 233:  Fusion io Motion for Reconsideration**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| SOLID STATE STORAGE, SOLUTIONS, INC., | § § § | |
| Plaintiff, | § § | Case No. 2:11-CV-391-JRG-RSP |
| v. | § § | |
| STEC, INC., OCZ TECHNOLOGY GROUP, INC., CORSAIR MEMORY, TEXAS MEMORY SYSTEMS, INC., PNY TECHNOLOGIES, INC., PATRIOT MEMORY LLC, FUSION-IO, INC., OTHER WORLD COMPUTING, INC., and MUSHKIN, INC. | § § § § § § § § § | JURY TRIAL DEMANDED |
| Defendants. | § | |

**FUSION-IO, INC.'S MOTION TO RECONSIDER DENIAL IN PART OF FUSION-IO'S MOTION TO SEVER AND TRANSFER (DKT NO. 226)**

Defendant Fusion-io, Inc. ("Fusion-io") respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 54(b), for reconsideration of the Court's Order dated September 17, 2012 (Dkt. No. 226) (the "Order") denying in part Fusion-io's Motion to Sever and Transfer (Dkt. Nos. 57, 58). Under Rule 54(b), the Court may reverse its own interlocutory decisions at any time before entry of judgment "for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F. 2d 167, 185 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 n.14 (5th Cir. 1994) (en banc). "Although the precise standard for evaluating a motion to reconsider under Rule 54(b) is unclear, whether to grant such a motion rests within the discretion of the court," and, although Rule 54(b)'s standard is less exacting, "considerations similar to those under Rules 59 and 60 inform the Court's analysis." *Dos Santos v. Bell Helicopter Textron, Inc.*, 651 F. Supp. 2d 550, 553

(N.D. Tex. 2009). Thus, for example, a Court may reconsider an order to correct "a manifest error of law or fact," as appropriate under Rule 59(e) requests for reconsideration of a judgment. *See Templet v. HydroChem Inc.*, 367 F.3d 473 (5th Cir. 2004).

In its Order, the Court denied the portion of Fusion-io's motion requesting transfer to the District of Utah pursuant to 28 U.S.C. § 1404(a) without addressing any of the public and private interest factors relevant to transfer under § 1404(a), which were fully briefed in Fusion-io's motion. *See, e.g.* Dkt. No. 57 at 10–11 (discussing *In re Volkswagen of Am. Inc.* ("*Volkswagen II*"), 545 F.3d 304, 315 (5th Cir. 2008)); *id.* at 11–20 (discussing the factors). In assessing whether to transfer a case for the convenience of the parties and witnesses pursuant to 28 U.S.C. § 1404(a), a court must consider the relevant private and public interest factors incident to ruling upon a motion to transfer. *See* Dkt. No. 57 at 10–11 (discussing *In re Volkswagen of Am. Inc.* ("*Volkswagen II*"), 545 F.3d 304, 315 (5th Cir. 2008)); *id.* at 11–20 (discussing the factors).

Instead of considering the requisite factors, the Court has suggested that Fusion-io re-file the motion that it filed back in January of this year. *See* Dkt. No. 226 at 2. However, Fusion-io's Motion to Sever and Transfer expressly set forth in detail why the case against Fusion-io should be transferred after it was severed from the other claims. *See* Dkt. No. 57, Fusion-io's Motion, at 2 ("*Once severed from the other parties in this case*, the District of Utah plainly is the more convenient forum for this litigation.") (emphasis added); *id.* at 10 ("*Once severed from the other parties in this case*, the litigation between Fusion-io and S4 should be transferred to the District of Utah, Central Division.") (emphasis added). In other words, Fusion-io sought severance to facilitate the transfer of the case to a venue that is clearly more convenient for the parties and witnesses involved.

Indeed, because of this, all of the briefing already submitted to the Court on the issue of Fusion-io's request to transfer necessarily assumed severance—including S4's own briefing, which recognized that

> Fusion explicitly makes its motion for transfer contingent on the Court's granting of their motion for severance. Dkt. 57 at 10. That is, Fusion does not ask the Court to transfer this entire case; it simply requests that this Court sever the claims against Fusion and transfer them to the District of Utah. *Id.* And reflecting the contingent nature of its request, Fusion offers no argument or proof that any of the relevant transfer factors are satisfied with respect to any of the other Defendants in this lawsuit.

Dkt. No. 125, S4's Response, at 9; *see also, e.g.*, *id.* at 8 (noting same); Dkt. No. 139, Fusion-io Reply, at 3 ("Once severed, this case should be transferred to Utah.").

In short, all briefing and information relevant to the Court's analysis of the requisite factors is already before the Court. If anything, the Court's decision to sever makes transfer even more appropriate because S4's claims against Fusion-io are now a distinct civil action, which, as noted above, is the very premise underlying all of Fusion-io's briefing of the transfer issue.

Moreover, re-filing identical transfer briefing would be an inefficient use of both the parties' and the Court's resources, and the resulting delay would prejudice Fusion-io's rights and risk undermining the very purpose of § 1404. Given that this litigation is rapidly advancing toward the point in time at which the Court must consider the merits, postponing the consideration of Fusion-io's motion to transfer risks improperly rising to the level of "a failure to decide the transfer issue until a later stage of the case." *See McDonnell Douglas Corp. v. Polin*, 429 F.2d 30, 31 (3rd Cir. 1970) (noting that it was "not proper to postpone consideration of the application for transfer under § 1404(a) until discovery on the merits is completed" and stating that the district court's order denying a motion to transfer without prejudice to re-filing "should be vacated" and that the motion to transfer "should be decided"); *see also* Dkt. No. 187 at 2 (setting claim construction hearing for January 9, 2013). Indeed, because of this need to resolve

the transfer issue before the parties had expended resources and efforts on the merits of the case, Fusion-io intentionally sought transfer to the substantially more convenient District of Utah back in January of this year. *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989) ("Parties seeking a change of venue should act with reasonable promptness.").

Therefore, Fusion-io respectfully requests that the Court reconsider its denial of the transfer portion of Fusion-io's Motion to Sever and Transfer, so that it may consider the requisite factors that have already been fully briefed for the Court.

September 24, 2012

Respectfully Submitted:

/s/ Scott F. Partridge
Scott F Partridge
Lead Attorney
Texas Bar No. 00786940
Bradley Bowling
Texas Bar No. 24040555
Stephen Baehl
Texas Bar No. 24067036
BAKER BOTTS LLP
One Shell Plaza
910 Louisiana Street
Houston, TX 77002-4995
Telephone: 713-229-1569
Facsimile: 713-229-7769
Email: scott.partridge@bakerbotts.com
Email: brad.bowling@bakerbottts.com
Email: stephen.baehl@bakerbotts.com

ATTORNEYS FOR FUSION-IO

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 24, 2012, a copy of FUSION-IO, INC.'S MOTION TO RECONSIDER DENIAL IN PART OF FUSION-IO'S MOTION TO SEVER AND TRANSFER (DKT NO. 226) was served electronically, via CM/ECF, on all counsel of record.

/s/ Bradley Bowling
Bradley Bowling

# EX. 6

**Dkt. # 1:  S4 Original Complaint for Patent Infringement**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| SOLID STATE STORAGE SOLUTIONS, INC., §§§§ | |
| Plaintiff, § | CIVIL ACTION NO. 2:11-cv-391 |
| v. §§§ | |
| STEC, INC., OCZ TECHNOLOGY GROUP, INC., CORSAIR MEMORY, TEXAS MEMORY SYSTEMS, INC., PNY TECHNOLOGIES, INC., PATRIOT MEMORY LLC, FUSION-IO, INC., OTHER WORLD COMPUTING, INC., and MUSHKIN, INC., §§§§§§§§ | JURY TRIAL DEMANDED |
| Defendants. § | |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Solid State Storage Solutions, Inc. ("Plaintiff" or "S4") files this Original

Complaint for patent infringement against Defendants STEC, Inc. ("STEC"), OCZ Technology

Group, Inc. ("OCZ"), Corsair Memory ("Corsair"), Texas Memory Systems, Inc. ("TMS"), PNY

Technologies, Inc. ("PNY"), Patriot Memory LLC ("Patriot"), Fusion-io, Inc. ("Fusion") Other

World Computing, Inc. ("OWC"), and Mushkin, Inc. ("Mushkin"), (collectively, "Defendants"),

and allege as follows:

## PARTIES

1.     Plaintiff Solid State Storage Solutions, Inc. is a Texas corporation with its

principal place of business at 511 N. Washington Ave, Marshall, Texas 75670.

2.     Defendant STEC, Inc. is a California corporation with its principal place of

business at 3001 Daimler Street, Santa Ana, California 92705-5812.

3.      STEC is designing, marketing, making, using, selling, importing, and/or offering for sale solid state drives employing a controller chip and a plurality of NAND flash devices ("STEC SSD products").

4.      STEC is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for sale the STEC SSD products, including but not limited to STEC's ZeusIOPS and MACH SSD products, that infringe the patent claims involved in this action or by transacting other business in this District.  STEC may be served with process by serving its registered agent, Corporation Service Company, at 211 E. 7th Street, Suite 620, Austin, Texas 78701-3218.

5.      Defendant OCZ Technology Group, Inc. is a Delaware corporation with its principal place of business at 6373 San Ignacio Avenue, San Jose, California 95119.

6.      OCZ is designing, marketing, making, using, selling, importing, and/or offering for sale solid state drives employing a controller chip and a plurality of NAND flash devices ("OCZ SSD products").

7.      OCZ is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for sale the OCZ SSD products, including but not limited to OCZ's Vertex, Agility, and Solid series SSD products, that infringe the patent claims involved in this action or by transacting other business in this District.  OCZ may be served with process by serving its registered agent, Incorporating Services, LTD., at 3500 South DuPont Highway, Dover, DE 19901.

8.      Defendant Corsair Memory is a Delaware corporation with its principal place of business at 46221 Landing Parkway, Fremont, California 94538.

9.      Corsair is designing, marketing, making, using, selling, importing, and/or offering for sale solid state drives employing a controller chip and a plurality of NAND flash devices ("Corsair SSD products").

10.     Corsair is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for sale the Corsair SSD products, including but not limited to Corsair's Force series SSD products, that infringe the patent claims involved in this action or by transacting other business in this District.  Corsair may be served with process by serving its registered agent, Andrew J. Paul, at 46221 Landing PKWY, Fremont, CA 94508.

11.     Defendant Texas Memory Systems, Inc. is a Texas corporation with its principal place of business at 10777 Westheimer Rd. #600, Houston, Texas 77042.

12.     TMS is designing, marketing, making, using, selling, importing, and/or offering for sale solid state drives employing a controller chip and a plurality of NAND flash devices ("TMS SSD products").

13.     TMS is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for sale the TMS SSD products, including but not limited to TMS's RamSan-10/20 SSD products, that infringe the patent claims involved in this action or by transacting other business in this District.  TMS may be served with process by serving its registered agent, Holloway Frost, at 11200 Westheimer, Suite 1000, Houston, TX 77042.

14.     Defendant PNY Technologies, Inc. is a Delaware corporation with its principal place of business at 299 Webro Road, Parsippany, New Jersey 07054.

15.     PNY is designing, marketing, making, using, selling, importing, and/or offering for sale solid state drives employing a controller chip and a plurality of NAND flash devices ("PNY SSD products").

16.     PNY is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for sale the PNY SSD products, including but not limited to PNY's Optima series SSD products, that infringe the patent claims involved in this action or by transacting other business in this District.  PNY may be served with process by serving its registered agent, CT Corporation System, at 350 N. St. Paul St., Ste. 2900, Dallas, Texas 75201-4234.

17.     Defendant Patriot Memory LLC is a Delaware limited liability company with its principal place of business at 47027 Benicia Street, Fremont, California 94538.

18.     Patriot is designing, marketing, making, using, selling, importing, and/or offering for sale solid state drives employing a controller chip and a plurality of NAND flash devices ("Patriot SSD products").

19.     Patriot is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for sale the Patriot SSD products, including but not limited to Patriot's Inferno and Wildfire series SSD products, that infringe the patent claims involved in this action or by transacting other business in this District.  Patriot may be served with process by serving its registered agent, Incorporating Services, LTD., at 3500 South DuPont Highway, Dover, DE 19901.

20.     Defendant Fusion-io, Inc. is a Delaware corporation with its principal place of business at 2855 E. Cottonwood Parkway, Suite 100, Salt Lake City, Utah 84121.

21.     Fusion is designing, marketing, making, using, selling, importing, and/or offering for sale solid state drives employing a controller chip and a plurality of NAND flash devices ("Fusion SSD products").

22.     Fusion is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for sale the Fusion SSD products, including but not limited to Fusion's ioDrive series SSD products, that infringe the patent claims involved in this action or by transacting other business in this District.  Fusion may be served with process by serving its registered agent, Corporation Service Company, at 2711 Centerville Road Suite 400, Wilmington, DE 19808.

23.     Defendant Other World Computing, Inc. is an Illinois corporation with its principal place of business at 2650 Bridge Lane, Woodstock, IL 60098.

24.     OWC is designing, marketing, making, using, selling, importing, and/or offering for sale solid state drives employing a controller chip and a plurality of NAND flash devices ("OWC SSD products").

25.     OWC is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for sale the OWC SSD products, including but not limited to OWC's Mercury EXTREME SSD products, that infringe the patent claims involved in this action or by transacting other business in this District.  OWC may be served with process by serving its registered agent, Rita W. Garry, at 150 N. Michigan Ave, Suite 3300, Chicago, IL 60601.

26.     Defendant Mushkin, Inc. is a Colorado corporation with its principal place of business at 317 Iverness Way South, Suite 130, Englewood, Colorado 80112.

27.     Mushkin is designing, marketing, making, using, selling, importing, and/or offering for sale solid state drives employing a controller chip and a plurality of NAND flash devices ("Mushkin SSD products").

28.     Mushkin is doing business in the United States and, more particularly, in the Eastern District of Texas by designing, marketing, making, using, selling, importing, and/or offering for sale the Mushkin SSD products, including but not limited to Mushkin's Chronos and Callisto SSD products, that infringe the patent claims involved in this action or by transacting other business in this District.  Mushkin may be served with process by serving its registered agent Demetrios George Stathakis at 317 Iverness Way S, #130, Englewood, CO 80112.

## JURISDICTION AND VENUE

29.     This is a civil action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, including 35 U.S.C. §§ 271 and 281-285. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1338(a).

30.     Venue is proper in the Marshall Division of the Eastern District of Texas pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1400(b).

31.     This Court has personal jurisdiction over STEC.  STEC has conducted and does conduct business within the State of Texas.  STEC, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises STEC SSD products that infringe the patent claims involved in this action in the United States, the State of Texas, and the Eastern District of Texas.  STEC has purposefully and voluntarily placed one or more of its STEC SSD products into the stream of commerce with the expectation that it will be purchased by consumers in the Eastern District of Texas.  The STEC SSD products have been and continue to be purchased by consumers in the Eastern District of Texas.  STEC has

committed the tort of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas.

32.     This Court has personal jurisdiction over OCZ.   OCZ has conducted and does conduct business within the State of Texas.   OCZ, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises OCZ SSD products that infringe the patent claims involved in this action in the United States, the State of Texas, and the Eastern District of Texas.   OCZ has purposefully and voluntarily placed one or more of its OCZ SSD products into the stream of commerce with the expectation that it will be purchased by consumers in the Eastern District of Texas.   The OCZ SSD products have been and continue to be purchased by consumers in the Eastern District of Texas.   OCZ has committed the tort of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas.

33.     This Court has personal jurisdiction over Corsair.   Corsair has conducted and does conduct business within the State of Texas.    Corsair, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises Corsair SSD products that infringe the patent claims involved in this action in the United States, the State of Texas, and the Eastern District of Texas.   Corsair has purposefully and voluntarily placed one or more of its Corsair SSD products into the stream of commerce with the expectation that it will be purchased by consumers in the Eastern District of Texas.   The Corsair SSD products have been and continue to be purchased by consumers in the Eastern District of Texas.   Corsair has committed the tort of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas.

34.     This Court has personal jurisdiction over TMS.   TMS has conducted and does conduct business within the State of Texas.   TMS, directly or through intermediaries (including

distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises TMS SSD products that infringe the patent claims involved in this action in the United States, the State of Texas, and the Eastern District of Texas. TMS has purposefully and voluntarily placed one or more of its TMS SSD products into the stream of commerce with the expectation that it will be purchased by consumers in the Eastern District of Texas. The TMS SSD products have been and continue to be purchased by consumers in the Eastern District of Texas. TMS has committed the tort of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas.

35.     This Court has personal jurisdiction over PNY. PNY has conducted and does conduct business within the State of Texas. PNY, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises PNY SSD products that infringe the patent claims involved in this action in the United States, the State of Texas, and the Eastern District of Texas. PNY has purposefully and voluntarily placed one or more of its PNY SSD products into the stream of commerce with the expectation that it will be purchased by consumers in the Eastern District of Texas. The PNY SSD products have been and continue to be purchased by consumers in the Eastern District of Texas. PNY has committed the tort of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas.

36.     This Court has personal jurisdiction over Patriot. Patriot has conducted and does conduct business within the State of Texas. Patriot, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises Patriot SSD products that infringe the patent claims involved in this action in the United States, the State of Texas, and the Eastern District of Texas. Patriot has purposefully and voluntarily placed one or more of its Patriot SSD products into the stream of commerce with the expectation that it will

be purchased by consumers in the Eastern District of Texas. The Patriot SSD products have been and continue to be purchased by consumers in the Eastern District of Texas. Patriot has committed the tort of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas.

     37.    This Court has personal jurisdiction over Fusion. Fusion has conducted and does conduct business within the State of Texas. Fusion, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises Fusion SSD products that infringe the patent claims involved in this action in the United States, the State of Texas, and the Eastern District of Texas. Fusion has purposefully and voluntarily placed one or more of its Fusion SSD products into the stream of commerce with the expectation that it will be purchased by consumers in the Eastern District of Texas. The Fusion SSD products have been and continue to be purchased by consumers in the Eastern District of Texas. Fusion has committed the tort of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas.

     38.    This Court has personal jurisdiction over OWC. OWC has conducted and does conduct business within the State of Texas. OWC, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises OWC SSD products that infringe the patent claims involved in this action in the United States, the State of Texas, and the Eastern District of Texas. OWC has purposefully and voluntarily placed one or more of its OWC SSD products into the stream of commerce with the expectation that it will be purchased by consumers in the Eastern District of Texas. The OWC SSD products have been and continue to be purchased by consumers in the Eastern District of Texas. OWC has committed the tort of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas.

39.     This Court has personal jurisdiction over Mushkin.  Mushkin has conducted and does conduct business within the State of Texas.  Mushkin, directly or through intermediaries (including distributors, retailers, and others), ships, distributes, offers for sale, sells, and advertises Mushkin SSD products that infringe the patent claims involved in this action in the United States, the State of Texas, and the Eastern District of Texas.  Mushkin has purposefully and voluntarily placed one or more of its Mushkin SSD products into the stream of commerce with the expectation that it will be purchased by consumers in the Eastern District of Texas.  The Mushkin SSD products have been and continue to be purchased by consumers in the Eastern District of Texas.  Mushkin has committed the tort of patent infringement within the State of Texas and, more particularly, within the Eastern District of Texas.

## GENERAL ALLEGATIONS

40.     On March 2, 2004, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 6,701,471 ("the '471 Patent"), entitled "External Storage Device and Memory Access Control Method Thereof," to Takayuki Tamura, Shigemasa Shiota, Kunihiro Katayama, and Masashi Naito.  Solid State Storage Solutions, Inc. is the owner by assignment of the '471 Patent.

41.     On June 19, 2007, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 7,234,087 ("the '087 Patent"), entitled "External Storage Device and Memory Access Control Method Thereof," to Takayuki Tamura, Shigemasa Shiota, Kunihiro Katayama, and Masashi Naito.  Solid State Storage Solutions, Inc. is the owner by assignment of the '087 Patent.

42.     On May 10, 2010, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 7,721,165 ("the '165 Patent"), entitled "External Storage Device and Memory Access Control Method Thereof," to Takayuki Tamura, Shigemasa Shiota, Kunihiro Katayama,

and Masashi Naito. Solid State Storage Solutions, Inc. is the owner by assignment of the '165 Patent.

43. On April 9, 2002, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 6,370,059 ("the '059 Patent"), entitled "Nonvolatile Semiconductor Memory," to Masataka Kato, Tetsuo Adachi, Toshihiro Tanaka, Toshio Sasaki, Hitoshi Kume, and Katsutaka Kimura. Solid State Storage Solutions, Inc. is the owner by assignment of the '059 Patent.

44. On April 29, 2008, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 7,366,016 ("the '016 Patent"), entitled "Nonvolatile Semiconductor Memory," to Masataka Kato, Tetsuo Adachi, Toshihiro Tanaka, Toshio Sasaki, Hitoshi Kume, and Katsutaka Kimura. Solid State Storage Solutions, Inc. is the owner by assignment of the '016 Patent.

45. On June 29, 2010, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 7,746,697 ("the '697 Patent"), entitled "Nonvolatile Semiconductor Memory," to Masataka Kato, Tetsuo Adachi, Toshihiro Tanaka, Toshio Sasaki, Hitoshi Kume, and Katsutaka Kimura. Solid State Storage Solutions, Inc. is the owner by assignment of the '697 Patent.

46. On November 10, 2009, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 7,616,485 ("the '485 Patent"), entitled "Semiconductor Memory Device Having Faulty Cells," to Kunihiro Katayama, Takayuki Tamura, Satoshi Watatani, Kiyoshi Inoue, Sigemasa Shiota, and Masashi Naito. Solid State Storage Solutions, Inc. is the owner by assignment of the '485 Patent.

47. On January 22, 2002, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 6,341,085 ("the '085 Patent"), entitled "Storage Device Employing a Flash Memory," to Hajime Yamagami, Kouichi Terada, Yoshihiro Hayashi, Takashi Tsunehiro, Kunihiro Katayama, Kenichi Kaki, and Takeshi Furuno. Solid State Storage Solutions, Inc. is the owner by assignment of the '085 Patent.

48. On May 20, 2003, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 6,567,334 ("the '334 Patent"), entitled "Storage Device Employing a Flash Memory," to Hajime Yamagami, Kouichi Terada, Yoshihiro Hayashi, Takashi Tsunehiro, Kunihiro Katayama, Kenichi Kaki, and Takeshi Furuno. Solid State Storage Solutions, Inc. is the owner by assignment of the '334 Patent.

49. On February 12, 2002, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 6,347,051 ("the '051 Patent"), entitled "Storage Device Employing a Flash Memory," to Hajime Yamagami, Kouichi Terada, Yoshihiro Hayashi, Takashi Tsunehiro, Kunihiro Katayama, Kenichi Kaki, and Takeshi Furuno. Solid State Storage Solutions, Inc. is the owner by assignment of the '051 Patent.

50. On June 20, 2006, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 7,064,995 ("the '995 Patent"), entitled "Storage Device Employing a Flash Memory," to Hajime Yamagami, Kouichi Terada, Yoshihiro Hayashi, Takashi Tsunehiro, Kunihiro Katayama, Kenichi Kaki, and Takeshi Furuno. Solid State Storage Solutions, Inc. is the owner by assignment of the '995 Patent.

51. On February 5, 2008, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 7,327,624 ("the '624 Patent"), entitled "Storage Device Employing a Flash Memory," to Hajime Yamagami, Kouichi Terada, Yoshihiro Hayashi, Takashi Tsunehiro, Kunihiro Katayama, Kenichi Kaki, and Takeshi Furuno. Solid State Storage Solutions, Inc. is the owner by assignment of the '624 Patent.

52. Solid State Storage Solutions, Inc. is the owner of all rights, title, and interest in and to the '471 Patent, '087 Patent, '165 Patent, '059 Patent, '016 Patent, '697 Patent, '485 Patent, '085 Patent, '334 Patent, '995 Patent, '624 Patent, and '051 Patent ("the S4 Patents"). S4 possesses all rights to sue and recover for past and future infringement.

53.     Each of the S4 Patents is valid and enforceable.

54.     Defendants have infringed, and continue to infringe, directly, contributorily, and/or through the inducement of others, the claimed apparatuses of the S4 Patents through the NAND flash-based SSD products they make, use, import, export, sell, and/or offer for sale.

55.     S4 has been damaged as a result of Defendants' infringing conduct.  Defendants are, therefore, liable to S4 in an amount that adequately compensates S4 for Defendants' infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT I

### Infringement of the '471 Patent

56.     S4 repeats and realleges the allegations in paragraphs 1-55 as though fully set forth herein.

57.     STEC has been and is now directly infringing the S4 Patents by making, using, selling, offering for sale, importing into the United States, and/or exporting the STEC SSD products that practice or embody one or more claims of each of the S4 Patents.  STEC also has been and is now contributing to and/or inducing others, such as end users of such STEC SSD products, to directly infringe one or more claims of each of the S4 Patents.

58.     STEC indirectly infringes the S4 Patents by inducement of infringement in accordance with 35 U.S.C. § 271(b).  STEC provides STEC SSD products to consultants, companies, and/or end-user customers in the United States who, in turn, install and use the STEC SSD products.  Accordingly, STEC indirectly infringes because STEC has been and is now actively inducing others, such as end users of STEC SSD products, to directly infringe one or more claims of each of the S4 Patents.

59.     STEC also indirectly infringes the S4 Patents by contributing to infringement by consultants, companies, and/or end-user customers of STEC SSD Products, in accordance with 35 U.S.C. § 271(c), because STEC offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.  STEC's actions are in violation of one or more of the provisions of 35 U.S.C. § 271(a), (b), (c), (f), and (g).

60.     OCZ has been and is now directly infringing the S4 Patents by making, using, selling, offering for sale, importing into the United States, and/or exporting the OCZ SSD products that practice or embody one or more claims of each of the S4 Patents.  OCZ also has been and is now contributing to and/or inducing others, such as end users of such OCZ SSD products, to directly infringe one or more claims of each of the S4 Patents.

61.     OCZ indirectly infringes the S4 Patents by inducement of infringement in accordance with 35 U.S.C. § 271(b).  OCZ provides OCZ SSD products to consultants, companies, and/or end-user customers in the United States who, in turn, install and use the OCZ SSD products.  Accordingly, OCZ indirectly infringes because OCZ has been and is now actively inducing others, such as end users of OCZ SSD products, to directly infringe one or more claims of each of the S4 Patents.

62.     OCZ also indirectly infringes the S4 Patents by contributing to infringement by consultants, companies, and/or end-user customers of OCZ SSD Products, in accordance with 35 U.S.C. § 271(c), because OCZ offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or

a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use. OCZ's actions are in violation of one or more of the provisions of 35 U.S.C. § 271(a), (b), (c), (f), and (g).

63. Corsair has been and is now directly infringing the S4 Patents by making, using, selling, offering for sale, importing into the United States, and/or exporting the Corsair SSD products that practice or embody one or more claims of each of the S4 Patents. Corsair also has been and is now contributing to and/or inducing others, such as end users of such Corsair SSD products, to directly infringe one or more claims of each of the S4 Patents.

64. Corsair indirectly infringes the S4 Patents by inducement of infringement in accordance with 35 U.S.C. § 271(b). Corsair provides Corsair SSD products to consultants, companies, and/or end-user customers in the United States who, in turn, install and use the Corsair SSD products. Accordingly, Corsair indirectly infringes because Corsair has been and is now actively inducing others, such as end users of Corsair SSD products, to directly infringe one or more claims of each of the S4 Patents.

65. Corsair also indirectly infringes the S4 Patents by contributing to infringement by consultants, companies, and/or end-user customers of Corsair SSD Products, in accordance with 35 U.S.C. § 271(c), because Corsair offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce

suitable for substantial non-infringing use. Corsair's actions are in violation of one or more of the provisions of 35 U.S.C. § 271(a), (b), (c), (f), and (g).

66.     TMS has been and is now directly infringing the S4 Patents by making, using, selling, offering for sale, importing into the United States, and/or exporting the TMS SSD products that practice or embody one or more claims of each of the S4 Patents. TMS also has been and is now contributing to and/or inducing others, such as end users of such TMS SSD products, to directly infringe one or more claims of each of the S4 Patents.

67.     TMS indirectly infringes the S4 Patents by inducement of infringement in accordance with 35 U.S.C. § 271(b). TMS provides TMS SSD products to consultants, companies, and/or end-user customers in the United States who, in turn, install and use the TMS SSD products. Accordingly, TMS indirectly infringes because TMS has been and is now actively inducing others, such as end users of TMS SSD products, to directly infringe one or more claims of each of the S4 Patents.

68.     TMS also indirectly infringes the S4 Patents by contributing to infringement by consultants, companies, and/or end-user customers of TMS SSD Products, in accordance with 35 U.S.C. § 271(c), because TMS offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use. TMS's actions are in violation of one or more of the provisions of 35 U.S.C. § 271(a), (b), (c), (f), and (g).

69.     PNY has been and is now directly infringing the S4 Patents by making, using, selling, offering for sale, importing into the United States, and/or exporting the PNY SSD

products that practice or embody one or more claims of each of the S4 Patents. PNY also has been and is now contributing to and/or inducing others, such as end users of such PNY SSD products, to directly infringe one or more claims of each of the S4 Patents.

70. PNY indirectly infringes the S4 Patents by inducement of infringement in accordance with 35 U.S.C. § 271(b). PNY provides PNY SSD products to consultants, companies, and/or end-user customers in the United States who, in turn, install and use the PNY SSD products. Accordingly, PNY indirectly infringes because PNY has been and is now actively inducing others, such as end users of PNY SSD products, to directly infringe one or more claims of each of the S4 Patents.

71. PNY also indirectly infringes the S4 Patents by contributing to infringement by consultants, companies, and/or end-user customers of PNY SSD Products, in accordance with 35 U.S.C. § 271(c), because PNY offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use. PNY's actions are in violation of one or more of the provisions of 35 U.S.C. § 271(a), (b), (c), (f), and (g).

72. Patriot has been and is now directly infringing the S4 Patents by making, using, selling, offering for sale, importing into the United States, and/or exporting the Patriot SSD products that practice or embody one or more claims of each of the S4 Patents. Patriot also has been and is now contributing to and/or inducing others, such as end users of such Patriot SSD products, to directly infringe one or more claims of each of the S4 Patents.

73.     Patriot indirectly infringes the S4 Patents by inducement of infringement in accordance with 35 U.S.C. § 271(b).  Patriot provides Patriot SSD products to consultants, companies, and/or end-user customers in the United States who, in turn, install and use the Patriot SSD products.  Accordingly, Patriot indirectly infringes because Patriot has been and is now actively inducing others, such as end users of Patriot SSD products, to directly infringe one or more claims of each of the S4 Patents.

74.     Patriot also indirectly infringes the S4 Patents by contributing to infringement by consultants, companies, and/or end-user customers of Patriot SSD Products, in accordance with 35 U.S.C. § 271(c), because Patriot offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.  Patriot's actions are in violation of one or more of the provisions of 35 U.S.C. § 271(a), (b), (c), (f), and (g).

75.     Fusion has been and is now directly infringing the S4 Patents by making, using, selling, offering for sale, importing into the United States, and/or exporting the Fusion SSD products that practice or embody one or more claims of each of the S4 Patents.  Fusion also has been and is now contributing to and/or inducing others, such as end users of such Fusion SSD products, to directly infringe one or more claims of each of the S4 Patents.

76.     Fusion indirectly infringes the S4 Patents by inducement of infringement in accordance with 35 U.S.C. § 271(b).  Fusion provides Fusion SSD products to consultants, companies, and/or end-user customers in the United States who, in turn, install and use the Fusion SSD products.  Accordingly, Fusion indirectly infringes because Fusion has been and is

now actively inducing others, such as end users of Fusion SSD products, to directly infringe one or more claims of each of the S4 Patents.

77.     Fusion also indirectly infringes the S4 Patents by contributing to infringement by consultants, companies, and/or end-user customers of Fusion SSD Products, in accordance with 35 U.S.C. § 271(c), because Fusion offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use.  Fusion's actions are in violation of one or more of the provisions of 35 U.S.C. § 271(a), (b), (c), (f), and (g).

78.     OWC has been and is now directly infringing the S4 Patents by making, using, selling, offering for sale, importing into the United States, and/or exporting the OWC SSD products that practice or embody one or more claims of each of the S4 Patents.  OWC also has been and is now contributing to and/or inducing others, such as end users of such OWC SSD products, to directly infringe one or more claims of each of the S4 Patents.

79.     OWC indirectly infringes the S4 Patents by inducement of infringement in accordance with 35 U.S.C. § 271(b).  OWC provides OWC SSD products to consultants, companies, and/or end-user customers in the United States who, in turn, install and use the OWC SSD products.  Accordingly, OWC indirectly infringes because OWC has been and is now actively inducing others, such as end users of OWC SSD products, to directly infringe one or more claims of each of the S4 Patents.

80.     OWC also indirectly infringes the S4 Patents by contributing to infringement by consultants, companies, and/or end-user customers of OWC SSD Products, in accordance with

35 U.S.C. § 271(c), because OWC offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use. OWC's actions are in violation of one or more of the provisions of 35 U.S.C. § 271(a), (b), (c), (f), and (g).

81.      Mushkin has been and is now directly infringing the S4 Patents by making, using, selling, offering for sale, importing into the United States, and/or exporting the Mushkin SSD products that practice or embody one or more claims of each of the S4 Patents. Mushkin also has been and is now contributing to and/or inducing others, such as end users of such Mushkin SSD products, to directly infringe one or more claims of each of the S4 Patents.

82.      Mushkin indirectly infringes the S4 Patents by inducement of infringement in accordance with 35 U.S.C. § 271(b). Mushkin provides Mushkin SSD products to consultants, companies, and/or end-user customers in the United States who, in turn, install and use the Mushkin SSD products. Accordingly, Mushkin indirectly infringes because Mushkin has been and is now actively inducing others, such as end users of Mushkin SSD products, to directly infringe one or more claims of each of the S4 Patents.

83.      Mushkin also indirectly infringes the S4 Patents by contributing to infringement by consultants, companies, and/or end-user customers of Mushkin SSD Products, in accordance with 35 U.S.C. § 271(c), because Mushkin offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination, or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for

use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use. Mushkin's actions are in violation of one or more of the provisions of 35 U.S.C. § 271(a), (b), (c), (f), and (g).

84. Defendants' acts have caused, and unless restrained and enjoined, will continue to cause, irreparable injury and damage to S4 for which there is no adequate remedy at law. Unless enjoined by this Court, Defendants will continue to infringe the S4 Patents.

## **PRAYER FOR RELIEF**

WHEREFORE, S4 requests the following relief:

85. a judgment that Defendants and their parents, affiliates, subsidiaries, officers, agents, servants, employees, attorneys, successors, and assigns, and all those persons in active concert or participation with them, or any of them, be enjoined from making, importing, using, offering for sale, selling, or causing to be sold any product or service falling within the scope of any claim of the S4 Patents, or otherwise infringing or contributing to or inducing infringement of any claim of the S4 Patents;

86. a judgment that Defendants have directly infringed, and/or indirectly infringed by way of inducement and/or contributory infringement, the S4 Patents;

87. a judgment and order that S4 be awarded its actual damages under 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict infringement until Defendants are enjoined from further infringing activities;

88. that S4 be awarded enhanced damages pursuant to 35 U.S.C. § 284;

89. a judgment and order requiring Defendants to pay S4 pre-judgment and post-judgment interest on the damages awarded, including an award of prejudgment interest, pursuant to 35 U.S.C. § 284, from the date of each act of infringement of the S4 Patents by Defendants to

the day a damages judgment is entered, and further award of post-judgment interest, pursuant to 28 U.S.C. § 1961, continuing until such judgment is paid, at the maximum rate allowed by law;

90.     that the Court order an accounting for damages through verdict and thereafter until Defendants are enjoined from further infringing activities;

91.     a judgment and order finding this to be an exceptional case and requiring Defendants to pay the costs of this action (including all disbursements), attorneys' fees as provided by 35 U.S.C. § 285;

92.     alternatively, that the Court award a compulsory ongoing royalty, in the event that an injunction does not issue; and

93.     that S4 be awarded such other and further relief as the Court deems just and proper.

## <u>DEMAND FOR A JURY TRIAL</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, S4 demands a trial by jury on all issues triable of right by a jury.

Dated:  September 7, 2011

Respectfully submitted,

**MCKOOL SMITH, P.C.**

By:  /s/ Theodore Stevenson III
Theodore Stevenson III
Lead Attorney
Texas State Bar No. 19196650
tstevenson@mckoolsmith.com
David Sochia
Texas State Bar No. 00797470
dsochia@mckoolsmith.com
Eric Hansen
Texas State Bar No. 24062763
ehansen@mckoolsmith.com
McKool Smith, P.C.
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Telephone: (214) 978-4000
Telecopier: (214) 978-4044

Sam Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
104 E. Houston Street, Suite 300
P.O. Box 0
Marshall, Texas 75670
Telephone: (903) 923-9000
Facsimile:  (903) 923-9099

**ATTORNEYS FOR PLAINTIFFS
SOLID    STATE    STORAGE
SOLUTIONS, INC.**