IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| SMARTFLASH LLC, et al., | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:13-cv-447 |
| | § | |
| APPLE, INC., et al., | § | |
| | § | |
| **Defendants.** | § | |
| | § | |

## MEMORANDUM AND OPINION ORDER

Before the Court are defendant Apple, Inc.'s Motions to Sever and Transfer Venue (Doc. Nos. 45 & 46).  The matter has been fully briefed (Doc. Nos. 45, 46, 52, 55, 61, 62, 74 & 75). For the reasons set forth below, the motions are **DENIED**.

## BACKGROUND

Plaintiffs Smartflash LLC and Smartflash Technologies Limited filed this action against Apple, Inc., Robot Entertainment, Inc., KingIsle Entertainment, Inc., and Game Circus LLC alleging infringement of the following patents: U.S. Patent No. 7,334,720; U.S. Patent No. 7,942,317; U.S. Patent No. 8,033,458; U.S. Patent No. 8,061,598; U.S. Patent No. 8,118,221; and U.S. Patent No. 8,336,772.  Doc. No. 1 at 8–15.  Plaintiffs accuse Apple of infringement, arguing that it "makes, uses, offers to sell, sells, and/or imports Apple's Accused Instrumentalities within the United States or into the United States." *Id.* at 8.  Apple is also accused of indirectly infringing the patents-in-suit by inducing the infringement of "resellers, app developers and publishers, digital content publishers, and end-user customers." *Id.*  This includes the three other defendants who all develop apps for Apple products.

1

On October 18, 2013, Apple filed its Motion to Sever (Doc. No. 45) and its Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Doc. No. 46).  Apple contends that the joinder of Robot Entertainment, Inc., KingIsle Entertainment, Inc., and Game Circus LLC is improper, and that the case should be severed into four separate actions.  Apple also contends that the Northern District of California is a more convenient forum than the Eastern District of Texas and seeks to transfer venue pursuant to 28 U.S.C. § 1404(a).

## APPLICABLE LAW

Joinder is normally governed by Federal Rule of Civil Procedure 20.  However, in actions involving patents, joinder is governed by the Leahy–Smith America Invents Act (AIA). 35 U.S.C. § 299.  Under the AIA, accused infringers cannot be joined in one action based solely on allegations that they each have infringed the patent or patents in suit.  35 U.S.C. § 299(b). Instead, patent defendants may be joined only if:

(1) Any right to relief is asserted against the parties jointly, severally, or in the alterative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process; and

(2) Questions of fact common to all defendants or counterclaim defendants will arise in the action.

35 U.S.C. § 299(a).

"While transfer motions are governed by regional circuit law, motions to sever are governed by Federal Circuit law because joinder in patent cases is based on an analysis of the accused acts of infringement, and this issue involves substantive issues unique to patent law."  *In re EMC Corp.*, 677 F.3d 1351, 1354 (Fed. Cir. 2012).  If parties are misjoined in violation of the

2

AIA, Federal Rule of Civil Procedure 21 provides the remedy of severance.  FED. R. CIV. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party.  The court may also sever any claim against a party.").

The case law analyzing Section 299 of the AIA is still relatively limited.  But in *In re EMC 1*, the Federal Circuit did clarify the test for joinder in patent cases under Rule 20.  Courts have looked to *In re EMC* for guidance on how the Federal Circuit might address the AIA.  *See Golden Bridge Tech., Inc. v. Apple, Inc.*, No. 2:12-cv-4014-ODW, 2012 WL 3999854, at *2 (C.D. Cal. Sept. 11, 2012); *Digitech Image Technologies, LLC v. Agfaphoto Holding GmbH*, No. 8:12-cv-1153-ODW, 2012 WL 4513805, at *2 (C.D. Cal. Oct. 1, 2012); *MGT Gaming, Inc., v. WMS Gaming, Inc.*, 3:12-cv-741, 2013 WL 5755247 (S.D. Miss. Oct. 23, 2013).

In *In re EMC 1*, the Federal Circuit held that joinder is only appropriate when the accused products or processes are the same in respects relevant to the patent.  *In re EMC Corp.*, 677 F.3d at 1359.  The fact that the products are the same is not sufficient though.  *Id.*  The claims against each independent defendant must share an aggregate of operative facts.  *Id.*  This requires "shared, overlapping facts that give rise to each cause of action." *Id.*  "Unless there is an actual link between the facts underlying each claim of infringement, independently developed products using differently sourced parts are not part of the same transaction, even if they are otherwise coincidentally identical." *Id.*  This two part test is very similar to the first two prongs of the AIA. *See* 35 U.S.C. § 299(a).

Even if these requirements are met, "district courts have the discretion to refuse joinder in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness." *In re EMC,* 677 F.3d at 1360 (citing *Acevedo*, 600 F.3d 516, 521 (5th Cir. 2010)).  In reaching a conclusion, a court should "examine whether permissive

joinder would 'comport with principles of fundamental fairness' or would result in prejudice to either side." *In re Nintendo Co., Ltd.*, 2013 WL 5345899 at *5 (Fed. Cir. Sept. 25, 2013) (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000)).

## DISCUSSION

Apple does not dispute that it is properly joined with each of the app developer defendants.  Doc. No. 45 at 9.  Instead, Apple argues that the three app-developer defendants are improperly joined with each other and should be severed.[1]  *Id.* at 1.  Apple contends that once the three developers are severed from each other, the prohibition on claim splitting prevents Smartflash from maintaining three separate actions against Apple.  *Id.*  Thus, Apple's argument hinges on the joinder of the three developer defendants.

### I.       AIA Joinder Requirements

The AIA establishes a three part test for joinder of patent defendants that are not jointly or severally liable.  The right to relief must: (1) relate to the same accused product or process; (2) arise out of the same series of transactions or occurrences; and (3) there must be questions of fact common to all defendants.  35 U.S.C. § 299(a).

#### 1.   *Same Product or Process*

The first element of section 299 requires that the alleged acts of infringement relate to the same accused product or process.  35 U.S.C. § 299(a)(1).

Apple argues that the developer defendants are misjoined because they each developed different apps that perform different processes.  Doc. No. 45 at 3.  Apple contends that while there are similarities between the apps, they are insufficient to establish proper joinder under the AIA.  *Id.* at 4–5.

---

[1] The app-developer defendants have not alleged improper joinder.  Robot Entertainment, Inc. has consented to Apple's motion and the other two defendants do not oppose it.  Doc. No. 45 at 1 n.1.

Smartflash argues that joinder is proper because it sued the Defendants based on their use of the same in-application payment process.  Doc. No. 52 at 5.  According to Smartflash, this payment functionality, meets crucial limitations for a number of claims in the patents-in-suit.  *Id.* at 6.  The payment functionality is provided through Apple's Store Kit, which developers are required to use.  *Id.*  Smartflash argues that Apple's involvement ensures that the in-application payment functionality is consistent across all apps.  *Id.* at 7.  Since this functionality is integral to Smartflash's infringement claims, they contend the claims involve the same accused product or process.

Case law analyzing the "*same* product or process" requirement is still relatively scarce.  Although not interpreting section 299, *In re EMC* stated that joinder is only proper "where the accused products or processes are the same in respects relevant to the patent."  *In re EMC*, 677 F.3d at 1359.  Apple contends that all relevant portions of the product or process must be identical.  Doc. No. 61 at 2.  According to Apple, the accused Apps have additional functionality that the developers themselves must provide.  *Id.* at 3.  Smartflash responds that the 'sameness test' should be consistent with how the term is used in other aspects of patent law.  Doc. No. 52 at 4 n.3.  Smartflash proposes that if a component or step in the process meets a limitation in the claim of the asserted patent, and the process is identical across devices, the devices relate to the same product or process.  *Id.* at 5.  Additionally, Smartflash argues that even if Apple's interpretation is correct, joinder is still proper because the Defendants use Apple's Store Kit framework to infringe all elements of several claims.  *Id.* at 1–2.

It is clear that the three apps in question have additional functionality added by the developers.  It is not the entire app that is allegedly infringing though.  Smartflash alleges infringement by the in-app payment functionality that is present in each of the developer's apps.

Doc. No. 1 at ¶ 74, 86, 91.  The payment process is a component of the app software and allegedly infringes entire claims of the patents-in-suit.  Although the apps may not be identical to each other in their entirety, infringement allegations are directed to the software implementation of the in-app purchasing functionality.   The developer defendants allegedly infringe this functionality in the same way through their use the Apple Store Kit framework.  Therefore the processes are the same in "respects relevant to the patent."  *In re EMC*, 677 F.3d at 1359.  Since section 299 only requires "*any* right to relief" to be the same, there is not misjoinder if joinder is proper for one or more claims.  *See Omega Patents, LLC v. Skypatrol, LLC*, 2012 WL 2339320 (S.D. Fla. June 19, 2012).

### 2.  *Same Series of Transactions or Occurrences*

In addition to using the same process, the alleged infringement must also arise out of the same series of transactions or occurrences.  Apple argues that each sale of the accused apps is independent and therefore not part of the same transaction or occurrence.  Doc. No. 45 at 8.  Smartflash contends that the infringements do arise out of the same transaction or occurrence because they meet several of the factual considerations that the Federal Circuit outlined in *In re EMC 1*.  Doc. No. 52 at 9–10.

While the AIA added a "same product or process" requirement for joinder, the "same transaction or occurrence" requirement was always part of the Rule 20 analysis.  35 U.S.C. § 299(a); FED. R. CIV. P. 20(a)(2)(A).  To satisfy the "same transaction or occurrence" test, there must be an actual link between the facts underlying each claim of infringement.  *In re EMC*, 677 F.3d at 1359.  Patent-infringement claims against independent defendants (i.e., situations in which the defendants are not acting in concert) cannot be joined under Rule 20's transaction-or-occurrence test unless the claims of infringement asserted against each defendant share an

aggregate of operative facts.  *In re EMC Corp.*, 677 F.3d 1351, 1359 (Fed. Cir. 2012).  Even if they are coincidentally identical, independently developed products using differently sourced parts are not part of the same series of transactions or occurrences.  *In re EMC*, 677 F.3d at 1350.

The language of the AIA states that defendants may be joined if a right to relief is "asserted jointly, severally, or *in the alternative* with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences . . . ."  35 U.S.C. § 299(a) (emphasis added).  The statutory language makes it clear that the requirements for 'same transaction or occurrence' must be less stringent than what would be required for joint liability.  *TRW Inc., v. Andrews*, 534 U.S.19, 31 (2001) ("it is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (internal quotation marks omitted).  Thus the "logical relationship" between the parties does not need to be so entwined that they are working in concert.  *In re EMC,* 677 F.3d at 1356.

The Federal Circuit provided a non-exhaustive list of factors to consider when determining whether defendants share an aggregate of operative facts.  *See In re EMC*, 677 F.3d at 1359–60.  These factors include: (1) "whether the alleged acts of infringement occurred during the same time period; (2) the existence of some relationship among the defendants; (3) the use of identically sourced components; (4) licensing or technology agreements between the defendants; (5) overlap of the products' or processes' development and manufacture; (6) and whether the case involves a claim for lost profits."  *Id.* at 1359–1360.

Here the "logical relationship" between the three developers is that they are all accused of using the Store Kit framework to develop their allegedly infringing in-app payment functionality.  The developer defendants are alleged to have infringed during the same time period using

7

commonly sourced components.  Since this case is software centric, the identically sourced component is the framework that was provided by Apple's Store Kit.  In using the Apple Store Kit, the three developers share an aggregate of operative facts that link them beyond just allegedly infringing the same patent.  These are not independent actors who allegedly infringe the same patents by coincidence.  The three developers did not independently create their payment verification system.  Smartflash asserts it was done using the framework provided by Apple's Store Kit, with cooperation from Apple, to meet Apple's compatibility and standard requirements.  The common usage of Apple's Store Kit is the "actual link" between the facts underlying each claim of infringement.  *See Vertical Computer Systems, Inc. v. LG Electronics Mobilecomm U.S.A., Inc.*, No. 2:10–cv–490 JRG, 2013 WL 2241947 at *6 (finding proper joinder between independent hardware manufacturers when relevant software was sourced from the same company to meet the same compatibility requirements).

One clear requirement for the AIA's joinder analysis is that defendants should not be joined merely for infringing the same patent.  35 U.S.C. § 299(b).  Here, the Defendants share a logical relationship that distinguishes them from what Congress sought to prevent; a multitude of completely unrelated defendants joined together in one action.

### 3.  *Questions of Fact Common to All Defendants*

The parties do not appear to dispute that there will be questions of fact common to all defendants in this case.  Indeed, due to the logical relationship between the Defendants, and the overlapping issues of invalidity and claim construction, there will be common questions of fact.

## II.    Fairness Analysis

Even if the requirements for joinder are met, a court must still consider whether joining the defendants would be convenient and fair.  *In re Nintendo Co., Ltd.*, 2013 WL 5345899 at *5.

Apple contends that severance would be more efficient for each of the developer defendants since the allegations against them are much narrower than those against Apple.  Doc. No. 45 at 12.  Apple argues that joinder is not necessary for the indirect infringement claims since each defendant can be independently liable in their respective cases.  *Id.*

The rules for joinder attempt to strike a balance between efficiency and fairness to the parties.  *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1996).  Here, keeping the four defendants joined is the most efficient outcome and does not unfairly prejudice any of the parties.  While each defendant can be held independently liable for acts of indirect infringement, this outcome would only increase the chance of inconsistent results if all parties were severed.  Furthermore, while the claims against Apple might be broader, they are inherently tied to the cases against each developer through Apple's Store Kit.  Therefore discovery in the Apple case will likely be relevant to all of the developer defendants.

One fairness concern is that the joinder of a large number of claims and defendants could "deprive defendants of 'a meaningful opportunity to present individualized defenses on issues such as infringement, willfulness, and damages because each defendant will have limited opportunities to present its own defense to the jury.'"  *In re Nintendo*, 2013 WL 5345899 at *5 (citing *In re EMC*, 677 F.3d at 1355).  This is not a situation where wholly unrelated defendants have been joined through six degrees of separation.  Instead, there are four defendants who are linked through their allegedly infringing use of the same software framework.  It is not fundamentally unfair or prejudicial for these four defendants to be joined together in one action.  Therefore Apple, Inc.'s Motion to Sever (Doc. No. 51) is **DENIED**.

## MOTION TO TRANSFER VENUE

The Court now turns to Apple's motion to transfer venue.  Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  The goals of § 1404(a) are to prevent waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense.  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).  Ultimately it is within a district court's sound discretion to transfer venue under 28 U.S.C. § 1404(a), but the court must exercise its discretion in light of the particular circumstances of the case.  *Hanby v. Shell Oil Co.*, 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001); *Mohamed v. Mazda Corp.*, 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000).  The party seeking transfer of venue must show good cause for the transfer.  *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"); *In re TS Tech USA Corp.*, 551 F.3d 1320.  The moving party must show that the transfer is "clearly more convenient."  Otherwise, a plaintiff's choice of venue must be respected.  *In re TS Tech USA Corp.* 551 F.3d at 1320.

When deciding whether to transfer venue, a district court balances two categories of interests: the private interests, *i.e.*, the convenience of the litigants, and the public interests in the fair and efficient administration of justice.  *Id.* at 1319.  The private interest factors weighed by the court include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive."  *Id.*  The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the

familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflicts of laws or in the application of foreign law." *Id.*  None of the factors are dispositive on their own.  *Id.*

## DISCUSSION

Smartflash does not dispute that this case could have been brought in the Northern District of California.  Since the initial threshold has been met the Court turns to the public and private interest factors.

## A.  Private Factors

### 1.  Relative Ease of Access to Sources of Proof

Physical accessibility to sources of proof is an important private interest factor.  *In re Volkswagen II*, 545 F.3d 304 at 316.  This factor turns on which party will have the greater volume of documents relevant to the litigation and their presumed location in relation to the current and proposed venues.  *See In re Nintendo*, 589 F.3d at 1199; *In re Genetech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009); *In re Volkswagen II*, 545 F.3d at 314–15.  Documents that have been moved to a particular venue in anticipation of litigation should not be considered in the analysis.  *In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1336–73 (Fed. Cir. 2009).  The bulk of discovery material related to a party is presumed to be located at the company headquarters.  *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed Cir. 2010).

Apple argues that the relevant documents related to the research, design, development, marketing, and sales of the accused products are located in the Northern District of California. Doc. No. 46 at 7.  Apple also contends that any documents related to the prosecution of the patents-in-suit are likely located in San Francisco along with the attorneys who prosecuted them. *Id.*  Additionally, Apple argues that any documents located in this district were brought here by

Smartflash LLC for the sole purpose of litigation and should not be considered in the venue analysis. *Id.* at 7–8.

Smartflash responds that this case is not California centric, but instead one with international scope. Doc. No. 55 at 4. Smartflash argues that since the technology was developed in the United Kingdom and marketed abroad, relevant documents and witnesses will come from Europe. *Id.* Smartflash also contends that potential relevant documents and witnesses are located in Texas and fifteen other states. *Id.* at 5. Lastly, Smartflash contends that there are relevant witnesses and evidence located in this district. *Id.*

Significant sources of proof are located in both this district and the Northern District of California. Apple is headquartered in the Northern District of California. It possesses information relevant to the research, design, marketing, and sales of its products. But this is not the only relevant evidence in this case. Smartflash also alleges that Apple has induced the infringement of others, including the app developer defendants. Doc. No. 1 at ¶ 56, 59. Two of these defendants are headquartered in this district and the third is headquartered in Dallas which is in the Northern District of Texas. Additionally, Smartflash LLC's principal place of business is in the Eastern District of Texas. While the bulk of the documents for Apple might be in the Northern District of California, the other parties' documents are located in and near the Eastern District of Texas. *See In re Acer Am. Corp.*, 626 F.3d at 1256 (Finding that primary offices are likely to house potential sources of proof). Thus, this factor is neutral.

### 2. Availability of Compulsory Process

The second private interest factor for a Court to consider is the availability of compulsory process to secure the attendance of third-party witnesses. *In re Volkswagen II*, 545 F.3d at 316. This factor weighs heavily in favor of transfer if a transferee venue has "absolute subpoena

power." *Id.*   A court has "absolute subpoena power" if it has subpoena power for both depositions and for trial. *In re Hoffman-La Roche, Inc.*, 587 F.3d at 1338.

As a court in this district has recently noted, Federal Rule of Civil Procedure 45 was amended in 2013. *Virtualagility, Inc., v. Salesforce.com, Inc., et al.*, Civ. Action No. 2:13-cv-011, Doc. No. 140 at 8 (E.D. Tex. January 31, 2014).   Regardless of the trial venue, parties can now secure the depositions of non-party witnesses.   Under amended Rule 45(a)(2), a court can issue nationwide deposition subpoenas as long as the deposition is to be taken within 100 miles of the witness's residence or regular place of business.  FED. RULE CIV. P. 45(a)(2), 45(c)(1)(A). This gives parties the option to depose non-party witnesses near their residence or place of business and then present the deposition testimony at trial.  FED. R. CIV. P. 32(a)(4) (allowing a party to use the deposition of a witness if the witness is more than 100 miles from the location of the hearing or trial).

Apple identifies five relevant witnesses subject to compulsory process in the Northern District of California.  Doc. No. 46 at 8.  All five are attorneys who prosecuted the patents-in-suit.  *Id.*  Smartflash responds that these attorneys served only as local U.S. counsel and do not possess any information that is not contained in the prosecution history documents.  Doc. No. 55 at 6–7.  Additionally, Smartflash argues that subpoenaing these attorney witnesses is unlikely to be necessary since their firm currently represents Apple.  *Id.*  Smartflash also believes that employees from Gemalto S.A. will be relevant to its willfulness allegations.  *Id.* at 7.  Since Gemalto's headquarters is located in Austin, Texas, Smartflash contends its employees are likely within the trial subpoena power for this Court.  *Id.* at 7–8.  Smartflash also references former employees of the developer defendants who might live or work in the district and be relevant unwilling witnesses.  *Id.* at 8.

Neither this Court nor the Northern District of California has absolute subpoena power under Rule 45(c)(1)(A) over all the identified non-party witnesses.  The Northern District of California does have subpoena power over five prosecuting attorneys who worked on the patents-in-suit.  But, as Apple admits, at least four of these attorneys[2] work for a firm that currently represents Apple.  Doc. No. 62 at 2.  This reduces the likelihood that these witnesses will be unwilling and that compulsory process will be necessary.  Furthermore, under amended Rule 45, this Court can subpoena these witnesses for depositions.  Defendants need only arrange a location that is within 100 miles of the witnesses' work or residences.  Since the witnesses are located in the Northern District of California, along with Apple's headquarters, it should not be inconvenient for Apple to depose them.  Thus, the only difference between the two venues is whether Apple can secure live testimony from these witnesses.

Apple has not addressed how it would be prejudiced by presenting depositions instead of live testimony for these witnesses.  Any such prejudice would likely be minimal if the subject matter of their testimony is also publicly available in the prosecution history documents.  If necessary, video depositions could always be offered into evidence as an acceptable substitute.  *See Battle ex rel. Battle v. Mem'l Hosp. at Gulfport*, 228 F.3d 544, 554 (5th Cir. 2000) (finding that video depositions allow jurors to gauge a witness's attitude based on motions, facial expressions, demeanor, and voice inflections).  While there are intangible benefits to live testimony, the use of deposition testimony for these witnesses would not seriously inconvenience or prejudice Apple.

Conversely, any third party witnesses located in Austin, Texas cannot be compelled to attend trial in the Northern District of California.  While either district can subpoena these

---

[2] Smartflash contends that the fifth attorney, Jason Lohr, also works for a firm that represents Apple.  Doc. No. 75 at 3.

witnesses for depositions, this district can potentially subpoena these witnesses for trial.  FED. R. CIV. P. 45(c)(1)(B)(ii) (stating that a subpoena can command a person to attend trial in the state where they reside, are employed, or regularly transact business in person, if the person would not incur substantial expense).   Plaintiff has also referenced potential former employees of the developer defendants who may be located in the Eastern District of Texas.   Since this identification is vague, it is afforded less weight in the analysis.  *See Novelpoint Learning v. Leapfrog Enter.*, No. 6:10-cv-229, 2010 WL5068146, at *6 (E.D. Tex. Dec. 6, 2010) (stating that the Court will not base its conclusion on unidentified witnesses).   Therefore, considering the convenience of both parties, this factor is neutral.

### 3.  Cost of Attendance for Willing Witnesses

"The convenience of the witnesses is probably the single most important factor in the transfer analysis."  *In re Genentech, Inc.*, 556 F.3d at 1342.  When analyzing this factor, all parties and witnesses must be considered.  *Volkswagen I*, 371 F.3d at 204.  The Fifth Circuit has adopted a "100 mile rule" to assist with analyzing this factor.  *See In re Volkswagen I*, 371 F.3d at 204–05.  "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *Id.* at 205.  However, the "100 mile rule" should not be rigidly applied.  *See in re Genentech*, 566 F.3d at 1344.  When a witness will be required to travel "a significant distance no matter where they testify," then that witness is discounted for purposes of the "100 mile rule" analysis.  *See id.*  (discounting European witnesses in the convenience analysis between Texas and California).   Additionally, in cases where no potential witnesses are residents of the court's state, favoring the court's centrality is improper.  *Id.* at 1344.  Thus, this factor favors transfer when a "substantial number of material

witnesses reside in the transferee venue" and no witnesses reside in the transferor venue, even if the transferor venue would be more convenient for all of the witnesses.  *Id.* at 1344–45.

According to Apple, the vast majority of relevant engineers and employees work or reside in the Northern District of California.  Doc. No. 46 at 9.  Apple specifically identifies seven witnesses who have factual knowledge of the sales, design, and operations of the accused products.  *Id.*  Apple contends that travel for these witnesses would impose a significant burden since Tyler, Texas is roughly 1500 miles from the Northern District of California.  *Id.* at 10.

Smartflash also identifies several relevant witnesses.  First, Smartflash names Smartflash LLC's Chief Technical Officer, Patrick Racz.  Doc. No. 55 at 9.  Smartflash argues that the Eastern District of Texas is more convenient for Mr. Racz since he regularly conducts business here.  *Id.*  Smartflash also contends that the Eastern District is less costly for the local party and non-party witnesses.  *Id.*  Additionally, Smartflash argues that this district is more convenient for international witnesses like the inventors of the patents-in-suit.  *Id.*  Smartflash contends that these witnesses are closer to Tyler and that flights and lodging expenses for Tyler would be cheaper than the San Francisco alternatives.  *Id.* at 9–10.

Apple has shown that the Northern District of California would be more convenient for at least seven relevant witnesses.  In contrast, Smartflash has shown that this district would be more convenient for one witness, CTO Patrick Racz.  Since the international witnesses will have to travel a significant distance regardless of the venue, they are discounted for the "100 mile" rule analysis.  *See in re Genentech*, 566 F.3d at 1344.   Smartflash has also made reference to local party and non-party witnesses.  It is very likely that there are relevant local witnesses in this district working for the three app-developer defendants.  But, without knowing how many there

16

are, it is difficult to properly account for them in the analysis.  Based on the witnesses identified, this factor weighs in favor of transfer.

### 4.  Other Practical Problems

Other practical problems include those that are rationally based on judicial economy. The existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in the transfer analysis.  *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009).  Furthermore, "the existence of multiple lawsuits involving the same issues 'is a paramount consideration when determining whether a transfer is in the interest of justice.'"  *In re Vicor Corp.*, 493 Fed. App'x 59, 61 (Fed. Cir. 2012) (quoting *In re Volkswagen III*, 566 F.3d at 1351).

Defendant Apple is currently joined with three app developer co-defendants.  Two of these developer defendants are located in this district and the third is located in Dallas, Texas. Even if Apple were severed and transferred, this district would be more convenient for the developer defendants.  These claims would involve the same plaintiffs, patents, and many overlapping issues since they are accused of indirect infringement along with Apple. Transferring Apple would lead to two separate cases addressing the same issues in two different courts.

Further, there is a related case against Samsung and HTC entities.  *See Smartflash LLC v. Samsung Electronics Co., Ltd. et al*, Cause No. 6:13-cv-448 MHS-KNM.  The case against Samsung and HTC involves the same plaintiffs and patents as Apple's case.  Keeping these two cases together will preserve time and resources for the parties and promote judicial economy.  *In re EMC Corp.*, 501 Fed. App'x 973, 976 (Fed. Cir. 2013) (citing *In re Vistaprint*, 628 F.3d 1342, 1346–47; *Volkswagen III*, 566 F.3d at 1351 ("judicial economy is served by having the same

district court try the cases involving the same patents"). Accordingly, this factor weighs against transfer.

## B.  Public Interest Factors

### 1.  The Administrative Difficulties Flowing From Court Congestion

The speed with which a case can come to trial and be resolved is a factor in the transfer analysis. This factor is the most speculative and should not alone outweigh the other factors. *In re Genentech*, 566 F.3d at 1347.

Apple offers 2011 and 2012 statistics comparing the average time to trial for patent cases in this district and the Northern District of California. Doc. No. 46 at 12. Apple argues that this factor should not weigh against transfer since these statistics are unpredictable. *Id.* Smartflash responds by citing statistics showing that the average time to trial is a little over six months faster in this district than the Northern District of California. Doc. No. 55 at 13–14.

Both parties have offered competing statistics. The differences between the parties' statistics and the potential for year to year fluctuations highlight the speculative nature of this factor. Thus, this factor is neutral.

### 2.  Local Interest

"[J]ury duty is a burden that ought not be imposed upon the people of a community which has no relation to the litigation." *In re Volkswagen I*, 371 F.3d at 206 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947)). This factor analyzes the "factual connection" that a case has with the transferee and transferor venues. *Id.* Local interests that could apply to any judicial district or division in the United States are disregarded in favor of particularized local interests. *In re TS Tech*, 551 F.3d at 1321; *In re Volkswagen II*, 545 F.3d at 318

(disregarding local interest of citizens who use the widely sold product within the transferor venue in a products liability suit).

Apple argues that the Northern District of California has a strong interest in this case since it is the center of gravity for the case.  Doc. No. 46 at 12.  Apple contends that this factor should weigh in favor of transfer since Smartflash's allegations call into question the work and reputation of Apple and its employees.  *Id.* at 13.

Smartflash responds that it has sued three local defendants along with Apple.  Doc. No. 55 at 14.  Smartflash argues that this case calls these defendants' work into question as much as Apple's.  *Id.* at 14–15.

Both districts have a specific local interest in this case.  While Apple's headquarters is in the Northern District of California, two of the developer defendants are located in this district.  Smartflash alleges claims of infringement against both defendants.  Furthermore, the indirect infringement claims against Apple are centered on its conduct with these developer defendants.  Since there are defendant headquarters and employees in both districts, this factor is neutral.

### 3.  Remaining Public Factors

The remaining two public factors, familiarity of the forum with governing law and conflicts of law, are not disputed by the parties.  Accordingly, these factors are neutral.

## CONCLUSION

For the reasons stated above, Apple's Motion to Sever (Doc. No. 45) is **DENIED**.  Additionally, Apple has failed to show that transfer of this case to the Northern District of California is clearly more convenient for the parties and witnesses.  One factor weighs in favor of transfer, one factor weighs against transfer, and the rest are neutral.  Severing and transferring Apple would result in serious inefficiencies in judicial economy.  Alternatively, transferring all

19

four defendants in this case would be convenient for Apple, but would result in the three co-defendants being transferred from a more convenient venue.  Thus, the Northern District of California is not clearly more convenient for all parties.  Therefore, Apple's Motion to Transfer Venue Pursuant to 28 U.S.C. § 1404(a) (Doc. No. 46) is **DENIED**.  Apple's Motion to Stay (Doc. No. 98) and Motion for Hearing on Motion to Stay (Doc. No. 115) are **DENIED** as **MOOT**.

So ORDERED and SIGNED this 4th day of April, 2014.

K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE