IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| SMARTFLASH LLC, *et al.*, <br><br> Plaintiffs, <br> v. <br><br> APPLE INC., *et al.*, <br><br> Defendants. | Case No. 6:13-CV-00447-KNM <br><br> JURY TRIAL DEMANDED |
| SMARTFLASH LLC, *et al.*, <br><br> Plaintiffs, <br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., *et al.*, <br><br> Defendants. | Case No. 6:13-CV-00448-KNM <br><br> JURY TRIAL DEMANDED |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO REPORT AND RECOMMENDATIONS REGARDING CLAIM CONSTRUCTION AND INDEFINITENESS**

Defendants rehash rejected claim construction and indefiniteness positions and do not identify any error in the *Markman* Opinion. Accordingly, Smartflash respectfully requests that the Court reject Defendants' objections and adopt Judge Mitchell's recommendations.

## I. Judge Mitchell properly construed "payment data."

Judge Mitchell properly considered the intrinsic evidence while Defendants ignore the clear language of the claims and cling to cherry-picked portions of preferred embodiments to support their non-infringement positions.[1] As Judge Mitchell recognized, nothing in the intrinsic evidence prohibits identification data itself from being used as payment data. A single component (*e.g.*, code to provide user identification that is also used to make a payment) may satisfy multiple claim elements (*e.g.*, code to provide identification data and code to provide payment data). *See, e.g.*, *Cannon Rubber Ltd. v. First Years, Inc.*, 163 F. App'x 870, 877 (Fed. Cir. 2005). Defendants misread claim 12 of the '598 patent. Claim 12 features code to provide payment comprises code providing *one or both* of payment data or identification data—meaning that code providing just identification data satisfies the code providing payment. Additionally, Defendants' late indefiniteness challenges based on "payment data" should be rejected.[2]

## II. Judge Mitchell properly construed "payment validation system."

Judge Mitchell explicitly addressed the one five-line portion of the specification (8:21-25) that Defendants have repeatedly used to argue that a payment validation system must also be capable of authorizing a payment. As Judge Mitchell recognized, neither the specification nor

---

[1] For example, claim 30 of the '772 patent requires code to transmit payment data in response to a user selection, such that the payment can occur in the future. Defendants' proposal eliminates the prospect that payment data is for or reflects a future payment as in claim 30 and other claims.

[2] Defendants in both cases have moved to amend their invalidity contentions to add indefiniteness theories for the "data carrier" and "payment data" terms, which were construed and are not indefinite. Defendants have not yet been granted leave to add those theories. *See* 6:13-cv-447, Dkt. Nos. 200, 213, 224, 237; 6:13-cv-448, Dkt. Nos. 232, 254, 271, 285.

1

the claims require every claimed embodiment to feature a payment validation system that also necessarily authorizes. In fact, the specification discloses an embodiment where only validation occurs, thus allowing a purchase on credit, and actual payment occurs at some later time. *See* Opinion at 13 (citing to 23:22-33). Defendants accuse Judge Mitchell of misinterpreting the specification but do not explain how their "clarifying" disclosures are related to the embodiment cited by Judge Mitchell. Additionally, Defendants attach undue significance to some objectives recited in the specification, but as Judge Mitchell recognized, claims are not required to be construed in a way that limits them to structures capable of achieving all of the objectives. *See Liebel-Flarsheim Co. v. Medrad, Inc.,* 358 F.3d 898, 908 (Fed. Cir. 2004).[3]

## III. Judge Mitchell properly construed "payment validation data."

The 447 Defendants did not object to the construction for "payment validation data," and thus, this construction controls in the 447 case and should be adopted in the 448 case. Defendants' proposal for "payment validation data" is flawed for reasons described for "payment validation system"—payment validation data is not required to represent payment authorization.

## IV. Judge Mitchell properly construed the memory terms.

Defendants' objections to these terms rely on their rejected prosecution history disclaimer arguments. Defendants want content data to be stored "physically separate" from non-content data. The applicant never argued about "physically separate" storage, and the prosecution history statements plainly do not rise to the level of clear and unmistakable disclaimer that would justify Defendants' proposal. At worst, the statements are subject to more than one reasonable interpretation, none necessitating Defendants' "physically separate" limitation. Judge Mitchell fully considered the relevant prosecution history and identified the argument that the applicants

---

[3] For example, claim 12 of the '317 patent recites an "electronic payment system for *confirming payment*." (emphasis added). Other claims recite a payment validation system that returns payment validation data without further requirements. *See, e.g.*, claim 3 of '720 patent.

actually made—that the electronic signature of *Hiroya* was not a "use rule." Even Defendants' example of "separateness" does not match up with their requirement that content data be stored physically separate from non-content data. Defendants claim that alleged payment data and use rules in *Hiroya* were stored in different memory areas, but neither is content data, so this example has no bearing on Defendants' proposal and does not establish disclaimer.

V. **Judge Mitchell properly construed "data carrier" and "portable data carrier."**

Many of Defendants' "data carrier" arguments extend from their flawed prosecution disclaimer argument and should be rejected for the reasons described above. Judge Mitchell did not err in finding that a data carrier was not limited to having two separate memories.

The patents did not "exclusively" disclose a "sole" embodiment of a data carrier as a removable smart card or IC card that was distinct from other devices. The specification discloses a smart card embodiment of a data carrier (*i.e.*, "smart Flash card" or "SFC"); however, as Judge Mitchell recognized, the specification also discloses that a data carrier can be integrated into a data access terminal. *See* Opinion at 21-22 (citing 16:1-10, 4:43-44). Defendants insist that an integrated data carrier must nonetheless be removable or separable. This position is untenable—Defendants are essentially redefining "integrated" to mean "encased."[4] The specification provides express examples of a data carrier as conventional storage media. *See, e.g.*, 18:36-38 ("ROM chip or disk"). Defendants' reliance on Figure 9 is misplaced—Figure 9 depicts one particular embodiment of a portable data carrier, not all data carriers.[5] Defendants' "interfacing" requirement should not be imported into the construction. Judge Mitchell did not err by construing the term "portable data carrier" to have its plain meaning in light of the construction

---

[4] "An integrated data carrier would be contrary to the idea of a removable card." Opinion at 22.

[5] Figure 9 "shows a schematic diagram of components of a portable data carrier 202, *in the embodiment show a so-called 'smart Flash card*.'" *See* 17:23-25 (emphasis added).

3

of the term "data carrier." Furthermore, Judge Mitchell already rejected Defendants' reliance on extrinsic evidence of (micharacterized) inventor testimony and corporate documents because extrinsic evidence is of low probative weight for claim construction. The cited extrinsic evidence cannot override the strong intrinsic evidence to the contrary. As with "payment data," Defendants' late indefiniteness arguments about the "data carrier" construction should be rejected.

VI. **Judge Mitchell properly construed "use rule(s)" / "use rule(s) data" / "data use rule data," "access rule(s)," and "use status data."**

Defendants' objections to these terms rely on their flawed prosecution disclaimer argument and should be rejected for the reasons described above. Judge Mitchell did not err in finding that use rules, use rules data, data use rule data, access rules, and use status data were not required to be stored separately from content data. Furthermore, Defendants' attempt to import a limitation restricting use status data to past use is contrary to express examples in the intrinsic evidence. Judge Mitchell explained that the specification gives examples of use rules that do not depend on past use and also appropriately noted that the claims make clear that those use rules must be compared against something (*i.e.*, use status data) to be operative.

VII. **Judge Mitchell properly determined that '772 patent, claim 26 was definite.**

The 447 Defendants did not object to Judge Mitchell's determination that the term "said code to control access" does not render claim 26 of the '772 patent invalid. Thus, this determination controls in the 447 case and should be adopted in the 448 case. Judge Mitchell also found an implicit antecedent basis for this term ("code to evaluate"). The 448 Defendants do not explain why the implicit antecedent basis was not proper. Rather, they restate their *Markman* arguments and accuse Judge Mitchell of violating canons of claim construction and common sense. However, Defendants misread claim 25 and cannot accept that the code terms at

4

issue are not mutually exclusive in claim 6 (*e.g.*, claim 6 uses "comprising"). Defendants also ignore that claim 25's "code to control access" and "code to evaluate" are the only two code elements that relate to permitting access to the second selected one or more items of content.

**VIII.   Judge Mitchell properly determined 35 U.S.C. § 112 ¶6 and indefiniteness issues.**

The challenged "processor" or "code" terms do not use "means," and Defendants fail to overcome the presumption that § 112 ¶ 6 does not apply to these terms. Defendants' same cited cases are not as persuasive or applicable as other cases from this District where Courts did not apply § 112 ¶ 6 to terms like "computer code," "program code," or "processor." *See* Opinion at 33-35. For example, Defendants suggest that the *Personal Audio* case (regarding a processor) is the most applicable to the facts in this case but ignore the *Wi-Lan* case (regarding a processor) cited by Judge Mitchell. Additionally, the asserted claims tie the "processor" or "code" to its description or operation such that the terms are not mere nonce words.[6] Defendants misapply the *Aristocrat* line of cases regarding § 112 ¶ 6. As *Apple v. Motorola* explained, and as Judge Mitchell noted, the second prong of *Aristocrat* (finding an algorithm or structure) does not automatically apply when a claim is not drafted in means-plus-function format. Defendants, however, assume that § 112 ¶ 6 applies and then use the second prong of *Aristocrat* to argue that a general-purpose processor is not sufficient to disclose structure. But the asserted claims, themselves, recite sufficient structure such that the first prong of *Aristocrat* does not apply in the first instance, thereby obviating Defendants' self-fulfilling search for "lack of structure." Also, Defendants suggest Judge Mitchell erred by not considering *Alice Corp. v. CLS Bank*, but *Alice* related to subject matter eligibility under § 101, not means-plus-function under § 112 ¶ 6.

---

[6] In prior litigation, Apple and Samsung did not even content that § 112 ¶ 6 applied to terms such as "processor for." *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co. Ltd.*, 5:11-cv-1846, Dkt. No. 394 (N.D. Cal.) ("processor for" in Apple patent 6,493,002); *Apple Inc. v. Samsung Elecs. Co. Ltd.*, 5:12-cv-630, Dkt. No. 300-1 (N.D. Cal.) ("processor for" in of Apple patent 5,946,647).

5

DATED: October 27, 2014   Respectfully submitted,

**CALDWELL CASSADY & CURRY**

_____
Bradley W. Caldwell
Texas State Bar No. 24040630
Email: bcaldwell@caldwellcc.com
Jason D. Cassady
Texas State Bar No. 24045625
Email: jcassady@caldwellcc.com
John Austin Curry
Texas State Bar No. 24059636
Email: acurry@caldwellcc.com
Hamad M. Hamad
Texas State Bar No. 24061268
Email: hhamad@caldwellcc.com
Justin T. Nemunaitis
Texas State Bar No. 24065815
Email: jnemunaitis@caldwellcc.com
**CALDWELL CASSADY CURRY P.C.**
2101 Cedar Springs Road, Suite 1000
Dallas, Texas 75201
Telephone: (214) 888-4848
Facsimile: (214) 888-4849

T. John Ward
Texas State Bar No. 20848000
Email: tjw@wsfirm.com
T. John Ward, Jr.
Texas State Bar No. 00794818
Email: jw@wsfirm.com
Claire Abernathy Henry
Texas State Bar No. 24053063
claire@wsfirm.com
**Ward & Smith Law Firm**
P.O. Box 1231
1127 Judson Road, Suite 220
Longview, Texas 75606
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

**ATTORNEYS FOR PLAINTIFFS SMARTFLASH, LLC AND SMARTFLASH TECHNOLOGIES LIMITED**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who have consented to electronic service on this 27th day October, 2014.  Local Rule CV-5(a)(3)(A).


                                                     */s/ Bradley W. Caldwell*
                                                     Bradley W. Caldwell