IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| SMARTFLASH LLC, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:13-CV-447 |
| | § | |
| APPLE, INC., et al., | § | |
| | § | |
| Defendants. | § | |

| | | |
|---|---|---|
| SMARTFLASH LLC, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:13-CV-448 |
| | § | |
| SAMSUNG ELECTRONICS CO. LTD, et al., | § | |
| | § | |
| Defendants. | § | |

## REPORT AND RECOMMENDATION

Defendants filed Motions for Summary Judgment of Invalidity Under 35 U.S.C. §§ 102, 103 (6:13CV447, Doc. No. 270, 6:13CV448, Doc. No. 325). For the reasons set forth below, the Court recommends the Motions be **DENIED**.

## BACKGROUND

Plaintiffs Smartflash LLC and Smartflash Technologies Limited (collectively "Smartflash") filed these actions against Apple, Inc. ("Apple"), Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Telecommunications America, LLC (collectively "Samsung"), HTC Corporation, HTC America, Inc., and Exedea, Inc. (collectively "HTC") (collectively "Defendants") alleging infringement of the following patents: U.S. Patent No.

7,334,720; U.S. Patent No. 7,942,317; U.S. Patent No. 8,033,458; U.S. Patent No. 8,061,598; U.S. Patent No. 8,118,221; and U.S. Patent No. 8,336,772.[1]

The asserted patents share a common specification. The patents generally relate to a system in which consumers use mobile devices to gain access to digital content from websites. One of the primary goals of the patents is to provide access to data while reducing piracy.

U.S. Patent No. 6,389,538 ("Gruse") discloses an electronic commerce system that delivers digital content over communications networks. Defendants primary rely on Gruse as invalidating prior art. The Gruse abstract provides a basic explanation of the technology disclosed:

> A system for tracking usage of digital content on user devices. Electronic stores coupled to a network sell licenses to play digital content data to users. Content players, which receive from the network the licensed content data, are used to play the licensed content data. Additionally, a logging site that is coupled to the network tracks the playing of the content data. In particular, the logging site receives play information from the network, and the play information includes the number of times that the content data has been played by the associated content player. Also provided is a method for tracking usage of digital content on user devices. According to the method, a license to play digital content data is sold to a user, and the licensed content data is transmitted to a content player for the user. Further, information is transmitted to a logging site whenever the content data is played by the content player or copied from the content player to an external medium so that usage of the licensed content data can be tracked.

U.S. Patent Application No. 0809221("Poggio") discloses a virtual vending machine for the distribution of licensed electronic data over distributed computer system. U.S. Patent No. 6,223,291 ("Puhl") discloses an electronic commerce system that manages digital licenses over a wireless network. Defendants rely on Poggio and Puhl in combination with Gruse for invalidity for obviousness.

---

[1] The asserted claims across both cases include the following: Claims 1, 13, 14, and 15 of the '720 Patent; Claim 18 of the '317 Patent; Claims 8, 10, and 11 of the '458 Patent; Claims 2, 7, 15, and 31 of the '598 Patent; Claims 2, 11, and 32 of the '221 Patent, and Claims 5, 10, 14, 22, 26, and 32 of the '772 Patent.

# APPLICABLE LAW

Federal Rule of Civil Procedure 56(a) provides for summary judgment when "there is no genuine dispute as to any material fact." A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When the summary judgment movants demonstrate the absence of a genuine dispute over any material fact, the burden shifts to the non-movant to show there is a genuine factual issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). A court must draw all reasonable inferences in favor of the non-moving party. *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1378 (Fed. Cir. 2007).

*Anticipation*

A patent is entitled to a presumption of validity, and an accused infringer must prove invalidity by clear and convincing evidence. *Metabolite Labs., Inc. v. Lab. Corp.*, 370 F.3d 1354, 1365 (Fed. Cir. 2004).

> A person shall be entitled to a patent unless—
> . . . .
>
> **(e)** the invention was described in (1) an application for patent, published under section 122(b), by another filed in the United States before the invention by the applicant for patent or (2) a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent, except that an international application filed under the treaty defined in section 351(a) shall have the effects for the purposes of this subsection of an application filed in the United States only if the international application designated the United States and was published under Article 21(2) of such treaty in the English language;

35 U.S.C. § 102.

To invalidate patent claims based on prior art, the challenger to the patent must show by clear and convincing evidence that the earlier invention is prior art under § 102 and the earlier invention includes all elements of the claims at issue. *Netscape Communications Corp. v. Konrad*, 295 F.3d 1315, 1320 (Fed. Cir. 2002). Anticipation is a question of fact. *Apple Computer, Inc. v. Articulate Sys., Inc.*, 234 F.3d 14, 20 (Fed. Cir. 2000).

*Obviousness*

A patent is invalid under 35 U.S.C. § 103(a) "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art ("PHOSITA") to which said subject matter pertains." Obviousness under § 103(a) is a question of law based on underlying facts. *Winner Int'l Royalty Corp. v. Want*, 202 F.3d 1340, 1348 (Fed. Cir. 2000). Factual inquiries necessary for establishing obviousness include:

> (1) the scope and content of the prior art; (2) the differences between the claimed invention and the prior art; (3) the level of ordinary skill in the art; and (4) any relevant secondary considerations

*Dystar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*, 464 F.3d 1356, 1360 (Fed. Cir. 2006) (citing *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17–18 (1966)). Summary judgment of obviousness is appropriate if "the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 427 (2007).

## DISCUSSION

*Anticipation and Obviousness in view of Gruse*

Defendants argue they established a *prima facie* case of invalidity for Claim 1 of the '720 patent, Claims 2, 15, and 31 of the '598 Patent, and Claims 8 and 11 of the '458 Patent in view of Gruse, and assert that Smartflash offered no rebuttal as to those six claims. 6:13CV447, Doc. No. 270 at 6–7. According to Defendants, Smartflash's technical expert, Dr. Jones, simply identifies five terms[2] in his rebuttal not disclosed by Gruse. *Id.* Defendants assert that summary judgment is warranted for four of the above claims because the claims (Claim 1 of the '720 Patent, Claim 31 of the '598 Patent, Claims 8 and 11 of the '458 Patent) do not include any of those terms. *Id.* at 7. For the other two claims (Claims 2 and 15 of the '598 Patent), Defendants point out the only term that Gruse does not disclose is "portable data carrier" but contend the limitations are otherwise disclosed by Gruse. *Id.* Defendants assert that Dr. Jones's contention that "portable data carrier" requires "downloading, purchasing, and other communications capabilities" is wrong and inconsistent with the Court's claim construction.[3] *Id.*

Smartflash responds by disputing several basic facts that form the basis of Defendants' arguments, including several alleged "errors" in the description of Gruse and the characterization of Dr. Jones's report as only asserting five terms that were not disclosed in Gruse. 6:13CV447, Doc. No. 293 at 5–7. Smartflash points out that Claims 8 and 10 of the '458 Patent and Claim 22 of the '772 Patent are only asserted in the 6:13CV447 case ("the Apple case") where Defendants have elected not to assert Gruse as a stand-alone reference. *Id.* at 7. According to Smartflash,

---

[2] Dr. Jones contended that Gruse does not disclose five terms: (1) payment data; (2) payment validation data; (3) at least one access rule . . . dependent upon the amount of payment associated with the payment data forwarded to the payment validation system; (4) supplementary data; (5) handheld multimedia terminal, a portable data carrier or data access terminal integrated with a mobile communications device and audio/video player. *Id.* at 6.

[3] The Court construed "portable data carrier" to have plain meaning in light of the Court's construction of "data carrier" as a "medium capable of storing information." 6:13CV447, Doc. No. 229 at 22–23.

those claims cannot present evidence of invalidity by anticipation. *Id.* Smartflash further asserts that Defendants provide no evidence of anticipation by Gruse for Claim 15 of the '595 Patent. 6:13CV447, Doc. No. 293 at 1.

1. Payment Data

As to "payment data," Defendants argue that Gruse teaches that limitation by use of a credit card to pay for content. 6:13CV447, Doc. No. 270 at 8. Further, Defendants argue that Dr. Jones confirmed that a credit card number can be "payment data" which is stored in memory at least temporarily when a user enters it via a web portal and can be part of an "Order SC."[4] *Id.* Moreover, Defendants contend that the data is both read from a "data carrier" and "responsive to said first user selection" because the data is stored and transmitted from the user device in response to a user's purchase selection. 6:13CV447, Doc. No. 313 at 1.

Smartflash contends that Gruse's disclosure of entering credit card information into a website cannot satisfy the "payment data" limitation because the claims require that payment data be read from the data carrier or transmitted in response to user selection, and Defendants fail to show how an Order SC is not just a web form. 6:13CV447, Doc. No. 293 at 8. Smartflash continues that the mere fact that a computer may temporarily record keystrokes—as Dr. Jones testified—as it transmits them to a website does not make it a "data carrier". *Id.* at 9. Smartflash further argues that Dr. Jones's "trivially true" statements that "temporary memory" "could potentially be considered a data carrier" fail to support the invalidity theories because the claims require payment data to be read from a data carrier rather than inputted by a user. *Id.*

---

[4] SC stands for Secure Container, which is a central concept of Gruse. *See* Gruse col. 10:4–33. "Secure Containers are used to distribute encrypted content and information among the system components." *Id.*

2. Payment validation data

As to "payment validation data," Defendants contend Gruse discloses two embodiments where content is received in response to receiving "payment validation data": (1) the Electronic Store; and (2) the Clearinghouse. 6:13CV447, Doc. No. 270 at 9.

In the first embodiment, the Electronic Store creates a Transaction Secure Container ("Transaction SC") that includes a Transaction ID assigned by the store. *Id.* This Transaction SC is returned when the Electronic Store authorizes the credit card. *Id.* The Transaction SC is then transmitted to the user device where an Order SC is created to facilitate downloading and retrieval of the purchased content on the user device. *Id.*

In the second embodiment, the Clearinghouse performs financial settlement and receives an Order SC from the user device that includes "Encrypted Credit Card Info" to make the purchase. *Id.* If (only if) the Order SC is processed successfully, the Clearinghouse returns a License SC to the user device, which is used to request content from the hosting facility. *Id.* at 10. Defendants contend the License SC is "payment validation data." *Id.* In both embodiments, the License SC and Transaction SC are returned only if credit card information is authorized for payment. *Id.*

Smartflash argues that under Defendant's Electronic Store invalidity theory, they fail to show that Gruse discloses retrieval of content "responsive to" the Transaction SC. 6:13CV447, Doc. No. 293 at 9. Smartflash asserts instead that Gruse teaches that the user device receives a Transaction SC and then prepares to send an Order SC. *Id.* at 10. According to Smartflash the Clearinghouse then checks the Order SC and then either returns a License SC or an error message depending on if the user's device complies with the usage restrictions. *Id.* Smartflash asserts that this process has no relation to payment for content or transmission of content and

therefore does not satisfy the "payment validation data" limitation. *Id.* Under Defendants' Clearinghouse theory, Smartflash asserts that, similarly, the License SC is returned after the Clearinghouse checks the user device's compliance with usage restrictions, not based on validation of the user's credit card information. *Id.* Smartflash contends that Gruse actually states the Clearinghouse authorizes the user's credit card after it is notified of the transaction by the Electronic Store. *Id.* Smartflash maintains that Defendants have failed to show the Clearinghouse treats the credit card information in the Order SC as payment data that must be reauthorized because the Electronic Store receives the credit card information well before the Order SC is generated. *Id.*

    3. At Least One Access Rule . . . Dependent Upon the Amount of Payment Associated with the Payment Data Forwarded to the Payment Validation System

As to "at least one access rule . . . dependent upon the amount of payment associated with the payment data forwarded to the payment validation system," Defendants argue Gruse teaches usage conditions associated with purchased content and the user's ability to access that content. 6:13CV447, Doc. No. 270 at 10. Further, Defendants argue that Gruse discloses "access rule" where usage conditions define rules for access to content and different prices for levels of access to content in Gruse's "Set of Usage Conditions," which are tied to payment. *Id.* at 11 (showing three prices for three different access levels including rental, purchase with rights to copy, and purchase without right to copy).

Smartflash asserts Defendants failed to identify any expert testimony supporting this invalidity theory. 6:13CV447, Doc. No. 293 at 11. Further, Smartflash contends that Defendants mistakenly identified the License SC as both payment validation data and an access rule and the patent requires one to be received in response to the other. *Id.*

4. Supplementary Data

As to "supplementary data" Defendants point out that Gruse teaches that the Electronic Store may add a graphic of the store's logo and URL to the store's website to the Offer SC and send it to the user's device. 6:13CV447, Doc. No. 270 at 12. Defendants assert that Gruse teaches that this added metadata is supplementary data, which Dr. Jones admitted constitutes advertising data and hot link URLs to artists' web sites. *Id.* at 13.

Smartflash asserts that Gruse merely states that the Offer SC can contain a logo and URL for the Electronic Store where the user is shopping, not an advertisement for products on sale or a hotlink to a website. 6:13CV447, Doc. No. 293 at 11. Smartflash further asserts that this theory is unsupported by expert testimony. *Id.*

5. Handheld Multimedia Terminal, a Portable Data Carrier or Data Access Terminal Integrated with a Mobile Communications Device and Audio/Video Player

As to "handheld multimedia terminal, a portable data carrier or data access terminal integrated with a mobile communications device and audio/video player," Defendants assert that Gruse teaches the user device can be a "hand-held" device or a laptop that allows a user to browse, purchase, download, and play digital content. 6:13CV447, Doc. No. 270 at 13. Defendants argue that Dr. Jones admitted that Gruse disclosed a portable laptop computer capable of storing data, which is thus, a "portable data carrier." *Id.* at 14. Further, Defendants argue that Dr. Jones admitted that Gruse discloses two types of wireless infrastructures, and that the disclosed laptop would be capable of playing audio and video content and wireless communication. *Id.* Thus, Defendants conclude that Gruse disclosed this term. *Id.* Defendants add that the "handheld media terminal" term only appears in the preambles of claims, and

9

therefore, is not limiting or useful for distinguishing over prior art. *Id.* at 14–15 (citing *Intirtool, Ltd. v. Texar Corp.*, 369 F.3d 1289, 1295 (Fed. Cir. 2004)).

Smartflash contends that Defendants have not shown that Gruse discloses handheld devices capable of the limitations of the '772 Patent claims. 6:13CV447, Doc. No. 293 at 11. Smartflash cites an example where Defendants have not shown that Gruse receives identifier data, content information, and multimedia content, or transmission of payment data through a wireless interface of a laptop. *Id.* Smartflash disputes that Dr. Jones admitted that Gruse teaches the use of wireless networks in the way disclosed in the '772 Patent, and instead, simply recognized it contains generic references to wireless infrastructure. *Id.* at 12. According to Smartflash, Gruse discloses the End User Device merely as a player that runs the End User Application, not one capable of purchasing, distributing, and accessing content. *Id.*

Smartflash further asserts that Defendants fail to address Claim 11 of the '458 Patent at all. *Id.* Smartflash argues that Gruse may disclose discrete use status information, but not partial use status information as required by the claim. *Id.*

*Parties Present Conflicting Evidence*

Defendants and Smartflash present conflicting evidence as to whether Gruse anticipates or makes obvious the asserted claims. Defendants assert that they have made a *prima facie* case for invalidity for anticipation or obviousness in view of Gruse. 6:13CV447, Doc. No. 270 at 6–7 ("Defendants' experts have provided evidence and analysis establishing a *prima facie* case that the asserted claims are anticipated and/or obvious in view of Gruse. *See e.g.*, Wechselberger Gruse Chart; Wolfe Gruse Chart'"). Defendants argue Smartflash does not rebut this evidence. However, Smartflash presented conflicting expert evidence. Taking all inferences in Smartflash's favor, Smartflash's evidence has raised genuine issues of material fact and,

therefore, Defendants have failed to discharge their high burden of establishing invalidity under § 102 or § 103 in view of Gruse by clear and convincing evidence. The Court cannot grant summary judgment where "information in the summary judgment papers is not sufficient to resolve the differences in expert opinion." *Rockwell Int'l Corp. v. United States,* 147 F.3d 1358, 1364 (Fed. Cir. 1998). The considerations presented here, conflicting evidence, credibility of the parties' respective experts and weight to be given their testimony, are for the trier of fact. *See Allied Collodis, Inc. v. American Cynamid Co.*, 64 F.3d 1570, 1575 (Fed. Cir. 1995); *Fuji Mach. Mfg. v. Hover-Davis, Inc.* 60 F. Supp. 2d 111, 120 (W.D.N.Y. 1999). Obviously, Defendants may vigorously dispute and challenge Smartflash's evidence before the fact-finder, but to resolve these considerations without one would improperly invade the province of the jury.

### *Obvious to Combine*

1. The '458 Patent

Defendants assert they established a *prima facie* case that Gruse in view of Poggio renders the '458 Patent obvious, given that Gruse discloses "supplementary data." 6:13CV447, Doc. No. 270 at 16. Defendants argue that Dr. Jones's opinions that a PHOSITA would not be motived to combine the references are conclusory and unsupported. *Id.* Defendants contend that Dr. Jones stated Defendants' experts' "explanations as to the motivation to combine references . . . . are conclusory and depend on hindsight," without providing substantive rebuttal. *Id.* To the contrary, Defendants maintain that their experts pointed out the compatible systems with similar purposes of both references. *Id.* at 17.

Smartflash asserts that Defendants' expert only identifies this combination as relevant to Claim 11. 6:13CV447, Doc. No. 293 at 15. Smartflash asserts this fact automatically results in denial as to Claims 8 and 10 in the Apple case because they have not presented any evidence on

those claims. *Id*. As to Claim 11, Smartflash repeats its argument from above that Defendants' expert's report does not show that Gruse discloses partial use status data, but at best discloses discrete use information. *Id.*

    2. The '772 Patent

Defendants further assert they established a *prima facie* case that Gruse in view of Puhl renders the '772 Patent obvious. 6:13CV447, Doc. No. 270 at 17. Defendants argue that Dr. Jones's only arguments are that Gruse does not disclose the five terms discussed above. Defendants contend that Dr. Jones's opinions on the motivation to combine are similarly conclusory to the opinions he provided regarding the '458 Patent. *Id.* at 18. According to Defendants' experts, both Gruse and Puhl were directed to systems that controlled delivery and use of protected digital content on portable media devices. *Id.* Defendants argue that the wireless functionality of Puhl could be directly substituted for the wireless network disclosed in Gruse, and therefore, would be obvious to combine.

Smartflash responds that Defendants offer little explanation as to why and how a PHOSITA would combine Puhl with Gruse. 6:13CV447, Doc. No. 293 at 15. Smartflash asserts that the only support for this argument is made solely in the Samsung case and in a Defendant's expert's report addressing an unasserted claim. *Id.* Smartflash points out that Dr. Jones's report noted the two references both disclose self-contained and highly integrated systems and assert that Defendant's expert fails to show that a PHOSITA would be motivated to combine them. *Id.* at 16.

    3. Secondary considerations

Defendants assert that the inventor's testimony regarding secondary considerations is of little weight because it is self-serving. 6:13CV447, Doc. No. 313 at 5. Defendants further assert

that there is no nexus between the patents and the success of Defendants' products because the products do not practice the asserted claims. *Id.*

Smartflash contends secondary considerations disfavor a finding of obviousness and cites praise and copying of the technology by competitors. 6:13CV447, Doc. No. 293 at 16. Smartflash alleges that Gemplus recognized the value of Inventor Mr. Racz's inventions and began copying them to develop a competing product. *Id.* Smartflash asserts that commercial success and failure of others weighs against finding obviousness and points to the abandoned systems disclosed by Gruse and the success of the accused products. *Id.* at 16–17.

*Obviousness Disputes Remain*

Defendants have not presented clear and convincing evidence that, as a matter of law, it would be obvious to combine Gruse with either Poggio or Puhl to render the '458 Patent or the '772 Patent invalid as obvious. Defendants again assert that their experts establish a *prima facie* case and clear and convincing evidence for invalidity by citing to large portions of expert charts and reports. The evidence cited by Defendants discusses the scope and content of prior art and explains that certain limitations not disclosed in Gruse are disclosed in Poggio or Puhl. However, the cited evidence fails to clearly explain why a PHOSITA would be motivated to combine the references. Additionally, genuine fact disputes about secondary considerations exist that are properly determined by a fact-finder. Smartflash's evidence again raises genuine issues of fact, and the Court leaves resolution of these disputes within the province of a jury.

## CONCLUSION

Defendants failed to meet their burdens to show that there is no genuine dispute of any material fact that could support finding the patents to be valid. Accordingly, Defendants'

Motions for Summary Judgment of Invalidity Under 35 U.S.C. §§ 102, 103 (6:13CV447, Doc. No. 270, 6:13CV448, Doc. No. 325) are **DENIED**.

Within fourteen days after receipt of the Magistrate Judge's report, any party may serve and file written objections to the findings and recommendations of the Magistrate Judge. 28 U.S.C. § 636(b).

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this Report within fourteen days after service shall bar that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations, and except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Services Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superseded by statute on other grounds*; 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 5th day of January, 2015.

*[signature]*
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE