IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| SMARTFLASH LLC, et al., | § § § § | |
| Plaintiffs, | | |
| v. | § § | CASE NO. 6:13-CV-447-JRG-KNM |
| APPLE, INC., et al., | § § § | |
| Defendants. | § | |

| | | |
|---|---|---|
| SMARTFLASH LLC, et al., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CASE NO. 6:13-CV-448-JRG-KNM |
| SAMSUNG ELECTRONICS CO. LTD, et al., | § § § § | |
| Defendants. | § | |

## REPORT AND RECOMMENDATION

Apple filed a Motion for Partial Summary Judgment of Non-Infringement (6:13CV447, Doc. No. 271) of one of the asserted claims. Defendants filed Motions for Partial Summary Judgment of Non-Infringement (6:13CV447, Doc. No. 272, 6:13CV448, Doc. No. 322) of four additional asserted claims. For the reasons set forth below, the Court recommends that the Motions be **DENIED**.

## BACKGROUND

Plaintiffs Smartflash LLC and Smartflash Technologies Limited (collectively "Smartflash") filed these actions against Apple, Inc. ("Apple"), Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Telecommunications America, LLC (collectively "Samsung"),

HTC Corporation, HTC America, Inc., and Exedea, Inc. (collectively "HTC") (collectively "Defendants") alleging infringement of the following patents: U.S. Patent No. 7,334,720; U.S. Patent No. 7,942,317; U.S. Patent No. 8,033,458; U.S. Patent No. 8,061,598; U.S. Patent No. 8,118,221; and U.S. Patent No. 8,336,772.

Akamai Technologies, Inc. ("Akamai") operates servers across the United States that deliver digital content for its customers. Apple is a customer of Akamai. Akamai delivers content related to the accused products and services. Additionally, Amazon, Akamai, and Saffron Digital operate servers that store and supply Samsung, HTC, and Google content and license information for accused products and services.

## APPLICABLE LAW

Federal Rule of Civil Procedure 56(a) provides for summary judgment when "there is no genuine dispute as to any material fact." A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When the summary judgment movants demonstrate the absence of a genuine dispute over any material fact, the burden shifts to the non-movant to show there is a genuine factual issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). A court must draw all reasonable inferences in favor of the non-moving party. *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1378 (Fed. Cir. 2007).

*Infringement*

Finding infringement is a two-step process: (1) the scope of the claim is determined; and (2) the properly construed claim is compared to the accused device to determine whether all of the claim limitations are present either literally or by a substantial equivalent. *Renishaw PLC v.*

*Marposs Societa' Per Azioni*, 158 F.3d 1243, 1247–48 (Fed. Cir. 1998). Claim construction is an issue of law. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970–71 (Fed. Cir. 1995). A determination of infringement, whether literal or under the doctrine of equivalents, is a question of fact. *Biovail Corp. Int'l v. Andrx Pharms., Inc.*, 239 F.3d 1297, 1300 (Fed. Cir. 2001). For literal infringement, "every limitation set forth in a claim must be found in an accused product, exactly." *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995). Any deviation from the literal claim language precludes a literal infringement finding. *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1330 (Fed. Cir. 2001). "[W]here the actions of multiple parties combine to perform every step of a claimed method, the claim is directly infringed only if one party exercises 'control or direction' over the entire process such that every step is attributable to the controlling party, i.e., the 'mastermind.'" *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329 (Fed. Cir. 2008). However, "mere 'arms-length cooperation' will not give rise to direct infringement by any party." *Id.*

## DISCUSSION

*Apple's Motion*

Apple moves for summary judgment on the basis that it does not infringe Claim 18 of the '317 Patent because no single actor performs all the claimed method steps. 6:13CV447, Doc. No. 271 at 1. Apple asserts that Akamai's network provides the iTunes store, webpages, and purchased content to iTunes customers. *Id.* Apple further asserts that, therefore, only Akamai, not Apple, allegedly performs the "transmitting the requested data to the requester" step of the claim. *Id.* at 2. Apple denies that Akamai acts as its agent and points out that their contract states "[t]he relationship of Akamai and Apple under the Agreement is that of independent contracting parties, and nothing contained in the Agreement shall be construed to (i) give either party the power to direct or control the day-to-day activities of the other . . . ." *Id.* According to Apple, it handles all the "payment

3

data", but Akamai provides the purchased content and transmits the requested data to purchasers. *Id.* at 3. Apple asserts it does not have control over Akamai in this process and their relationship merely consists of "arms-length cooperation." *Id.*

Smartflash responds that Apple's content originates on Apple's own servers. 6:13CV447, Doc. No. 294 at 2. Smartflash further asserts that Apple's own documents confirm that hosted content is downloaded directly from Apple. 6:13CV447, Doc. No. 294 at 3 (citing Apple's In-App Purchase Programming Guide, 27, Sept. 18, 2013) ("When you host content on Apple's servers, you don't need to worry about the server infrastructure. It is built on the same infrastructure that supports other large-scale operations, such as the iTunes Store, so your app can depend on it to be robust and scaleable."). Moreover, Smartflash contends that a party cannot avoid liability by contracting out steps of a patented process to another company. *Id.* (citing *BMC Resources, Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1381 (Fed. Cir. 2007), *overruled on other grounds by Akamai Technologies, Inc. v. Limelight Networks*, *Inc.* 692 F.3d 1301 (Fed. Cir. 2012). Smartflash argues that Apple contracts with Akamai specifically to deliver content on behalf of Apple. *Id.* at 3; 6:13CV447, Doc. No. 336 at 1.

Apple fails to meet its burden for summary judgment of non-infringement for Claim 18 of the '317 Patent. "[A] method patent is not directly infringed—and the patentee's interest is thus not violated—unless a single actor can be held responsible for the performance of all steps of the patent." *Limelight Networks, Inc. v. Akamai Technologies, Inc.*, 134 S. Ct. 2111, 2119 (2014) (assuming *Muniauction* to be correct). However, it is well settled that a party may not escape liability by directing another party to carry out one or more claimed steps on its behalf. *Muniauction*, 532 F.3d at 1329. Fact issues remain about how much control Apple exerts over Akamai and whether Apple could be held responsible or vicariously liable for Akamai's actions. The clause in the contract stating that neither Apple or Akamai give each other the power to control

"day-to-day" activities of the other is not dispositive; other factors and circumstances must be considered to determine if vicarious liability applies and if Akamai's delivering and transmitting content can be attributed to Apple. *See* Restatement (Second) of Agency § 220.

Further, there is evidence that Apple actually hosts content on its own servers, and an open fact question about whether content originating with Apple and transmitted by Akamai satisfies the claim. Accordingly, granting summary judgment is inappropriate.

*Defendants' Motion*

Defendants move for summary judgment of non-infringement of Claims 13–15 of the '720 Patent and Claim 32 of the '221 Patent on the basis that no single "data supplier" satisfies all claim elements.

Defendants assert that all four of the asserted claims require a single "data supplier." 6:13CV447, Doc. No. 272 at 2.[1] Defendants assert that Akamai provides the encrypted content while Apple supplies the decryption keys needed to access the content. *Id.* Therefore, Defendants assert that no single "data supplier" provides both the content and access rules. *Id.* at 2–3. Moreover, Defendants assert that the same is true for Samsung, HTC, and Google. *Id.* at 3. Defendants provide a series of URLs for servers that separately provide either licenses or content for Google Play, Google Play Books, Samsung Video, and Samsung Books. *Id.* Defendants further assert that Smartflash presents no evidence that the content and access rules are provided by the same server for HTC Watch. Defendants assert that "data supplier" cannot mean an entire corporate entity and expert testimony showed it is "a component of a system, a thing." 6:13CV447, Doc. No. 311 at 2.

---

[1] "All four claims require either 'retriev[ing] data from *the data supplier*' or 'retriev[ing] data from *a data supplier*' and then writing that data into *the data carrier*. Additionally all four claims require 'receiv[ing] at least one access rule from **the data supplier**.'" *Id.*

Smartflash responds that Apple alone supplies the encrypted content retrieved by user devices, and the dispute is whether Apple is no longer the "data supplier" when Akamai delivers the content. 6:13CV447, Doc. No. 295 at 2. Smartflash's expert, Dr. Jones, testified that Apple is actually the data supplier through its control of Akamai's servers. *Id.* As noted above, Smartflash argues that Apple's own documentation informs developers that they can deliver content using Apple's servers. *Id.* at 3. Smartflash presents additional Apple documentation depicting content and access rules coming from the same source. 6:13CV447, Doc. No. 337 at 2. Smartflash asserts that its expert testimony supports the position that Google, Samsung, and HTC services all infringe. 6:13CV447, Doc. No. 295 at 3. According to Smartflash, HTC and Samsung admitted that one supplier—Google—provides both content and licenses for Google Play. Smartflash further asserts that Samsung's corporate representative admitted that Samsung Books' distribution is operated by Samsung, despite Samsung's contrary argument. *Id.* Moreover, Smartflash argues that Samsung and HTC fail to present evidence that different URLs correlate to physically different servers or "data suppliers." *Id.*

Defendants fail to meet their burden for summary judgment of non-infringement of Claims 13–15 of the '720 Patent and Claim 32 of the '221 Patent. As to Apple, the Motion fails for similar reasons as discussed above—factual disputes remain about whether Apple supplies at least some content and access rules itself and whether Apple controls Akamai enough to find Apple responsible. As to Samsung and HTC, the dispute centers on whether separate URLs necessarily require physically separate servers such that they are separate "data suppliers," and whether a single corporate entity is a single "data supplier." If the separate URLs or servers are controlled by a single entity, a question remains about whether that entity is the "data supplier." The asserted claims do not require content and access rules to be received from the same URL or server. At a minimum, Smartflash raises a genuine fact issue about whether content and access rules for the

accused Samsung, HTC, and Google services come from a single "data supplier." Accordingly, granting Defendants' motions for summary judgment is inappropriate.

## CONCLUSION

Defendants fail to meet their burden to show that there is no genuine issue of material fact of infringement for the claims at issue. Accordingly, the Court recommends that Apple's Motion for Partial Summary Judgment of Non-Infringement (6:13CV447, Doc. No. 271) and Defendants' Motions for Partial Summary Judgment of Non-Infringement (6:13CV447, Doc. No. 272, 6:13CV448, Doc. No. 322) be **DENIED**.

Within fourteen days after receipt of the Magistrate Judge's report, any party may serve and file written objections to the findings and recommendations of the Magistrate Judge. 28 U.S.C. § 636(b).

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this Report within fourteen days after service shall bar that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations, and except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Services Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superseded by statute on other grounds*; 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

So ORDERED and SIGNED this 5th day of January, 2015.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE