IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| SMARTFLASH LLC, et al., | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CASE NO. 6:13-CV-447-JRG-KNM |
| APPLE, INC., et al., | § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs filed a Motion to Strike the Expert Report of Dr. Stephen Becker (Doc. No. 276). For the reasons set forth below, Plaintiffs' Motion is **DENIED**.

### BACKGROUND

Plaintiffs Smartflash LLC and Smartflash Technologies Limited (collectively "Smartflash") filed this action against Apple, Inc. ("Apple"), alleging infringement of the following patents: U.S. Patent No. 7,334,720; U.S. Patent No. 7,942,317; U.S. Patent No. 8,033,458; U.S. Patent No. 8,061,598; U.S. Patent No. 8,118,221; and U.S. Patent No. 8,336,772.

Inventor Patrick Raez started Smartflash in the early 2000s in an attempt to commercialize his inventions while the patent applications were pending. Between 2005 and 2013, Mr. Raez met with investors and received several different investment offers. Dr. Becker serves as Apple's damages expert and used evidence from Mr Raez's communications with investors in calculating a reasonable royalty figure.

### APPLICABLE LAW

*Expert Testimony*

An expert's testimony is admissible if: (1) the testimony is based upon sufficient facts or data; (2) the testimony is the product of reliable principles and methods; and (3) the witness has applied the principles and methods reliably to the facts of the case. FED. R. EVID. 702. Further, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice; confusing the issues; misleading the jury; undue delay; wasting time; or needlessly presenting cumulative evidence. FED. R. EVID. 403.

In applying these standards, district courts are charged to act as "gatekeepers" in order to ensure that "any and all scientific evidence admitted is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 589 (1993). The primary concern of the "gatekeeper" function "is to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). To that end, any step an expert takes in formulating his opinion "that renders the analysis unreliable . . . renders the expert's testimony inadmissible." *Curtis v. M&S Petroleum, Inc.*, 174 F.3d 661, 670 (5th Cir. 1999).

## ANALYSIS

Smartflash asserts that Dr. Becker failed to account for the "use made of the invention" by Apple. Doc No. 276 at 8. Smartflash argues that Dr. Becker made no attempt to value the patented features to Apple products or consider costs of non-infringing alternatives. *Id.* at 9–10. According to Smartflash, Dr. Becker instead used Mr. Racz's personal investment and generic rates of return on that investment. *Id.* at 10. Smartflash further argues that Dr. Becker's

conclusion is based on insufficient facts—two emails from the time period Mr. Racz attempted to commercialize his inventions. *Id.* The first email contains a statement by Mr. Racz indicating his intentions for the patented technology: "My intention is to realize a substantial ROI [(return on investment)] over the life of any granted patents in excess of my own personal investment." *Id.* at 10–11. Smartflash asserts that this email is from three years before a hypothetical negotiation (2005) and before any patents in suit issued. *Id.* Smartflash contends that Mr. Racz sent the second email before five of the six patents in suit issued (2009), and it contains another vague statement: "My intention is to realize a return on the investment I have made over the last 10 years through the sale or licensing of my patent." *Id.* Smartflash further contends that Dr. Becker failed to account for differences between trying to raise capital from investors to reinvigorate a small business and negotiating a patent license with Apple under assumption that all patens-in-suit are valid and Apple will sell millions of infringing devices. *Id.* at 12. Smartflash maintains that Dr. Becker did not use methodology that could determine the outcome of two-party hypothetical negotiation and did not consider Apple's perspective when determining the highest price Apple would be willing to pay. *Id.* at 13-14. Further, Smartflash concludes that even if Dr. Becker identified legally sufficient facts to support his calculations, he did not apply reliable methods and principles because he equated his 100% valuation of the patents-in-suit with the entire U.S. market for smartphones, PCs, and mp3/portable music players. *Id.* at 14-15.

Apple responds that Dr. Becker accounted for the use made of the invention by Apple because he tied his damages calculation to Apple's market share (28.4% in the markets at issue). Doc. No. 289 at. 4. According to Apple, Smartflash's own expert agreed that comparable licenses did not exist and did not identify any comparable features. *Id.* at 5. Therefore, Apple

contends that using its sales as a starting point is not required and is generally prohibited for determining reasonable royalty for a small element of multi-component product. *Id.* at 6 (citing *Virnetx,, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326-28 (Fed. Cir. 2014). Apple argues that Dr. Becker's conclusion is based on sufficient facts because the two emails referring to Mr. Racz getting "return on investment" are probative of the circumstances surrounding the 2008 hypothetical negotiation when only one of six patents had issued. *Id.* at 7. Further, Apple argues that disputes over this issue should go to the weight of the evidence rather than its admissibility. *Id.* Apple contends that Dr. Becker connected his calculations to relevant facts by taking into account Mr. Racz's offer to sell 20% stake in his company and the offers to purchase an interest in the '720 Patent for $50,000 to $200,000. *Id.* at 8. Additionally, Apple asserts that Dr. Becker applied reliable methodology and principles. *Id.* at 9. Apple maintains that Smartflash's own expert failed to account for Apple's preference in a hypothetical negotiation, and the law does not require a separately calculated negotiation. In Apple's view, Smartflash would have expected that Apple's products would have been just a percentage of all products that infringed and would pay according to that percentage during a hypothetical negotiation. *Id.* at 11.

Upon a finding of infringement, "the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." 35 U.S.C. § 284. The Federal Circuit consistently upholds a hypothetical negotiation and *Georgia–Pacific* factors for estimating a reasonable royalty as reliable methods for calculating a reasonable royalty. *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 854 (Fed. Cir. 2010). Additionally, considering the circumstances that would have surrounded a hypothetical negotiation in an attempt to "ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before

4

infringement began" is the most common method for determining a reasonable royalty. *Virnetx*, 767 F.3d at 1326 (internal quotation omitted). "A reasonable royalty may be a lump-sum payment not calculated on a per unit basis but it may also be, and often is, a running payment that varies with the number of infringing units." *Id.* No matter what royalty form, a patentee must take care to seek only damages attributable to the infringing features. *Id.*

Smartflash fails to show that Dr. Becker's report should be excluded. Dr. Becker did not have any comparable licenses or valuations of comparable features to consider in the framework of a hypothetical negotiation between Mr. Racz and Apple. Instead, Dr. Becker used the facts available related to Mr. Racz's monetization attempts surrounding the date of a hypothetical negotiation between Apple and Mr. Racz. *See* Becker Apple Rpt. ¶¶250–276, Sept. 15, 2014. Among other things, Dr. Becker considered Mr. Racz's initial investment in the technology, the success of Mr. Racz's company, Mr. Racz's offers to sell interest in the patents-in-suit, the relationship between Mr. Racz and Apple, other features of the accused products, and basic elements of the patented technology already in existence. *Id.* As discussed above, Smartflash takes issue Dr. Becker's reliance on the two emails sent by Mr. Racz in determining reasonable royalty. He calculated what in his opinion constituted a "substantial return" to reflect the value of the patented technology. Although the meaning of "substantial return" is subject to a wide interpretation, Dr. Becker explained how he arrived at his final lump sum payment as a reflection of the value of the patents-in-suit in light of the aforementioned considerations using sufficient facts and reliable methods. Smartflash asserts that Dr. Becker should have calculated a maximum price Apple would have paid in the hypothetical negotiation, but cites no legal authority for such a requirement. At their core, Smartflash's disagreements relate to Dr. Becker's conclusions based on available evidence and more appropriately go toward the weight

of his testimony rather than its admissibility. Accordingly, Dr. Becker's report and testimony are admissible.

## CONCLUSION

Smartflash fails to show that Dr. Becker's report and testimony should be excluded. Plaintiffs' Motion to Strike the Expert Report of Dr. Stephen Becker (Doc. No. 276) is **DENIED**.

So ORDERED and SIGNED this 6th day of January, 2015.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE