IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| SMARTFLASH LLC, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CASE NO. 6:13-CV-447-JRG-KNM |
| | § | |
| APPLE, INC., et al., | § | |
| | § | |
| Defendants. | § | |

# ORDER

Plaintiffs' Motion *in Limine* B (Doc. No. 377) asks the Court to preclude argument and evidence that Plaintiffs do not own the patents-in-suit. In response and for the first time, Apple raised the question of Plaintiffs' standing before the Court, arguing that Plaintiffs had breaks in the chain-of-title of the patents-in-suit and that the issue of ownership should be put to a jury. In its Order Regarding Motions *in Limine* (Doc. No. 440), the Court carried the motion pending resolution of the issue of standing. For the reasons set forth below, the Court **GRANTS** the Motion *in Limine*.

## BACKGROUND

Plaintiffs Smartflash LLC and Smartflash Technologies Limited (collectively "Smartflash") filed this action against Apple, Inc. ("Apple") alleging infringement of the following patents: U.S. Patent No. 7,334,720 ("the '720 Patent"); U.S. Patent No. 7,942,317 ("the '317 Patent"); U.S. Patent No. 8,033,458 ("the '458 Patent"); U.S. Patent No. 8,061,598 ("the '598 Patent"); U.S. Patent No. 8,118,221 ("the '221 Patent"); and U.S. Patent No. 8,336,772 ("the '772 Patent").

The patents-in-suit share a common specification and all relate back to U.S. Patent Application No. 10/111716 ("the 10/111716 Application"). Mr. Patrick Racz and Mr. Hermanard Hulst are co-inventors of the patents-in-suit. On October 25, 2000, foreign patent prosecution counsel, Marks & Clerk, filed the PCT application—PCT/GB00/04110—that led to the U.S. application for the patents-in-suit listing Mr. Racz and Mr. Hulst as the inventors. On May 13, 2002, representatives from Internet Plc and Smartflash Limited ("Smartflash Ltd.") signed a document entitled "IP Transfer Agreement" that purportedly assigned intellectual property rights from Smartflash Ltd. to Internet Plc. The agreement listed the PCT application on an attached exhibit. On June 12, 2002, Mr. Hulst assigned his rights in the 10/111716 Application to "SMART-FLASH LIMITED." The factual background is discussed in more detail below.

## APPLICABLE LAW

Federal Rule of Civil Procedure 12(b)(1) authorizes the dismissal of a case for lack of subject matter jurisdiction when the district court lacks the statutory and constitutional power to adjudicate the case.[1] *See Home Builders Ass'n of Mississippi, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Courts analyze Rule 12(b)(1) motions to dismiss under the same standard as a motion to dismiss under Rule 12(b)(6). *See id.* When ruling on a motion to dismiss for lack of subject matter jurisdiction, a court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Den Norske Stats Oljeselskap As v. HeereMac v.o.f.*, 241 F.3d 420, 424 (5th Cir. 2001); *see also Clark v. Tarrant County,* 798 F.2d 736, 741 (5th Cir. 1986) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). Once a defendant files a motion to dismiss under Rule 12(b)(1) and challenges jurisdiction, the

---

[1] Apple has not filed a motion to dismiss, but the same principles apply for purposes of resolving this Motion.

party invoking jurisdiction has the burden to establish subject matter jurisdiction. *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). Courts only grant motions to dismiss when it is clear the claimant can prove no set of facts in support of its claims that would entitle it to relief. *See Home Builders Ass'n of Mississippi, Inc.,* 143 F.3d at 1010.

A court lacks subject matter jurisdiction over a cause of action if the plaintiff lacks standing to bring the cause of action. *Bhandari v. Cadence Design Sys., Inc.*, 485 F. Supp. 2d 747, 750–51 (E.D. Tex. 2007). A plaintiff has constitutional standing to pursue a patent infringement action if it shows: (1) the defendant's alleged infringement causes the plaintiff an injury in fact; (2) that the injury is fairly traceable to the alleged misconduct of the defendant; and (3) that a favorable decision is likely to redress the injury. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992); *Intellectual Property Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1345–47 (Fed. Cir. 2001). To prove an "injury in fact," the plaintiff must show the alleged infringer invaded a legally protected interest which is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *See Lujan*, 504 U.S. at 560 (internal quotations omitted). Parties that hold exclusionary rights and interests in a patent have constitutional standing to sue infringers. *See Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1339 (Fed. Cir. 2007).

A party with constitutional standing that possesses all substantial patent rights is an effective patentee and has prudential standing to sue infringers without joinder of others who suffer a legal injury from infringement and possess substantial patent rights. *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1250 (Fed. Cir. 2000). If a party has constitutional standing but does not possess all substantial patent rights, the party lacks prudential standing and generally must sue as a co-plaintiff with other parties who suffer a legal injury from infringement and

possess rights to the patent. *See Intellectual Property Dev.*, 248 F.3d at 1348. A plaintiff cannot cure constitutional standing defects after it files suit, but a plaintiff with constitutional standing may cure prudential standing defects after it files suit. *See id.*; *IpVenture, Inc. v. ProStar Computer, Inc.*, 503 F.3d 1324, 1326–27 (Fed. Cir. 2007); *Morrow*, 499 F.3d at 1344.

Only a patentee has standing to bring a suit for patent infringement in its own name. *Textile Prods., Inc.,* 134 F.3d 1481; *see* 35 U.S.C. § 281 (2000) ("A patentee shall have remedy by civil action for infringement of his patent."). A "patentee" includes "'not only the patentee to whom the patent issued but also the successors in title to the patentee.'" *Aspex Eyewear, Inc. v. Miracle Optics, Inc.*, 434 F.3d 1336, 1340 (Fed. Cir. 2006) (quoting 35 U.S.C. § 100(d)). The term "assignment" has a particular meaning in patent law, implying a formal transfer of title to the patent-in-suit. *See* 35 U.S.C. § 100(d). When a patentee transfers title in a patent by assignment, the assignee is the effective patentee under the Patent Act and the assignee has standing to sue for infringement in its own name. *Aspex*, 434 F.3d at 1340.

## DISCUSSION

Apple disputes Smartflash's standing to bring this suit because: (1) Mr. Racz purportedly assigned his rights to now-dissolved Internet Plc; and (2) Mr. Hulst purportedly assigned his rights to another entity named "Smart-Flash Limited." Further, Apple asserts that a jury should resolve the factual disputes related to patent ownership because they are intertwined with the merits of the case.

### *Mr. Racz's Rights*

Apple asserts that the May 13, 2002, IP Transfer Agreement reflects assignment from Smartflash Ltd. to Internet Plc of the rights to the PCT patent application (PCT/GB00/04110) that led to the patents-in-suit. Doc. No. 406 at 9. The managing director of both Smartflash Ltd.

and Internet Plc—Melvin Simpson—and the Financial Controller for Internet Plc—Philip Callaghan—signed the document that purportedly transferred IP rights to Internet Plc for £69,739. *Id.* at 6. Apple cites to no agreements where Mr. Racz transferred his interest in the patent application to Smartflash Ltd. Nevertheless, Apple contends the IP Transfer Agreement included Mr. Racz's patent rights. *Id.* To support this contention, Apple relies on statements by Mr. Racz in a June 27, 2003, email to the liquidator involved in the dissolution of Internet Plc:

> As discussed I am writing to confirm my belief that I have a valid claim to the patent applications that were assigned to Internet plc via SmartFlash ltd as part of the recent restructuring process and failed fundraising efforts. Assignment of the patents to SmartFlash ltd was conditional on repayment to me personally for the considerable sums I have invested to date.

Doc. No. 406, Ex. E, SF00014149.

Further, Apple quotes an earlier email where Mr. Racz states, "[i]t is clear that if I am not allowed to regain control of the patents now they will lapse and become worthless." Doc. No. 406 at 10 (citing Ex E, SF00014150). Apple argues that Mr. Racz's statements confirm that he transferred his rights to Smartflash Ltd. prior to the IP Transfer Agreement between Smartflash Ltd. and Internet Plc.[2] *Id.* Further, Apple contends that a portion of Mr. Racz's testimony confirms that he believed the patent applications had been assigned to Internet Plc. *Id.* at 11 (citing Ex. C, Racz Depo. Tr. at 130:19–22, August, 7, 2014) ("I would say I probably did [think the IP Transfer Agreement was legitimate] at the time.").[3] Apple asserts that, despite Mr. Racz's later testimony to the contrary, even if the IP Transfer Agreement was conditioned on restructuring, the restructuring took place. *Id.* Apple points to Mr. Racz's June 2003 email

---

[2] Additionally, Apple asserts that the IP Transfer Agreement was effective regardless of whether Internet Plc made payment or the contemplated restructuring took place. *Id.* Apple argues that under English Law, a writing signed by the parties providing for transfer of rights in exchange for payment makes the transfer effective. *Id.*

[3] Apple contends that Mr. Racz "changed" his testimony when he later testified that the assignment did not occur. *Id.* Apple further asserts that when asked what changed Mr. Racz's understanding, he asserted privilege and refused to answer the question. *Id.*

5

referring to a "recent restructuring process" and a 2003 "Special Financial Instrument" reviewed by Mr. Racz that reported to investors that Internet Plc underwent "major restructuring" in November 2002. *Id.* at 11–12 (citing Ex. K, SF0002948). Moreover, Apple contends that at the conclusion of Internet Plc's liquidation, its intellectual property rights—including the rights to the PCT application that led to the patens-in-suit—passed to the English Crown. *Id.* Apple further contends that neither Smartflash, its predecessors-in-interest, nor Mr. Racz have taken steps to reclaim rights from Crown. *Id.* at 13.

Smartflash responds that although it has the burden to prove patent ownership, Apple has the burden to show that any third party acquired rights outside the recorded chain-of-title. Doc. No. 410 at 3 (citing *SiRF Tech., Inc .v. ITC*, 601 F.3d 1319, 1327 (Fed. Cir. 2010) (finding the burden to establish a break in the chain-of-title recorded by the U.S. Patent and Trademark Office ("USPTO") lies with the alleged infringers)). Smartflash notes that the USPTO recorded the entire chain-of-title to the patents-in-suit. *Id.* at 1 (citing Exs. D–G). Smartflash contends the May 2002 IP Transfer Agreement that purports to "hereby assign" patent rights it "owned" was a rush job drafted by a non-lawyer so Internet Plc could reassign patent rights to another company—Gemplus—in a deal that never went through. *Id.* at 6. Smartflash asserts that no party ever recorded an assignment of rights, and no one "thought much of" or followed up on any parts of the agreement. *Id.* at 6–8. According to Smartflash, this is why no one followed up on Mr. Racz's non-assignment of his U.S. patent application rights. *Id.*

Moreover, Smartflash contends that whether or not the IP Transfer Agreement was valid, neither Mr. Racz nor Mr. Hulst had assigned their U.S. patent application rights to Smartflash Ltd. before the IP Transfer Agreement. *Id.* (citing Racz Decl., January 19, 2015, ¶¶ 7–8) ("[B]oth Internet PLC and Smartflash Ltd. were aware that assignments from myself and

Hermen Hulst were required to transfer the United States rights of the PCT application."). Therefore, Smartflash argues that Smartflash Ltd. did not own Mr. Racz's (or Mr. Hulst's) rights at the time of the IP Transfer Agreement on May 13, 2002. Smartflash maintains that Mr. Racz in fact never assigned his rights to Smartflash Ltd. or Internet Plc. *Id.*

Further, Smartflash argues that Apple has not produced a document assigning such rights even though "Defendants agree that such a written assignment is required." *Id.* at 8 (citing 35 U.S.C. § 261; 6:13CV448, Doc. No. 444 at 8.). Instead, Smartflash contends that Apple's only basis that such an assignment exists is the "single e-mail chain" quoted by Apple above. *Id.* Smartflash asserts that Mr. Racz's testimony that "the facts I'm aware of is that this company [Smartflash Ltd.] did not own the patents as stated at the time they [Internet PLC and Smartflash Ltd.] completed this [May 13,2002] assignment" instead demonstrates that no such assignment exists. *Id.* at 9 (quoting Racz. Depo. Tr. at 122:22–24, Aug. 7, 2014) (internal quotations omitted). Smartflash argues that Apple asks the Court to determine that a valid assignment agreement has been lost or destroyed, despite Mr. Racz's testimony and other evidence that no such assignment ever existed. *Id.* at 12.

Smartflash next argues that correspondence by patent prosecution counsel confirms no such assignment exists. *Id.* at 9. In a June 13, 2002 letter, attorneys from Marks & Clerk advised U.S. prosecution counsel that "only Herman-ard Hulst is assigning his rights to this application to Smartflash Limited. The application is now to proceed jointly in the names of Smartflash Limited and the second inventor, Patrick Sandor Racz." *Id.* (citing Ex. U, SF-APL00001606).

Further, Smartflash asserts that the June 2003 email correspondence between Mr. Simpson—managing director of both Smartflash Ltd. and Internet Plc—and the Internet Plc

7

liquidator confirms that neither Mr. Simpson nor Mr. Racz believed Internet Plc owned the rights. *Id.* at 14–15. By June 2003, Internet Plc had been forced into liquidation and Smartflash Ltd. was about to be struck from the Companies House[4] register.[5] *Id.* at 9. Mr. Simpson wrote to the liquidator: "I have received a further letter from Mr. Owen at Companies House. If I apply to have SmartFlash Ltd. struck off by June 30th they will not pursue proceedings for the late returns/accounts. . . . If you need to transfer assets to [Mr. Racz] would you please do so before [June 30, 2003]." *Id*. at 15 (quoting Ex. W, SF00014152). Having received a copy of that email, Mr. Racz's reply stated, "[i]t is important that you [Mr. Simpson] are not placed in a position where you could be prosecuted but I simultaneously need to secure the IP before the company is closed down." *Id.* Smartflash argues that if Mr. Racz or Mr. Simpson believed that Internet Plc held the patent rights, "this entire discussion relating to the dissolution of Smartflash Ltd. would have been irrelevant." *Id.*

Smartflash argues that Mr. Racz's June 2003 email to the liquidator—cited by Apple to support the contrary argument—reflects a rushed attempt by a non-lawyer to keep Smartflash Ltd. from being struck from the Companies House register. *Id.* at 10. According to Smartflash, Mr. Racz believed he was on the verge of owning all of both Smartflash Ltd.'s and Internet Plc's intellectual property, and he did not understand the legal meaning of "assign" or distinguish between U.S. and foreign patent rights. *Id.*

Both parties agree that Smartflash has the burden to establish ownership of the patent rights for standing. Smartflash must demonstrate it has standing and held enforceable title on the date the lawsuit was filed by a preponderance of the evidence. *See Dow Chem. Co. v. Nova*

---

[4] Companies House maintains the registrar of companies for the United Kingdom.

[5] Smartflash asserts that a prior restructuring had occurred where Smartflash Ltd. "purportedly" became a subsidiary of Internet Plc that caused confusion over which company owned the IP assets by the laypeople involved. *Id*. at 14.

*Chemicals Corp. (Canada),* 458 F. App'x 910, 925 (Fed. Cir. 2012) (citing *Tyco Healthcare Group LP v. Ethicon Endo–Surgery, Inc.*, 587 F.3d 1375, 1378 (Fed. Cir. 2009)). However, even though recordation by the USPTO does not determine the validity of the assignment, it "creates a presumption of validity as to the assignment and places the burden to rebut such a showing on one challenging the assignment." *SiRF Tech.*, 601 F.3d at 1327–28 (Fed. Cir. 2010) (citing 37 C.F.R. § 3.54); *see also Dow Chem. Co.*, 458 F. at 912 (Fed. Cir. 2012); *Transcenic, Inc. v. Google, Inc.*, No. CV 11-582-LPS, 2014 WL 7275978, at *2 (D. Del. Dec. 22, 2014). Therefore, Apple, as the party asserting that Mr. Racz's U.S. patent rights were assigned to Internet Plc, has the burden to rebut the presumption of validity of the recorded chain-of title.

Apple bases its argument on the 2002 IP Transfer Agreement between Smartflash Ltd. and Internet Plc and subsequent email correspondence that seems to indicate Mr. Racz's contemporaneous belief that he no longer controlled the patent rights. Yet, Apple submits no evidence reflecting an assignment of U.S. rights from Mr. Racz to Smartflash Ltd. prior to the 2002 IP Transfer Agreement that would make other questions about its validity relevant.[6] "The inventor is presumed to be the owner of a patent application, and any patent that may issue therefrom, unless there is an assignment." 37 C.F.R. § 3.73(a). Therefore, evidence of such an assignment document is necessary to show Smartflash Ltd. actually owned the U.S. rights purportedly assigned to Internet Plc with the 2002 IP Transfer Agreement. Apple essentially asks the Court to find that the other evidence of Mr. Racz's beliefs about the purported assignment weighs so heavily in favor of such an assignment taking place that the assignment document between Mr. Racz and Smartflash Ltd. must be missing or destroyed. However, Smartflash cites counter-evidence that supports that Mr. Racz (and Mr. Simpson) had beliefs

---

[6] The Court does not reach all the disputed issues of the validity of the terms of this document itself, such as whether it was contingent on payment or the contemplated restructuring process, or whether the restructuring took place.

contrary to Apple's assertions about the assignment. Additionally, none of Mr. Racz's statements or any other evidence reference the existence of such a document.

Even though Mr. Racz testified that he believed the IP Transfer Agreement "was legitimate at the time," his beliefs had no legal basis and do not give effect to the assignment. He still would have had to execute a written assignment to pass his rights to Smartflash Ltd. *See Bellehumeur v. Bonnett*, 127 F. App'x 480, 484 (Fed. Cir. 2005) (citing 35 U.S.C. § 271) ("[N]o subsequent assignment is in the record to contravene this understanding."). Importantly, those with legal training believed no such document existed or assignment took place. Lawyers at Marks & Clerk, the patent prosecution counsel who filed the PCT application, indicated to U.S. counsel that only Mr. Hulst had assigned his rights in the U.S. patent application to Smartflash Ltd. in June 2002, after the purported execution of the IP Transfer Agreement.

A preponderance of evidence supports that Mr. Racz did not assign his U.S. rights to Smartflash Ltd. prior to the 2002 IP Transfer Agreement. The absence of any evidence of a written assignment from Mr. Racz to Smartflash Ltd. prior to the 2002 IP Transfer Agreement weighs heavily in favor of this conclusion, and the additional evidence confirms it. Smartflash Ltd. could not assign rights it did not own to Internet Plc regardless of the validity of the IP Transfer Agreement. Accordingly, the patent rights did not pass to Internet Plc before it was dissolved, and the rights did not pass to the English Crown. Smartflash has met its burden to show it owns Mr. Racz's rights to the patents-in-suit. Apple has not met its burden of establishing a break in the chain of title.

*Mr. Hulst's Rights*

Apple also argues that Smartflash has not demonstrated ownership of Mr. Hulst's rights to the patents-in-suit. Doc. No. 406 at 13. Apple points out that in an "Assignment of Patent

10

Application" dated June 12, 2002, Mr. Hulst assigned his rights to "SMART-FLASH LIMITED" of Upper Nordens, High Hurst Wood, Uckfield, East Sussex TN22 4AN, Great Britain. *Id.* (quoting Ex. I, SF-APL00001607). Apple further points out that the record indicates that Smartflash LLC obtained its rights to the patents-in-suit in May 2013 from Smartflash Technologies of Tortola, British Virgin Islands. *Id.* (citing Ex. M, SF00028630). The record also shows that the Smartflash Technologies entity obtained its rights from Mr. Racz in June 2010 who obtained them from "Smartflash Limited" of Russell Square House, 10/12 Russell Square, London, WCIN 1DB. *Id.* (citing Ex. N, SF00042767; Ex. O, SF00015650). Apple argues that no evidence shows that "Upper Nordens Smart-Flash" ever assigned Mr. Hulst's rights to "Russell Square Smartflash" or that these are the same entity. *Id.* at 13–14. According to Apple, Smartflash cannot carry its burden to show ownership of Mr. Hulst's patent rights by a preponderance of the evidence. *Id.*

Smartflash responds that "Smartflash Ltd. and Smart-flash Ltd. are indisputably the same company." Doc. No. 410 at 3. Smartflash asserts that the hyphen and address discrepancies fail to establish they are different entities. *Id.* at 4. It argues that Companies House records establish that "Smart-flash Limited" never existed. *Id.* (citing Doc. No. 410, Ex. I). Further, Smartflash asserts that the East Sussex address was the home address of Smartflash Ltd.'s founder. *Id.* According to Smartflash, the company used the home as its business address in 1999 when Mr. Racz first started working with the company—Internet Ltd—that became Smartflash Ltd. *Id.* Smartflash points out that this address was first used by the prosecution counsel at Marks & Clerk who "inadvertently" continued to use the address even after Smartflash Ltd.'s founder ceased involvement with the company in January 2000. *Id.* at 5. (citing Ex. M and pointing out that the East Sussex address is listed on the October 2000 PCT application: "Applicant []:

11

SMART-FLASH LIMITED [GB/GB]; Upper Nordens, High Hurst Wood, Uckfield, East Sussex, TN22 4AN (GB)."). Smartflash contends that "by Mr. Hulst's June, 12, 2002 assignment, the East Sussex address was out-of-date" but the hyphen and outdated address cannot establish that Mr. Hulst assigned his rights to a company that "conclusively does not exist." *Id.* Smartflash urges that courts routinely find such "clerical errors" as legally irrelevant. *Id.* (citing, among other cases, *Imperium (IP) Holdings, Inc. v. Apple Inc.*, No. 4:11-CV-163, 2012 WL 2995997, at *4 (E.D. Tex. June 4, 2012), *Marseilles Hydro Power LLC v. Marseilles Land & Water Co.*, No. 00 C 1164, 2004 WL 1199890, at *3 (N.D. Ill. June 1, 2004), and *Everything Baseball Limited, LLC v. Team Athletic Goods, Inc.*, No. 05 C 5526 (E.D. Ill. Aug. 16, 2009).

After briefing, Smartflash submitted additional evidence that "Smartflash Ltd." and "Smart-flash Ltd." are the same company. According to Smartflash, on December 13, 2000, prosecution counsel Marks & Clerk sent the WIPO notice that Internet Ltd.'s name changed to Smartflash Ltd and included the Companies House certification (dated November 16, 2000) for Smartflash Ltd. with a registered office at the Russell Square address as proof. *See* Doc. No. 447, Ex. A, SF00009040, SF00009050. On January 18, 2001, the WIPO responded with a "Notification of the Recording of a Change" showing a change from "INTERNET LIMITED" to "SMARTFLASH LIMITED," both with the Upper Nordens address. *Id.* at SF00009078. Smartflash asserts that "SMART-FLASH LIMITED" first appeared months later on the published PCT application as a product of a line-break due to column width:

> (71) Applicant *(for all designated States except US)*: SMART-FLASH LIMITED [GB/GB]; Upper Nordens, High Hurst Wood, Uckfield, East Sussex TN22 4AN (GB).

Doc No. 447 at 2 (reproducing Doc. No. 410, Ex. M, MC-SF00000184).

Smartflash has shown by a preponderance of the evidence that it has standing to assert the U.S. patent rights originating with Mr. Hulst. "Numerous courts have found that errors in an assignment do not necessarily preclude a finding of standing." *Imperium (IP) Holdings*, 2012 WL 2995997, at *4 (E.D. Tex. June 4, 2012) (finding standing despite the defendant's contentions that "ESS Technology International, Inc." and non-existent "ESS Technologies International, Inc." were distinct entities because an assignment document reflected the name discrepancy and two separate principal places of business) (quoting *Southwest Efuel Network, LLC v. Transaction Tracking Technologies, Inc.,* No. 2:07–CV–311, 2009 WL 4730464, at *4 (E.D. Tex. Dec. 7, 2009)); *see also Marseilles Hydro Power*, 2004 WL 1199890, at *3 (rejecting, as "easily disposed of," arguments that "Marseilles Hydro Power," lacked standing because a typographical error assigned the relevant interest to the non-existent "Midwest Hydro Power"); *Everything Baseball*, No. 05 C 5526, slip op. at 7 (finding plaintiff had standing after concluding with "little difficulty" that patentees intended to assign their rights to "Everything Baseball Limited, LLC" instead of the non-existent "Everything Baseball Limited, Ltd." despite carryover of the typographical error in subsequent USPTO documents and licensing agreements).

The additional evidence submitted by Smartflash all but conclusively confirms that Smartflash Ltd. and Smart-flash Ltd. are the same company. Conventional typography practices explain the addition of a hyphen in the Smartflash Ltd. name because column width was limited on the published PCT application where it appeared for the first time. Further, the Companies House certification and the PCT name change confirmation tie the "Upper Nordens Smart-Flash" to the "Russell Square Smartflash" and show that the WIPO considered the two addresses to refer to the same entity.

Smartflash's evidence strongly supports that no entity named "Smart-flash Limited" ever

existed. The Companies House records show that just one Smartflash, "Smartflash Ltd." existed at any point in time in Great Britain. Additionally, the most reliable testimony on record—that of Mr. Racz who at least has personal knowledge of the business operations at the Upper Nordens address—supports that the hyphenated name on the Hulst assignment does not refer to a separate legal entity: "I would say I'd be shocked and amazed if that wasn't just a simple typo and I would treat that as a typo. I've never seen it [a different company that had a dash], no. It should just be Smartflash Limited. It looks like a typo." Racz. Depo. Tr. 126:8–12, Aug. 7, 2014. Moreover, Apple does not refute that the Upper Nordens address was the registered address of Smartflash Ltd.'s predecessor-companies when Mr. Racz first became involved and the home address of the founder of the original predecessor-company.[7] According to Mr. Racz, he conducted Internet Ltd. business at the Upper Nordens address, and Internet Ltd. later changed to Smartflash Ltd. As in *Everything Baseball*, the carryover of the same errors from the assignment document by prosecution counsel and submissions to the USPTO are insufficient to establish that a separate "Smart-flash Limited" entity existed.

The evidence in the record weighs substantially in favor of finding that "Smart-flash Limited" and "Smartflash Limited" are the same entity and the discrepancies on the Hulst assignment document amount to typographical and clerical errors. Accordingly, Smartflash has met its burden to show ownership of Mr. Hulst's original U.S. patent rights as a co-inventor.

*Intertwinement with Damages*

Apple contends that the valuations of Internet Plc's intellectual property rights are "highly relevant to the hypothetical negotiation and resulting reasonable royalty that the jury would be called upon to determine if it finds the patents infringed." Doc. No. 406 at 8.

---

[7] The company was originally founded as Omnia Technology Ltd. in 1996 and later became Internet Ltd. by the time of Mr. Racz's first involvement in 1999. Racz. Decl. ¶¶ 3, 4, January 19, 2015.

Additionally, Apple contends that Mr. Racz's "inconsistencies between his present testimony" and contemporaneous writings implicate his credibility that should be put to a jury. *Id.* at 9. Accordingly, Apple asserts the question of whether Internet Plc ever owned the patents-in-suit should be resolved by a jury, not the Court. *Id.*

Smartflash responds that Apple's theory that Internet Plc owned the patents would only have relevance to damages in the circumstance that Smartflash does not have standing. Doc. No. 410 at 16. Accordingly, Smartflash contends that the Court can resolve the ownership dispute without resolving any damages issues that should be tried in front of a jury. *Id.* at 17. Smartflash argues that if the Court finds that Smartflash has standing, documents and other evidence relating to Internet Plc's ownership lose relevance and instead become unduly prejudicial and risk confusing the jury. *Id.* 17–18. Further, Smartflash argues that Apple's insistence that a jury would want to hear evidence related to Mr. Racz's credibility similarly risks presenting the jury with "minimally probative, highly prejudicial 403-type evidence." *Id.* at 18. Thus, Smartflash urges the Court to resolve the disputed facts related to patent ownership. *Id.*

The facts on which Apple bases its standing argument are not intertwined with damages. In fact, a finding that Smartflash has standing means that Internet Plc never owned the patents-in-suit (because Mr. Racz never transferred his interest to Internet Plc). Therefore, the valuation of Internet Plc's property rights is of zero relevance to damages because these rights do not contain the patents-in-suit. Additionally, evidence related to Mr. Racz's inconsistencies between his current testimony and contemporaneous writings is minimally probative and risks undue prejudice. As a lay person, Mr. Racz's statements regarding patent ownership are unreliable given the complicated factual background related to the history of the Smartflash entities and ownership of the patents-in-suit. The issues of standing are not intertwined with the merits such

that a jury should resolve the disputed facts.

## CONCLUSION

Smartflash has met its burden to show that it owns all of the rights to patents-in-suit. Apple has not met its burden to show a break in the chain-of-title.  Accordingly, Smartflash has constitutional and prudential standing to bring this lawsuit.  Having resolved the issue of standing, the Court **GRANTS** Plaintiffs' Motion *in Limine* B (Doc. No. 377).


So ORDERED and SIGNED this 3rd day of February, 2015.


_____

K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE