# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| **SMARTFLASH LLC,** *et al.*, | |
| **Plaintiffs,** | **Case No.  6:13-CV-00447-KNM** |
| **v.** | **JURY TRIAL DEMANDED** |
| **APPLE INC.,** *et al.*, | |
| **Defendants.** | |
| **SMARTFLASH LLC,** *et al.*, | |
| **Plaintiffs,** | **Case No.  6:13-CV-00448-KNM** |
| **v.** | **JURY TRIAL DEMANDED** |
| **SAMSUNG ELECTRONICS CO.,** *et al.*, | |
| **Defendants.** | |

**FIRST JOINT PROPOSED PRELIMINARY JURY INSTRUCTIONS**[1],[2]

Ladies and Gentlemen of the Jury:[3]

---

[1] Submissions which are agreed to by all parties are in regular text.  Submissions proposed by Smartflash which are not agreed to by Apple are in *italics*.  Submissions proposed by Apple which are not agreed to by Smartflash are underlined.

[2] Plaintiff Smartflash and Defendant Apple Inc. propose the following pre-trial jury instructions. These proposed pre-trial jury instructions are made without waiver of any pending motions, which, if granted, may render portions of the following instructions unnecessary.  The parties further reserve the right to amend, supplement, or modify these pre-trial instructions in light of further developments, including any remaining fact or expert discovery, and based on the evidence and arguments presented at trial.  The parties expect that the parties will meet and confer to refine the pre-trial jury instructions as events continue to narrow the issues.

[3] Adapted from instructions as given in *VirnetX, Inc. v. Microsoft Corp.*, No. 6-07-CV-80; *i4i LP v. Microsoft Corp.*, No. 6:07CV113 (E.D. Tex. May 2009); *VirnetX, Inc. v. Cisco Systems, Inc.*, No. 6:10-CV-417.

You have now been sworn as the jury to try this case.  As the jury, you will decide the disputed questions of fact.  As the Judge, I will decide all questions of law and procedure.  From time-to-time during the trial and at the end of the trial, I will instruct you on the rules of law that you must follow in making your decision.

Very soon, the lawyers for each side will make what is called an opening statement.  Opening statements are intended to assist you in understanding the evidence.  However, what the lawyers say during their opening statements is not evidence.  It's only what they expect the evidence will show.  What you should base your decision on is the evidence that you will hear and that comes into evidence from the witness stand, by deposition, and from the exhibits that I admit into evidence.  You will rely on this evidence in making your decision as to the verdict in this case.

The party who brings a lawsuit is called the plaintiff.  The plaintiffs in this case are Smartflash LLC and Smartflash Technologies Limited, who will be referred to as "Plaintiff" or "Smartflash."  The party against whom this suit is brought is called the defendant.  In this action, the defendant is Apple Inc., who will be referred to as "Defendant" or "Apple" during this trial.

As I told you during voir dire, this is a case of alleged patent infringement.  After the opening statements, Smartflash will call witnesses and present evidence.  Then Apple will have an opportunity to call witnesses and present evidence.  After the parties' main case is completed, Smartflash may be permitted to present what's called rebuttal evidence.

After all of the evidence is in, I will instruct you on the applicable law.  I will give you detailed instructions both orally as I am doing now, and at the end of the case, you will have those written instructions to take with you to the jury room.  After I have given you your final instructions, after all the evidence is in, you have heard the final instructions, then you will hear

the closing argument of the attorneys.  After you have heard their closing arguments, then and only then, will you retire to the jury room for the first time, start to discuss the case, deliberate and reach a verdict.

During this case, I want you to keep an open mind.  Do not decide any fact until you have heard all of the evidence, then closing arguments and my instructions.  Pay close attention to the testimony and the evidence.

If you would like to take notes during the trial, you may do so.  We have some notebooks that I'm going to ask the court security officer to pass out to you at this time, as well as a pen.

The notebooks each have a cover page under the plastic cover.  Slide the cover page out so you can write your name at the top of that, so you will know whose notebook that is, then slide it back in.

If you will open your notebook, you should find a blank pad on the inside for taking notes.  Please write your name on the front page of that tablet.  And then you can flip to the second page to begin taking any notes, if you desire to.  And that's so you can identify your tablet and your notebook.  You can also make notes in your notebook, if you'd like to.  What you're going to find in your notebook is a copy of the patents in this case, a copy of the Court's claim construction chart, and a glossary of terms.  I'll go over all of that with you in detail as I go through these instructions.  So please just listen to my instructions now.

If you decide to take notes in this case, be careful not to get so involved in your note taking that you become distracted and miss part of the testimony.  You don't need to write down everything that happens, but take such notes as you feel are appropriate or would be helpful to you.  Your notes are to be used as an aid to your memory.  And if your memory should later be different from your notes, then you should rely on your memory and not on your notes.

Just because something gets written down on the notepad doesn't make it any more important than your recollection or another juror's recollection.  So don't be unduly influenced by the notes that others may take.  A juror's notes are not entitled to any greater weight than the recollection of each juror concerning the testimony.  For example, just because someone has written something down does not necessarily mean that they heard it right or that they wrote it down correctly.  The fact that notes are written down does not mean that they are to be given any greater weight than just what your memory would be.  But it is there to help you.

Even though we have a court reporter present who will be making stenographic notes of what is said in court, a typewritten copy of the testimony will not be available for your use during deliberations.  On the other hand, any exhibits that are introduced into evidence—that would be documents, physical evidence—will be available for you during your deliberations.

Now, my next instruction is a very important instruction.  Until this trial is over, do not discuss this case with anyone, and do not permit anyone to discuss this case in your presence.  This includes your family and friends.

Do not discuss the case even with the other jurors until all of the jurors are in the jury room actually deliberating at the end of the case.  As I told you last week, when you go to lunch or take a break, talk about anything else you wish, but do not talk about the case.  Do not discuss this case with anyone.  Each juror should hold themselves completely apart from any discussion about this case with anyone until we get to the end of the case and then only with your fellow jurors when you go back to deliberate.

If anyone should attempt to discuss this case or to approach you concerning this case, you should inform me immediately or through my court staff, and you should not visit with them.

Hold yourself completely apart from all of the people involved in the case, the parties, the witnesses, the attorneys and the persons associated. It is important not only that you be fair and impartial but also that you appear to be fair and impartial. And that is why you should not have any contact with any of them.

You are wearing a juror badge. All of the lawyers here and spectators, they're all friendly people and would love to chat with you, but they're going to see that juror badge, so they are not going to be communicating with you in the elevator or chitchatting with you, and you should not communicate or chitchat with them. Hold yourself completely apart from them.

Also, as far as discussing this case with others, if you have any type of social networking internet site or tool like FaceBook, MySpace, or Twitter, you should not discuss or even mention the case at all on any of those sites. So no postings on Twitter, no discussions on FaceBook or any of those social-networking sites. Do not post updates about what is going on in the case to any of those sites. Do not send or receive text messages about the case. That would be entirely improper. And if you were to do that, it can result in all of the time and expense that everybody has spent getting the case to this point, and trying the case can be put in jeopardy. Please follow those instructions very, very carefully.

Do not make any independent investigation of any fact or matter in this case. Do not learn anything about the case from any other outside source. And that's very important, because what you decide this case on is only the testimony that's taken under oath and the exhibits that are legally admitted into evidence. So you should not go to any other source or receive information from any other source. I do not believe there will be anything on television or in the newspaper about this case, probably not, but do not watch TV or read the newspaper about this

case.  If there should be something, just turn the TV to another channel, and don't read the article.

Also, do not use the internet or Google to find out more information about the case, the parties, or the attorneys in the case.  In other words, don't go home and get on your computer and start doing any kind of independent investigation.  That would be extremely improper.  And the reason for that, again, is very, very important.  It would violate your oath as a juror, because you would be considering something other than the evidence in the case, and it could result in a mistrial of the case and all of the time and expense involved in this going for naught.  So be sure to follow that instruction.  You are to be guided only by the evidence in the case, only by what you see and hear in this courtroom and nothing else.  Make no independent investigation.

During the trial, it may be necessary for me to confer with the lawyers out of your hearing or to conduct a part of the trial out of your presence.  I will handle these matters as briefly and as conveniently for you as I can, but you should remember that they are a necessary part of any trial.  And you may have to wait in the jury room during such conferences–though, again, I am going to try to keep that to a minimum.  I am going to try to deal with anything I need to take up with the attorneys during a break or during the noon hour or after hours or before hours, because I want your time to be spent this week here in the jury box hearing evidence.  But those occasions will come up where you are going to be in the jury room, and you are going to be wondering, why are we sitting in here? What is going on? Just realize that is part of the case. Again, we will try to hold it to a minimum.

Now let me explain to you about the parties and the nature of this case.  This is a patent case.  This case involves three patents identified by their numbers as follows: U.S. Patent Number 7,334,720, also known by its last three digits as "the '720 patent"; U.S. Patent No.

8,118,221 ("the '221 patent"); and U.S. Patent No. 8,336,772 ("the '772 patent"). These patents may be referred to as the "patents-in-suit" or "Asserted Patents." These patents generally relate to data storage and access systems for paying for, downloading and controlling access to data such as audio and video data, text, software, games, and other types of data. And if you'll look in your notebooks, you'll see these patents, but don't read them now.

The plaintiff in this case, Smartflash, contends that Apple is directly and indirectly infringing certain claims of the patents-in-suit, by importing, making and selling products that include its patented technology.

Smartflash also contends that Apple's infringement is willful.[4] Smartflash contends that it is entitled to damages as a result of Apple's infringement.

Apple denies that it is infringing and contends that the patents-in-suit are invalid as being either anticipated by or obvious in light of what is called prior art. Apple further contends that certain claims of the patents are invalid because the patent specification does not have an adequate written description. Apple further contends that Smartflash is not entitled to any damages.

Now, that may all sound like Greek to you right now. It is a lot of new words thrown at you. I am going to define a lot of those words for you as I go through the instructions. The attorneys are going to discuss them in their opening statements. The witnesses are going to help

---

[4] Apple disagrees with Smartflash's inclusion of a willfulness instruction in the final jury instructions and verdict form, and respectfully requests that the Court follow its practice in, for example, *Ericsson, Inc. et al. v. D-Link Corp. et al.*, No. 6:10-cv-473, of bifurcating the question of willfulness from the merits infringement trial, and instructing the jury on the question of willfulness only in the event that (1) the jury first determines that one of more of the asserted patents is valid, enforceable, and infringed; and (2) the Court subsequently concludes that the objective prong of the willfulness test is satisfied. If, however, the Court is inclined to give an instruction on willfulness in the final instructions, Apple requests that the Court also refer to the concept in the preliminary instructions, so that Apple may address that contention in its opening statement.

you understand those words.  So do not feel overwhelmed at this stage.  You are going to get a lot of education during the trial and lots of help from the attorneys and from the witnesses for both sides.

Let me visit with you about the patents and the U.S. patent system generally.  You saw some of this on the video that you saw with the jury panel before voir dire.

Patents are issued by the United States Patent and Trademark Office, which is part of the United States Government.  The United States Government is empowered by the United States Constitution to enact patent laws and issue patents to protect inventions.  Inventions that are protected by patents may be products, compositions, or methods for doing something or for using or making a product or composition.

The purpose of the patent system is to help advance science and technology. *Smartflash: The patent system achieves this purpose by granting to the owner of a patent the right, for the term of the patent, to exclude any other person from making, using, offering for sale, selling and importing the invention covered by the patent anywhere in the United States.*[5] [6]

A patent is granted for a set period of time, which for the patents involved in this case has not yet expired.  Once a patent expires, the patent owner may not exclude anyone from making use of the invention claimed in the patent.  The invention then becomes part of what we call the public domain, which means that anyone is free to use it.

---

[5] *Verbatim from, for example, VirnetX v. Microsoft Civil Action No. 6:07-cv-80 (E.D. Tex. 2010); VirnetX v. Apple, Civil Action No. 6:10-cv-417 (E.D. Tex. 2012); VirnetX v. Cisco, Civil Action No. 6:10-cv-417 (E.D. Tex. 2013).*

[6] Apple objects to this instruction as one-sided and as ignoring the fact that this is not the only purpose of the patent system.  Another purpose, for example, is proper disclosure, and as such it is a quid pro quo system where an applicant obtains a patent in exchange for meeting certain novelty and disclosure requirements.

During the term of the patent, however, if another person, without the patent owner's permission, makes, uses, sells, offers to sell, or imports into the United States, something that is covered by the claims of the patent, then that person is said to infringe the patent.  The patent owner may enforce a patent against persons or companies believed to be infringers in a lawsuit in federal court such as in this case.  *Smartflash proposes: The law does not require that the patent owner give advance notice to a defendant that the plaintiff intends to file suit.*[7][8]

To be entitled to patent protection, an invention must be new, useful and nonobvious.  As I noted, a patent gives its owner the right to exclude other people from making, using, selling, offering for sale or importing what is covered by the claims of the patent.  Everyone, however, has the right to use existing knowledge and principles.  A patent cannot remove from the public the ability to use what was known or obvious before the invention was made or patent protection was sought.  *Smartflash proposes: This does not mean, however, that the individual elements of a claim cannot be known or obvious.  An invention may be a combination of old elements disclosed in multiple prior art references.*[9][10]

---

[7] *Adapted from Final Jury Instructions as given in Bedrock Computer Tech. L.L.C. v. Yahoo! Inc., Civil Action No. 6:09-CV-269-LED (E.D. Tex.)*

[8] Apple objects to the inclusion of this instruction as unnecessary for preliminary instructions and as improperly emphasizing what the law does not require, as opposed to being an affirmative statement about what the law does require. Apple is not aware of a case where this type of instruction regarding what the law does not require was provided in connection with preliminary instructions.

[9] *Cross Med.  Prods., Inc.  v.  Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1321 (Fed.Cir.2005).

[10] Apple is not aware of a case where this level of detail was provided in preliminary instructions.  Further, the phrasing of the first sentence is confusing, and the second sentence provides an incomplete picture of the rule and is also a statement from a pre-*KSR* case.  *KSR* states "need for caution in granting a patent based on the combination of elements found in the prior art" and that "the combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."  *KSR Int'l Co. v. Teleflex Inc.*,

Now, let me visit with you about the parts of a patent.  A patent includes two basic parts: A written description of the invention and the patent claims.  The written description, which may include drawings, is often referred to as the "specification" of the patent.  Please refer to the '772 patent in your notebook as I identify the different sections.  The cover page of the '772 patent provides identifying information, including the date the patent issued and the patent number along the top, as well as the inventors' names and filing date, and the name of the assignee, which is Smartflash, the plaintiff in this case,[11] and a list of certain prior art publications on the first through third pages that were considered in the patent office when deciding to issue the patent.

The specification of the '772 patent begins with an abstract, found on the cover page. The abstract is a brief statement about the subject matter of the invention.  You will see it starts with the first sentence: "Data storage and access systems enable downloading and paying for data such as audio and video data, text, software, games and other types of data."  Next are the drawings which appear as Figures 1-13 on the next 17 pages.  The drawings depict the various aspects of features of the invention.  They are described in words later in the patent specification. The written description of the invention appears next.  In this portion of the patent, each page is

---

550 U.S. 398, 416 (2007).  Apple proposes: deleting these sentences or revising to read "This does not mean **that each individual element of a claim must have been unknown or non-obvious**.  An invention may be a combination of **known** elements disclosed in multiple prior art references.  **However, caution is needed in allowing a patent based on the combination of known elements.  In particular, the combination of known elements is likely to be obvious when it does no more than bring about predictable results**."  These last two sentences are adapted from *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 416 (2007).

[11] By submitting a jury instruction with respect to the name of the assignee, Apple does not intend to waive and hereby expressly preserves its contentions with respect to the issue of patent ownership and reserves its right to appeal.  Further, Apple disputes Smartflash's patent ownership, per Dkts. 406 [Apple's Brief on Patent Ownership], 410 [Smartflash's Response], 455 [Magistrate's Order] and 464 [Apple's Objections to Order].

divided into two columns, which are numbered at the top.  The lines on each page are also numbered going down the middle column, as you will see.

The written description of the'772 patent begins at column 1, line 1.  So when you see a reference during the trial to a column and a line number, you can go to that part of the patent to locate it.

The written description of the '772 patent begins at column 1, line 1, and continues to 25, line 62.  It includes a background section, a summary of the invention and a detailed description of the invention including some specific examples.

The specification ends with numbered paragraphs called claims.  The claims may be divided into a number of parts, referred to as claim limitations.  In the '772 patent, the claims begin at column 25, line 64 which says "What is Claimed is," and continue to the end of the patent, at column 32, line 56.  Not all of those claims are being asserted, just certain ones.

Now let me instruct you about the significance of the patent claims.  The claims of a patent are a main focus of a patent case, because the claims are what define the patent owner's rights under the law.  That is, the claims define what the patent owner may exclude others from doing during the term of the patent.

The claims of a patent serve two purposes.  First, they set the boundaries of the invention covered by the patent, and second they provide notice to the public of those boundaries.  Thus, when a product or a method is accused of infringing a patent, the patent claims are compared to the accused product or method to determine whether there is infringement.

The claims of the patent must be analyzed to assess infringement because the claims define what the invention is.  The claims are also at issue when the validity of a patent is

challenged.  In reaching your determinations with respect to infringement and validity, you must consider each claim separately.

In your notebook, you are provided with this Court's construction of the meaning of certain terms in the asserted claims in this patent.  You must use these meanings that I give to you when you decide the issues of infringement and invalidity.  If you will turn over to the next tab in your notebook, you should see a listing of terms that the Court has construed previously.  You do not need to be too concerned with it right now other than to just know it is there.  There are certain words within these claims.  There are certain words that at a pretrial proceeding, the attorneys had different arguments over what a particular word meant.  And they asked me to construe it, and I have done that, and I have provided you with those definitions.  So it is kind of like if you are reading a book and there is a particular word there that maybe you do not quite understand, you would go to a dictionary to look it up.  You would go to my claim construction to look up the meaning of those words, and you will be guided by those meanings.  Now, the attorneys will do a good job of explaining all of that when they get into the evidence, but you just need to know for now that those constructions are there and that they relate to these claim terms.

So let's look at Claim 1.  It goes through several elements there: A handheld multimedia terminal, comprising: a wireless interface configured to interface with a wireless network for accessing a remote computer system; non-volatile memory configured to store multimedia content, wherein said multimedia content comprises one or more of music data, video data and computer game data; a program store storing processor control code; etc.  Those are the elements of the claim.  Now you may not understand what all of those mean at this point, but again, that will be explained to you during the course of opening statements and during the evidence that

you hear in the case.  But for now, just realize there is Claim 1; it is part of one of the asserted claims; and it comprises those various steps that I have mentioned to you or I just read to you.

Now let me visit with you about how a patent such as this is obtained.  We have gone over the patent, various parts of it.  Let's talk about how someone obtains a patent.  The United States Patent and Trademark Office is the agency of our federal government that initially examines patent applications and issues patents.  When an applicant for a patent files a patent application with the Patent and Trademark Office, the application is assigned to a patent examiner.

The patent examiner examines the application to determine whether the invention described in the patent application meets the requirements of the patent laws for patentable inventions.  In examining a patent application, the patent examiner makes a search in the patent office records for prior art pertinent to the claims of the patent application.  If an applicant believes that a claimed invention is disclosed in an earlier patent application, the applicant may claim priority back to that earlier application.   This earlier application is called a "priority application."

The patent office records may or may not contain all of the prior art pertinent to the claims of the patent application.  The prior art is defined by statute, and I will give specific instructions after the close of the evidence as to what constitutes prior art.  But generally, it is technical information and knowledge that was known to the public either before the invention by the applicant or more than a year before the effective date of the application.  Prior art is not limited to patents and may also include publications and products.

The patent examiner advises the applicant of his or her findings in a communication called an office action.  The examiner may reject the claims, if he or she believes that they do not

meet the requirements for patentable inventions.  The applicant may then respond to the rejection with arguments to support the claims and may sometimes make changes or amend the claims or submit new claims.  If the examiner concludes that the legal requirements for a patent have all been satisfied, then the patent examiner is said to allow the claims, and the application issues as a patent.

The process from the filing of a patent application to the issuance of the patent is called patent prosecution.  And that is what I have just described to you that goes on between the applicant and the Patent Office.  The record of papers relating to the patent prosecution is referred to as the prosecution history or the file history.  In other words, it is documents that relate to what transpired between the applicant and the Patent & Trademark Office.  So that generally is how the patent process works.

I will now give you some information about the issues that will be presented to you at this trial, as well as a short overview of the applicable law.  At the close of the trial you will be given more specific instructions that you must follow in reaching your verdict.  You will also be given a verdict form and questions that you must answer in providing your verdict.  That will all transpire at the end of the case.

But now let me instruct you on the various instructions you will follow in deciding the case.

First, let me visit with you about the burdens of proof required in this case.  In any legal action, facts must be proved by a required standard of evidence, known as the burden of proof.  You may have heard about this in a criminal case, proof beyond a reasonable doubt; or in a civil case, it is proof by a preponderance of the evidence.  In a patent case such as this, there are two different burdens of proof that are used.  The first is called the preponderance of the evidence

-14-

standard.  The second is called the clear and convincing evidence standard.  The standard beyond

a reasonable doubt that is used in criminal cases, that does not apply in a civil case like this.  We

have two standards: Preponderance of the evidence and clear and convincing evidence.

In this case, Smartflash must prove its claims of patent infringement and damages by a

preponderance of the evidence.  When a party has the burden of proof by a preponderance of the

evidence, it means that you must be persuaded that what the party seeks to prove is more

probably true than not true.

Put in another way, if you were to put the evidence for and against the party who must

prove the fact on the opposite sides of a scale, a preponderance of the evidence requires that the

scale tip at least somewhat toward the party who has the burden of proof.

Apple has the burden of proving its invalidity defenses by a heavier burden called the

clear and convincing evidence standard.  When a party has a burden of proof by clear and

convincing evidence, it means that the evidence must produce in your minds a firm belief or

conviction as to the matter sought to be established.  In other words, if you were to put the

evidence for and against the party who must prove the fact on the opposite sides of a scale, clear

and convincing evidence requires that the scale tip more heavily toward the party who has the

burden of proof.

Again, you may have heard of a burden of proof that is used in criminal cases called

beyond a reasonable doubt.  That requirement is the highest burden of proof and is used only in

criminal cases.  It does not apply in this case and you should, therefore, put it out of your mind.

Now let me visit with you about infringement.

Smartflash contends that Apple is infringing the patents-in-suit by making, using, selling,

offering for sale and importing into the United States certain accused products.  Smartflash also

contends that Apple infringes indirectly by inducing or contributing to the direct infringement of others.

Smartflash contends that Apple infringes the following patent claims.  You may mark those claims on the patents in your notebooks by circling those claim numbers.  Claims:

- Claim 13 of  the '720 patent;

- Claims 32 of the '221 patent; and

- Claims 26 and 32 of the '772 patent.

I will first tell you about direct infringement, and then I will tell you about indirect infringement.  Smartflash seeks to prove direct infringement of the patents by literal infringement.   To prove literal infringement of a particular patent claim, Smartflash must prove by a preponderance of the evidence that the accused products or accused manner of use of the accused products include each and every limitation of a particular claim.  *Smartflash proposes: Infringement does not require that the Defendant actually copied a Smartflash product or the patent.  A person or a company can directly infringe a patent without knowing that what it is doing is infringement.  It may directly infringe even though in good faith it believes that what it is doing is not infringement of any patent and even if it did not know of the patent.*[12] [13] [14]

---

[12] *VirnetX, Inc. v. Microsoft Corp., Civil Action No. 6:09-cv-80, Dkt. 376 at 9.*

[13] Apple objects to the inclusion of this instruction as unnecessary in preliminary instructions and as improperly emphasizing what the law does not require, in contrast to affirmative statements about what the law does require. Apple is not aware of a case where this type of instruction regarding what the law does not require was provided in connection with preliminary instructions.

[14] The Court is currently considering the issue of patent ownership, per Dkts. 406 [Apple's Brief on Patent Ownership], 410 [Smartflash's Response], 455 [Order] and 464 [Apple's Objections to Order].  In the event the Court determines that patent ownership may be considered by the jury, Apple requests an instruction as follows "Smartflash must also prove that it has sole, legal ownership of the Asserted Patents.  The fact that the Patent Office issued the patents or that I am

Smartflash also alleges that Apple has indirectly infringed the asserted claims by inducing and/or contributing to another's direct infringement.  To prove that Apple induced someone else to infringe, Smartflash must prove by a preponderance of the evidence that Apple encouraged or instructed customers or other persons to make or use the patented products, and that Apple knew or was willfully blind to the fact that the encouragement or instructions would result in the customer acting in a way that infringed the patent.  Induced infringement cannot exist if Apple did not know about the patent, or formed an objectively reasonable belief that the patent claim was invalid, that the customers' or other persons' actions did not constitute infringement, or that its own actions did not actually induce the customers or other persons to infringe a valid patent.[15] [16] *Smartflash Alternative Proposal:  To induce infringement, Apple must also know or be willfully blind to the patent.  The filing of the complaint provides knowledge of the patent.*[17] [18]

---

permitting this trial to occur does not demonstrate that Smartflash owns the patents-in-suit or has the authority to assert them in this case."

[15] *See Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068, 2070-71 (2011) (there are "two basic requirements" to find willful blindness: "(1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact.") Including this instruction will provide context for the jury so they can better understand the issues that are important in connection with contributory infringement.   And although *Commil USA LLC v. Cisco Systems*, 720 F.3d 1361 (Fed. Cir. 2013), *cert. granted*, 2014 U.S. LEXIS 8117 (2014) is under Supreme Court review, the current law still states that a good-faith belief of invalidity is a defense to indirect infringement.  *Id.* at 1367-68.

[16] *Smartflash objects to the inclusion of this instruction as unnecessary for preliminary instructions.  Further, Smartflash objects to the instruction as incomplete and misleading as written. Smartflash also objects to an instruction to any instruction indicating that a good-faith belief of invalidity is a defense to induced or contributory infringement.  See Commil USA LLC v. Cisco Systems, 720 F.3d 1361, 1367 (Fed. Cir. 2013), cert. granted, 2014 WL 318394 (2014).*

[17] *See Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068, 2070-71 (2011); *InMotion Imagery Tech. v. Brain Damages Films*, 2:11-cv-414-JRG, 2012 WL 3283371, at *3 (E.D. Tex. Aug. 10, 2012).

To prove that Apple contributed to another's direct infringement, Smartflash must prove by a preponderance of the evidence that Apple knew of the asserted patent and sold or supplied to another person a component that is a material part of the patented invention and is not suitable for other substantial noninfringing uses.  Smartflash must also prove that other person directly infringed the patent claims and that Apple knew or was willfully blind to the fact that the components were especially made for use in *Smartflash proposes: an infringing manner.*[19] Apple proposes: a way that would infringe a valid patent.[20] [21] Apple proposes:  Contributory infringement cannot exist if Apple did not know about the patent, or formed an objectively reasonable belief that the patent claim was invalid or that the other person's actions did not

---

[18] This alternative proposal is confusing, misleading, and an incorrect statement of the law.  In *Global-Tech*, the Supreme Court held that "induced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement"—not, as Smartflash proposes, that inducement simply requires knowledge of the patent.  *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 1060, 1068 (2011).  Further, the Supreme Court held that, as opposed to what Smartflash suggests, the defendant must not be simply "willfully blind to the patent," but rather, the defendant must be willfully blind to the infringement, requiring that "(1) the defendant must subjectively believe that there is a high probability that a fact exists [i.e., the infringement] and (2) the defendant must take deliberate actions to avoid learning of that fact. . . . Under this formulation, a willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing [i.e., infringement] and who can almost be said to have actually known the critical facts."  *Id.* at 2070.  Smartflash's addition that filing the complaint provides knowledge of the patent is wholly insufficient to prove inducement.  Accordingly, Smartflash's misstatements of the law here would only confuse the jurors and give them an erroneous view of the law and should therefore be rejected.

[19] *Smartflash: Adapted from Preliminary Instructions in VirnetX v. Microsoft 07-cv-80 (E.D. Tex. 2010).*

[20] Apple: *Prima Tek II, L.L.C. v. Polypap, S.A.R.L.*, 412 F.3d 1284, 1291 (Fed. Cir. 2005)("there can be no contributory or induced infringement of invalid patent claims.").

[21] *Smartflash objects to Apple's proposal as an incorrect statement of the law.  The United States Supreme Court has recently granted certiorari on the question of whether a good-faith belief of invalidity is a defense to a claim of inducement.  See Commil USA LLC v. Cisco Systems, 720 F.3d 1361, 1367 (Fed. Cir. 2013), cert. granted, 2014 WL 318394 (2014).  Even under the Commil USA framework, the instruction is incorrect in that it states that Smartflash must prove the validity of its patents to prove contributory infringement.*

constitute infringement of a valid patent.[22] [23]  *Smartflash Alternative Proposal:  For contributory infringement, Apple must also know or be willfully blind to the patent.  The filing of the complaint provides knowledge of the patent.*[24] [25]

Apple denies that it has either directly or indirectly infringed any of the claims of the patents-in-suit.  I will explain in more detail at the end of the case how you will decide the allegations of infringement.

---

[22] *See Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068, 2070-71 (2011) (there are "two basic requirements" to find willful blindness: "(1) the defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact.") Apple is entitled to have a statement regarding its defenses to induced infringement in the preliminary instructions.  And  although *Commil USA LLC v. Cisco Systems*, 720 F.3d 1361 (Fed. Cir. 2013), *cert. granted*, 2014 U.S. LEXIS 8117 (2014) is under Supreme Court review, the current law still states that a good-faith belief of invalidity is a defense to indirect infringement.  *Id.* at 1367-68.

[23] *Smartflash objects to the inclusion of this instruction as unnecessary for preliminary instructions.  Further, Smartflash objects to the instruction as incomplete and misleading as written. Smartflash also objects to an instruction to any instruction indicating that a good-faith belief of invalidity is a defense to induced or contributory infringement.  See Commil USA LLC v. Cisco Systems, 720 F.3d 1361, 1367 (Fed. Cir. 2013), cert. granted, 2014 WL 318394 (2014).*

[24] *See Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068, 2070-71 (2011); *InMotion Imagery Tech. v. Brain Damages Films*, 2:11-cv-414-JRG, 2012 WL 3283371, at *3 (E.D. Tex. Aug. 10, 2012).

[25] Apple objects to this alternative proposal as confusing, misleading, and an incorrect statement of the law.  In *Global-Tech*, the Supreme Court held that, like contributory infringement under § 271(c), "induced infringement under § 271(b) requires knowledge that the induced acts constitute  patent  infringement"—not, as Smartflash proposes, that contributory infringement simply requires knowledge of the patent.  *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 1060, 1068 (2011).  Further, the Supreme Court held that, as opposed to what Smartflash suggests, the defendant must not be simply "willfully blind to the patent," but rather, the defendant must be willfully blind to the infringement, requiring that "(1) the defendant must subjectively believe that there is a high probability that a fact exists [i.e., the infringement] and (2) the defendant must take deliberate actions to avoid learning of that fact. . . . Under this formulation, a willfully blind defendant is one who takes deliberate actions to avoid confirming a high probability of wrongdoing [i.e., infringement] and who can almost be said to have actually known the critical facts."  *Id.* at 2070.  Smartflash's addition that filing the complaint provides knowledge of the patent is wholly insufficient to prove contributory infringement.  Accordingly, Smartflash's misstatements of the law here would only confuse the jurors and give them an erroneous view of the law and should therefore be rejected.

Now with regard to the defense of invalidity, Apple contends that the asserted claims of the patents-in-suit are invalid.  Invalidity is a defense to patent infringement.  A person accused of infringement has the right to assert that the claimed invention in a patent did not meet the requirements for patentability and, therefore, that the issued patent claim is invalid.

I will now explain to you briefly the legal requirements for each of the grounds on which Apple relies to contend that the asserted patent claims are invalid.  I will provide more details for each ground in my final instructions at the end of the case.

The first ground is what's called anticipation.  Apple contends that the inventions covered by the asserted claims of the patents-in-suit are not new.  An invention that is not new is said to be anticipated by the prior art.  To prove that a claim is anticipated by prior art, Apple must prove by clear and convincing evidence that each and every limitation of the claim was present in one single item of prior art.  *Smartflash proposes: Anticipation requires that a single reference not only disclose all elements of the claim within the four corners of the document, but it must also disclose those elements arranged as in the claim.*[26] [27]

Next is obviousness.  Apple also contends that the asserted claims of the patents-in-suit are invalid for obviousness.  To prove invalidity of a patent based on obviousness, Apple must prove by clear and convincing evidence that the invention defined by the claim would have been obvious to a hypothetical person of ordinary skill in the art at the time the invention was made.

---

[26] *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1371 (Fed. Cir. 2008).

[27] Smartflash's proposed construction, especially with respect to use of the phrase, "arranged as in the claim," is confusing and an incomplete instruction as stated here.  Indeed, the case Smartflash relies on, Net MoneyIN, Inc. v. VeriSign, Inc., 545 F.3d 1359, 1371 (Fed. Cir. 2008), even spends several more sentences explaining this phrase.  Thus, at the level of detail for preliminary instructions, the suggested instruction here is too specific, incomplete, and therefore confusing without further substantial explanation, which is inappropriate for these preliminary instructions.

So we have discussed two ways that a patent can be found invalid: anticipation and/or obviousness.  Next is written description.  Apple also contends that certain asserted claims of the '772 patent are invalid because the description of the invention in the specification does not meet certain requirements.  A patent claim is invalid if the specification of the patent does not contain an adequate written description of the claimed invention.  That is referred to as the written description requirement.  To succeed, Apple must show by clear and convincing evidence that the specification fails to meet the law's written description requirements for an invention.[28]

Now, that concludes the instructions regarding infringement and the instructions regarding invalidity.

Now with regard to damages, Smartflash claims that it is entitled to damages as a result of Apple's infringement in the form of a reasonable royalty on each of Apple's accused products.  Damages cannot be speculative.  Smartflash must prove any damages by a preponderance of the evidence.

The fact that I am instructing you about damages now does not mean that Smartflash is or is not entitled to recover damages.  I will explain to you further at the end of the trial how reasonable royalties are determined.

And at the end of the trial, you will get a written charge that will have all of these instructions in it in much more detail than I am giving to you now.  You will also have a verdict form that will ask you some very simple questions dealing with infringement, invalidity and damages.

---

[28]Apple states that consistent with the Court's rulings that indefiniteness will not be presented to the jury, Apple has not offered proposed instructions.  Apple preserves its argument that indefiniteness should be presented to the jury and its right to appeal the Court's rulings.  Should the Court be willing to revisit those rulings, Apple would be pleased to offer proposed instructions.

So there will be questions that you will have to decide in the case basically dealing with infringement, invalidity, and damages.  I know this is all very complex.  Do not feel like you have to be an expert on patent law.  We have plenty of experts in the room.  You are going to hear a lot of testimony about it.  This is just an overview so that, as you hear a lot of these terms and you hear the evidence, hopefully, this will give you a little context to filter it through.

Now with regard to construction of the claims, I will instruct you now and at the end of the case about the meaning of some of the claim language. [29]  You must use these meanings I give you when you decide the issues of infringement and invalidity.

In deciding whether or not an accused product or method infringes a patent, the first step is to understand the meaning of the words used in the patent claims.  It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning.  You must accept the meanings I give you and use them when you decide whether or not a patent claim is infringed and whether or not a patent claim is invalid.

It may be helpful to refer back to the patents-in-suit as I discuss the claims at issue here.  The claims are at the end of each of the patents.

Patent claims may exist in two forms, referred to as independent claims and dependent claims.  An independent claim does not refer to any other claim of the patent.  It is not necessary to look at any other claim to determine what an independent claim covers.  Claim 1 of the patent, for example, is an independent claim.  A dependent claim refers to at least one other claim in the patent.  A dependent claim includes each of the limitations of the other claim or claims to which it refers, as well as the additional limitations recited in the dependent claim itself.  Therefore, to

---

[29] By submitting jury instructions with respect to the Court's claim constructions, the parties do not intend to waive and hereby expressly preserve their contentions in their Markman briefing and argument and reserve their rights to appeal.

determine what a dependent claim covers, it is necessary to look at both the dependent claim and other claim or claims to which it refers.  For example, claim 26 of the '772 patent is a dependent claim.  It refers to claim 25.  To determine what the dependent claim covers, the words of that claim and the words of claim 25 must be read together.

The claims of the patents-in-suit use the word "comprises" and "comprising." Comprising means including or containing.  A claim that uses the word "comprising" or "comprises" is not limited to methods or devices having only the elements that are recited in the claim, but also covers methods or devices that add additional elements.  Take for example, a claim that covers a table.  If the claim recites a table comprising a tabletop, legs and glue, the claim will cover any table that contains these structures, even if the table also contains other structures such as a leaf or wheels on its legs.  That is a very simple example of what using the word comprising means.  In other words, it can have other features in addition to those that are covered by the patent.

I have now instructed you as to the two types of claims at issue in this case.  I will next define the meaning of the words used in the patent claims at issue.  You must use the definitions I provide to you in consideration of infringement and invalidity issues.  Now, if you will look at the chart that I've given you, I'm not going to read all of those.  You have those.  The parties came to me and said we need you to define what this means, and they presented various arguments.  And this is the construction that I determined and it is the construction that you will follow in trying this case.  I am not going to read all of those.  They are there for your reference, and you will hear about them during the case, but you will see the various words that have been defined and construed by the Court with regard to the claims.  The chart will go with you to the

jury room, and it lists various terms in the various claims of each patent and what interpretation the Court has placed on each of those.

This will all become clearer as the trial progresses, but this is a good starting place for you to help you understand some of the basic elements of a patent and some of the basic language and nomenclature.  Again, if you are feeling a little overwhelmed at this point, rest assured there is going to be lots of explanation and lots of time to digest.  This is the first time you have heard a lot of these words, a lot of these concepts.  You are going to be hearing a lot more about them during the opening statements, and as the evidence in this case is presented.

We will have experts from both sides that are going to help you understand this case.  And at the end, you will hear closing arguments.  You will have my Court instructions, and you will be well-equipped to decide this case by the time you get to the end of it.

Let me finally visit with you regarding your duties as jurors.  You have two duties as jurors.  Your first duty is to decide the facts from the evidence in this case.  That is your job and yours alone.  Your second duty is to apply the law that I give you to the facts.  You must follow these instructions, even if you disagree with them.  Each of the instructions is important, and you must follow them all.

Perform these duties fairly and impartially.  Do not allow your sympathy, prejudice, fear or public opinion to influence you.  Nothing I say now and nothing I say or do during the trial is meant to indicate any opinion on my part about what the facts are or about what your verdict should be.  Again, you, the jury, will be the sole judges of the facts in this case.

That concludes my opening instructions for you.