# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### TYLER DIVISION

| | |
|---|---|
| **SMARTFLASH LLC,** *et al.*, | |
| **Plaintiffs,** | **Case No. 6:13-CV-00447-JRG-KNM** |
| **v.** | |
| **APPLE INC.,** *et al.*, | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

## THIRD JOINT PROPOSED FINAL JURY INSTRUCTIONS[1,2]

---

[1] Submissions which are agreed to by all parties are not highlighted.  Submissions proposed by Smartflash which are not agreed to by Apple are bracketed and *italicized*.  Submissions proposed by Apple which are not agreed to by Smartflash are bracketed and underlined.

[2] Plaintiff Smartflash and Defendant Apple Inc. propose the following post-trial jury instructions. These proposed post-trial jury instructions are made without waiver of any pending motions, which, if granted, may render portions of the following instructions unnecessary.  The parties further reserve the right to amend, supplement, or modify these post-trial instructions in light of further developments, including any remaining fact or expert discovery, and based on the evidence and arguments presented at trial.  The parties expect to further meet and confer to refine the post-trial jury instructions as events continue to narrow the issues.

# I.      INTRODUCTION[3]

Members of the Jury:

You have now heard the evidence in this case.  I will now instruct you on the law that you must apply to that evidence.  It is your duty to follow the law as I give it to you.  However, as I have said previously, you the jury are the judges of the facts.  Do not consider any statement that I have made during the trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I give you these instructions, the attorneys will make their closing arguments.  Statements and arguments of the attorneys are not evidence and are not instructions on the law.  They are intended only to assist you in recalling and understanding the evidence and the parties' contentions.

A verdict form has been prepared for you.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreperson fill in the blanks in that form, date it and sign it.  Answer each question in the verdict form from the facts as you find them.  Do not decide who you think should win and then answer the questions to reach that result.  Your answers and your verdict must be unanimous.

---

[3] *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.) (Dkt. No. 256).

## II.        CONSIDERING WITNESS TESTIMONY[4]

In determining whether any fact has been proved in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced or introduced them.

You the jurors are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.  By the Court allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence.

Attorneys representing clients in Courts such as this one have an obligation in the course of trial to assert objections when they believe testimony or evidence is being offered that is contrary to the rules of evidence.  When the Court sustained an objection to a question addressed to a witness, you must disregard the question entirely, and may draw no inference from its wording or speculate about what the witness would have said if he or she had been permitted to answer. If the objection was overruled, then you may treat the answer to that question just as you would treat the answer to any other question.

At times during the trial it was necessary for the Court to talk with the lawyers here at the bench out of your hearing, or by calling a recess and talking to them when you were out of the courtroom.  This happened because often during a trial, something comes up that does not involve the jury.  You should not speculate on what was said during such discussions that took place outside of your presence.

---

[4] *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256).

[Apple Proposes: In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately.  So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.][5] [6]

---

[5] *SimpleAir, Inc. v. Microsoft Corp.*, No. 2:11-cv-416 (E.D. Tex.) (Dkt. 654 at 51).

[APPLE: This instruction reminds the jury to assess credibility, an important find-facting job, and to not automatically believe testimony simply because the witness is under oath.]

[6] *Smartflash objects to this proposal as unnecessary.  The jury is reminded of their sole role to judge witnesses' credibility in the preceding paragraphs.  This instruction does more than remind the jury to assess credibility, which they will have already been instructed on, it tells the jury how to assess credibility.  Smartflash believes that the jury need not be told to consider an unclear dichotomy between "simple mistakes" and "intentional falsehoods" when weighing the evidence; the jury is perfectly capable, without this instruction, to determine whether or not to believe any particular witness as to any particular fact.*

## III.      HOW TO EXAMINE THE EVIDENCE[7]

Certain testimony in this case has been presented to you through depositions.   A deposition is the sworn, recorded answers to questions asked to a witness in advance of the trial.   Under some circumstances, if a witness cannot be present to testify in person from the witness stand, the witness's testimony may be presented, under oath, in the form of a deposition.   Before this trial, attorneys representing the parties in this case questioned these deposition witnesses under oath.   A court reporter was present and recorded the testimony.   Deposition testimony is entitled to the same consideration as testimony given by a witness in person from the witness stand.   Accordingly, you should judge the credibility of and weigh the importance of deposition testimony, to the best of your ability, just as if the witness had testified in court in person.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience.   In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

Unless I instruct you otherwise, you may properly determine that the testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence, you believe that single witness.

---

[7] *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256).

## IV.      DIRECT AND CIRCUMSTANTIAL EVIDENCE[8]

There are two types of evidence that you may consider in properly finding the truth as to the facts in this case.  One is direct evidence such as testimony of an eyewitness.  The other is indirect or circumstantial evidence that is, the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts.  As a general rule, the law makes no distinction between direct or circumstantial evidence, but simply requires that you find the facts based on the evidence presented, both direct and circumstantial. The parties have stipulated, or agreed, to some facts in this case.  When the lawyers on both sides stipulate to the existence of a fact, you must, unless otherwise instructed, accept the stipulation as evidence, and regard the fact as proved.

---

[8] *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256).

## V.      EXPERT WITNESS[9]

When knowledge of technical subject matters may be helpful to the jury, a person who has special training or experience in that technical field—called an "expert witness"—is permitted to state his or her opinion on those technical matters.  However, you are not required to accept that opinion.  As with any other witness, it is solely up to you to decide whether to rely upon it or not.

## VI.     BURDENS OF PROOF[10]

In any legal action, facts must be proved by a required amount of evidence known as the "burden of proof."  The burden of proof in this case is on Smartflash for some issues and on Apple for other issues.[11]

Smartflash has the burden of proving infringement and damages by a preponderance of the evidence.  Preponderance of the evidence means the evidence that persuades you that a claim is more likely true than not true.  If the proof establishes that all parts of Smartflash's infringement claims are more likely true than not true, then you should find for Smartflash as to that claim.

Apple has the burden of proving invalidity by clear and convincing evidence, and Smartflash has the burden of proving willfulness by clear and convincing evidence.  Clear and convincing evidence means evidence that produces in your mind a firm belief or conviction as to

---

[9] Adapted from *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256).

[10] *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256).

[11] Nearly verbatim from *VirnetX Inc. v. Cisco Systems, Inc.*, Civil Action No. 6:10-CV-417 (E.D. Tex.) (Dkt. 780) ("In any legal action, facts must be proved by a required amount of evidence known as the "burden of proof." The burden of proof in this case is on VirnetX for some issues and on Cisco for other issues.")

the matter at issue.  Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard.  If the proof establishes in your mind a firm belief or conviction, then the standard has been met.

In determining whether any fact has been proved by the preponderance of the evidence or by clear and convincing evidence, you may, unless otherwise instructed, consider the stipulations, the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

As I did at the start of the case, I will first give you a summary of each side's contentions in this case.  I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

## VII.    THE PARTIES AND THEIR CONTENTIONS[12]

Smartflash seeks damages from Apple for allegedly infringing certain claims of three of Smartflash's patents—specifically U.S. Patent No. 7,334,720, U.S. Patent No. 8,118,221, and U.S. Patent No. 8,336,772.  Smartflash contends that Apple has made, used, sold or offered for sale in the United States, or imported into the United States, products that have technology that allows consumers to purchase and use content.  Smartflash also contends that Apple's infringement has been willful.  Smartflash seeks damages in the form of a reasonable royalty.

In response to Smartflash's contentions, Apple contends that neither Apple nor its customers have directly infringed the patents-in-suit.  Apple further contends that it has not induced the direct infringement of the Asserted Claims.  Apple also contends that all of the Asserted Claims are invalid because they are either anticipated or rendered obvious by the prior

---

[12] Adapted from *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256).

art.  Apple also contends that Claim 26 of the '772 patent is invalid under because of a lack of written description.  Apple also contends that Smartflash is not entitled to damages for any infringement.[13]

I will now give you instructions and definitions to help you in answering the questions that will be presented to you.

## VIII.      CLAIM INTERPRETATION[14]

Your job is to decide whether the asserted claims in the patents-in-suit have been infringed and whether any of the asserted claims are invalid.  If you decide that any claim of the patent has been infringed and is not invalid, you will then need to decide what amount of money damages are to be awarded to Smartflash as compensation for such infringement.

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims."  The patent claims are the numbered sentences at the end of each patent.  The claims are important because it is the words of the claims themselves that define what a patent covers.  The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage.  Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim.  Therefore, what a patent covers collectively depends on what each of its claims covers.

---

[13] Adapted from *VirnetX Inc. v. Cisco Systems, Inc.*, Civil Action No. 6:10-CV-417 (E.D. Tex.) (Dkt. 780) ("In response to VirnetX's contentions, Cisco contends that neither they nor their customers have infringed the patents-in-suit. Cisco further contends that they have not induced the direct infringement of the Asserted Claims. Cisco also contends that the Asserted Claims of the '135, '504, and '211 patents are invalid as being anticipated by the prior art. Cisco also contends that VirnetX is not entitled to damages for any infringement.").

[14] *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256).

Claims may describe methods, apparatuses, products, such as machines or chemical compounds, or processes for making or using a product.  In this case, Smartflash has asserted apparatus or product claims.

Claims are usually divided into parts, called "limitations" or "elements."  For example, a claim that covers the invention of a table may recite the tabletop, four legs, and the glue that secures the legs to the tabletop.  In this example, the tabletop, legs, and glue are each separate limitations of the claim. In deciding whether or not the accused products infringe an Asserted Claim and whether or not the claim is invalid, the first step is to understand the meaning of the words used in the patent claims.  It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning.  You must accept the meanings I give you and use those meanings when you decide whether or not the patent claims are infringed, and whether or not they are invalid.  In accordance with my duty, I have interpreted the meaning of some of the language in the patent claims involved in this case.  My interpretation of those claims appears in Appendix A in your juror notebook.   The claim language I have not interpreted for you in Appendix A is to be given its ordinary and accustomed meaning as understood by one of ordinary skill in the art.

I will now explain how a claim defines what it covers.

## IX.       WHAT A CLAIM COVERS[15]

A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a device or method satisfies each of these requirements in that sentence, then it is covered by the claim.

There can be several claims in a patent. A claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed on a claim-by-claim basis. In patent law, the requirements of a claim are often referred to as the "claim elements" or "claim limitations." When a product meets all of the requirements of a claim, the claim is said to "cover" that product, and that product is said to "fall" within the scope of that claim. In other words, a claim covers a product where each of the claim elements or limitations is present in that product. If a product is missing even one limitation or element of a claim, the product is not covered by the claim. If the product is not covered by the claim, that product does not infringe that claim. A claim requirement may describe a certain functionality or capability that the device must possess. In such cases, a device satisfies the requirement if it is capable of operating in the recited manner under its normal operation.

---

[15] *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256 at 6-7).

## X.        INDEPENDENT AND DEPENDENT CLAIMS

This case involves two types of patent claims: independent and dependent claims.  An independent claim does not refer to any other claim of the patent.  An independent claim sets forth all of the requirements that must be met in order to be covered by that claim.  It is not necessary to look at any other claim to determine what an independent claim covers.

In this case, for example, claim 32 of the '221 patent is an independent claim.

The rest of the claims being asserted in this case are "dependent claims." A dependent claim does not itself recite all of the requirements of the claim, but refers to another claim for some of its requirements.  In this way the claim "depends" on another claim.  The law considers a dependent claim to incorporate all of the requirements of the claims to which it refers.  The dependent claim then adds its own, additional requirements.  To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claims to which it refers.  A product that meets all of the requirements of both the dependent claim and the claims to which it refers is covered by that dependent claim.

XI.        **OPEN-ENDED OR "COMPRISING" CLAIMS**

The beginning portion, or preamble, of a number of Smartflash's asserted claims use the word "comprising." The word "comprising," when used in the preamble, means "including but not limited to" or "containing but not limited to."  When "comprising" is used in the preamble, if you decide that an accused product includes all of the requirements of that claim, the claim is infringed.   This is true even if the accused instrumentality contains additional elements.

For example, a claim to a table comprising a tabletop, legs, and glue would be infringed by a table that includes a tabletop, legs and glue, even if the table also includes wheels on the table's legs.

## XII.      INFRINGEMENT GENERALLY

A patent owner has the right to stop others from using the invention covered by its patent claims in the United States during the life of the patent.  If any person makes, uses, sells or offers to sell within the United States or imports into the United States what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent.

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed.  You must compare the asserted patent claims, as I have defined each of them, to the accused products, and determine whether or not there is infringement.  You should not compare the accused products with any specific example set out in the patent or with the patent holder's commercial products or with the prior art.  The only correct comparison is with the language of the claim itself, as I have explained its meaning to you.

You must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties.  Also, the issue of infringement is assessed on a claim-by-claim basis.  Therefore, there may be infringement as to one claim but no infringement as to another claim in a patent.

In this case, there are two possible ways that a claim may be infringed.  I will explain the requirements for each of these types of infringement to you.  The two types of infringement are called: (1) direct infringement; and (2) indirect infringement.

I will now explain each of the types of infringement in more detail.

## XIII.     DIRECT INFRINGEMENT

In order to prove direct infringement of a patent claim, it must be shown by a preponderance of the evidence that the accused product includes each and every requirement of Smartflash's claim.  In determining whether an accused product directly infringes a patent

14

claim in this case, you must compare the accused product with each and every one of the requirements of that claim to determine whether the accused product contains each and every requirement recited in the claim.  A claim requirement is present if it exists in an accused product just as it is described in the claim language, either as I have explained the language to you or, if I did not explain it, as it would be understood by one of skill in the art.  If an accused product omits any requirement recited in a claim, including any limitation of an independent claim from which an asserted claim depends, then you must find that that particular product does not infringe that claim.

A patent can be directly infringed even if the alleged infringer did not have knowledge of the patent and without the infringer knowing that what it was doing is infringement of the claim.  A patent may also be directly infringed even though the accused infringer believes in good faith that what it is doing is not an infringement of the patent.  [*Smartflash Proposes: Infringement does not require proof that a party copied the asserted patent claims.[16] [17]*]  It is no defense to infringement that the alleged infringer has any patents of its own.

[APPLE PROPOSES: If a Defendant does not itself satisfy every requirement of the patent claim through its own equipment or actions, the Defendant cannot be liable for direct infringement merely because other parties added missing elements, unless that Defendant directed and controlled those parties so as to obligate them to provide the

---

[16] *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519)

[17] Smartflash stated in a February 14, 2015 email to Apple that "[f]ollowing up per the Jan. 6 hearing, Smartflash is not going to allege copying."  Therefore, inclusion of this instruction on copying would be confusing to the jury and prejudicial to Apple by suggesting that there is a question as to whether Apple copied.

missing elements in an infringing manner. A Defendant does not direct or control someone else's equipment or actions merely because the Defendant entered into a relationship with that person. Mere arm's length cooperation is not enough. Instead, the Defendant must specifically obligate the other party to perform the missing acts or supply the missing technology in an infringing manner so that every step is attributable to the Defendant as the controlling party.][18] [19]

---

[18] *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519)

[Apple: Apple's proposal, which is verbatim from *DDR Holdings, LLC v. Digital River, Inc.,* Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519) merely reflects the concept that only a single actor can be a direct infringer—whether acting alone or whether vicariously liable for a third party whose actions account for some or all of the infringing act. This concept is not limited to method claims, as Smartflash appears to argue, but includes apparatus/device/system claims. *See, e.g., Centillion Data Sys. v. Qwest Commc'ns Int'l, Inc.,* 631 F. 3d 1279, 1286-87 (Fed. Cir. 2011); *Cross Med. Prods. v. Medtronic Sofamor Danek, Inc.,* 424 F.3d 1293, 1310-11 (Fed. Cir. 2005). Indeed, *Centillion* specifically referenced application of the single infringer rule to an allegation of "making a claimed apparatus or system." Furthermore, the second paragraph is necessary to include here in the infringement section, despite the generic reference to the concept of dependent and independent claims above.]

[19] *Smartflash: Apple's proposal badly misstates the law and must be deleted. See, e.g., Akamai Technologies, Inc. v. Limelight Networks, Inc., 692 F.3d 1301, 1305–06 (Fed.Cir.2012) rev'd on other grounds, 134 S. Ct. 2111 (2014) ("The problem of divided infringement in induced infringement cases typically arises only with respect to method patents. When claims are directed to a product or apparatus, direct infringement is always present, because the entity that installs the final part and thereby completes the claimed invention is a direct infringer."). And Apple's reliance on Centrillion Data Sys. v. Qwest Commc'ns, 631 F. 3d 1284 (Fed. Cir. 2011) is misplaced. Although Apple states that this case stands for the proposition that claims other than method claims can give rise to divided infringement issues, the case dealt with system claims, not device claims. And even if the asserted claims were system claims (and they are not), Apple's attempt to invent this non-infringement contention would still be wrong as a matter of law. See Centrillion Data Sys., 631 F.3d 1279, 1285 (Fed. Cir. 2011) (holding that, as a matter of law, there was an infringing use when customer put system into effect, noting that "It makes no difference that the back-end processing is physically possessed by [the Defendant].")*

## XIV.    INDIRECT INFRINGEMENT

In addition to alleging direct infringement of the asserted patent claims**,** Smartflash alleges that Apple induces infringement of its asserted patent claims.  The act of encouraging or inducing others to infringe a patent is called "inducing infringement."

Smartflash alleges that Apple is liable for infringement by actively inducing another party or parties to directly infringe its patents. As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis. Apple is liable for active inducement of a claim if Smartflash proves by a preponderance of the evidence that:

(1) the acts are actually carried out by Apple's customers using the accused products and directly infringe that claim**;**

(2) Apple took action during the time the patent was in force, intending to cause the infringing acts by Apple's customers using the accused products; and

(3) Apple was aware of, or willfully blind to, the patent and knew that the acts, if taken, would constitute infringement of that patent or that Apple was willfully blind to that infringement.

To prove willful blindness, Smartflash must show by a preponderance of the evidence that there was a high probability that a fact exists and that Apple took deliberate acts to avoid learning of that fact.

In order to establish active inducement of infringement, it is not sufficient that the other party or parties themselves directly infringe the claim nor is it sufficient that Apple was aware of the acts by its customers using the accused products that allegedly constitute the direct infringement. Rather, you must find that Apple specifically intended its customers using the accused products to infringe the patent or that Apple believed there was a high probability that its customers would infringe the patent but deliberately avoided learning the infringing nature of its

customers' acts.  <u>Evidence of a good faith belief of either non-infringement or invalidity of a patent can be evidence that Apple lacks the required intent for induced infringement.</u>[20] [21]

## XV.    WILLFUL INFRINGEMENT

In this case, Smartflash contends that Apple has willfully infringed its patents.  If you have decided that Apple has infringed, you must address the additional issue of whether or not the infringement was willful.  Willfulness requires you to determine by clear and convincing evidence that Apple acted recklessly.

To prove that Apple acted recklessly, Smartflash must prove by clear and convincing evidence that Apple actually knew or should have known that its actions constituted an unjustifiably high risk of infringement of a valid patent.  To determine whether Apple had this state of mind, consider all the facts, which may include, but are not limited, to:

(1)    Whether or not Apple acted in accordance with the standards of commerce for its industry;

(2)    Whether or not there is a reasonable basis for Apple to have believed that it did not infringe or had a reasonable defense to infringement;

(3)    Whether or not Apple made a good-faith effort to avoid infringing the asserted claims of the asserted patents, for example, whether Apple attempted to design around the asserted Smartflash patents; and

---

[20] *Personalized Media Commc'ns v. Zynga, Inc.*, No. 2:12-cv-68 (E.D. Tex.) (Dkt. 264 at 15-16). Smartflash's objection to this proposal is irrelevant since although *Commil USA LLC v. Cisco Systems*, 720 F.3d 1361 (Fed. Cir. 2013), *cert. granted*, 2014 U.S. LEXIS 8117 (2014) is under Supreme Court review, the current law still states that a good-faith belief of invalidity is a defense to indirect infringement. *Id.* at 1367-68.

[21] *Smartflash objects to this instruction, and any other, that a good-faith belief of invalidity or non-infringement is a defense to induced infringement.  See Commil USA LLC v. Cisco Systems, 720 F.3d 1361, 1367 (Fed. Cir. 2013), cert. granted, 2014 WL 318394 (2014).*

(4)      Whether or not Apple tried to cover up its infringement.

None of these factors are determinative, and this list of factors is not an exhaustive list of things you should consider.  Your determination of willfulness should incorporate the totality of the circumstances based on the evidence presented during the trial.

Smartflash has the burden of proving willfulness by the clear and convincing evidence standard.

# XVI.   INVALIDITY—GENERALLY[22]

I will now instruct you on the rules you must follow in deciding whether or not Apple has proven that the asserted claims of the asserted patents are invalid.  An issued patent is accorded a presumption of validity based on the presumption that the United States Patent Office acted correctly in issuing the patent.  To prove that any claim of a patent is invalid, the Apple must persuade you by clear and convincing evidence that the claim is invalid.  Even if Apple presents items of prior art that may not have been before the Patent Office, the presumption of validity of the patent remains intact and the clear and convincing standard does not change.

Patent invalidity is a defense to patent infringement. Even though the Patent Office examiner has allowed the claims of a patent, you have the ultimate responsibility for deciding whether the claims of the patent are valid.  I will now instruct you on the invalidity issues you should consider.  Apple must prove by clear and convincing evidence that a claim is invalid.

You have heard evidence of prior art that the Patent Office may not have evaluated before granting the patents at issue.  *[SMARTFLASH PROPOSES: You must consider whether that evidence is materially new, and if so, consider that fact when determining whether an invalidity defense has been proven by clear and convincing evidence.  Prior art differing from the prior art considered by the Patent Office may, but does not always, carry more weight than the prior art that was considered by the Patent Office.]*[23] [24]  [APPLE PROPOSES:  Prior art

---

[22] Adapted from Court's Charge in *DDR Holdings, LLC v. Digital River, Inc.*, Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519).

[23] [APPLE: Smartflash's proposal would be confusing to a jury, whereas Apple's proposal is precise and expresses the same point from the Supreme Court's *i4i* opinion.  The "materially new" standard is not self-explanatory and confusing unless Smartflash were to elaborate further here; which is unnecessary and thus improper—the point is simply that new evidence not considered by the PTO may carry more weight and the jury can accordingly decide to do so or not do so.  Further, Smartflash's statement that the art "may, but does not always, carry more weight," means exactly the same thing as "may carry more weight" as Apple proposes, which

differing from the prior art considered by the Patent Office may carry more weight in meeting the clear and convincing standard than the prior art that was previously considered by the Patent Office.][25]  Again, the ultimate responsibility for deciding whether the claims of the patent are valid is up to you, the members of the jury.

Validity is determined on a claim-by-claim basis.  If one claim of a patent is invalid, this does not mean any other claim is necessarily invalid.  Claims are construed the same way for determining infringement as for determining invalidity.

Apple has challenged the validity of the asserted claims on a number of grounds.  In making your determination as to invalidity, you should consider each claim separately.

---

also beneficially does not have this negative limitation of "but does not always." The jury will be well aware that it can evaluate prior art for itself by virtue of the instruction immediately following Apple's next proposed instruction, which reads, "Again, the ultimate responsibility for deciding whether the claims of the patent are valid is up to you, the members of the jury." Smartflash's proposed language is thus superfluous.]

[24] *Smartflash: The phrase "materially new" is directly out of the Supreme Court's opinion on the effect of new prior art in Microsoft Corp. v. i4i, 131 S. Ct. 2238 (2011) ("In either case, the jury may be instructed to evaluate whether the evidence before it is materially new, and if so, to consider that fact when determining whether an invalidity defense has been proved by clear and convincing evidence."). Further, Smartflash's proposal of "may, but not always, carry more weight" does not have a "negative connotation" as Apple suggests. While the two clauses may literally have the same definitions, the "but not always" clause is helpful to the jury in flagging the appropriate context of the "may" phraseology as used in Microsoft v. i4i. It correctly highlights to the jury that it can determine for itself whether and to what extent the fact the PTO did not consider prior art affects the jury's ultimate conclusions.*

[25] *Adapted from DDR Holdings, LLC v. Digital River, Inc., Case No. 2:06-CV-42-JRG (E.D. Tex.), (Dkt. No. 519); see, e.g., Microsoft Corp. v. i4i Ltd. P'ship, 131 S. Ct. 2238, 2251 (2011).*

## XX.   ANTICIPATION

Apple contends that claim 13 of the '720 patent, claim 32 of the '221 patent, and claims 26 and 32 of the '772 patent are invalid for being anticipated by prior art.  Apple bears the burden of establishing anticipation by clear and convincing evidence.

A patent claim is invalid if the claimed invention is not new.  For a claim to be invalid because it is not new, all of its requirements must have existed in a single device or method that predates the claimed inventions, or must have been described in a single previous publication or patent that predates the claimed invention.  In patent law, a previous device, publication or patent that predated the claimed invention is called a "prior art reference."  If a patent claim is not new we say it is "anticipated" by a prior art reference.  Anticipation requires that a single reference not only disclose all elements of the claim within the four corners of the document, but that it must also disclose those elements arranged or combined in the same way as in the claim. Apple must prove with clear and convincing evidence that an asserted patent claim was anticipated by the prior art reference.

In determining whether or not the invention is valid, you must determine the scope and content of the prior art at the time the invention was made.  *[Smartflash proposes: You must decide whether the specific references are prior art to the patents-in-suit.*

*Prior art can include previous devices, articles, and printed publications or other patents.  Specifically, prior art includes:*

*1.      U.S. patents that have a filing date prior to the date of the invention of the subject matter of the patent*

*2.      Publications, such as articles, having a date prior to the filing date of the patent or before the date of the invention.*

*3.      Any product in public use or on sale in the United States before the date of the invention of the claimed subject matter in the patent[26]*

*Once you decide whether or not specific references are prior art, you must also decide what those references would have disclosed or taught to one having ordinary skill in the field of technology of the patent at the time the invention was made.[27]][28]*

For prior art to anticipate a claim of a patent, the disclosure in the prior art reference does not have to be in the same words as the claim, but all of the elements of the claim must be there, either stated or necessarily implied, so that someone of ordinary skill in the field of the invention looking at that one reference would be able to make and use at least one embodiment of the claimed invention.   Anticipation can also occur when the claimed invention inherently and necessarily results from practice of what is disclosed in the written reference, even if the inherent disclosure was unrecognized or unappreciated by one of ordinary skill in the field of the invention.

If you find that a patent claim is not new as explained above, you should find that claim invalid.

---

[26] *Adapted from Rembrandt v. Samsung Electr. 2:13-CV-213-JRG (E.D. Tex.)*

[27] *Verbatim from DDR Holdings v. Digital River* Case No. 2:06-CV-42-JRG (E.D. Tex. Oct. 12, 2012) (Dkt. No. 519 at 17)

[28] [Apple: Smartflash's proposal covers issues which are not at dispute in this case, and in certain areas, misstates the law.  The statement above that "In patent law, a previous device, publication or patent that predated the claimed invention is called a 'prior art reference'" suffices to let the jury know what prior art is.  Further, Smartflash has never raised a dispute that any of the prior art is not actually prior art, so Smartflash's proposal that the jury must decide whether something is prior art is legally improper and very confusing—adding another unnecessary layer of the jury determining the issue of invalidity.  In light of the unnecessariness of this instruction and other problems, including the ones above, this instruction should be stricken.]

## XVII.   OBVIOUSNESS

Apple contends that the asserted claims of the patents in suit are invalid as obvious.  Even though an invention may not have been identically disclosed or described in a single prior art reference before it was made by an inventor, the invention may have  been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.  Apple bears the burden of establishing obviousness by clear and convincing evidence.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of technology of the patent that someone would have had at the time the claimed invention was made, the scope and content of the prior art, any differences between the prior art and the claimed invention, as well as the ordinary knowledge of the person of ordinary skill at the time of the invention.

The skill of the actual inventor is irrelevant, because inventors may possess something that distinguishes them from workers of ordinary skill in the art.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness.  Most, if not all, inventions rely on building blocks of prior art.  In considering whether a claimed invention is obvious, you should consider whether, as of the priority date of the patents-in-suit, there was a reason that would have prompted a person having ordinary skill in the field to combine the known elements in a way that the claimed invention does, taking into account such factors as:

(1) whether the claimed invention was merely the predictable result of using prior art elements according to their known functions;

(2) whether the claimed invention provides an obvious solution to a known problem in the relevant field;

(3) whether the prior art teaches or suggests the desirability of combining elements in the claimed inventions;

(4) whether the prior art teaches away from combining elements in the claimed invention;

(5) whether it would have been obvious to try the combination of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and

(6) whether the change resulted more from design incentives or other market forces.

To find that prior art rendered the invention obvious, you must find that the prior art provided a reasonable expectation of success. In determining whether the claimed invention was obvious, consider each claim separately. Consider only what was known at the time of the invention.

In making these assessments, you should take into account any objective evidence (sometimes called "secondary considerations") that may have existed at the time of the invention and afterwards that may shed light on non-obviousness, such as:

(1)     Whether the invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market pressure, advertising or similar activities);

(2)     Whether the invention satisfied a long-felt need;

(3)     Whether others had tried and failed to make the invention;

(4)     [Smartflash Proposes: *Whether others copied the invention*] [29]:

(5)     Whether there were changes or related technologies or market needs contemporaneous with the invention;

(6)     Whether the invention achieved unexpected results;

(7)     Whether others in the field praised the invention;

(8)     Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;

(9)     Whether others sought or obtained rights to the patent from the patent holder; and

(10)     Whether the inventor proceeded contrary to accepted wisdom in the field.

In support of obviousness, you may also consider whether others independently invented the claimed invention before or at about the same time as the named inventor thought of it.

If you find that Apple has proved obviousness by clear and convincing standards, then you must find that the claim is invalid.

## XVIII.     WRITTEN DESCRIPTION

Apple contends that claim 26 of the '772 patent is invalid for failure of the patent to provide an adequate written description of the claimed invention. Apple must prove by clear and convincing evidence that these claims lacked an adequate written description.

---

[29] Smartflash stated in a February 14, 2015 email to Apple that "[f]ollowing up per the Jan. 6 [2015] hearing, Smartflash is not going to allege copying."  Therefore, particularly in light of the fact that Smartflash dropped any copying allegations, inclusion of this instruction would be confusing to the jury and prejudicial to Apple. The instruction was not included in the list of secondary indicia in *Personal Audio v. CBS Corp.* 13-cv-270-JRG (E.D. Tex.) (Dkt. 68 at 47-48) or *SimpleAir v. Google*, 11-cv-416 (E.D. Tex.) (Dkt. 654 at 65).

In deciding whether the patent satisfies this written description requirement, you must consider the description from the viewpoint of a person having ordinary skill in the field of the technology of the patent when the application was filed.  The written description requirement is satisfied if a person having ordinary skill reading the original patent application would have recognized that it describes the full scope of the claimed invention as it is finally claimed in the issued patent and that the inventor actually possessed that full scope by the filing date of the original application.

The written description requirement may be satisfied by any combination of the words, structures, figures, diagrams, formulas, etc., contained in the patent application. The full scope of a claim or any particular requirement in a claim need not be expressly disclosed in the original patent application if a person having ordinary skill in the field of the technology of the patent at the time of filing would have understood that the full scope or missing requirement is in the written description in the patent application.

**XIX.**      *[Smartflash proposes: CORROBORATION]*

*[Smartflash proposes: Corroboration is required of any witness whose testimony is asserted to prove prior invention or to invalidate a patent, regardless of his or her level of interest.*

*Oral testimony alone is insufficient to prove prior invention or that something is prior art.  A party seeking to prove prior invention or prior art also must provide evidence that corroborates any oral testimony, especially where the oral testimony comes from an interested witness or a witness testifying on behalf of an interested party.  Interested witnesses are those who are a named party, an employee or assignor to a named party, or otherwise in a position where he or she stands to directly and substantially gain an invention being found to have priority over the patent claims at issue.  This includes any individual or company testifying that*

*his invention or its invention predates the patents-in-suit.  Documentary or physical evidence that is made contemporaneously with the inventive process by someone other than the alleged prior inventor provides the most reliable proof that the oral testimony has been corroborated. For any oral testimony that a party has put forth alleging that a particular event or reference occurred before the effective filing date of the patents-in-suit, that party must also have provided corroborating evidence that agrees with that oral testimony.  If you find the party has not corroborated the oral testimony with other evidence you are not permitted to find that the subject of that oral testimony qualifies as prior art or supports a prior date of invention.*

*If evidence is presented for purposes of attempting to corroborate oral testimony, then you must determine whether this evidence does, in fact, properly corroborate the oral testimony. In making this determination, you should consider the following factors:*

*1.      The relationship between the corroborating witness and the alleged prior user;*

*2.      The time period between the event and this trial;*

*3.      The interest of the corroborating witness in the subject matter of his suit;*

*4.      Contradiction or impeachment of the witness's testimony;*

*5.      Extent and detail of the corroborating witness's testimony;*

*6.      The witness's familiarity with the subject matter of the patented invention and the alleged prior use;*

*7.      Probability that a prior use could occur considering the state of the art at the time; and*

> *8.    Impact of the invention on the industry, and the commercial value of its practice.]* [30] [31] [32]

[If corroboration instruction given, Apple proposes: To prove prior invention in this case, Apple must present evidence beyond the inventors' own testimony that confirms the date on which the inventor had the complete idea. Oral testimony alone is insufficient to prove a prior date of invention.

A party seeking to prove a prior date of invention must also provide evidence that corroborates any oral testimony, especially where the oral testimony comes from an interested witness or a witness testifying on behalf of an interested party. Interested witnesses are those who are a named party, an employee, or assignor to a named party, or otherwise in a position where he or she stands to directly or substantially gain by a finding of a prior date of invention.

---

[30] Almost Verbatim from *DDR Holdings, LLC v. Digital River, Inc.*, Case No. 2:06-CV-42-JRG (E.D. Tex. Oct. 12, 2012) (Dkt. No. 519 at 22-23).

[31] Apple objects to this instruction as unnecessary and confusing, since corroboration is not an issue in this trial.  Smartflash claims this instruction is "highly necessary" with respect to Mr. Ansell's testimony and Mr. Wechselberger's testimony.  MIL C prevented Mr. Ansell from testifying about anything *except* what is in the four corners of his patent, and there was no objection during Mr. Ansell's testimony that his testimony went beyond those four corners. Further, and importantly, the priority date of the Ansell patent is not at issue.  Thus, all of Ansell's testimony is necessarily corroborated by his patent.  Further, the corroboration requirement does not apply to Mr. Wechselberger's testimony because "[t]here is no corroboration requirement for expert testimony asserted to defend against an invalidity challenge."  *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 248 F. App'x 199, 205 (Fed. Cir. 2007).  Mr. Wechselberger properly relies on citations to prior art evidence to support his description of the IBM system.  Application of this instruction to Mr. Wechselberger would be legal error.

[32] *Smartflash:  This instruction remains necessary.  Although Mr. Ansell's testimony was mostly limited to the four corners of his patent, Apple attempted to prove up the IBM System by the wholly unsupported (and, in fact, directly contradicted) oral testimony of its expert, Mr. Wechselberger.  Accordingly, a corroboration instruction is still necessary to make clear that Mr. Wechselberger's opinion alone cannot prove up the IBM System as prior art with adequate corroboration.*

Documentary or physical evidence that is made contemporaneously with the inventive process by someone other than the alleged prior inventor provides the most reliable proof that the alleged inventors' testimony has been corroborated.

For any oral testimony that a party has put forth alleging that a particular event or reference occurred before the effective filing date of the patent-in-suit, that party must also have provided corroborating evidence that agrees with that oral testimony. If you find that the party has not corroborated the oral testimony with other evidence, you are not permitted to find that the subject of that oral testimony supports a prior date of invention.[33]]

---

[33] Adapted from *Wi-LAN v. Apple, Inc.*, Case No. 2:11-cv-00068-JRG (E.D. Tex. Apr. 25, 2014) (Dkt. No. 666).

## XXI.      LEVEL OF ORDINARY SKILL

Several times in my instructions I have referred to a person of ordinary skill in the field of the invention.

Smartflash proposes that a person of ordinary skill in the art would have a bachelor's degree in electrical engineering or its equivalent, or at least 5 years of experience in manufacturing or engineering, with significant exposure to the digital content distribution and/or e-commerce industries.

Apple proposes that a person of ordinary skill in the art would alternatively have (1) at least a Bachelor of Science degree in electrical engineering, computer science or a telecommunications related field, and at least three years of industry experience that included client-server data/information distribution and management architectures; or (2)   at least a Bachelor of Science degree in electrical engineering, computer science or a telecommunications-related field, and at least three years of industry experience that includes client-server computer data/information distribution and management architectures. If the person had one or more graduate degrees in the above fields, the amount of industry experience required for the person to be of ordinary skill in the art would be reduced accordingly.[34,35]

## XXII.      DAMAGES[36]

If you find that Apple has infringed any valid claim of Smartflash's patents-in-suit, you must then consider what amount of damages to award to Smartflash.  I will now instruct you

---

[34] Adapted from *VirnetX Inc. v. Cisco Systems, Inc.*, Civil Action No. 6:10-CV-417 (E.D. Tex.) (Dkt. 780).

[36] *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256).

about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case on any issue

The damages you award must be adequate to compensate Smartflash for the infringement you find *[Smartflash proposes: – that is, infringement occurring between the first date of infringement and the time of trial.*[37] *]*[38] Damages are not meant to punish an infringer. Smartflash has the burden to establish the amount of its damages by a preponderance of the evidence.  The patent owner is not entitled to damages that are remote or speculative.

Smartflash seeks damages by measure of a reasonable royalty.

---

[37] *SimpleAir v. Google, Inc., 2:11-cv-416-JRG (E.D. Tex.) (Dk. 719 at 33); see also Whitserv LLC v. Computer Packages, Inc. 694 F.3d 10, 35 (Fed. Cir. 2012) ("The jury was instructed to award damages," which by definition covers only past harm.").*

[38] This instruction is confusing in light of the possibility that the jury would award a lump sum royalty.  Further, this instruction was not given in, *e.g.*, *Lake Cherokee Hard Drive Techs., LLC v. Marvell* Semiconductor, 10-cv-216-JRG (E.D. Tex) (Dkt. 466 at 52-53), *SimpleAir   v.* Microsoft, 22-cv-416-JRG (Dkt. 654 at 68), *Cassadian Communications, Inc. v. microDATA GIS, Inc.*, 12-cv-162-JRG (E.D. Tex.) (Dkt. 174 at 55).

## XXIII.    REASONABLE ROYALTY

[*Smartflash proposes:  A reasonable royalty is defined as the money amount Smartflash and Apple would have agreed upon as a fee for Apple's use of Smartflash's invention. A reasonable royalty can be a single lump-sum amount, or it can be a running royalty.  A lump-sum royalty is a royalty payment where the patent owner receives a single, up-front payment. A running royalty, on the other hand, is a royalty where the patent owner collects on-going, per-unit, or percentage payments.[39]*

*The determination of a damage award is not an exact science, and the amount need not be proven with unerring precision.  You may approximate, if necessary, the amount to which the patent owner is entitled.   In such a case, while the damages may not be determined by mere speculation or guess, it is proper to award a damages amount if the evidence shows the extent of the damages as a matter of just and reasonable inference.*

*I will give more detailed instructions regarding damages shortly.  Note, however, that under the patent laws, Smartflash is entitled to recover no less than[40] a reasonable royalty for each infringing sale or use of its inventions.[41]*

---

[39] *Adapted from* <u>Rembrandt Wireless Techs. L.P. v. Samsung Electronics Co.</u>, Case No. 2:13-cv-213-JRG (E.D. Tex.).

[40] <u>In this case where Smartflash has not sought lost profits or presented evidence of an established royalty rate, a reasonable royalty and no more is the appropriate form of damages. Stating that Smartflash is entitled to "no less than" a reasonable royalty is misleading, as Smartflash has presented no evidence of being entitled to more than that.  See Amstar Corp. v. Envirotech Corp., 823 F.2d 1538, 1543 (Fed. Cir. 1987) ("A patentee may recover lost profits by proving that but for the infringement, the patentee would have made the sales the infringer made, charged higher prices, or incurred lower expenses.  Otherwise the patentee may recover only a reasonable royalty."); z4 Techs., Inc. v. Microsoft Corp., No. 6:06-CV-142, 2006 U.S. Dist. LEXIS 58374, at *32, 2006 WL 2401099 (E.D. Tex. Aug. 18, 2006) (("A patentee is entitle[d] to 'reasonable royalty' damages when lost profits or an established royalty rate cannot be proven.").</u>

[41] *Smartflash: This instruction is routinely given.  It is straight from 35 U.S.C. § 284.  See, e.g., Rembrandt Wireless Techs. L.P. v. Samsung Electronics Co., Case No. 2:13-cv-213-JRG (E.D.*

*A royalty is to a patent holder in exchange for the right to make, use, or sell the claimed invention.  A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to in a hypothetical negotiation taking place between them at a time prior to when the infringement first began.]* [42]

[Apple proposes: Generally, a reasonable royalty is defined by the patent laws as the reasonable amount that someone wanting to use the patented invention should expect to pay to the patent owner and the owner should expect to receive.  A royalty is the amount of money a licensee pays to a patent owner to make, use or sell the patented invention.  A reasonable royalty is the amount of money a willing patent owner and a willing prospective licensee would have agreed right before the infringement began for a license to make the invention.  In making your determination of the amount of the reasonable royalty, the focus is on what the expectations of the patent owner and infringer would have been had they entered into an agreement at that time and acted reasonably. [43]  A lump-sum royalty is a royalty payment where the patent owner receives a single, up-front payment. You may award a fully-paid, lump sum royalty for the time

---

*Tex.); DDR Holdings, LLC v. Digital River, Inc., Case No. 2:06-CV-42-JRG (E.D. Tex. Oct. 12, 2012) (Dkt. No. 519 at 25); SSL Services, LLC v. Citrix Systems, Inc., Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256); Personal Audio v. CBS Corp. 13-cv-270-JRG (E.D. Tex.) (Dkt. 68 at 51).*

[42] Adapted from *DDR Holdings, LLC v. Digital River, Inc.*, Case No. 2:06-CV-42-JRG (E.D. Tex. Oct. 12, 2012) (Dkt. No. 519 at 25); *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256).

[43] Adapted from *Personalized Media Commc'ns v. Zynga, Inc.*, No. 2:12-cv-68 (E.D. Tex.) (Dkt. 264 at 18-20); *Rembrandt Wireless Techs. L.P. v. Samsung Electronics Co.*, Case No. 2:13-cv-213-JRG (E.D. Tex.)

period of the infringement.  A running royalty, on the other hand, is a royalty where the patent owner collects on-going, per unit, or percentage payments over a period of time.[44]].[45]

In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations.  In determining this, you must assume that both parties believed the patent was valid and infringed and the patent holder and infringer were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from this hypothetical negotiation, and not simply a royalty either party would have preferred.  Evidence of things that happened after the infringement first began may be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation.  [Apple proposes: The date of the hypothetical negotiation is to take place at a time right before infringement began.  Infringement of the '720 patent is asserted as of June 2009. Infringement of the '221 patent is asserted as of February 2012, when the patent issued.  Infringement of the '772 patent is asserted as of December 2012, when the '772 patent issued.  If infringement of a patent or patents is found, the date of hypothetical negotiation would be the date just before the first infringement of the first infringed patent.][46]

## XXIV.   FACTORS   TO   CONSIDER   FOR   REASONABLE   ROYALTY CALCULATION[47] [48]

---

[44] *Rembrandt Wireless Techs. L.P. v. Samsung Electronics Co.*, Case No. 2:13-cv-213-JRG (E.D. Tex.).

[45] *Smartflash objects to this instruction as confusing, unnecessary, and rarely instructed.*

[46] *Smartflash objects to this instruction because as unnecessary.*

47 *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256).

*[Smartflash proposes: In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began.  Some of the kinds of factors that you may consider in making your determination are:[49] ]* [Apple proposes: In determining the reasonable royalty, you should consider real-world facts, including the following to the extent they are helpful to you.][50]

(1)     The royalties received by the patentee for licensing of the patents-in-suit, proving or tending to prove an established royalty;

(2)     The rates paid by the licensee for the use of other patents comparable to the patents-in-suit;

(3)     The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to the parties to whom the manufactured product may be sold;

(4)     Whether the patent owner had an established policy of granting licenses or retaining the patented invention as its exclusive right or whether the patent owner had a policy of granting licenses under special conditions designed to preserve his monopoly;

(5)     The nature of the commercial relationship between the patent owner and the licensee, such as whether they were competitors or whether their relationship was that of an inventor and a promoter;

---

[48] Adapted from *Personalized Media Commc'ns v. Zynga, Inc.*, No. 2:12-cv-68 (E.D. Tex.) (Dkt. 264 at 20-23); *Rembrandt Wireless Techs. L.P. v. Samsung Electronics Co.*, Case No. 2:13-cv-213-JRG (E.D. Tex.)

[49] *DDR Holdings, LLC v. Digital River, Inc.*, Case No. 2:06-CV-42-JRG (E.D. Tex. Oct. 12, 2012) (Dkt. No. 519 at 25)

[50] Adapted from *Personalized Media Commc'ns v. Zynga, Inc.*, No. 2:12-cv-68 (E.D. Tex.) (Dkt. 264 at 20-23); *Rembrandt Wireless Techs. L.P. v. Samsung Electronics Co.*, Case No. 2:13-cv-213-JRG (E.D. Tex.)

(6)      *[Smartflash proposes: The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales]* [Apple proposes: whether the licensee's sales of the patented invention promote sales of its other products and whether the invention generates sales to the inventor of his non-patented items;][51]

(7)      The duration of the patent and the term of the license

(8)      *[Smartflash proposes: The established profitability of the product made under the patents, its commercial success, and its current popularity]* [Apple proposes: the established profitability of the patented product, its commercial success, and its popularity at the time][52];

(9)      The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results;

(10)     The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention;

(11)     The extent to which the infringer has made use of the invention and any evidence probative of the value of that use;

---

[51] Adapted from *Personalized Media Commc'ns v. Zynga, Inc.*, No. 2:12-cv-68 (E.D. Tex.) (Dkt. 264 at 20-23); *Rembrandt Wireless Techs. L.P. v. Samsung Electronics Co.*, Case No. 2:13-cv-213-JRG (E.D. Tex.)

[52] Adapted from *Personalized Media Commc'ns v. Zynga, Inc.*, No. 2:12-cv-68 (E.D. Tex.) (Dkt. 264 at 20-23); *Rembrandt Wireless Techs. L.P. v. Samsung Electronics Co.*, Case No. 2:13-cv-213-JRG (E.D. Tex.)

*(12)    Smartflash proposes: The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions* [Apple proposes: the portion of the profits in the particular business that is customarily attributable to the use of the invention or analogous inventions] [53];

(13)    The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer;

(14)    The opinion and testimony of qualified experts; and

*(15)    [Smartflash proposes: The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee-who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention-would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable to a prudent patentee who was willing to grant a license.]* [Apple proposes: any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept acting as normally prudent business people.] [54]

---

[53] Adapted from *Personalized Media Commc'ns v. Zynga, Inc.*, No. 2:12-cv-68 (E.D. Tex.) (Dkt. 264 at 20-23); *Rembrandt Wireless Techs. L.P. v. Samsung Electronics Co.*, Case No. 2:13-cv-213-JRG (E.D. Tex.)

[54] Adapted from *Personalized Media Commc'ns v. Zynga, Inc.*, No. 2:12-cv-68 (E.D. Tex.) (Dkt. 264 at 20-23); *Rembrandt Wireless Techs. L.P. v. Samsung Electronics Co.*, Case No. 2:13-cv-213-JRG (E.D. Tex.)

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors.  You may also consider any other factors which in your mind would have increased or decreased the royalty the parties would have been willing to pay and accept, acting as normally prudent business people.  The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.

[*Smartflash Proposes: Damages should be apportioned to the value contributed by the invention; that is, Smartflash must apportion the damages between the portion of the accused products that are the patented features or components and the unpatented features or components of the accused products. Therefore, except as specifically provided in this instruction, in applying the fifteen factors I've just read to you, you should only consider as the royalty base the portion of the value that is attributable to the patented features or components, as compared to the portion of the value associated with other features or components, such as unpatented elements, features, components, or improvements developed by the accused infringer, if any.  However, the value of the entire product can be attributed to the patented features or components if those features or components alone motivate a customer to purchase a product.*[55]*][56]

---

[55][*Smartflash Proposes: Adapted from the Court's charge in Droplets, Inc. v. Overstock.com, 2:11-cv-401-JRG-RSP (E.D. Tex.).  See also LaserDynamics v. Quanta Computer, Inc., 694 F.3d 51, 69 (Fed. Cir. 2012) ("There is no evidence that this feature alone motivates consumers to purchase a laptop computer"); VirnetX v. Cisco Sys., Inc., 767 F.3d 1308, 1327-28 (Fed. Cir. 2014) (holding that, where EMVR does not apply, the patentee must "estimate what portion of the value of that [multi-component] product is attributable to the patented technology.").*]

*To be clear, Smartflash objects to the inclusion of either an apportionment instruction or an entire market value rule instruction as inconsistent with 35 U.S.C. § 284.  The legislative history*

[Apple proposes: The entire market rule allows for the recovery of damages based on the value of an entire product containing several features only when the patented invention constitutes the basis for consumer demand for the entire product. So, if you find that Smartflash has proven that customers demanded an entire accused product because of the patented invention alone, and for no other reason, you may award damages based on the entire value of the product. However, if you find that customer demand for the product is not based on the patented invention, you should award damages based on the value of the patented invention and not the value of the entire product.

When the accused product is a multi-component product containing several non-infringing features with no relation to the patented invention, Smartflash is required to apportion the value of that product that is attributable to the patented technology.  To apportion means to divide and allocate. When the claimed invention is just one component of the accused product, Smartflash is required to apportion the value of that product that is attributable to the patented

---

of the reasonable royalty remedy was designed to remedy complex portions of apportionment. Indeed, § 284 codified the reasonable royalty remedy to replace the prior existing profit disgorgement remedy "in light of the grave concern . . . over the problems of apportionment." Georgia-Pacific Corp. v. U.S. Plywood Corp., 243 F. Supp. 500, 525-26 (S.D.N.Y. 1965). Nevertheless, Smartflash proposes an apportionment and EMVR instruction based on more recent Federal Circuit authority on damages.]

[56] Smartflash itself admits that Federal Circuit law addresses the issues of the entire market value rule and apportionment.  See, e.g., LaserDynamics v. Quanta Computer, Inc., 694 F.3d 51, 66-70 (Fed. Cir. 2012); VirnetX v. Cisco Sys., Inc., 767 F.3d 1308, 1326-28 (Fed. Cir. 2014).  It is important to explain to the jury that Smartflash is not entitled to damages based on the entire value of the accused product for any alleged infringement unless it can show that the patented invention is responsible for consumer demand for the entire accused product. Otherwise, Smartflash must divide and allocate the value of the accused product attributable to the patented invention.  Smartflash's proposal is convoluted and will not assist the jury in understanding this issue.  Further, Smartflash's use of the phrase "components" and "features" rather than "invention" is misleading.  Smartflash's proposed instruction suggests that it is entitled to the entire value of the App Store, and of Movie and TV rentals and downloads, despite the fact that iTunes is indisputably much broader than the allegedly infringing functionality.

technology.   For example, if the value of the accused product is based on many features, including technical features or patented technologies unrelated to the claimed invention, you may award damages only based on the value of the claimed invention.][57]

Smartflash has the burden of establishing any damages award. Smartflash therefore must prove by a preponderance of the evidence that the damages it seeks are attributable to the claimed invention, and not to other technologies, features, or aspects of the accused products. Smartflash's evidence must be reliable and tangible; it cannot be conjectural or speculative. Any evidence of a reasonable royalty must carefully tie proof of damages to the claimed invention's role in the marketplace. And, again, you only reach the damages question if you find that Apple's products infringe and that the patent claims are valid.][58]

## XXV.   DELIBERATION INSTRUCTIONS[59]

I will now provide you with a few final instructions before you begin your deliberations.   You must perform your duties as jurors without bias or prejudice as to any party.

The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as I have given it to you, and reach a just verdict, regardless of the consequences.

---

[57] Adapted from *Ambato Media v. Clarion Co.*, Case No. 2:09-CV-00242-JRG (E.D. Tex. Jul. 19, 2012) (Dkt. 393); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326-7 (Fed. Cir. 2014).

[58] Adapted from *Ambato Media v. Clarion Co.*, Case No. 2:09-CV-00242-JRG (E.D. Tex. Jul. 19, 2012) (Dkt. 393); *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326-7 (Fed. Cir. 2014); *Stragent, LLC v. Intel Corp.*, 6:11-cv-421 (E.D. Tex.) (Dkt. 327).

[59] *SSL Services, LLC v. Citrix Systems, Inc.*, Case No. 2:08-CV-158-JRG (E.D. Tex.), (Dkt. No. 256).

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly.   Your answers and your verdict must be unanimous.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. This is true in patent cases between corporations, partnerships, or individuals. A patent owner is entitled to protect its patent rights under the United States Constitution. This includes bringing suit in a United States District Court for money damages for infringement.   The law recognizes no distinction among types of parties. All corporations, partnerships and other organizations stand equal before the law, regardless of size or who owns them, and are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you will each have a copy of this charge to take with you.  If you desire to review any of the exhibits which the Court has admitted into evidence, you should advise me by a written note delivered to the Court Security Office, and I will send that exhibit or exhibits to you.  Once you retire, you should select your Foreperson and conduct your deliberations.   If you recess during your deliberations, follow all of the instructions that the Court has given you about your conduct during trial.  After you have reached your verdict, your Foreperson is to fill in on the **verdict** form your unanimous answers to the questions**.**  Do not reveal your answers until such time as you are discharged, unless otherwise directed by me.  You must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you have taken during this trial are only aids to memory.  If your memory should differ from your notes, then you should rely on your memory and not on

the notes.   The notes are not evidence.   A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors.   Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time, please give a written message or question to the Court Security Officer, who will bring it to me.   I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally.   I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict and I have discharged you, you are not required to talk with anyone about the case unless the Court orders otherwise.

You may now retire to the jury room to deliberate.[60]

---

[60] By not submitting a jury instruction with respect to ownership/standing and indefiniteness, which are issues Apple argued were appropriate for the jury's consideration, Apple does not intend to waive and hereby expressly preserves its contentions with respect to those issues and reserves its right to appeal.