**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

|  |  |  |
|---|---|---|
| SMARTFLASH LLC and SMARTFLASH TECHNOLOGIES LIMITED, | ) ) ) ) | Civil Action No. 6:13-cv-447-JRG-KNM |
| Plaintiffs, | ) ) ) |  |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| APPLE INC., ROBOT ENTERTAINMENT, INC., KINGSISLE ENTERTAINMENT, INC., and GAME CIRCUS LLC, | ) ) ) ) |  |
| Defendants. | ) ) ) |  |

**DEFENDANT APPLE INC.'S REPLY IN SUPPORT OF ITS RULE 50(b) RENEWED
MOTION FOR JUDGMENT AS A MATTER OF LAW, AND/OR RULE 59 MOTION
<u>FOR A NEW TRIAL ON THE ISSUE OF DAMAGES (DKT. 548)</u>**

# <u>TABLE OF CONTENTS</u>

Page(s)

I.  THE "ALONE MOTIVATE" ROYALTY BASE VIOLATED THE EMVR ...................... 1

    A.  Smartflash's Claim That Mr. Mills Did Not Employ The EMVR Is Based On A Misapplication Of The Law And Is Belied By Its Past Admissions .................. 1

    B.  Smartflash Violated The EMVR By Ignoring Non-Accused Features That Were "Necessary" To Purchase Decisions ............................................................ 2

II.  SMARTFLASH'S "PERCENT VALUE" ROYALTY BASE WAS ALSO FLAWED ...... 3

III.  SMARTFLASH'S ROYALTY RATE IS UNRELIABLE .................................... 4

IV.  DR. BECKER'S REASONABLE ROYALTY OPINION WAS THE ONLY OPINION PRESENTED ON WHICH A REASONABLE JURY COULD RELY ............ 4

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
  694 F.3d 51 (Fed. Cir. 2012)...................................................................................... 1, 2

*Reed v. City of Arlington*,
  650 F.3d 571 (5th Cir. 2011) ...................................................................................... 3

*VirnetX, Inc. v. Cisco Sys., Inc.*,
  767 F.3d. 1308 (Fed. Cir. 2014)............................................................................... 1, 2, 3

The jury's $532.9 million damages award cannot stand.  The jury's damages award was influenced heavily by Smartflash's overreaching damages model, which impermissibly embraced the entire market value of Apple's products, instead of properly apportioning damages in accordance with recent Federal Circuit guidance.  Moreover, its "percent-value" theory was contingent on dramatically overinflated survey results that made Mr. Mills's calculations unreliable.  For the reasons discussed below, no damages should be awarded or, at minimum, Apple's lump sum royalty proposal was the only evidence on which a reasonable jury could rely.

## I.     THE "ALONE MOTIVATE" ROYALTY BASE VIOLATED THE EMVR

### A.     Smartflash's Claim That Mr. Mills Did Not Employ The EMVR Is Based On A Misapplication Of The Law And Is Belied By Its Past Admissions

Smartflash's argument that Mr. Mills did not employ the EMVR (Resp. at 26) has already been rejected by the Court (Dkt. 286 at 3, Dkt. 374 at 3-5).  At trial, Mr. Mills again relied on the total revenues of a subset of the accused devices for his base, rather than "apportion[ing] the royalty down to a reasonable estimate of the value of its claimed technology" by "subtract[ing] any other unpatented elements."  *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d. 1308, 1328-29 (Fed. Cir. 2014).  Thus, by definition, he employed the EMVR for that subset of devices.  Smartflash's claim that it does not rely on the EMVR also contradicts its earlier argument that the "alone motivate" question satisfies *LaserDynamics'* requirements.  *See* Dkt. 445 at 4-5.

The harm to Apple was compounded when Smartflash told the jury that $43.4 billion was only 23% of the revenue for the infringing products—which was tantamount to presenting total revenues, and prejudicially skewed the damages horizon.  2/16/15 PM Tr. at 41:10-17; 2/17/15 PM (Sealed Portion 3) Tr. (Mills) 23:10-17.  "[S]uch overall revenues, which have no demonstrated correlation to the value of the patented feature alone, only serve to make a patentee's proffered damages amount appear modest by comparison, and to artificially inflate the

1

jury's damages calculation beyond that which is 'adequate to compensate for the infringement.'"

*LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 68 (Fed. Cir. 2012).

### B. Smartflash Violated The EMVR By Ignoring Non-Accused Features That Were "Necessary" To Purchase Decisions

In the context of accused multi-component products, the EMVR "is the exception, not the rule"—a party normally may recover "only those damages attributable to the infringing features." *Virnetx*, 767 F.3d at 1326. To employ the EMVR here, Smartflash was required to meet a "higher degree of proof" to show that its "patented technology drove demand for the entire product … such that the value of the entire [product] can be attributed to the patented [feature]." *LaserDynamics*, 694 F.3d at 68-69. Mr. Mills, however, used the entire value of the accused products in his damages calculation, even though he admitted that other features were "necessary" for consumers to purchase the product. 2/18/15 AM Tr. (Mills) at 25:12-21 (confirming that simply because someone responded "yes" to the "alone motivate" question for the tested feature "doesn't mean that there aren't *other features* that might be features that a customer *would need to have to make the purchase*") (emphasis added); *see also id*. at 24:7-25:1, 25:22-26:16; 2/17/15 PM Tr. (Wecker) at 86:6-10. Dr. Dhar's modified "alone motivate" survey provided empirical evidence that respondents did not, in fact, understand the "alone motivate" question to measure "sole motivation," as required by *LaserDynamics*. *See* Mot. (Dkt. 548) at 5. Thus, Mr. Mills' reliance on the "alone motivate" surveys violated the EMVR.[1]

Smartflash also argues that Apple is judicially estopped from arguing that Mr. Mills's reliance on the "alone motivate" question violates the EMVR. Resp. at 28. In Apple's first *Daubert* challenge of Mr. Mills, Apple argued that Smartflash needed to prove that "the patented

---

[1]    Contrary to Smartflash's argument (*e.g.*, Resp. at 25), Apple *did* challenge the sufficiency of the damages evidence presented to the jury in its JMOL Motion, which is *not* the same as a *Daubert* challenge to the admissibility of that evidence. *See generally* Mot. 3-13.

feature *alone* motivated the purchase" identified the legal standard Smartflash was required to meet.  Apple never agreed that Mr. Mills's reliance on the "alone motivate" question satisfied *LaserDynamics*, and Apple's criticisms of Mr. Mills's reliance on the "alone motivate" survey used at trial are consistent with Apple's criticisms of his reliance on Smartflash's original survey. *See Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) (en banc).  Ultimately, it was Mr. Mills's responsibility to ensure that the survey numbers that he used reliably measured what he aimed to measure.  2/18/15 AM Tr. (Mills) at 18:13-18.

Mr. Mills's damages calculation was also not narrowly tailored to the facts of this case because he relied on surveys that described the purportedly infringing feature in an overly broad manner.  The asserted claims do not cover all of the features and functionalities involved in "the capability to purchase apps" or "to rent or purchase movies and TV shows."  *See* Mot. at 5. Because the surveys tested features much broader than the infringing features, Mr. Mills's reliance on those surveys to measure "only those damages attributable to the infringing features," *Virnetx*, 767 F.3d at 1326, was improper and no reasonable jury could have relied on Mr. Mills's damages calculation in awarding damages.

## II.     SMARTFLASH'S "PERCENT VALUE" ROYALTY BASE WAS ALSO FLAWED

Contrary to Smartflash's criticism (Resp. at 33), Apple has cited "authority that requires the plaintiff to begin its damages calculations by identifying the smallest saleable unit before moving on to further apportionment."  For example, *VirnetX* states that "the *requirement* that a patentee identify damages associated with the smallest salable patent-practicing unit is simply *a step toward meeting the requirement of apportionment*."  767 F.3d at 1327 (emphasis added). Identifying damages associated with the smallest salable unit is not enough.  Rather, for multi-component products—like the accused products here—that "contain[] several non-infringing features with no relation to the patented feature . . . the patentee must do more to estimate what

3

portion of the value of that product is attributable to the patented technology." *Id*.  Smartflash

provides no explanation for its assertion that the value of unpatented features was "accounted for

and excluded by the nature of the survey questions in this case."  Resp. at 34.  And it was not.

Mr. Mills also provided no justification for speculating that the average percent value of

the upper half of respondents would be a fair estimate, regardless of using "simple arithmetic" in

his calculations (Resp. at 31).  Indeed, Dr. Wecker admitted that "if someone answers yes to the

alone motivate question, you can't tell what specific percent value they place on that feature."

2/17/15 PM Tr. (Wecker) at 100:9-16.  The ***only*** evidence regarding what the "percent-value"

survey actually measured comes from Dr. Dhar's study, which showed that Smartflash's results

are overinflated, as responses totaled well over 100% of "value" for each device.  *See* Mot. at 7.

## III.    SMARTFLASH'S ROYALTY RATE IS UNRELIABLE

Smartflash's experts admitted that other less burdensome non-infringing alternatives

exist: streaming movies/TV over purchasing them for three times the rental amount, *see* 2/17/15

PM Tr. (Jones) at 24:9-25:2; 2/18/15 AM Tr. (Mills) at 28:10-29:5; and entering one's password

after downloading content, rather than before, 2/17/15 PM Tr. (Jones) at 19:10-20:7.   And

contrary to Smartflash's assertion that there is no evidence that these non-infringing alternatives

would have been acceptable or preferred, Smartflash's own expert, Dr. Jones, testified that

alternatives with fewer steps would generally be more desirable to the user.  2/17/15 PM Tr.

(Jones) at 12:12-17.  Further, Smartflash does not deny that its damages calculations, based on

2014 surveys, were not tied to the agreed 2009 hypothetical negotiation date.  Resp. at 36.

Instead, Smartflash seeks to shift its burden to Apple and argues that ***Apple's experts*** could have

corrected Smartflash's calculation for this error, but did not.  *Id*.  Assuming it was even possible,

it was Smartflash's burden—not Apple's—to do so.

## IV.    DR. BECKER'S REASONABLE ROYALTY OPINION WAS THE ONLY

4

**OPINION PRESENTED ON WHICH A REASONABLE JURY COULD RELY**

Smartflash mischaracterizes Dr. Becker's opinion as "based on a single sentence contained in a single email written by Mr. Racz almost a decade ago."  Resp. at 37.  Dr. Becker's opinion was based on multiple documents contemporaneous with the hypothetical negotiation date that showed how the inventor and others in the industry valued the patented technology.  *See* Mot. at 12.  Moreover, the jury instructions were not "silent on what form the reasonable royalty should take," as Smartflash contends.  Resp. at 38.  The Court instructed the jury that it "should only consider as the ***royalty base*** the portion of the value that is attributable to the patented features or components."  2/24/15 Tr. at 62:3-6 (emphasis added).  But only Smartflash had requested a "royalty base." There was no instruction whatsoever on the lump-sum form presented by Apple's expert.  The Court's instruction (Resp. at 38) does not resolve the problem and merely instructs that the Court is not suggesting how the jury should come out on ***liability***.  It does not, however, guard against implicitly endorsing one type of royalty.[2]

Dated: June 4, 2015

By: */s/ Ching-Lee Fukuda*
Ching-Lee Fukuda
NY Bar No. 2884088
(Eastern District of Texas Member)
Ching-Lee.Fukuda@ropesgray.com
Kevin J. Post (*pro hac vice*)
Kevin.Post@ropesgray.com
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
Facsimile: (212) 596-9050

James R. Batchelder

---

[2]     Apple did not waive its objection to the omission of a lump sum definition either at the charge conference or because Apple proposed an instruction on a proper royalty base.  Resp. at 38 n.28.  Apple proposed instructions on both forms of royalty to ensure the jury was instructed on the forms presented by the parties' experts.  *See* Dkt. 499-1 at 34-35.  And Apple objected at the charge conference when its proposed instruction was not adopted.  2/24/15 Tr. at 16:7-21.

CA Bar No. 136347
(Eastern District of Texas Member)
James.Batchelder@ropesgray.com
Lauren N. Robinson
CA Bar No. 255028
(Eastern District of Texas Member)
Lauren.Robinson@ropesgray.com
**ROPES & GRAY LLP**
1900 University Ave 6th Floor
East Palo Alto, CA 94303-2284
Telephone:  (650) 617-4000
Facsimile:  (650) 617-4090

Douglas H. Hallward-Driemeier
(*pro hac vice*)
Douglas.Hallward-
Driemeier@ropesgray.com
Megan F. Raymond (*pro hac vice*)
Megan.Raymond@ropesgray.com
**ROPES & GRAY LLP**
700 12th St. NW Suite 900
Washington, DC 20005
Telephone: (202) 508-4600
Facsimile: (202) 508-4650

Mark A. Perry (*pro hac vice*)
mperry@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539

Melissa Smith
TX Bar No. 24001351
**GILLIAM & SMITH LLP**
303 South Washington Avenue
Marshall, TX 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
Melissa@gilliamsmithlaw.com

*Attorneys for Defendant Apple Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 4, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to CM/ECF participants in this case.

*/s/ Ching-Lee Fukuda*
Ching-Lee Fukuda
