# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| SMARTFLASH LLC, et al., § § § *Plaintiff*, § § v. § § APPLE INC., et al., § § *Defendants*. § § § | Case No. 6:13-cv-447-JRG |

## ORDER

Before the Court is the Renewed Motion for Judgment as a Matter of Law on the Issue of Damages under Rule 50(b) and/or a New Trial under Rule 59(e) (Dkt. No. 548) filed by the Defendant Apple Inc. ("Apple"). Plaintiff Smartflash LLC, et al. ("Smartflash") responds in an omnibus response (Dkt. No. 555). On June 24, 2015, the Court notified the parties pursuant to Rule 59(d) that it was considering granting a motion for a new trial for a reason not stated in Apple's original motion (Dkt. No. 571). On July 1, 2015, the Court held a hearing regarding Apple's Motion and the Rule 59(d) notification. The Court previously addressed the issue of willfulness (Dkt. No. 580). For the reasons set forth below, the Court **GRANTS** a new trial on the issue of damages.

## I. BACKGROUND

At trial in this case and at Apple's request,[1] the Court instructed the jury on the substantive legal rule known as the entire market value rule. (2/24 AM TT (Jury Instructions)

---

[1] *Smartflash* objected to the inclusion of this jury instruction. Apple urged that this instruction be included. *See* (Third Joint Proposed Final Jury Instructions at 39–40, Dkt. No. 499-1); (7/1 Hr'g Tr. 39:16–18 (responding to the Court's question about whether the "instruction came from Apple," Apple responded, "That's correct. The language in the instruction.")).

62:9–17, Dkt. No. 521). Smartflash argues that it did not employ the entire market value rule at trial. (Pl.'s Resp. at 26, Dkt. No. 555). At the July 1, 2015, post-trial hearing on the issues, the Court asked Apple: "In your view, is this an entire market value rule case, or is this an apportionment case?" (7/1 Hr'g Tr. 36:25–37:2). Apple did not respond to the Court's question with any certainty as to whether it believed Smartflash presented an entire market value rule damages case at trial;[2] instead, Apple stated that "[e]ither this is not an entire market value case, which is the Smartflash current position. . . . If that's true, Your Honor, then a new trial is required because the jury was instructed on entire market value and . . . there is no basis for that jury instruction."[3] (7/1 Hr'g Tr. 38:12–19). The Court finds that Smartflash did not attempt to apply the substantive legal rule known as the entire market value rule, and the Court agrees with

---

[2] Apple has made previous comparisons of Smartflash's damages model to the entire market value rule in this case. *See, e.g.*, (Def.'s JMOL on Damages at 3–6, Dkt. No. 548 ("Smartflash's evidence was not only unreliable, but it violated the entire market value rule . . .")); (Def.'s Reply at 1, Dkt. No. 563 ("Thus, by definition, [Smartflash's damages expert] employed the EMVR for that subset of devices. Smartflash's claim that it does not rely on the EMVR also contradicts its earlier argument that the "alone motivate" question satisfies *LaserDynamics*' requirements.")); *id.* at 2 ("Mr. Mills' reliance on the 'alone motivate' surveys violated the EMVR.")); (Second Daubert Hr'g Tr. 30:9–10, Dkt. No. 459 (Apple's Counsel: "[Smartflash's damages expert] relied on that [survey question] as establishing predicate for the entire market value rule."); *id.* 30:24–31:1 ("[T]he way that [Smartflash's damages expert] relied upon [the survey question] still does not justify invocation of the entire market value rule, which is what he relies upon it to do."); *id.* 31:8–9 ("[T]here has to be a coterminous relationship between an EMVR-type issue and the patented feature.")); (First Daubert Hr'g Tr. 192:15–19, Dkt. No. 418 (Apple's Counsel: "Neither of the survey questions nor the responses are consistent with the *LaserDynamics* test, the sole motivation test. They've got the wrong question.")); (Def.'s Mot. to Exclude Test. of Mills at 1, 4–7, Dkt. No. 279 ("Mr. Mills' damages analysis violates Rule 702 and Federal Circuit law by employing a royalty base that is contrary to the entire market value rule, by failing to apportion . . . .")); (Def.'s Reply at 1–3, Dkt. No. 315); (Def.'s Mot. to Exclude Test. of Wecker at 7–8, Dkt. No. 280); (Def.'s Second Mot. to Exclude Test. of Mills at 5–8, Dkt. No. 434).

[3] *See supra* text accompanying footnote 1.

Apple's argument that a new trial on damages is necessary in light of the instruction the Court provided to the jury.

## II.   DISCUSSION

"[T]he classic way to determine the reasonable royalty amount is to multiply the royalty base, which represents the revenue generated by the infringement, by the royalty rate, which represents the percentage of revenue owed to the patentee." *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 27 (Fed. Cir. 2012); *Cornell Univ. v. Hewlett–Packard Co.*, 609 F.Supp.2d 279, 286 (N.D.N.Y. 2009) (Rader, J.) ("Calculation of a reasonable royalty . . . requires determination of two separate quantities—a royalty base, or the revenue pool implicated by the infringement, and a royalty rate, the percentage of that pool adequate to compensate the plaintiff for that infringement."); *see also Lucent Tech., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1339 (Fed. Cir. 2009) ("[A]ll running royalties have at least two variables: the royalty base and the royalty rate." (internal quotation marks and alterations omitted)).

"[T]he governing rule is that the ultimate combination of royalty base and royalty rate must reflect the value attributable to the infringing features of the product, and no more." *Ericsson, Inc. v. D–Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014). To accomplish this, in the Supreme Court's words, the patentee "must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features, and such evidence must be reliable and tangible, and not conjectural or speculative . . . ." *Garretson v. Clark*, 111 U.S. 120, 121 (1884). Otherwise, the patentee "must show, by equally reliable and satisfactory evidence, that the profits and damages are to be calculated on the whole machine, for the reason that the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature." *Id.*

i. **Apportionment**

As Apple noted at the July 1, 2015, hearing on the post-trial issues, the Supreme Court case of "*Garretson* sets forth two approaches, apportionment or entire market value." (7/1 Hr'g Tr. (Apple) 39:20–21). In the present case, Smartflash attempted to take salable, multi-component products and "apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features" of those products. *Garretson v. Clark*, 111 U.S. 120, 121 (1884). For example, if the Court assumes (for this purpose) that the jury defined the entire market as only the sales of certain iPhone, iPad, and iPod Touch devices,[4] which are all salable units that—based on the jury verdict—practice the patented software invention, then Smartflash subtracted from the royalty base a portion (77%) of the total value of these sales based on the answer to particular consumer survey questions.[5] *See, e.g.*, (2/17 PM TT (Mills) (Sealed Portion #3) 21:11–14). At its root, then, Smartflash's royalty base encompassed about 23% of the total revenue generated by the sales of the accused products, not 100% of it. Smartflash then multiplied a royalty rate (also based on a consumer survey) with this royalty base to calculate its ultimate reasonably royalty estimate. (2/17 PM TT (Mills) 152:13–14).

---

[4] Despite Smartflash's evidence to the contrary. *See* (2/17 PM TT (Mills) (Sealed Portion #3) 24:3–6 (excluding from the royalty base revenue associated with the sales of content within the App Store and iTunes store; revenue that Smartflash presented evidence tending to show is attributable to its invention); *id.* 10:1–4 (excluding from the royalty base revenue associated with the sales of other Apple products such as Mac computers)).

[5] By way of example, one of those survey questions applied to the royalty base calculation told consumers to "consider the capability to purchase apps from Apple's App Store" and then asked the consumers whether they were "motivated to buy" the multi-component device because of the infringing technology. (2/17 PM TT (Wecker) 52:16–22). Only 23% of people responded "yes" to that survey question, meaning those purchasers were "motivated to buy" based on the survey's description of the patented features, while nearly 77% of purchasers—those that answered "no"—were "motivated to buy" based on some other features—namely, the unpatented features. At this time, the Court does not comment on the sufficiency of Smartflash's survey questions.

Smartflash's damages model—with a degree of oversimplification—apportions familiar inputs to the royalty base and rate calculations by using the results of two consumer surveys (one that asks about whether the consumers were motivated to purchase[6] the accused products because of the infringing features). In other words, through the use of survey questions, Smartflash attempted to apportion for the jury "the incremental value that the patented invention adds to the end product." *Ericsson, Inc. v. D–Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014); *Virnetx v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014) ("No matter what the form of the royalty, a patentee must take care to seek only those damages attributable to the infringing features."); *id.* at 1329 (faulting damages expert under the entire market value rule for failing "to subtract any other unpatented elements from the [royalty] base."); *id.* at 1329 ("[A] patentee's obligation to apportion damages only to the patented features does not end with the identification of the smallest salable unit if that unit still contains significant unpatented features."); *see also Garretson v. Clark*, 111 U.S. 120, 121 (18840 ("[T]he patentee . . . must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features."); *Sentius Int'l, LLC v. Microsoft Corp.*, No. 5:13-CV-00825, 2015 WL 451950, at *11 (N.D. Cal. Jan. 27, 2015) (the plaintiff's damages "theory is not a hidden attempt to avoid the entire market value rule because [the damages expert] did not derive damages using [the defendant's] revenue and profit from all sales of the accused products").

### ii.     Jury Instruction

While the Court has separate and material concerns about the "ultimate combination of royalty base and royalty rate" which Smartflash used during trial to identify the "value

---

[6] At the Court's direction, Smartflash included the word "alone" in its motivate question.

attributable to the infringing features of the [accused] product[s]," *Ericsson, Inc. v. D–Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014), the confusion created by the instruction noted above warrants a new trial on damages in this case. The Court is persuaded, in the clarity of post-trial hindsight, that such instruction[7] may have created a skewed damages horizon for the jury. It is the Court's duty to view any and all proposed instructions critically and with an eye toward accurate compliance with the law coupled with effective and fair guidance for the jury. Post-trial motion practice exists to provide an opportunity to correct (and when necessary retry) matters not properly tried in the first place.

In addition, Apple has argued that Smartflash's damages model is inextricably intertwined with issues of liability and infringement. (7/1 Hr'g Tr. 42:7–14). In light of the separate concerns about Smartflash's damages model, the Court anticipates that Smartflash will present a different model in the new trial. As Apple's counsel noted at the hearing, there are "many, many ways to calculate a royalty that have nothing to do with liability and have nothing to do with infringement." (7/1 Hr'g Tr. 42:25–43:2). Given that the Court expects Smartflash to present, at the new trial, a damages model that moots this issue as raised by Apple, the Court declines to address Apple's argument at this time.

Thus, the Court hereby **ORDERS** that a new trial only on the issue of damages be **GRANTED**. Accordingly, the jury's verdict finding damages of $532, 900,000.00 is **SET ASIDE** and **VACATED**. The Court hereby **ORDERS** that jury selection for a new trial concerning the issue of damages be set for **Monday, September 14, 2015, at 9:00 a.m** in Tyler, Texas**.**

---

[7] The instruction was not an incorrect statement of law. However, it was inapplicable to the facts of this case.

**So ORDERED and SIGNED this 7th day of July, 2015.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE