IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| SMARTFLASH LLC, et al., | § § § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Case No. 6:13-cv-447-JRG |
| APPLE INC., et al., | § § § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion and Memorandum in Support of its Omnibus Rule 50(b)

Renewed Motion for Judgment as a Matter of Law and/or Rule 59 Motion for New Trial (Dkt.

No. 547) filed by Defendant Apple Inc.  For the reasons set forth below, the Court finds that

Apple's Motion should be and hereby is **DENIED**.

## I.   BACKGROUND

The Court held a jury trial in this case and the jury returned a unanimous verdict on

February 24, 2015. The jury found that that the asserted claims were not invalid; that the asserted

claims were infringed; that Apple had willfully infringed; and that approximately $532,900,000

was the "sum of money, if paid now in cash" which "would fairly and reasonably compensate

Smartflash for Apple's infringement of Smartflash's patents." (Dkt. No. 503 ("Verdict").) Apple

asserts that in the approximately 29 hours of testimony presented at trial that the jury did not

have sufficient evidence for its findings.

## II.   Applicable Law

Upon a party's renewed motion for judgment as a matter of law following a jury verdict,

the Court asks whether "the state of proof is such that reasonable and impartial minds could

1

reach the conclusion the jury expressed in its verdict." Fed. R. Civ. P. 50(b); *Am. Home Assur. Co. v. United Space Alliance*, 378 F.3d 482, 487 (5th Cir. 2004). "The grant or denial of a motion for judgment as a matter of law is a procedural issue not unique to patent law, reviewed under the law of the regional circuit in which the appeal from the district court would usually lie." *Finisar Corp. v. DirectTV Group, Inc.*, 523 F.3d 1323, 1332 (Fed. Cir. 2008). "A JMOL may only be granted when, 'viewing the evidence in the light most favorable to the verdict, the evidence points so strongly and overwhelmingly in favor of one party that the court believes that reasonable jurors could not arrive at any contrary conclusion.'" *Versata Software, Inc. v. SAP Am., Inc.*, 717 F.3d 1255, 1261 (Fed. Cir. 2013) (quoting *Dresser-Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 838 (5th Cir. 2004)).

Under Fifth Circuit law, a court is to be "especially deferential" to a jury's verdict, and must not reverse the jury's findings unless they are not supported by substantial evidence. *Baisden v. I'm Ready Productions, Inc.*, 693 F.3d 491, 499 (5th Cir. 2012). "Substantial evidence is defined as evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Threlkeld v. Total Petroleum, Inc.*, 211 F.3d 887, 891 (5th Cir. 2000). A motion for judgment as a matter of law must be denied "unless the facts and inferences point so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion." *Baisden* 393 F.3d at 498 (citation omitted). However, "[t]here must be more than a mere scintilla of evidence in the record to prevent judgment as a matter of law in favor of the movant." *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 606 (5th Cir. 2007).

In evaluating a motion for judgment as a matter of law, a court must "draw all reasonable inferences in the light most favorable to the verdict and cannot substitute other inferences that

[the court] might regard as more reasonable." *E.E.O.C. v. Boh Bros. Const. Co., L.L.C.*, 731 F.3d 444, 451 (5th Cir. 2013) (citation omitted). However, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Id.* at 151 (citation omitted).

### III.     Analysis

#### A.     Infringement

To prove infringement under 35 U.S.C. § 271, a plaintiff must show the presence of every element, or its equivalent, in the accused product or service. *Lemelson v. United States*, 752 F.2d 1538, 1551 (Fed. Cir. 1985).  First, the claim must be construed to determine its scope and meaning; and second, the construed claim must be compared to the accused device or service. *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1129 (Fed. Cir. 2011) (citing *Carroll Touch, Inc. v. Electro Mech. Sys., Inc.*, 15 F.3d 1573, 1576 (Fed. Cir. 1993)). "A determination of infringement is a question of fact that is reviewed for substantial evidence when tried to a jury." *ACCO Brands, Inc. v. ABA Locks Mfr. Co.*, 501 F.3d 1307, 1311 (Fed. Cir. 2007).

#### 1)  Smartflash Showed Sufficient Evidence of the Existence of "Payment Data"

Apple argues that Smartflash failed to show that the accused devices transmitted "payment data"—"data used to make payment."  (Mot. at 4.)  Apple argues that while the "three components—the 'DSID,' 'GUID,' and 'MID'" are "involved when users make purchases," this does not mean that they can be "used to make payment," as required by this Court's claim

construction. (*Id.* at 3.)  Instead, Apple argues that "only information stored at Apple's servers is used to make payment." (*Id.*)  Smartflash responds by arguing that the jury has already rejected Apple's argument that "DSID, GUID, and MID are 'merely identifiers.'" (Resp. at 2.)  Further, Smartflash argues that the construction for "payment data" merely requires "data that can be used to make payment for content," not that the "payment data" is the only data that is used to make a payment.  *See* (Sur-reply at 1.)

Smartflash is correct.  The construction for "payment data" only requires that the data can be used to make a payment.  Apple, in its briefing, admits that the three components identified are "involved when users make purchases," (Mot. at 3), and that the "DISD is used in the purchase process," (Reply at 1.)  The jury was properly instructed on the law, was free to judge the credibility of witnesses, and weigh competing evidence.  After consideration of the evidence presented at trial, including evidence that other data was used in the purchase process and that the three identifiers were used even when the content was free, the jury found that Apple had infringed the patents-in-suit. *See, e.g.,* (2/17/2015 A.M. Trial Tr. (Jones), Dkt. No. 513, at 37:20–38:18.)  The Court will not supplant the judgment of the jury, where under the preponderance of the evidence on this disputed issue of fact, the jury reached a reasoned and supportable decision. The Court does not find that no reasonable jury could have found that Apple had infringed the patents-in-suit, and consequently must deny the motion for judgment as a matter of law on this issue.

### 2) Smartflash Showed Sufficient Evidence of the Existence of "Payment Validation Data" and a "Payment Validation System"

Apple's arguments regarding the absence of "payment validation data" and "payment validation data" essentially resolve into the following points: 1) Smartflash did not show the existence of "payment data" and so there can be no "payment validation system" that returns

"payment validation data;" and 2) the "payment validation data" must be sent "only after the 'payment validation system has validated payment' for the selected content." (Mot. at 4–5.) Apple argues, just as with the "payment data," that the "URL and download key [are] transmitted regardless of whether payment is made" and thus cannot constitute "payment validation data." (*Id.* at 4.)  Similarly, Apple argues that because there is no "payment data," there is no "system that returns payment validation data based on an attempt to validate payment data."  (*Id.*) Smartflash responds by arguing that the MZ Buy server "returns payment validation data in the form of a success code, the price paid, a URL location from which the user's device will download the content, and a download key." (Resp. at 4.)

*First*, the Court finds that Apple has waived its temporal argument that the "claim language requires that 'payment' must occur prior to receiving purchased content."  (Mot. at 5.) Apple raised this particular argument for the first time in its Rule 50(b) motion. As a result, the Court finds this argument is untimely. In its Rule 50(a) motion, Apple only argued that the "payment validation data" limitation was not met because the "same information [was] sent whether or not payment is made," (Dkt. No. 501, at 5), not that "payment is not made until after the user device downloads content," (Mot. at 6).  New arguments presented for the first time at the Rule 50(b) stage are improper.

*Second*, the jury agreed with Smartflash's expert's testimony on the issue.  After consideration of the evidence presented, including evidence from Dr. Jones—Smartflash's technical expert—that "Apple uses the DSID to make sure that [a] customer's account is in good standing and in a position to purchase the content" and that the MZ Buy system returns the "success code" and "the price paid," the jury found that Apple had infringed the patents-in-suit. *See* (2/17/2015 A.M. Trial Tr. (Jones), Dkt. No. 513, at 39:6–19; 2/18/2015 P.M. Trial Tr.

(Mirrashidi), Dkt. No. 516, at 141:2–5.) The jury reached a reasoned and supportable decision, and the Court fails to find that no reasonable jury could have found that Apple had infringed the patents-in-suit.

### 3) Smartflash Showed Sufficient Evidence of the Existence of "Use Rules"

Apple argues that Smartflash failed to show the "claimed use rules in the Apple devices." (Mot. at 7.)  In particular, Apple argues that the "use rules" identified by Smartflash in regard to movie rentals "were contained within two data fields called 'rental duration' and 'playback duration' and that the purported rule itself was nothing more than a number in Apple's system." (Mot. at 8.)  Similarly, Apple argues that, for the "use rules" Smartflash identified for parental controls and Fairplay, Smartflash's expert "did not say what 'rule' was being used to evaluate 'use status data' in the context of [the identified] features." (*Id.*)

Smartflash responds by arguing that the "trial record establishes that Apple's products have three types of use rules" and that Smartflash's expert "explained how each type of rule works." (Resp. at 7.) For example, Smartflash cites to Dr. Jones testimony, who stated:

> Q. Once the content is downloaded on the Apple device, is it subject to use rules?
>
> A.  Yes, it is.
> . . .
> A.  [T]here are three different types of use rules. There -- in the case of movie rentals, rental keybag that governs the rental time periods.
>      In the case of what are known as parental controls, we'll go through those in a second, as well as FairPlay rules that help encrypt and decrypt the information.

(2/17/15 Trial Tr. (Jones) 39:24–41:8, Dkt. No. 513.) With respect to the rules relating to movie rentals, Dr. Jones explained:

> A.  The rental keybag contains both rules and use status data, and the rules govern a couple of time periods. One is a 30-day time period, and another is a 24-hour time period.
>
> Q. And what is the use status data?

A. The use status data is -- relates to those rules; and for the 30-day limit, the use status data is the date on which you rented the item. And that 30-day limit says you have 30 days from that date to view the movie.

Q. And how does the use status data and the use rules work together?

A. Well, as an example, the 24-hour limit, there's use status data for that that indicates when you started watching. And if you have started -- if you have started watching it, it will indicate the time and date that you started watching.
    And taken together, what that will -- will do is enforce a limit of 24 hours from the time you actually start watching the movie during which you can watch that movie. After that limit has expired, you're no longer able to view or watch the movie.

(*Id.* 41:15–42:9). For parental controls use rules, Dr. Jones explained:

A. . . . So there are use rules for parental controls that a parent can set on a device through the settings and restrictions capabilities on the device to -- to limit the type of content that can be viewed.
    For example, for movies, you could set a maximum rating of movies that they watch on the device; for example, nothing that is any higher than PG.
    Similarly, you can set ratings for music, for TV, books, and apps. And apps, for example, you can say: I don't want anything more than apps rated for ages 9 and lower.

Q. What is the use status data for parental rules?

A. So the use status data is associated with particular items of content.
    For example, for a given movie -- so a particular movie, it's the rating. Does that movie say PG-13, or for a particular app, what's the age rating? Is that app 4 plus? That would be the rating, and that would be the use status data.
    Those are evaluated together to determine whether or not a particular app or movie can be watched on the device when the restrictions are in effect.

(*Id.* 42:12–43:10.) Similarly, Dr. Jones testified about the use and status rules associated with Fairplay. (*See id.* 43:12–45:19).

The jury heard all of this evidence and agreed with Dr. Jones. The Court will not substitute its judgment for that of the jury, and the Court does not find that no reasonable jury could have found that Apple had infringed the patents-in-suit.

### 4) Smartflash Showed Sufficient Evidence of the Existence of an "Access Rule"

Apple argues that Smartflash failed to show that Apple's devices meet the "access rule"

limitation because Smartflash "failed to identify any rule that is to be transmitted to the accused

devices.  Instead, Smartflash pointed only to mere integers that are transmitted between Apple's

iTunes servers and the accused Apple device.  But a number standing alone is not a rule."  (Mot.

at 9.)  Smartflash responds by arguing that "computers traditionally represent permissions, rights,

and rules as numbers." (Resp. at 7.) Smartflash notes that Dr. Jones explained this to the jury:

> Q. Can you please explain to the jury why a number -- a use rule can be
> represented in a computer as a number?
>
> A. Well, first of all, computers represent everything as some type of a number.
> But, additionally, computers traditionally represent things like permissions,
> rights, and rules as numbers.
>     If we look at computer file systems, they represent the -- the rights that a
> user has for access as individual bits and fields, which are just numbers.

(2/17/15 PM Trial Tr. (Jones) 31:9–20).

The jury was free to take Smartflash's infringement expert at his word and reject Apple's

argument to the contrary. In this, the jury found that Apple had infringed the patents-in-suit.  *See,*

*also* (2/19/2015 A.M. Sealed Trial Tr. (Ligler), Dkt. No. 524, at 6:20–7:4.) The Court will not

substitute its judgment for that of the jury. Further, the Court fails to find that no reasonable jury

could have found that Apple had infringed the patents-in-suit.

### B.      Validity

An issued patent is presumed valid. 35 U.S.C. § 282; *Fox Grp., Inc. v. Cree, Inc.*, 700

F.3d 1300, 1304 (Fed. Cir. 2012).  Apple has the burden to show by clear and convincing

evidence that the asserted claims were anticipated by or obvious over the prior art. *Microsoft*

*Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011).  To prevail on judgment as a matter of

law, moreover, Apple must show that no reasonable jury would have a legally sufficient

evidentiary basis to find for the Plaintiff. Fed. R. Civ. P. 50. "Generally, a party seeking to

invalidate a patent as obvious must demonstrate by clear and convincing evidence that a skilled

artisan would have had reason to combine the teaching of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success from doing so.'' *In re Cyclobenzaprine Hydrochoride*, 676 F.3d 1063 (Fed. Cir. 2012) (internal quotation marks omitted).

## 1) The Poggio Combinations

Apple argues that its expert, Mr. Wechselberger, provided clear and convincing evidence "that each of the asserted claims was anticipated and/or obvious." (Mot. at 11.)  In particular, Apple argues that it presented clear and convincing evidence of obviousness regarding various combinations involving the Stefik/Xerox Patent, the Ginter/InterTrust Patent, and the Ansell/Liquid Audio Patent combined with the Poggio/Sun Patent Application Publication (DX-APL 042) that, they say, went unrebutted by Smartflash. *See* (Mot. at 15–18.)  Smartflash responds by arguing that all of those particular combinations rely upon a flawed analysis of the Poggio/Sun reference.  (Resp. at 14–15.)  Smartflash argues that Dr. Jones testified that the Poggio/Sun reference did not disclose the "payment data," "payment validation data," and "payment validation system" limitations, as construed by the Court, and which it was relied upon to disclose.  (*Id.* at 15;)

For example, with respect to the Poggio reference, Dr. Jones testified:

Q. Well then, please explain how payment works in Poggio.

A. All right. So as a first step, the client makes a request to the server that arrives at the web server, and that's on the virtual vending machine. In response, back comes an invoice.

Q. And what does that look like from the user's perspective?

A. Well, what the user will be shown is -- is a web page, a form that gives them the opportunity to fill out, for example, the payment information, like a credit card.

Q. So what -- what does the user do after receiving that web form?

A. Well, the user would fill out the form with their payment information; and then that form, when they submit it, would be sent back to the web server on the virtual vending machine.

Q. And before we get to the next step, does filling out a form with all your payment information meet the payment terms of the claims of Smartflash's patents?

A. No, it doesn't. It fails to meet the repayment data of the '720 and '221 claims. It fails to meet the payment in response to a first user selection of the '772 claims.

(2/23/2015 P.M. Trial Tr. (Jones), Dkt. No. 520, at 68:5–69:1.)

Dr. Jones also testified that he disagreed with Apple's witness on the same point:

Q. All right. Did Mr. Wechselberger mispresent the Poggio reference?

A. Yes, he did in several ways.

Q. How many ways?

A. Four -- four ways, at least, that I'll represent here.

Q. Referencing both Mr. Wechselberger's screen, please explain to the jury the ways that the Poggio reference was mispresented to the jury.

A. Well, one example would be you can see in the upper left-hand corner, there's something colored purple there, the library of vendor products. That's actually something that's part of the virtual vending machine here I've circled as Item 112 in this diagram. It's not part of or associated with the vendor.
   Another way is the payment validation data or the payment validation that's coming back here, this is actually happening and taking place at the virtual vending machine, this digital cache interface.

Q. And what did Mr. Wechselberger show in his slide to the jury about where that was happening?

A. Well, he's showing it -- that it's -- it's coming back to the web server; but when he applies it to the claims, he's actually showing something quite different.

(*Id.* 70:8–72:10.)

Finally, Smartflash argues that "Mr. Wechselberger failed to show that [the Poggio/Sun reference] would have been combined with the other asserted references" and that "a person of

10

ordinary skill in the art would have had no motivation to combine those references with [the Poggio/Sun reference]." (*Id.*)

The jury agreed with Dr. Jones, and the Court agrees that Smartflash's evidence shows that a reasonable jury could find that Apple has not met its burden under the clear and convincing standard. The Court will not substitute its judgment for that of the jury, and the Court does not find that no reasonable jury could have found that the asserted patents were valid in view of the combinations set forth above.

### 2) The Gruse/IBM Patent

In addition to the Poggio/Sun combinations, Apple also argues that it presented clear and convincing evidence of anticipation by the Gruse/IBM Patent (DX-APL 023) and obviousness regarding Gruse/IBM Patent in combination with Puhl/Motorola Patent that ultimately went unrebutted by Smartflash. *See* (Mot. at 11–14.)  Smartflash responds that Dr. Jones testified that the Gruse/IBM Patent does not disclose the "payment data" or "payment validation data" limitations, as required by the Court's construction. *See* (Resp. at 16;)

For example, Dr. Jones testified that Apple's witness did not paint a complete picture of the references:

> Q. And what -- what is on screen, Dr. Jones?
>
> A. Now, this is another one of Mr. Wechselberger's slides, and this one is addressing the Gruse/IBM patent.
>
> Q. Dr. Jones, did Mr. Wechselberger accurately present what's taught in Gruse?
>
> A. Well, he actually gave two descriptions of it. First, he walked through it at the beginning and walked through the elements of Figure 6; but then when he turned to the claim analysis, he changed his description. And at that point it became inaccurate.
>
> Q. And now what's on the screen here has a citation to Column 77 and a text highlighted in green. And then also it's showing Figure 6 with that arrow

> highlighted in green; is that accurate?
>
> A. No, sir, it's not. What -- what's -- what he discussed and what he was -- what's being implied here is that the arrow that proceeds from the end-user device to the clearinghouse, that that is somehow what's represented in the discussion in Column 77, when, in fact, what's described in Column 77 is not part of the embodiment that's described in Figure 6. That's just simply incorrect.

(2/23/2015 P.M. Trial Tr. (Jones), Dkt. No. 520, at 81:24–83:25.)   Further, Smartflash argues that the Gruse/IBM Patent does not disclose the "fully functional handheld multimedia terminal covered by Smartflash's claims." (Resp. at 16.)

The jury was free to weigh the competing testimony and weigh the credibility of the witnesses. Ultimately, the jury agreed with Smartflash's expert.   After consideration of the admitted evidence, including evidence regarding whether the Gruse/IBM Patent disclosed the limitations for which it was being relied upon, the jury found that the asserted patents were valid. *See, e.g.,* (2/23/2015 P.M. Trial Tr. (Jones), Dkt. No. 520, at 81:24–83:25.)  The Court will not substitute its judgment for that of the jury, where under the clear and convincing standard, the jury found the patents-in-suit were not invalid.  The Court does not find that no reasonable jury could have found the asserted patents were valid based on the presented evidence.

### 3) The IBM System

Apple argues that it presented clear and convincing evidence of obviousness regarding "an IBM project that aimed to develop a 'piracy protected Internet Music delivery system.'" (Mot. at 14;) *see* (DX-APL 026.)  Specifically, Apple argues that Mr. Wechselberger testified that "it would have been obvious to use mobile phones to implement the IBM technology" and that "an executive at Sony recognized the benefits of using a mobile phone to do so long before the patents-in-suit." (*Id.* at 14.)  First, Smartflash responds by arguing that Mr. Wechselberger relied upon the Gruse/IBM Patent for certain information regarding the operation of the IBM

System and that such reliance fails for the same reasons that the obviousness combinations involving the Gruse/IBM Patent discussed above fail.  (Resp. at 16–17.)   Second, Smartflash argues that Mr. Wechselberger "admitted under cross examination that he had no evidence that IBM ever designed the system to work with a single cell phone."  (*Id.* at 17.)

Like the above, the jury agreed with Smartflash's expert after weighing the testimony and judging the credibility of the witnesses.  After consideration of the presented evidence, including that IBM had never designed the system to work with a single cell phone, the jury found that the asserted patents were valid.  *See, e.g.,* (2/19/2015 P.M. Trial Tr. (Wechselberger), Dkt. No. 518, at 103:10–104:5.)  The Court will not substitute its judgment for that of the jury where the jury reached a result supported by reasonable evidence. The Court does not find that no reasonable jury could have found the asserted patents were valid in view of the presented evidence and will not overturn the jury's finding based on this. To the extent Apple raises other obviousness arguments in its Motion, the Court similarly does not find that no reasonable jury could have found the asserted patents were valid in view of the evidence presented during the trial.

### C.    Induced Infringement

"Whoever actively induces infringement of a patent shall be liable as an infringer."  35 U.S.C. § 271(b).  "[L]iability for inducing infringement attaches only if the defendant knew of the patent and that 'the induced acts constitute patent infringement.'"  *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S.Ct. 1920, 1926 (2015).  "[I]nduced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement."  *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 131 S.Ct. 2060, 2068 (2011).

Apple argues that the Court should find for Apple on the issue of induced infringement because "Smartflash presented no evidence that Apple had knowledge of Smartflash's patents

prior to suit or knowledge of any acts that might 'constitute patent infringement.'" (Mot. at 9 (citing *Global-Tech*, 131 S.Ct. at 2068).)  Apple argues that, based on the evidence presented, "no reasonable jury could have found that Apple knew about Smartflash's patents." (Mot. at 10).  Further, Apple argues that it "holds good faith beliefs in its strong invalidity and non-infringement defenses, which establishes a lack of the requisite intent for active inducement." (*Id.* (citing *Commil USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361, 1367-68 (Fed. Cir. 2013)).[1])

Smartflash responds by first arguing that the jury found willful infringement, which requires a showing of pre-suit knowledge by clear and convincing evidence.[2]  (Resp. at 8.) Smartflash next argues that the jury was presented with testimony from Mr. Farrugia regarding Mr. Farrugia's prior work experience at Gemplus, a company that, at one point, had access to Smartflash's technology.  (Resp. at 9.)  Smartflash also argues that the jury was presented with evidence regarding Apple's good-faith beliefs in regards to non-infringement, considered it, and returned a willfulness verdict, which required the jury to find that Apple did not have any "reasonable basis to have believed that it did not infringe." (*Id.*)

As Smartflash notes, the jury was presented with evidence that Apple's employee, Mr. Farrugia, was previously employed at Gemplus; that employees at Gemplus may have had knowledge of Smartflash's technology; and that Gemplus may have previously attempted to copy portions of Smartflash's technology. *See, e.g.,* (2/16/2015 P.M. Trial Tr., Dkt. No. 511, at 98:12–99:21; 2/18/2015 P.M. Trial Tr., Dkt. No. 516, at 60:1–2.)  Further, the jury was presented with evidence regarding whether Apple had a good-faith belief that it did not infringe

---

[1] The Court notes that the Federal Circuit's *Commil* decision was vacated by the Supreme Court.  *Commil*, 135 S.Ct. at 1931.

[2] Subsequent to the completion of the briefing on this Motion, the Court granted Apple's Motion for Judgment as a Matter of Law as to willfulness.  (Dkt. No. 580).

Smartflash's patents.[3]   The jury was properly instructed on the law, was free to judge the credibility of the witnesses, and weigh competing fact questions.   After consideration of the presented evidence, the jury found that Apple had induced infringement of the patents-in-suit.[4]   The Court will not substitute its judgment for that of the jury under the preponderance of the evidence standard on the disputed issues of fact underlying this decision.   The Court does not find that no reasonable jury could have found that Apple had induced infringement of the patents-in-suit.   Accordingly, Apple's Motion in regard to induced infringement is **DENIED**.

## D.      The *i4i*  Instruction

Apple argues this Court committed reversible error by declining to provide an instruction regarding the relative weight of evidence not considered by the Patent and Trademark Office according to the guidance handed down by the Supreme Court in *Microsoft Corporation v. i4i Ltd. Partnership*, 131 S.Ct. 2238, 2251 (2011).   In particular, Apple argues that the "jury should have been instructed that it could give greater weight to prior art that the PTO did not consider in deciding whether Apple had met the clear and convincing standard."   (Mot. at 18.)   Smartflash responds by arguing that Apple's instruction was "entirely permissive" and "would have shed no light on how the jury was to deliberate."   (Resp. at 18–19.)

The Supreme Court clearly articulated the principle underlying the appropriateness of an *i4i* instruction: "new evidence supporting an invalidity defense may 'carry more weight' in an infringement action than evidence previously considered by the PTO."   *i4i*, 131 S.Ct. at 2251 (citations omitted).   That principle is predicated upon comparing two different types of evidence:

---

[3] The Supreme Court recently held that "belief regarding validity [of the asserted patent] cannot negate the scienter required under § 271(b)." *Commil*, 135 S.Ct. at 1928.
[4] The Court previously granted Apple's Motion for Judgment as a Matter of Law as to Willfulness after finding that Smartflash had not met its burden with regards to willful infringement. (Dkt. No. 580). The Court notes that, in the willfulness inquiry, the standard of proof required that Smartflash show that Apple had pre-suit knowledge of the patents-in-suit by clear and convincing evidence. The induced infringement inquiry, however, does not require that heightened standard, but instead merely requires a showing by the preponderance of the evidence.

1) "new evidence" and 2) "evidence previously considered by the PTO." *Id.*  Further, the jury's discretion to give more weight to one category versus the other requires the jury to be able to "evaluate whether the evidence before it is materially new." *Id.*  In the present case, neither party presented "evidence previously considered by the PTO" or explained how the prior art that was presented was or was not cumulative to the evidence evaluated by the PTO.  (2/24/2015 A.M. Trial Tr., Dkt. No. 521, at 81:2–5.) Therefore, both the jury and the Court lacked the practical ability to "evaluate whether the evidence before it is materially new." *i4i*, 131 S.Ct. at 2251 (citations omitted). Accordingly, the Court concluded it was improper to suggest that more weight should be given, especially when no comparison was possible given the lack of evidence about what was previously considered by the PTO. As a result, the Court believed that, in this limited situation, an *i4i* instruction would not have helped the jury in its deliberations, and the Court declined to give one.

Finally, to the extent that any instruction would have been given, the Court, at most, would have instructed the jury that it could "consider that it ha[d] heard evidence that the PTO had no opportunity to evaluate before granting the patent." [5]  *Id.*  The Court does not find that the lack of that instruction affected the outcome of the case.  *Hartsell v. Doctor Pepper Bottling Co.*, 207 F.3d 269, 272 (5th Cir. 2000).  Accordingly, Apple's Motion in regard to the issue of the *i4i* instruction is **DENIED**.

### E.    Ownership/Standing

The Court has previously addressed the issues of Ownership and Standing.  (Dkt. No. 455).  For the reasons set forth below, the Court declines to revise its ruling on these issues.

On February 3, 2015, Magistrate Judge Nicole Mitchell issued a substantial and fully-

---

[5] Apple had ample opportunity to make this point, which it did on multiple occasions. For example, in closing, Apple argued that the invalidity references it presented had not been provided to the PTO. (2/24/2015 A.M. Trial Tr., Dkt. No. 521, at 81:2–5.)

reasoned Order granting Smartflash's motion *in limine* regarding the proffer of evidence on the issue of standing and ownership. (Dkt. No. 455).   In that opinion, the Court found that "Smartflash ha[d] met its burden to show that it own[ed] all the rights to patents-in-suit" and that "Apple ha[d] not met its burden to show a break in the chain-of-title." (*Id.* at 16.)  On February 13, 2015, after considering Apple's objections (Dkt. No. 464), the Court adopted the Magistrate Judge's Order.  (Dkt. No. 479.)  Now, after trial has been completed and a verdict returned, Apple seeks to reopen the ownership and standing issues by arguing in its motion that these issues should have been presented to the jury.

These issues have received full and fair treatment, and the Court declines to revisit its previous Orders.  To allow parties, in post-trial motions, to entirely reargue the merits of issues that have already been fully addressed during the case would potentially throw open the flood gates to repetitive post-trial motions.  Accordingly, Apple's Motion in regard to the issues of ownership and standing is **DENIED**.

## F.    Indefiniteness

The Court previously addressed the issues of indefiniteness of the terms, "data carrier" and "temporary memory," as raised by Apple in this Motion.  (Dkt. No. 391).  For the reasons set forth below, the Court declines to revise its ruling on the issues of indefiniteness.

On January 5, 2015, Magistrate Judge Nicole Mitchell issued a substantial and carefully reasoned Report and Recommendation recommending the Court deny Apple's Motion for Summary Judgment pursuant to 35 U.S.C. § 101. (Dkt. No. 391).  On February 13, 2015, the Court adopted the Magistrate Judge's Report and Recommendations.  (Dkt. No. 485.)  Now, after trial has completed and a verdict had been returned, Apple seeks to reopen the indefiniteness issues previously addressed.

These issues have also received full and fair treatment, and the Court declines to revisit

17

its previous Orders.  Accordingly, Apple's Motion in regard to its alleged indefiniteness as to the terms, "data carrier" and "temporary memory," is **DENIED**.

**IV.     Conclusion**

For the reasons set forth above, the Court finds that the jury's verdict of validity and infringement should stand. The jury's verdict in these respects is supported by adequate evidence presented at trial and should not be disturbed. Accordingly, Apple's Motion and Memorandum in Support of its Omnibus Rule 50(b) Renewed Motion for Judgment as a Matter of Law and/or Rule 59 Motion for New Trial (Dkt. No. 547) should be and hereby is **DENIED**.

**So ORDERED and SIGNED this 2nd day of September, 2015.**

_____

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE
